**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

RUBY FREEMAN and WANDREA' MOSS,

                          Plaintiffs,

v.                                                        No. 24-cv-6563-LJL

RUDOLPH W. GIULIANI,

                          Defendant.

---

**MEMORANDUM OF LAW**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

John Langford
Rachel Goodman
United to Protect Democracy
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org

Christine Kwon (admitted *pro hac vice*)
P.O. Box 341423
Los Angeles, CA 90034-9998
(202) 579-4582
christine.kwon@protectdemocracy.org

Von DuBose (*pro hac vice* forthcoming)
DuBose Miller LLC
75 14th Street NE. Suite 2110
Atlanta, GA 30309
(404) 720-8111
dubose@dubosemiller.com

Michael J. Gottlieb
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
M. Annie Houghton-Larsen
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com
mhougton-larsen@willkie.com

*Attorneys for Plaintiffs Ruby Freeman and Wandrea' Moss*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ..........................................................................................................................1

STATEMENT OF FACTS .............................................................................................................3

       A.     Procedural Background..................................................................................................3

       B.     Factual Background ......................................................................................................4

             1.     Mr. Giuliani Maintains a Permanent, Primary Home at His New York
Apartment ........................................................................................................4

             2.     Mr. Giuliani Did Not Actually Occupy the Palm Beach Condo
Between the Time He Intended to Liquidate It, and the Time Plaintiffs
Established Their Lien. ....................................................................................6

LEGAL STANDARD......................................................................................................................8

ARGUMENT ..................................................................................................................................9

     I.     Mr. Giuliani Did Not Establish the Palm Beach Condo as His "Homestead" Prior to
Attachment of Plaintiffs' Lien. ...................................................................................9

     II.    Plaintiffs' Lien on the Florida Condominium May Be Enforced Regardless of Any
Future Homestead Claim. ..........................................................................................14

CONCLUSION.............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................8

*Barlow v. Barlow*,
   23 So. 2d 723 (Fla. 1945)........................................................................................2

*Belkova v. Deer Run Prop. Owners' Ass'n, Inc.*,
   373 So. 3d 629 (Fla. Dist. Ct. App. 2023)............................................................15

*Bessemer v. Gersten*,
   381 So. 2d 1344 (Fla. 1980)..................................................................................15

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................................8

*Cestaro v. Prohaska*,
   681 F. Supp. 3d 121 (S.D.N.Y. 2023)....................................................................9

*Chames v. DeMayo*,
   972 So. 2d 850 (Fla. 2007)....................................................................................10

*Clements v. Farhood*,
   No. 5:17-CV-213-RH/GRJ, 2018 WL 850086 (N.D. Fla. Feb. 12, 2018) ...............9

*Colwell v. Royal Int'l Trading Corp.*,
   226 B.R. 714 (S.D. Fla. 1998) ..............................................................................10

*Drucker v. Rosenstein*,
   19 Fla. 191 (1882)............................................................................................10, 11

*In re Englander*,
   95 F.3d 1028 (11th Cir. 1996) ................................................................................2

*In re Giuliani*,
   --- B.R. ---, No. 23-12055 (SHL), 2024 WL 3384185 (Bankr. S.D.N.Y. July
   12, 2024) ..................................................................................................................6

*Gottlieb v. County of Orange*,
   84 F.3d 511 (2d Cir. 1996)......................................................................................9

*Harlen Associates v. Village of Mineola*,
   273 F.3d 494 (2d Cir. 2001)....................................................................................8

*Hillsborough Inv. Co. v. Wilcox*,
   13 So. 2d 448 (Fla. 1943).............................................................................................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)....................................................................................................8

*In re McCallan*,
   629 B.R. 491 (Bankr. M.D. Ala. 2021), *aff'd sub nom. McCallan v. Wilkins*,
   657 B.R. 493 (M.D. Ala. 2022) .................................................................................11

*In re Middleton*,
   462 B.R. 832 (Bankr. N.D. Fla. 2011)......................................................................11

*Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein*,
   619 So. 2d 267 (Fla. 1993)..........................................................................................2

*Roe v. City of Waterbury*,
   542 F.3d 31 (2d Cir. 2008)..........................................................................................8

*Scott v. Harris*,
   550 U.S. 372 (2007)....................................................................................................9

*Semple v. Semple*,
   89 So. 638 (Fla. 1921)........................................................................................12, 13

*In re Van Meter's Est.*,
   214 So. 2d 639 (Fla. Dist. Ct. App. 1968) ...............................................................10

*State Dept. of Revenue ex rel. Vickers v. Pelsey*,
   779 So. 2d 629 (Fla. Dist. Ct. App. 1st 2001)...............................................9, 10, 11

*Wechsler v. Carrington*,
   214 F. Supp. 2d 1348 (S.D. Fla. 2002) ................................................................9, 15

*In re Wiley*,
   570 B.R. 661 (Bankr. N.D. Fla. 2011) ................................................................11, 14

**Statutes**

28 U.S.C. § 1962........................................................................................................4

28 U.S.C. § 1963........................................................................................................4

Fla. Stat. § 55.10....................................................................................................4, 15

N.Y. CPLR § 5206...............................................................................................4, 5, 12

**Other Authorities**

Fed. R. Civ. P. 56(a) ...........................................................................................................8

Fed. R. Civ. P. 56(c) ...........................................................................................................8

Plaintiffs Ruby Freeman and Wandrea' Moss ("Plaintiffs") respectfully submit this memorandum of law in support of their motion for summary judgment in this declaratory judgment action against Defendant Rudolph W. Giuliani ("Defendant" or "Mr. Giuliani").

## **INTRODUCTION**

The material facts necessary to decide this declaratory judgment action are public and beyond dispute: establishing a "homestead" under the Florida constitution requires, at a minimum, that the debtor claiming homestead status *actually* occupy the property as a home—regardless of any subjective intention to do so in the future. The undisputed public evidence shows that Mr. Giuliani did not actually occupy his Palm Beach condominium (the "Palm Beach Condo") during the period between when he first purported to establish it as his homestead and the date Plaintiffs established a lien on the Condo. Because actual occupancy is a necessary prerequisite to establishing "homestead" status under the Florida constitution, that undisputed fact renders all other facts immaterial, including any arguments Mr. Giuliani may raise about his subjective intentions. Unless Mr. Giuliani is able to come forward with evidence sufficient to create a genuine dispute about whether he *actually* occupied the Palm Beach Condo during the relevant period, Plaintiffs are entitled to summary judgment.

To be clear, this motion seeks summary judgment based on the evidentiary record as it exists without any discovery, based purely on facts collected from the public record—facts not subject to reasonable dispute. And to be doubly clear, essentially *all* of the non-public evidence relevant to Plaintiffs' claims is in Mr. Giuliani's possession, or that of his close associates. Thus, if Mr. Giuliani believes that he possesses any evidence that could create a material factual dispute in this matter, now is his time to say so. At this stage, the only disputes that could even arguably be material would be a dispute as to whether, between July 10, 2024 and August 8, 2024, Mr. Giuliani actually occupied the Palm Beach Condo as a home. Unless Mr. Giuliani is able to come

forward with evidence sufficient to create a genuine dispute about that, nothing else is material, including—especially—evidence going to Mr. Giuliani's subjective intent, because Florida law is crystal clear that intent to make a property one's homestead in the future alone is legally insufficient to entitle one to the exemption. If, on the other hand, Mr. Giuliani is able to produce evidence sufficient to create a genuine dispute about his actual occupancy of the Palm Beach Condo during the relevant period, then the Court will need to resolve factual disputes about the extent and nature of that occupancy, *and* about the other essential ingredient of a homestead claim: Mr. Giuliani's subjective intent to permanently occupy the Palm Beach Condo as his home. In that event, the appropriate course of action is to order expedited discovery in which Mr. Giuliani would promptly disclose all relevant evidence to Plaintiffs in the form of written discovery and document productions, and then sit for a deposition. Either a renewed, expedited motion for summary judgment or an expedited trial on the merits should follow, if necessary.

Florida's constitutional homestead protection is "not something to toy with and use as a city of refuge from the law's exactions." *Barlow v. Barlow*, 23 So. 2d 723, 723 (Fla. 1945). It is "intended to be a shield, not a sword." *Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein*, 619 So. 2d 267, 271 (Fla. 1993); *In re Englander*, 95 F.3d 1028, 1031 (11th Cir. 1996). In this case, after orchestrating a campaign of intentional defamation and infliction of emotional distress on Plaintiffs, and then spending years obstructing and evading the judicial process, Mr. Giuliani has turned to the Florida homestead exemption as his latest weapon in a relentless battle to frustrate Plaintiffs' efforts to obtain compensation and accountability for their injuries. Fortunately, Florida law does not permit this latest maneuver. Unless Mr. Giuliani can create a genuine dispute as to the sole dispositive fact at this stage, the Court should promptly grant summary judgment and enter the declaratory relief demanded in the Complaint.

## STATEMENT OF FACTS

### A.    Procedural Background

Plaintiffs Ruby Freeman and Wandrea' ArShaye ("Shaye") Moss hold a final money judgment against Mr. Giuliani entered in the United States District Court for the District of Columbia (the "D.C. District Court"). The day final judgment was entered, Plaintiffs sought an order dissolving Federal Rule of Civil Procedure 62(a)'s automatic 30-day stay of execution and granting leave to register the judgment in any other federal district pursuant to 28 U.S.C. § 1963. *Freeman v. Giuliani*, No. 21-cv-3354 (D.D.C. Dec. 18, 2023), ECF Nos. 139, 140. The Court granted that motion in full, dissolved Rule 62(a)'s stay of execution, and authorized Plaintiffs "to register immediately the final judgment . . . in any other district of the United States." Memorandum and Order at 12–13, *Freeman v. Giuliani*, No. 21-cv-3354 (D.D.C. Dec. 20, 2023), ECF No. 144.

The day after the D.C. District Court lifted the automatic stay of execution and permitted Plaintiffs to register their judgment in any other district, Mr. Giuliani filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York. *In re Rudolph W. Giuliani*, No. 23-12055-SHL (Bankr. S.D.N.Y. Dec. 21, 2023), attached as Ex. A to the Declaration of Maggie MacCurdy in Support of Plaintiffs' Motion for Summary Judgment ("MacCurdy Decl.") ¶ 2.[1]

On August 5, 2024, following dismissal of that bankruptcy proceeding, Plaintiffs registered their judgment in the Southern District of Florida. *See Freeman v. Giuliani*, No. 24-mc-22979 (S.D. Fla. Aug. 5, 2024), ECF No. 1; Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts

---

[1] The "Bankruptcy Dkt." refers to the docket in *In re Rudolph W. Giuliani*, No. 23-12055-SHL (Bankr. S.D.N.Y. Dec. 21, 2023).

("56.1 Statement"), at ¶ 65; MacCurdy Decl. ¶ 6, Ex. E. On August 8, 2024, Plaintiffs recorded a certified copy of that judgment, so registered, with the Clerk of Palm Beach County, establishing a lien on Mr. Giuliani's real property located in Palm Beach County, including the Palm Beach Condo. 56.1 Statement ¶ 65; MacCurdy Decl. ¶ 6, Ex. E; Fla. Stat. § 55.10; *see* 28 U.S.C. §§ 1962, 1963.

### B.    Factual Background

1. *Mr. Giuliani Maintains a Permanent, Primary Home at His New York Apartment*

The Palm Beach Condo is located at 315 South Lake Drive, Unit 5D, Palm Beach, Florida, in "The Southlake," a luxury building with amenities such as a resort-style pool and outdoor lounge area. According to Mr. Giuliani's sworn disclosures in the Bankruptcy Court, the Palm Beach Condo has a current value of $3.5 million, and Mr. Giuliani owns the Palm Beach Condo in fee simple. *See* MacCurdy Decl. ¶ 3, Ex. B at 3. The condominium fees associated with the Palm Beach Condo also exceed $15,000 per month. MacCurdy Decl. ¶ 8, Ex. G.

Throughout his bankruptcy proceedings, Mr. Giuliani claimed his co-op apartment located at 45 East 66th Street in Manhattan (the "New York Apartment") as his permanent, primary residence and "homestead." 56.1 Statement ¶ 6; MacCurdy Decl. ¶ 4, Ex. C at 9:01–10:05. On January 26, 2024, Mr. Giuliani filed his Summary of Assets and Liabilities, which claimed a portion of the New York Apartment was exempt property pursuant to N.Y. CPLR § 5206, which exempts property "owned and occupied as a principal residence[.]" MacCurdy Decl. ¶ 3, Ex. B; Bankruptcy Dkt. ECF No. 71. Mr. Giuliani did not claim any exemption with respect to the Palm Beach Condo.

To the contrary, while testifying under oath at the February 7, 2024, Meeting of Creditors pursuant to section 341 of the Bankruptcy Code, Mr. Giuliani affirmed that he resided at "45 East

66th Street" and that "the New York residence is [his] principal residence[.]" MacCurdy Decl. ¶ 4, Ex. C at 9:1–2; 9:24–10:4; *see also id.* at 6:16–18 ("I'm testifying from my home, 45 East 66th Street, New York, New York."). When asked about additional residences, Mr. Giuliani confirmed that he spent most of his time in Manhattan and explained that the ratio of time he spent at the New York Apartment compared with the Palm Beach Condo was "[e]ighty-twenty, seventy-thirty." MacCurdy Decl. ¶ 4, Ex. C at 9:21–10:2; 56.1 Statement ¶ 7. Mr. Giuliani misstated the address of the Palm Beach Condo, explaining "gosh, I hardly have to use the address…316, that's it, okay, South Lake Drive." MacCurdy Decl. ¶ 4, Ex. C at 9:5–16.

On March 28, 2024, Mr. Giuliani acknowledged in another filing that, consistent with his prior sworn testimony, "he spends a substantial amount of his time in Manhattan where the New York City apartment at issue is his primary residence," and that he had therefore "properly claimed a homestead exemption *for the New York City property* in the amount of $179,975.00 pursuant to CPLR §5206." Bankruptcy Dkt. ECF No. 155 at ¶ 16 (emphasis added). "Obviously," Mr. Giuliani continued, he therefore could not "claim an exemption for the Florida condominium." *Id.* Similarly, Mr. Giuliani submitted numerous bank statements attached to public filings in the bankruptcy case. In each case, the address for the New York Apartment was listed as the mailing address on the bank statement.[2]

After six months of stalled proceedings, on July 1, 2024, Mr. Giuliani filed an application to convert his chapter 11 case to chapter 7, meaning that all of his nonexempt property—including the Palm Beach Condo—would be liquidated. Bankruptcy Dkt. ECF No. 277. Plaintiffs responded by moving to dismiss the bankruptcy case outright. *See* Bankruptcy Dkt, ECF No. 282. On July 10, 2024, Mr. Giuliani filed a notice on the docket acquiescing in Plaintiffs' motion to dismiss the

---

[2] Bankruptcy Dkt. ECF Nos. 80-2 at 1; 127-2 at 1, 13, 17; 199-1 at 1, 5, 14; 199-2 at 1, 10, 17, 25, 35, 44; 203-1 at 1, 5, 9, 13; 203-2 at 1, 6; 224-1 at 1; 224-2 at 1; 224-3 at 1; 267-2 at 6, 12, 24, 34; 267-3 at 2, 11, 21.

case. Bankruptcy Dkt. ECF No. 285. On July 12, 2024, the Bankruptcy Court resolved the outstanding objections and granted Plaintiffs' motion to dismiss. *In re Giuliani*, --- B.R. ---, No. 23-12055 (SHL), 2024 WL 3384185 (Bankr. S.D.N.Y. July 12, 2024).

On July 13, 2024, just days after agreeing to dismiss his bankruptcy and exactly one day after the Bankruptcy Court announced its opinion dismissing the case, Mr. Giuliani filed a Declaration of Domicile—executed in New Hampshire, and notarized by a New Hampshire notary—which claimed that the Palm Beach Condo was now his primary residence. 56.1 Statement ¶ 64; MacCurdy Decl. ¶ 5, Ex. D (the "New Hampshire Declaration"). That New Hampshire Declaration was recorded with the Clerk of Palm Beach County on July 15, 2024. 56.1 Statement ¶ 64; MacCurdy Decl. ¶ 5, Ex. D.

> 2. *Mr. Giuliani Did Not Actually Occupy the Palm Beach Condo Between the Time He Intended to Liquidate It, and the Time Plaintiffs Established Their Lien.*

Notwithstanding Mr. Giuliani's New Hampshire Declaration, publicly available evidence demonstrates that Mr. Giuliani has not established the Palm Beach Condo as his homestead since filing for bankruptcy and claiming a homestead exemption with respect to the *New York* Apartment.

To the contrary, the public, undisputed evidence tells a very different story: sometime in the late spring, while the bankruptcy case was still pending, Mr. Giuliani decamped to Manchester, New Hampshire. He would then travel from New Hampshire on trips to other locations (not Florida), returning to New Hampshire when his trips were over. If Mr. Giuliani had a new "home base" over the summer of 2024, it was New Hampshire—and, sufficient for purposes of this motion, it was *not* the Palm Beach Condo.

This is clear from the public evidence that Mr. Giuliani himself broadcasts on the Internet at least every weeknight. During the relevant period, Mr. Giuliani broadcasted multiple livestream

shows on his social media and other platforms, which provide regular evidence of his physical location. That publicly available evidence shows that Mr. Giuliani was in New Hampshire as early as June 20, 2024. 56.1 Statement ¶ 10; Declaration of Regina Scott in Support of Plaintiffs' Motion for Summary Judgment ("Scott Decl."), ¶¶ 13–16. He was in New Hampshire when he filed a motion to convert his bankruptcy case to chapter 7, which would have resulted in the liquidation of the Palm Beach Condo. *Supra* at 5; 56.1 Statement ¶ 17; Scott Decl. ¶ 22. He was in New Hampshire on July 13, 2024, when he executed his declaration announcing his "bona fide" residence in Palm Beach. *Supra* at 6; 56.1 Statement ¶ 27; Scott Decl. ¶ 45.

Mr. Giuliani proceeded to use New Hampshire as a home base for the rest of the summer. On July 14, 2024, Mr. Giuliani left New Hampshire and flew through La Guardia Airport to Milwaukee, Wisconsin. 56.1 Statement ¶ 28; Scott Decl. ¶ 46. He stayed there at least through July 19, 2024, but by July 22, 2024, he was "back in . . . New Hampshire." 56.1 Statement ¶¶ 29–34; Scott Decl. ¶¶ 46–53. Mr. Giuliani stayed in New Hampshire until at least July 25, 2025, but by July 27, 2024, he had left again—this time, for a trip to Paris for the summer Olympics. 56.1 Statement ¶¶ 34–38; Scott Decl.. ¶¶ 53–63. Mr. Giuliani made a short stop in London, returned to Paris, and then on August 2, 2024, returned to New Hampshire. 56.1 Statement ¶¶ 38–41 ; Scott Decl. ¶¶ 63–67. Mr. Giuliani stayed in New Hampshire at least through August 9, 2024, and by August 12, 2024 was on another trip—this time, to Dallas, Texas. 56.1 Statement ¶¶ 41–48; Scott Decl. ¶¶ 66–79. Mr. Giuliani returned again to New Hampshire, where he stayed until leaving again for the Democratic National Convention in Chicago, Illinois. 56.1 Statement ¶¶ 49–57; Scott Decl. ¶¶ 80–92. By August 26, 2024, Mr. Giuliani was back in New Hampshire again, and stayed there at least through August 29, 2024. 56.1 Statement ¶¶ 57–60; Scott Decl. ¶¶ 93–102.

In sum, the undisputed evidence shows that after maintaining a homestead at his New York Apartment for many years, during which period he typically spent at most "30 percent" of his time at the Palm Beach Condo, Mr. Giuliani did not occupy the Palm Beach Condo at all during the summer of 2024, whether prior to August 8 or between August 8 and the filing of the Complaint in this action. 56.1 Statement ¶¶ 62–63; MacCurdy Decl. ¶ 4, Ex. C at 9:21–10:2. In fact, Mr. Giuliani spent far *less* time than he was accustomed at the Palm Beach Condo during that period than during the period that Mr. Giuliani openly acknowledged that it was nothing more than a second home.

## <u>LEGAL STANDARD</u>

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine issue" of "material fact" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the" nonmoving party. *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (citations omitted). However, "[m]ere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen Associates v. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). To defeat a motion for summary judgment, the non-moving party then must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). By the same token, "[a] conclusory contradiction of undisputed evidence in a self-serving affidavit, unsupported by other evidence, is not by itself sufficient to create a genuine dispute of material fact." *Cestaro v. Prohaska*, 681 F. Supp. 3d 121, 125 (S.D.N.Y. 2023). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## **ARGUMENT**

### I.    **Mr. Giuliani Did Not Establish the Palm Beach Condo as His "Homestead" Prior to Attachment of Plaintiffs' Lien.**

Turning an existing property into a "homestead" under the Florida constitution requires two essential ingredients: *actual* residence, along with an intention to maintain the property as a permanent home. Plaintiffs are entitled to summary judgment because there is no genuine dispute that Mr. Giuliani did not actually reside at the Palm Beach condo, and therefore could not have established it as a "homestead," prior to the fixing of Plaintiffs' lien on August 8, 2024.

It is black-letter Florida law that "actual occupancy is essential to a homestead claim." *State Dept. of Revenue ex rel. Vickers v. Pelsey*, 779 So. 2d 629, 632 (Fla. Dist. Ct. App. 1st 2001); *see, e.g.*, *Clements v. Farhood*, No. 5:17-CV-213-RH/GRJ, 2018 WL 850086, at *2 (N.D. Fla. Feb. 12, 2018) (emphasizing that the "Florida Supreme Court has said" that "the homestead intended by our Constitution to be exempt is the place of *actual residence* of the party . . . [t]he character of property as a homestead depends upon an actual intention to reside thereon as a

permanent place of residence, coupled with the *fact of residence*") (emphases in original) (quoting *Hillsborough Inv. Co. v. Wilcox*, 13 So. 2d 448, 451–52 (Fla. 1943)); *Wechsler v. Carrington*, 214 F. Supp. 2d 1348, 1351–52 (S.D. Fla. 2002) ("the party seeking the protection of the exemption must have an actual intent to live permanently on the property *and* actual use and occupancy of the property"); *Colwell v. Royal Int'l Trading Corp.*, 226 B.R. 714, 719 (S.D. Fla. 1998) ("a homestead is established when there is actual intent to live permanently in a place, coupled with *actual use and occupancy*") (cleaned up) (emphasis added); *In re Van Meter's Est.*, 214 So. 2d 639, 643 (Fla. Dist. Ct. App. 1968) (the homestead exemption does not "attach to real estate that is not occupied as the home . . . the place must be not a theoretical, but real place of residence.") (cleaned up).[3]

A corollary to this principle is that "[m]ere intent to make property one's homestead in the future is insufficient to entitle one to the exemption." *Pelsey*, 779 So. 2d at 632. As the Florida Supreme Court explained long ago, if the mere intention to occupy property *in the future* were enough, "where would the exemption cease to operate . . . ?" *Drucker v. Rosenstein*, 19 Fla. 191, 199 (1882). Instead, the Florida Supreme Court held, property not actually occupied as a homestead "is not a homestead, though the intention may be to make it one at some future time. We believe that the provisions of the homestead laws should be carried out in the liberal and beneficent spirit in which they were enacted, but care should be taken at the same time to prevent them from becoming the instruments of fraud." *Id.* Thus, absent "*actual occupation of the lot as a*

---

[3] Pre-1985 cases, like *In re Van Meter's Estate*, refer to an additional requirement that a homestead be "occupied as the home *of the family*," and limit the homestead exemption to a person who is the head of that family. 214 So. 2d at 643 (emphasis added). A 1985 amendment to the Florida constitution "replaced the phrase 'the head of the family' with 'a natural person'" and thus "expanded the class of persons who can take advantage of the homestead provision and its protections." *Chames v. DeMayo*, 972 So. 2d 850, 855-56 (Fla. 2007) (internal quotation marks omitted). The 1985 amendment did not otherwise change the homestead exemption or "alter its fundamental purpose" of "protec[ing] the family . . . [and] the home." *Id.* at 856. Where possible to do so without otherwise altering the meaning of the quotation, quotations from pre-1985 cases that refer to the head-of-family requirement have been altered to omit that aspect of the requirement with appropriate ellipses.

*homestead*," the "bare fact" of the debtor's "filing and recording [a homestead claim] does not exempt the land as a homestead. Connected with such act there must be actual occupancy." *Id.* at 198 (emphasis added). Accepting "mere intent" as sufficient to confer homestead status on a piece of property "would invite its use for fraudulent purposes, to defeat the legitimate claims of creditors," a result "clearly at odds with important public policy considerations." *Pelsey*, 779 So. 2d at 632–33.

Furthermore, to qualify as a "homestead," property must be "actual[ly] occup[ied] *as a homestead*." *Drucker*, 19 Fla. at 198–99 (emphasis added); *see In re Wiley*, 570 B.R. 661, 668 (Bankr. N.D. Fla. 2011) (to qualify for the homestead exemption, property must be actually "*used as [a] home*," not a second home). Thus, a "secondary or vacation home" is not a homestead, even if a debtor occupies it some of the time. *In re Middleton*, 462 B.R. 832, 836 (Bankr. N.D. Fla. 2011); *accord In re Wiley*, 570 B.R. at 670–71. The "actual use and occupancy sufficient to establish constitutional homestead" protection requires more than use of a property as "a vacation home, a weekend getaway, or a place to stay during" temporary circumstances. *In re Wiley*, 570 B.R. 661 at 670. And where a debtor *does* maintain a second home in Florida, such a debtor cannot suddenly apply constitutional homestead protection to that home by filing a declaration of domicile. *See Drucker*, 19 Fla. at 198; *In re McCallan*, 629 B.R. 491, 504 (Bankr. M.D. Ala. 2021), *aff'd sub nom. McCallan v. Wilkins*, 657 B.R. 493 (M.D. Ala. 2022).

Here, the undisputed evidence shows that Mr. Giuliani did not actually reside in the Palm Beach Condo—as his home, or otherwise—during the time relevant to this motion. That time can be broken down into two periods.

**Prior to July 10, 2024.** At all times prior to July 10, 2024, Mr. Giuliani undisputedly maintained his New York apartment as his permanent homestead. When Mr. Giuliani filed his

chapter 11 petition on December 21, 2023, he listed the New York apartment as his residence and claimed it as his "homestead" for purposes of the New York state exemption. *Supra* at 4; MacCurdy Decl. ¶ 2, Ex. A, at 2. At his Section 341 Meeting on February 7, 2024, Mr. Giuliani testified under oath that the New York co-op was his primary residence, and that he spent seventy or eighty percent of his time there, compared to twenty or thirty percent at the Palm Beach Condo. *Supra*, at 4–5; MacCurdy Decl. ¶ 4, Ex. C at 9:1–2; 9:24–10:4; *see also id.* at 6:16–18. Then, on July 1, 2024, Mr. Giuliani moved to convert his chapter 11 case to chapter 7, meaning that all of his nonexempt assets would be liquidated. *See* Bankruptcy Dkt. ECF No. 277. That would have meant that both his New York apartment and Palm Beach Condo would have been sold for the benefit of Mr. Giuliani's creditors, with the New York apartment treated as his "homestead" for purposes of the applicable state-law exemption. *See* CPLR § 5206; Bankruptcy Dkt. ECF No. 155 at ¶ 16. But based on the undisputed facts, the undisputed facts show that that prior to July 10, 2024, Mr. Giuliani *neither* actually occupied the Palm Beach Condo as his home, nor intended to permanently maintain it as such. Indeed, Mr. Giuliani's affirmative steps to liquidate the Palm Beach Condo while claiming a homestead exemption for his New York apartment would negate any prior expression of intention to establish the Palm Beach Condo as his "homestead." *See Semple v. Semple*, 89 So. 638, 639 (Fla. 1921) ("uncontradicted evidence of an intention on the part of [a debtor] that the property was not to be his homestead"—there, seeking to convey title to the property to another—"entirely destroys any inferences drawn from" other acts suggesting an intent to establish a homestead there, "or any statements by him of his intention to make the place his homestead"); *see also id.* ("The fact that he sought to divest himself of the title . . . disproves any intention at variance with that act, and is conclusive of the fact that it was not his intention to

claim the property as a homestead in the meaning of the law. To use a homely but apt adage, 'one cannot eat his cake and have it too.'").

**Between July 10, 2024 and August 8, 2024.** Mr. Giuliani's voluntary decision to seek liquidation of the Palm Beach Condo in chapter 7, while claiming a homestead exemption with respect to the New York Apartment, would have "entirely destroy[ed]" any prior homestead claim he may have had with respect to the Palm Beach Condo—not that he ever established any such claim, or purported to have done so. *Semple*, 89 So. at 639. Thus, the crucial period for purposes of this summary judgment motion is between July 10, 2024—the first date on which Mr. Giuliani publicly withdrew his request to liquidate the Palm Beach Condo—and August 8, 2024, when Plaintiffs established their lien on the Condo. Any purported homestead claim *before* that period would have been destroyed by Mr. Giuliani's attempt to liquidate the Condo, and any purported claim *after* that period would be too late. *Infra*, at 14–15.

On July 10, 2024, Mr. Giuliani publicly announced that he would acquiesce in Plaintiffs' motion to dismiss his bankruptcy case and asked the Bankruptcy Court to rule accordingly. A few days later, Mr. Giuliani publicized his new scheme to shield his Palm Beach Condo by claiming it was now his homestead. But Mr. Giuliani's subjective intentions and public statements are irrelevant, *supra* at 10–11, because the undisputed evidence shows that Mr. Giuliani *never* actually occupied the Palm Beach Condo as a home—or even at all—between July 10, 2024 and when Plaintiffs' lien attached on August 8, 2024.

On July 1, 2024, Mr. Giuliani was in New Hampshire. *See supra* at 6–7. The evidence shows that he stayed there at least through July 13, 2024, when Mr. Giuliani executed an affidavit purporting to declare a new primary residence at the Palm Beach Condo. *See supra* at 7. Then, Mr. Giuliani flew—via La Guardia airport in New York—to the Republican National Convention in

Milwaukee, Wisconsin. *See supra* at 7. Mr. Giuliani stayed there at least through July 19, 2024, and when he left, he returned to New Hampshire. *See supra* at 7. He stayed there at least through July 25, 2024, and by July 27, 2024, Mr. Giuliani was in Paris for the Olympics. *See supra* at 7. Mr. Giuliani spent the next several days in Paris or London, *supra* at 7, and then returned on August 2—in his words, "back from my trip," to New Hampshire. *See supra* at 7. There he remained through August 8, 2024, when Plaintiffs established their lien on the Palm Beach Condo. *See supra* at 7; 56.1 Statement ¶ 65; MacCurdy Decl. ¶ 6, Ex. E.

\* \* \*

The only facts relevant to Mr. Giuliani's purported homestead claim prior to August 8, 2024, are these: as of July 9, 2024, Mr. Giuliani did not even arguably intend to reside in the Palm Beach Condo as his permanent home. And from July 10, 2024 on—the only period during which Mr. Giuliani made even sham assertions of an intention to reside there—Mr. Giuliani did not *actually* reside there. That undisputed fact that Mr. Giuliani did not actually occupy the Palm Beach Condo during that latter period—much less occupy it *as a home*—renders any evidence of Mr. Giuliani's intentions immaterial and compels summary judgment in Plaintiffs' favor. After all, "intentions comprise only one of a two-prong test for whether property constitutes exempt homestead. The other prong, the objective prong, is whether the [debtor] resided on the property and used it as their homestead." *In re Wiley*, 570 B.R. at 672–73. Because Mr. Giuliani cannot satisfy that prong, Plaintiffs are entitled to summary judgment.

## II.     Plaintiffs' Lien on the Florida Condominium May Be Enforced Regardless of Any Future Homestead Claim.

Because Mr. Giuliani did not establish a homestead at his Palm Beach Condo prior to August 8, 2024, Plaintiffs' lien against the Condo is fully enforceable, and the Condo may be executed upon and forcibly sold—including through receivership—to satisfy Plaintiffs' judgment.

14

The undisputed facts show that Plaintiffs recorded their judgment in Palm Beach County on August 8, 2024, which established a lien on the Condo under Florida law. MacCurdy Decl. ¶ 6, Ex. E; Fla. Stat. § 55.10. Under well established Florida law, the "acquisition of homestead status does not defeat prior liens." *Bessemer v. Gersten*, 381 So. 2d 1344, 1348 (Fla. 1980); *accord Belkova v. Deer Run Prop. Owners' Ass'n, Inc.*, 373 So. 3d 629, 632 (Fla. Dist. Ct. App. 2023). Thus, even where a judgment debtor *later* establishes a homestead, "if a judgment is recorded prior to the time the debtor has established a homestead, the homestead property is subject to levy under Florida law." *Wechsler v. Carrington*, 214 F. Supp. 2d 1348, 1351–52 (S.D. Fla. 2002) (collecting cases); *see id.* ("[P]reexisting liens are excepted from Florida's homestead exception."). Because the undisputed facts show that Plaintiffs' lien on the Palm Beach Condo is enforceable notwithstanding any homestead claim that Mr. Giuliani may make, now or in the future, Plaintiffs are entitled to summary judgment declaring as much.

## <u>CONCLUSION</u>

The motion for summary judgment should be granted, and the Court should enter judgment declaring Plaintiffs' rights as demanded in the Complaint.

Respectfully submitted,

Dated: October 2, 2024
        New York, New York

s/ Aaron E. Nathan

John Langford
Rachel Goodman
United to Protect Democracy
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org

Christine Kwon (admitted *pro hac vice*)
P.O. Box 341423
Los Angeles, CA 90034-9998
(202) 579-4582
christine.kwon@protectdemocracy.org

Von DuBose (*pro hac vice* forthcoming)
DuBose Miller LLC
75 14th Street NE Suite 2110
Atlanta, GA 30309
(404) 720-8111
dubose@dubosemiller.com

Michael J. Gottlieb
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
M. Annie Houghton-Larsen
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com
mhougton-larsen@willkie.com

*Attorneys for Plaintiffs Ruby Freeman and Wandrea' Moss*

16