UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RUBY FREEMAN and WANDREA' MOSS,

                    Plaintiffs,

v.                                              No. 24-cv-06563-LJL

RUDOLPH W. GIULIANI,

                    Defendant.

**CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

KENNETH CARUSO LAW LLC
15 West 72nd Street
New York, NY 10023
(646) 599-4970
ken.caruso@kennethcarusolaw.com

LABKOWSKI LAW, P.A.
250 95th Street, Unit #547233
Surfside, Florida 33154
(786) 461-1340
david@labkowskilaw.com

Of Counsel:
        Kenneth A. Caruso
        David Labkowski

**TABLE OF CONTENTS**

STATEMENT OF THE CASE........................................................................................... 1

POINT I  THE COURT SHOULD ABSTAIN  UNDER THE BURFORD DOCTRINE ......... 1

    A.    *Burford* Abstention: Applicable Law .......................................................... 1

    B.    Florida Homestead Law ............................................................................. 2

    *C.*    The Court Should Abstain Under *Burford* .................................................. 3

        1.    The Court Should Abstain Under The First *Burford* Prong.................................... 3

        2.    The Court Should Abstain Under The Second Burford Prong ............................... 4

    D.    Conclusion................................................................................................. 5

POINT II  THE COURT, IN ITS DISCRETION, SHOULD DECLINE TO ISSUE  A DECLARATORY JUDGMENT ................................................................................ 6

POINT III  PLAINTIFFS HAVE NOT SHOWN THAT DEFENDANT IS NOT ENTITLED TO A FLORIDA HOMESTEAD EXEMPTION ................................................... 8

    A.    Choice Of Law: The Court Should Apply Florida Law ................................ 8

    B.    The Court, Applying Florida Law, Should Grant Defendant's Cross-Motion ............ 9

        1.    First Element: Intent ...................................................................... 9

        2.    Second Element: The Fact Of Residence ............................................. 11

    C.    The Court, Applying Florida Law, Should Deny Plaintiffs' Motion......................... 12

CONCLUSION.......................................................................................................... 16

## TABLE OF AUTHORITIES

**CASES**

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
    57 F.4th 85 (2d Cir. 2023) ......................................................................... 7

*Anderson v. Letosky*,
    304 So. 3d 801 (Fla. 2d DCA 2020) ......................................................... 13

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986) ................................................................................... 13

*Baldwin v. Henriquez*,
    279 So. 3d 328 (Fla. 2d DCA 2019) ......................................................... 11

*Burford v. Sun Oil Co.*,
    319 U.S. 315 (1943) ..................................................................................... 2

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................... 13

*Colorado River Water Conservation District v. United States*,
    424 U.S. 800 (1976) ..................................................................................... 1

*Fieger v. Pitney Bowes Credit Corp.*,
    251 F.3d 386 (2d Cir. 2001) ........................................................................ 8

*Friedman v. Revenue Management of New York, Inc.*,
    38 F.3d 668 (2d Cir. 1994) ..................................................................... 5, 6

*Carbonell v. Glade*,
    ___ So.3d ___, 2024 WL 3049413 (Fla. 3d DCA June 19, 2024) ............ 3

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) ..................................................................................... 8

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
    579 U.S. 93 (2016) ....................................................................................... 5

*Havoco of Am., Ltd. v. Hill*,
    790 So. 2d 1018 (Fla. 2001) ..................................................................... 13

*Hillsborough Inv. Co. v. Wilcox*,
    13 So. 2d 448 (Fla. 1943) ..................................................................... 9, 16

*In re Allen*,
    454 B.R. 894 (Bankr. S.D. Fla. 2011) ...................................................... 14

*In re Dean*,
    177 B.R. 727 (Bankr. S.D. Fla. 1995) ........................................................ 3

*In re Estate of Skuro,*
    487 So. 2d 1065 (Fla. 1986) ................................................................................. 2

*In re Frederick,*
    183 B.R. 968 (Bankr. M.D. Fla. 1995) ................................................................ 12

*In re Huizar,*
    71 B.R. 826 (Bankr. W.D. Tex. 1987) ................................................................ 14

*In re Michael,*
    163 F.3d 526 (9th Cir. 1998) .............................................................................. 15

*In re Osborn,*
    24 F.3d 1199 (10th Cir. 1994)............................................................................. 14

*James v. Powell,*
    19 N.Y.2d 249 (1967) ........................................................................................... 8

*JBK Associates, Inc. v. Sill Bros., Inc.,*
    191 So. 3d 879 (Fla. 2016) ................................................................................. 13

*Kelly v. Spain,*
    160 So. 3d 78 (Fla. 4th DCA 2015)...................................................................... 9

*Klaxon v. Stentor Elec. Mfg. Co.,*
    313 U.S. 487 (1941) .............................................................................................. 8

*Louisiana Power  & Light Co. v. City of Thibodaux,*
    360 U.S. 25 (1959 ................................................................................................. 6

*Novoa v. Amerisource Corp.,*
    860 So. 2d 506 (Fla. 3d DCA 2003).................................................................. 12

*Public Health Trust of Dade County v. Lopez,*
    531 So. 2d 946 (Fla. 1988) .............................................................................. 2, 3

*Quackenbush v. Allstate Ins. Co.,*
    517 U.S. 706 (1996) ................................................................................ 2, 4, 5, 7

*Quinio v. Aala,*
    603 F. Supp. 3d 50 (E.D.N.Y. 2022).................................................................... 8

*Semple v. Semple,*
    89 So. 638 (Fla. 1921) ....................................................................................... 15

*Sepulveda v. Westport Recovery Corp.,*
    145 So. 3d 162 (Fla. 3d DCA 2014).................................................................... 4

*Sierra Club v. City of San Antonio,*
    112 F.3d 789 (5th Cir. 1997)................................................................................ 6

*Snyder v. Davis*,
   699 So. 2d 999 (Fla. 1997) .................................................................................... 2, 3, 4, 7

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) ............................................................................................... 6

## STATUTES

11 U.S.C. § 522 ............................................................................................................ 14, 15

28 U.S.C. § 2201 ......................................................................................................... 6

CPLR § 5206 ............................................................................................................... 3

Fla. Stat. § 196.011(1)(a) *et seq* ................................................................................. 5

Fla. Stat. § 196.151 ..................................................................................................... 5

Fla. Stat. § 222.10 ....................................................................................................... 4, 7

Fla. Stat. § 222.17(1) ................................................................................................... 10

## RULES

Fed. R. Civ. P. 57 ....................................................................................................... 6

Fed. R. Evid. 1006 ...................................................................................................... 12

Fed. Rule of Bankr. Pro. 1009 .................................................................................... 14

## CONSTITUTIONAL PROVISIONS

Florida Const. Art. VII, § 6 ........................................................................................ 2

Florida Const. Art. X, § 4 ............................................................................................ 2, 9

Defendant, Rudolph W. Giuliani ("Defendant"), respectfully submits this **corrected** memorandum of law in opposition to the motion by Plaintiffs Ruby Freeman and Wandrea' Moss ("Plaintiffs") for summary judgment [ECF 28-31], and in support of Defendant's cross-motion for summary judgment, on Plaintiffs' claim for a judgment declaring Plaintiffs' rights with respect to a certain condominium situated in Palm Beach, Florida.

## STATEMENT OF THE CASE

The United States District Court for the District of Columbia entered a judgment against Defendant, and in favor of Plaintiffs, in the amount of approximately $146 million (including $75 million in punitive damages) for defamation and intentional infliction of emotional distress. Plaintiffs registered that judgment in this District.

Plaintiffs now seek to enforce that judgment. Specifically, Plaintiffs commenced this action seeking a declaratory judgment that they have a lien on Defendant's condominium, located at 315 South Lake Drive, Unit 5D, Palm Beach, Florida (the "Palm Beach Condo"), and that their "lien is valid and enforceable notwithstanding any claim that [Defendant] may make to homestead status under the Florida Constitution[.]" ECF 1 ¶ 64.

Plaintiffs have moved for summary judgment on their claim. Defendant now opposes that motion and cross-moves for summary judgment in his favor.

## POINT I

## THE COURT SHOULD ABSTAIN
## UNDER THE BURFORD DOCTRINE

**A.    *Burford* Abstention: Applicable Law**

As a rule, the federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them[.]" *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818 (1976) (cleaned up). To that general rule, however, the Supreme Court has

established certain exceptions, known as the abstention doctrines, one of which—the *Burford*

abstention doctrine—applies here:

> Under that doctrine, which originated in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), a

federal court may abstain from exercising its jurisdiction where:

> > (1) federal court review would raise difficult questions of state law
> > bearing on policy problems of substantial public import whose
> > importance transcends the result in the case then at bar, or (2) the
> > action's adjudication in a federal forum would be disruptive of
> > state efforts to establish a coherent policy with respect to a matter
> > of substantial public concern.

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726-27 (1996) (cleaned up).

## B.    Florida Homestead Law

The Florida homestead provision has three parts.  As explained by the Supreme Court of

Florida, "Our [state] constitution protects Florida homesteads in three distinct ways[:]"

> > *First*, a clause . . . provides homesteads with an exemption from
> > taxes.  [*See* art. VII, § 6.]  *Second*, the homestead provision
> > protects the homesteads from forced sale by creditors.  [*See* art. X,
> > § 4(a)-(b).]  *Third*, the homestead provision delineates the
> > restrictions a homestead owner faces when attempting to alienate
> > or devise the homestead property.  [*See* art. X, § 4(c).]

*Snyder v. Davis*, 699 So. 2d 999, 1001-02 (Fla. 1997) (emphasis added).

The second of those protections—the protection directly at issue here—appears to be

unique in Anglo-American law.  *See id*. at 1002 (the Florida homestead "is not susceptible to

comparisons with similar provisions in other jurisdictions[]"); *In re Estate of Skuro*, 487 So. 2d

1065, 1066 (Fla. 1986) (referring to "the unique treatment of the law of homestead property[]").

Thus, the Florida Constitution protects the homestead in its entirety, "whether the homestead [i]s

a twenty-two room mansion or a two-room hut and whether the heirs [a]re rich or poor."  *Public

Health Trust of Dade County v. Lopez*, 531 So. 2d 946, 950 (Fla. 1988).  Other States do not go

that far; they protect from creditors only a portion of a homestead's value.  *See, e.g.*, CPLR §

5206(a) (exemption only applies to "[p]roperty . . . not exceeding one hundred fifty thousand

dollars").

Florida's homestead protections, moreover, reflect deep-seated policy values, enshrined

in the state Constitution.  "The homestead protection has never been based on principles of

equity[,]" *Public Health Trust*, 531 So. 2d at 950; it is based, rather, on public policy:

> As a matter of public policy, the purpose of the homestead
> exception is to promote the stability and welfare of the state by
> securing to the householder a home, so that the homeowner and his
> or her heirs may live beyond the reach of financial misfortune and
> the demands of creditors who have given credit under such law.

*Snyder*, 699 So. 2d at 1002.  *See generally Carbonell v. Glade*, ___ So.3d ___, 2024 WL

3049413 (Fla. 3d DCA June 19, 2024) (discussing strength of homestead exemption); *In re*

*Dean*, 177 B.R. 727, 728-29 (Bankr. S.D. Fla. 1995) (giving examples of Florida's "compelling"

public policy).

**C.**     **The Court Should Abstain Under *Burford***

This case qualifies for *Burford* abstention, under both prongs of the doctrine.

**1.     The Court Should Abstain Under The First *Burford* Prong**

Clearly, the Florida homestead provisions involve policy problems of substantial public

import—the balance struck, in the state Constitution, between the rights of debtors and creditors

in general, and of judgment debtors and judgment creditors in particular.  This case, furthermore,

raises difficult questions of state constitutional law bearing on those policy problems:

When and how, under the Florida Constitution, may a person establish a homestead of

choice?  During what period of time must that person actually reside in Florida?  How does

Florida law treat that person's absence from the state for business or personal reasons?

The importance of these issues certainly transcends the result in this particular case.  As the Florida Supreme Court has held, homestead protection impacts more than the equities of a particular case.  It impacts "the stability and welfare of the state by securing to the householder a home[.]"  *Snyder*, 699 So. 2d at 1002.

### 2.    The Court Should Abstain Under The Second Burford Prong

Adjudication of Plaintiffs' claims here would be disruptive of Florida's efforts to establish a coherent policy with respect to homestead protection, which is, as shown above, a matter of substantial public concern.  Florida legislation—of nearly 150 years' standing—certainly seeks to establish a coherent policy regarding homestead protection.  Thus, the Legislature has conferred upon the Florida Circuit Court exclusive jurisdiction, on a "bill filed by" a judgment-creditor, "to determine whether any property, real or personal, claimed to be exempt, is so exempt[.]"  Fla. Stat. § 222.10 (first enacted in 1881); *Sepulveda v. Westport Recovery Corp.*, 145 So. 3d 162, 167 (Fla. 3d DCA 2014) ("The circuit court has exclusive jurisdiction to determine the validity of a claimed homestead exemption.")  Federal-court adjudication, which may depart even slightly from Florida's constitutional law in a particular case, can disrupt that cohesion.

The statute cited above, Fla. Stat. § 222.10, of course, does not deprive a federal court of subject-matter jurisdiction.  It does, however, stand as a powerful indicator of Florida's effort to establish a coherent policy, by placing homestead issues into the hands of a single court, thereby "permit[ting] an experienced cadre of state judges to obtain specialized knowledge in the field." *Quackenbush*, 517 U.S. at 724.

Federal adjudication would disrupt the effort for cohesion in yet another way.  As noted above, the Florida Constitution provides certain tax exemptions for homesteads.  The Legislature

has implemented those exemptions by establishing an administrative regime under which, in summary, a property owner may apply to the County "property appraiser[,]" for a homestead tax exemption.  The property appraiser then reviews the application and supporting evidence, and either grants or denies the application.  A disappointed applicant may "appeal" to the "value adjustment board[.]"  The applicant may challenge that board's decision by filing, in the Circuit Court, a proceeding against the property appraiser.  *See* Fla. Stat. § 196.151; *see generally* Fla. Stat. § 196.011(1)(a) *et seq.*

Federal adjudication has obvious potential to defeat the coherence of Florida's homestead system.  The property appraiser could conclude that a particular person qualifies for a homestead tax exemption.  A federal court, however, could later deny homestead protection to that same person.  Inconsistent decisions of that kind would defeat the coherence of Florida homestead law and render the tax-administration regime meaningless and ineffectual.  Indeed, this case presents precisely that risk: As shown in Point III below, the Palm Beach County appraiser has granted homestead tax exemptions to Defendant.

D.      **Conclusion**

"A motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles."  *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93, 103 (2016) (citation omitted).  Here, the Court, in its discretion, should abstain under *Burford*, "out of deference to the paramount interests of another sovereign, and the concern [for] principles of comity and federalism."  *Quackenbush*, 517 U.S. at 723. Florida has a comprehensive "scheme governing" its homesteads and their validity, priority and extent.  *Friedman v. Revenue Management of New York, Inc.*, 38 F.3d 668, 671 (2d Cir. 1994) (affirming decision to abstain in a case involving New York's "regulatory scheme governing its

corporations").  Indeed, Florida's interest in its unique homestead exemption is at least as strong as the state interests held sufficient for abstention in *Burford's* progeny, such as New York's interest in "the creation and dissolution of its corporations, and in the uniform development and interpretation of [its] statutory scheme[,]" *Friedman*, 38 F.3d at 671; or Texas's interest in regulating water use, *Sierra Club v. City of San Antonio*, 112 F.3d 789, 793-96 (5th Cir. 1997), or Louisiana's interest in eminent domain, *Louisiana Power  & Light Co. v. City of Thibodaux*, 360 U.S. 25, 30-31 (1959).

## POINT II

### THE COURT, IN ITS DISCRETION, SHOULD DECLINE TO ISSUE A DECLARATORY JUDGMENT

In the alternative, if the Court does not abstain under *Burford*, the Court, in its discretion, should decline to issue a declaratory judgment.

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), provides, in pertinent part: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  *See also* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.")

The DJA, however, "created an opportunity, rather than a duty, to grant [declaratory] relief to qualifying litigants.  Consistent with the nonobligatory nature of the remedy, a district court is authorized in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment[.]"  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

The Second Circuit recently clarified the factors that a district court will consider when asked to decline to exercise its jurisdiction under the DJA.  The court should consider, "to the

extent they are relevant in a particular case," *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57

F.4th 85, 99 (2d Cir. 2023) (cleaned up), the following six factors:

> (1) whether the declaratory judgment sought will serve a useful
> purpose in clarifying or settling the legal issues involved; (2)
> whether such a judgment would finalize the controversy and offer
> relief from uncertainty; (3) whether the proposed remedy is being
> used merely for procedural fencing or a race to res judicata; (4)
> whether the use of a declaratory judgment would increase friction
> between sovereign legal systems or improperly encroach on the
> domain of a state or foreign court; (5) whether there is a better or
> more effective remedy; . . . and (6) whether concerns for judicial
> efficiency and judicial economy favor declining to exercise
> jurisdiction.

*Id*. at 99-100 (cleaned up).

Here, the fourth and fifth factors predominate, and warrant the conclusion that the Court

should decline to issue a declaratory judgment. As demonstrated in Point I above, Florida's

homestead protections reflect deep-seated policy values, enshrined in the state Constitution. The

homestead protection transcends the equities of a particular case; it impacts Florida's public

policy by "promot[ing] the stability and welfare of the state[.]" *Snyder*, 699 So. 2d at 1002.

Accordingly, here, "the use of a declaratory judgment would increase friction between sovereign

legal systems or improperly encroach on the domain of a [Florida] court[.]" *Admiral Ins.*, 57

F.4th at 99.

The Florida Circuit Court, furthermore, provides "a better or more effective remedy[.]"

*Id*. As noted above, the Florida Circuit Court has long enjoyed exclusive jurisdiction "to

determine whether any property, real or personal, claimed to be exempt, is so exempt[.]" Fla.

Stat. § 222.10. On that court sits "an experienced cadre of state judges[,]" *Quackenbush*, 517

U.S. at 724, who have "specialized knowledge[,]" *id*., and who know how to strike the

constitutional balance between the rights of a judgment creditor and judgment debtor who claims

a homestead exemption. "There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).

Accordingly, the Court should, in effect, grant interstate comity to the state of Florida and its courts. In fact, Plaintiffs have already commenced a proceeding in Florida to register the same Judgment they seek to enforce here, albeit in a Florida federal court. *See* ECF 29 at 3-4.

**POINT III**

**PLAINTIFFS HAVE NOT
SHOWN THAT DEFENDANT IS NOT
ENTITLED TO A FLORIDA HOMESTEAD EXEMPTION**

If the Court reaches the merits, then the Court should hold that Plaintiffs have not carried their heavy burden of persuasion that Defendant is not entitled to a Florida homestead exemption. The Court should then enter judgment in favor of Defendant.

**A.    Choice Of Law: The Court Should Apply Florida Law**

A federal court sitting in diversity applies the choice-of-law rules of the forum state—here, New York. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The applicable New York choice-of-law rule is well-settled: "The rule is that the validity of a conveyance of a property interest is governed by the law of the place where the property is located." *James v. Powell*, 19 N.Y.2d 249, 256 (1967) (holding that judgment-creditor's right to execute on land located in Puerto Rico is governed by law of Puerto Rico); *see Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 395 (2d Cir. 2001) (validity of conveyance of land is determined by law of situs of land); *Quinio v. Aala*, 603 F. Supp. 3d 50, 52, 55 (E.D.N.Y. 2022) (validity of conveyance of land located in Philippines is governed by law of Philippines).

Here, the land at issue has its situs in Florida.  Accordingly, the Court, when deciding whether Plaintiffs may execute their judgment against the Palm Beach Condo, will apply Florida law.

**B.    The Court, Applying Florida Law, Should Grant Defendant's Cross-Motion**

Article X, section 4(a), of the Florida Constitution, provides, in pertinent part:

> There shall be exempt from the forced sale under process of any court, and no judgment, decree, or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property of a natural person: (1) a homestead[.]

"For real property to qualify for a homestead exemption, an applicant must make three showings . . .

> (1) that the real property is owned by a natural person; (2) that the owner has made, or intends to make, the real property his or her permanent residence or that of his family; and (3) that the property meets the size and contiguity requirements of article X, section 4(a)(1) of the Florida Constitution [quoted above].

*Kelly v. Spain*, 160 So. 3d 78, 82 (Fla. 4th DCA 2015) (cleaned up).

Here, the first showing and the third showing are not in dispute.  The question is whether Defendant has made, or intends to make, the Palm Beach Condo his permanent residence.  The answer to that question is yes.

Permanent residence has two elements—one subjective and one objective: "The character of property as a homestead depends upon an actual intention to reside thereon as a permanent place of residence, coupled with the fact of residence."  *Hillsborough Inv. Co. v. Wilcox*, 13 So. 2d 448, 452 (Fla. 1943).  Here, as shown below, Defendant satisfies both elements.

**1.    First Element: Intent**

It is undisputed that Defendant and his then-wife purchased the Palm Beach Condo in February 2010.  Declaration of Rudolph W. Giuliani ("Giuliani Decl.") Exhibit A; ECF 30 ¶ 5.  It is also undisputed that Defendant became the sole owner of the Palm Beach Condo in January 2020 as part of the divorce distribution.  *See* Giuliani Decl. Exhibit B; ECF 30 ¶ 5.

On this motion and cross-motion, Defendant has testified that he intended to make, and has made, the Palm Beach Condo his permanent residence.  *See* Giuliani Decl. ¶¶ 5-9, 15.  On July 13, 2024, furthermore, Defendant swore to a Declaration of Domicile, pursuant to Fla. Stat. § 222.17(1), which provides:

> Any person who shall have established a domicile in this state may manifest and evidence the same by filing in the office of the clerk of the circuit court for the county in which the said person shall reside, a sworn statement showing that he or she resides in and maintains a place of abode in that county which he or she recognizes and intends to maintain as his or her permanent home.

Defendant's Declaration states:

> I hereby declare that I reside in and maintain a place of abode at 315 S. Lake Drive, Unit 5D, Palm Beach, in Palm Beach County, Florida, which place of abode I recognize and intend to maintain as my permanent home and, if I maintain another place or places of abode in some other state or states, I hereby declare that my above-described residence and abode in the State of Florida constitutes my predominant and principal home, and I intend to continue it permanently as such.  I am, at the time of making this declaration, a bona fide resident of the State of Florida residing at the above-described residence and place of abode.

Giuliani Decl. Exhibit H.  On July 15, 2024, the Declaration was recorded in the office of the Clerk of Palm Beach County.  *Id*.

Meanwhile, approximately a year earlier, Defendant began to take actions that corroborate his statements of intent.  Thus, on July 12, 2023, Defendant and Sotheby's International Realty entered into a contract to sell Defendant's New York apartment (the "New

York Apartment"), which served as his primary residence.  Giuliani Decl. Ex. C.  This evidence provides powerful objective support for Defendant's intent to make the Palm Beach Condo his permanent residence: Once the New York Apartment was sold, the Palm Beach Condo would be his *only* residence.[1]

Defendant allowed his New York driver's license to expire.  On February 22, 2024, he was issued a Florida driver's license, at the address of the Palm Beach Condo.  *See* Giuliani Decl. Exhibit D.  On May 6, 2024, he registered his 1980 automobile in Florida, at the address of the Palm Beach Condo, and he was issued a Florida license plate.  Giuliani Decl. Exhibit E.

On May 18, 2024, Defendant registered to vote in Florida.  He registered the address of the Palm Beach Condo as both his "Residence Address[]" and his Mailing Address[.]"  Giuliani Decl. Exhibit F.

Palm Beach County has granted homestead tax exemptions to Defendant, for 2024.  *See* Giuliani Decl. Ex. G (undated; see bottom of page two, applying homestead exemptions).  *Cf. Baldwin v. Henriquez*, 279 So. 3d 328, 336 (Fla. 2d DCA 2019) ("The homestead exemption should ensure more protection from forced sale than it receives from the tax exemption[]") (cleaned up).

### 2.    Second Element: The Fact Of Residence

During the 183-day period between February 8, 2024, and August 8, 2024 (the date as of which Plaintiffs claim a lien), Defendant was:

(a) in Palm Beach for 71 days (approximately 39% of the time period);

---

[1] Plaintiffs cite statements made by Defendant's counsel in a Bankruptcy Court filing.  *See* ECF 29 at 5, citing Bankruptcy Court docket ECF 155 at ¶ 16.  In that filing, however, counsel merely repeated Defendant's prior testimony and the legal position previously taken.  More important, for present purposes, counsel stated: "Once the [New York] apartment is sold, the Debtor [Defendant] will primarily reside at the Florida condominium."  *Id.*

(b) in New York for 48 days (approximately 26%); when in New York, Defendant conducted business and visited his family;

(c) in New Hampshire for 45 days (approximately 25%); between June 18 and August 8, Defendant spent time (38 of the 52 days) [not 42 days, as stated in ECF 44] in New Hampshire to avoid the notorious heat and humidity of South Florida; the New Hampshire climate, furthermore, helps Defendant to deal with lung injuries he suffered as a result of the 9/11 terrorist attacks; Defendant also conducted business when in New Hampshire;

(d) in other cities for 18 days for business (10%);[2] and

(e) in Arizona for one day for a court appearance.

Giuliani Decl. ¶¶ 15-16; Giuliani Decl. Exhibit I; Labkowski Declaration ¶¶ 1-99; Fed. R. Evid. 1006.

This evidence amply shows the fact of Defendant's residence in Florida. "Continuous uninterrupted physical presence is not required to create a homestead." *Novoa v. Amerisource Corp.*, 860 So. 2d 506, 507 (Fla. 3d DCA 2003) (cleaned up). *See, e.g.*, *In re Frederick*, 183 B.R. 968, 971 (Bankr. M.D. Fla. 1995) (finding homestead even though defendant was frequently absent from the property due to work-related travel but did reside at the property when he was in Florida).

## C.    The Court, Applying Florida Law, Should Deny Plaintiffs' Motion

The foregoing evidence more than satisfies Defendant's "responsibility of informing the district court of the basis for [his] motion, and identifying those portions of the" record "which [he] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

---

[2] Defendant spent three days in Michigan; seven days in Milwaukee, Wisconsin; seven days in Paris and/or London; and one day in Tulsa, Oklahoma.

*Catrett*, 477 U.S. 317, 323 (1986) (cleaned up).  Accordingly, Plaintiffs—the non-moving parties

on Defendant's cross-motion—must come forward with "evidentiary materials" that demonstrate

a genuine issue of material fact requiring a trial.  *Celotex*, 477 U.S. at 324.

The Court, furthermore, "in ruling on a motion for summary judgment . . . must view the

evidence presented through the prism of the substantive evidentiary burden[,]"  *Anderson v.*

*Liberty Lobby*, 477 U.S. 242, 254 (1986), "bear[ing] in mind the actual quantum and quality of

proof necessary to support liability" under the applicable substantive law.  *Id*. at 254.

Here, "[t]he burden of persuasion rests upon" Plaintiffs, the judgment creditors, *Anderson*

*v. Letosky*, 304 So. 3d 801, 804 (Fla. 2d DCA 2020), who must "make a strong showing that the

claimant is not entitled to the claimed exemption."  *Id*. at 804 (cleaned up).  "[T]h[at] strong

burden will require heavy lifting."  *Id*.  The homestead exemption "is to be liberally construed in

favor of protecting the homestead[,]" *JBK Associates, Inc. v. Sill Bros., Inc.*, 191 So. 3d 879, 881

(Fla. 2016), and exceptions are "strict[ly] constru[ed.]"  *Havoco of Am., Ltd. v. Hill*, 790 So. 2d

1018, 1021 (Fla. 2001).

\*      \*      \*

Here, Plaintiffs have failed to carry their heavy burden.  Thus:

Plaintiffs seek summary judgment on the ground that Defendant failed to "[t]urn[]" his

"existing [Florida] property into a 'homestead[,]'" in that Defendant did not actually occupy the

Palm Beach Condo during the 29-day period between July 10, 2024, and August 8, 2024, the

date on which Plaintiffs "recorded their [J]udgment in Palm Beach County . . . which established

a lien on the [Palm Beach] Condo under Florida law."  ECF 29 at 15.

According to Plaintiffs, the Court may not consider evidence of Defendants' occupancy

*before* July 10, 2024.  For the reasons set forth below, however, this contention is meritless.

13

Plaintiffs urge their July 10 start-date for the following reasons: In December 2023 and in February 2024, Defendant, in his bankruptcy case, identified the New York Apartment as his primary residence and/or his homestead. On July 1, 2024, Defendant sought to convert his bankruptcy case from Chapter 11 to Chapter 7, "meaning[,]" according to Plaintiffs, "that all [Defendant's] nonexempt assets would be liquidated[,]" and that "both his New York apartment and the Palm Beach Condo would have been sold for the benefit of [Defendant's] creditors, with the New York apartment treated as his 'homestead' for purposes of the applicable state-law exemption." ECF 29 at 12.

"Plaintiffs responded by moving to dismiss the bankruptcy case outright. . . . On July 10, 2024, [Defendant] filed a notice on the docket acquiescing in Plaintiffs' motion to dismiss[.]" ECF 29 at 5. According to Plaintiffs, Defendant thereby "publicly withdrew his request to liquidate the Palm Beach Condo[.]" ECF 29 at 13. Therefore, Plaintiffs contend, Defendant's claim of Florida homestead can arise only on July 10.

This contention fails as a matter of law. If the Bankruptcy Court had allowed Defendant to convert the case to Chapter 7, then Defendant would have listed the Palm Beach Condo, rather than the New York Apartment, as his homestead. *See* 11 U.S.C. § 522 (l) ("The debtor shall file a list of property that the debtor claims as exempt").

Alternatively, Defendant would have amended his prior filings to list the Palm Beach Condo as his homestead. *See* Fed. Rule of Bankr. Pro. 1009(a) ("A voluntary petition, list, schedule or statement may be amended by the debtor as a matter of course at any time before the case is closed[]"); *In re Osborn*, 24 F.3d 1199, 1205-06 (10th Cir. 1994); *In re Allen*, 454 B.R. 894, 897-98 (Bankr. S.D. Fla. 2011); *In re Huizar*, 71 B.R. 826, 829-30 (Bankr. W.D. Tex. 1987). Rule 1009 "implements the policy of liberally allowing the debtors to amend their exemption

claims in order to enhance their fresh start." *In re Michael*, 163 F.3d 526, 529 (9th Cir. 1998) (cleaned up).

Plaintiffs, of course, would have objected. *See* 11 U.S.C. § 522(l). In opposition to that objection, however, Defendant would have been entirely free to rely on evidence of his occupation of the Palm Beach Condo before July 10. The correct time frame for proof of occupancy would have started on whatever date Defendant proved the state of mind necessary to establish a Florida homestead—for example, a date shortly before February 22, 2024, when Plaintiff obtained his Florida driver's license.

The time frame on this motion is no different. As shown above, Defendant occupied the Palm Beach Condo on 71 days between February 8, 2024, and August 8, 2024, thereby satisfying the fact-of-residency element of the homestead protection.

Plaintiffs next repackage their argument: Defendant's "affirmative steps to liquidate the Palm Beach Condo while claiming a homestead exemption for his New York apartment would negate any prior expression of intention to establish the Palm Beach Condo as his 'homestead.'" ECF 29 at 12. Defendant, however, never took "affirmative steps to liquidate the Palm Beach Condo[.]" Nor did he make a "request to liquidate the Palm Beach Condo[.]" *Id*. at 13. He merely asked the Bankruptcy Court to convert his case from Chapter 11 to Chapter 7. If the Bankruptcy Court had allowed that conversion, then, as demonstrated above, Defendant would have listed the Palm Beach Condo as exempt, subject to Plaintiffs' objection.

*Semple v. Semple*, 89 So. 638, 639 (Fla. 1921), on which Plaintiffs rely, is distinguishable. In that case, as Plaintiffs concede, the would-be homesteader "s[ought] to convey title to the property to another[.]" ECF 29 at 12. Here, Defendant did no such thing.

In any event, even if the Court were to limit the evidence to the 29-day period between July 10 and August 8, the Court should still deny summary judgment.  "The temporary absence from the homestead of the head of the family in search of health, pleasure or for business reasons will not deprive it of the homestead status."  *Wilcox*, 13 So. 2d at 450.  Here, as shown in the Giuliani Declaration and the Labkowski Declaration, Defendant, from July 10 through August 8, was absent from Florida for precisely such reasons.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for summary judgment and should grant Defendant's cross-motion for summary judgment.

Dated: October 20, 2024
      New York, New York

Respectfully Submitted,

KENNETH CARUSO LAW LLC

By:  /s/ Kenneth A. Caruso
Kenneth A. Caruso
15 W. 72nd Street
New York, NY 10023
(646) 599-4970
ken.caruso@kennethcarusolaw.com

LABKOWSKI LAW, P.A.

By:  /s/ David Labkowski
David Labkowski
250 95th Street, Unit #547233
Surfside, Florida 33154
(786) 461-1340
david@labkowskilaw.com

*Attorneys for Defendant,*
*Rudolph W. Giuliani*