UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RUBY FREEMAN and WANDREA' MOSS,

                Plaintiffs,

v.

RUDOLPH W. GIULIANI,

                Defendant.

No. 24-cv-6563 (LJL)

---

**REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

John Langford
Rachel Goodman
United to Protect Democracy
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org


Von DuBose (*pro hac vice forthcoming*)
DuBose Miller LLC
75 14th Street NE Suite 2110
Atlanta, GA 30309
(404) 720-8111
dubose@dubosemiller.com

Michael J. Gottlieb
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
M. Annie Houghton-Larsen
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com
mhoughton-larsen@willkie.com


*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.     Mr. Giuliani Admits the Sole Material Fact Necessary to Compel Summary
          Judgment in Plaintiffs' Favor, and His Only Arguments for Why that Fact Is
          Not the Sole Material Fact Are Plainly Wrong. ............................................................... 2

        A.     Mr. Giuliani's Motion to Convert to Chapter 7 Was a Voluntary,
              Affirmative Step to Liquidate the Palm Beach Condo and, if Successful,
              Could Have Had No Other Consequence. ............................................................. 5

        B.     Mr. Giuliani's Effort to Distinguish the *Semple* Rule Is Unavailing. ....................... 8

CONCLUSION ............................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Allen*,
  454 B.R. 894 (Bankr. S.D. Fla. 2011) ..................................................................................6

*Clements v. Farhood*,
  No. 5:17-CV-213-RH/GRJ, 2018 WL 850086 (N.D. Fla. Feb. 12, 2018) ..............................3

*Drucker v. Rosenstein*,
  19 Fla. 191 (Fla. 1882)..........................................................................................................3

*In re Duda*,
  182 B.R. 662 (Bankr. D. Conn. 1995) ..................................................................................5

*In re Huizar*,
  71 B.R. 826 (Bankr. W.D. Tex. 1987) ..................................................................................7

*In re Kaiser*,
  722 F.2d 1574 (2d Cir. 1983)................................................................................................7

*In re Magallanes*,
  96 B.R. 253 (B.A.P. 9th Cir. 1988).......................................................................................5

*In re Michael*,
  163 F.3d 526 (9th Cir. 1998) ................................................................................................7

*In re Osborn*,
  24 F.3d 1199 (10th Cir. 1994) ..............................................................................................6

*In re Sandoval*,
  103 F.3d 20 (5th Cir. 1997) ..................................................................................................7

*Semple v. Semple*,
  89 So. 638 (Fla. 1921)................................................................................................. 3, 8, 9

*State Dep't of Revenue ex rel. Vickers v. Pelsey*,
  779 So. 2d 629 (Fla. Dist. Ct. App. 1st 2001).......................................................................3

*In re Williamson*,
  804 F.2d 1355 (5th Cir. 1986) ..............................................................................................5

**Statutes**

11 U.S.C. § 348(a) .........................................................................................................................5

11 U.S.C. § 522(b)(3)(A) ..................................................................................................5

11 U.S.C. § 522(d)(1) .......................................................................................................6

Fla. Stat. § 196.031 ...........................................................................................................9

N.Y. C.P.L.R. § 5206 ........................................................................................................6

**Other Authorities**

3 Collier on Bankruptcy ¶ 348.02 (16th ed. 2024) ..........................................................5

4 Collier on Bankruptcy ¶ 522.05 (16th ed. 2024) ..........................................................5

Plaintiffs Ruby Freeman and Wandrea' Moss respectfully submit this Reply in support of their motion for summary judgment (ECF No. 28).[1]

## INTRODUCTION

Mr. Giuliani's opposition to Plaintiffs' motion for summary judgment admits the sole material fact in this case: that he was not physically present in the Palm Beach Condo between the time he tried to liquidate his Palm Beach Condo in chapter 7, and the time that Plaintiffs established their lien on that Condo. Instead, Mr. Giuliani raises three—and *only* three—arguments for why that now-admitted fact is *not* the sole material fact necessary and sufficient to compel summary judgment in Plaintiffs' favor. But all three of those arguments are plainly wrong.

First, Mr. Giuliani argues that his motion to convert to chapter 7 was not an affirmative step to liquidate the Palm Beach Condo because he could have simply changed his claimed exemptions following conversion, and claimed the Palm Beach Condo as exempt instead. Mr. Giuliani cites no authority for that proposition, and the truth is the opposite: as is well established, and under the clear text of the Bankruptcy Code, Mr. Giuliani's state-law exemptions were fixed at the time of the petition date, and could not have been changed following conversion. Because it is undisputed that Mr. Giuliani was a New York domiciliary on his petition date, only New York's exemptions could ever have applied in his bankruptcy case—and New York's exemptions, unlike Florida's, could not have and would not have prevented liquidation of the Condo in chapter 7.

---

[1] Mr. Giuliani's omnibus memorandum of law opposes Plaintiffs' motion for summary judgment *and* supports his own cross-motion for summary judgment: In "Point I" and "Point II," Mr. Giuliani asks this Court to abstain under *Burford* or under generalized principles of abstention from declaratory-judgment jurisdiction—each of which would be grounds for a judgment of dismissal without prejudice in his favor. ECF No. 44 ("Opp.") at 6–13. Then, in "Point III," Mr. Giuliani seeks summary judgment in his own favor, and denial of Plaintiffs' motion, based upon his factual assertions relating to the merits of Plaintiffs' declaratory judgment claim. Opp. at 13–21. This reply brief is limited to responding to Mr. Giuliani's opposition to Plaintiffs' motion; Plaintiffs will oppose Mr. Giuliani's cross-motion, including his requests for abstention, by the deadline to file an opposition brief to that cross-motion. *See* Local Civil Rule 6.1.

Mr. Giuliani's second argument, that he could have amended his schedules or his petition, fails for the same reason: the flexibility to amend a bankruptcy filing does not, and cannot, change which state's exemptions are available to the debtor.

Third, and finally, Mr. Giuliani attempts to distinguish the Florida Supreme Court's decision in *Semple* by arguing that there is a meaningful difference between the voluntary act of surrender there (executing a deed of conveyance) and the voluntary act of surrender here (asking the bankruptcy court to liquidate property). But any distinction between those scenarios makes no difference here: under *Semple*, the undisputed fact that Mr. Giuliani took a voluntary, affirmative step to liquidate the Palm Beach Condo compels the inference that he did not intend to permanently reside there as a matter of law as of July 1, 2024, and thereby negates any homestead claim Mr. Giuliani may have had prior to that filing. Meanwhile, because he did not actually occupy the Condo *after* that date, he could not have established a homestead there during that period, either.

Because all three of Mr. Giuliani's arguments lack any merit, Mr. Giuliani has failed to dispute that his absence from the Palm Beach Condo—which he now admits spanned far more than the critical period of July 1, 2024 through August 8, 2024—renders all other factual disputes immaterial and compels summary judgment in Plaintiffs' favor. The Court should grant that relief promptly.

## ARGUMENT

I. **Mr. Giuliani Admits the Sole Material Fact Necessary to Compel Summary Judgment in Plaintiffs' Favor, and His Only Arguments For Why that Fact Is Not the Sole Material Fact Are Plainly Wrong.**

Mr. Giuliani admits the sole material fact at issue in this case: he did not actually occupy the Palm Beach Condo between July 1, 2024 and the fixing of Plaintiffs' lien on August 8, 2024. Def.'s Response to Pls.' Local Rule 56.1 Statement, ECF No. 45 ("Giuliani 56.1 Response") ¶¶ 62–63. In fact, Mr. Giuliani's evidentiary submissions go further: according to Mr. Giuliani's

chart of his physical location since February 2024, he did not occupy the Palm Beach Condo at all from May 27, 2024 through and including August 8, 2024. ECF No. 42-9 at 5–8.

That undisputed fact is sufficient to compel summary judgment in Plaintiffs' favor. As Plaintiffs explained in their motion for summary judgment, and as Mr. Giuliani does not dispute, establishing a homestead under Florida law requires an "actual intention to reside thereon as a permanent place of residence, coupled with the fact of residence." *Clements v. Farhood*, No. 5:17-CV-213-RH/GRJ, 2018 WL 850086, at *2 (N.D. Fla. Feb. 12, 2018) (internal quotation marks omitted); *see* ECF No. 44 ("Opp.") at 14.[2] Such "actual occupancy is essential to a homestead claim." *State Dep't of Revenue ex rel. Vickers v. Pelsey*, 779 So. 2d 629, 632 (Fla. Dist. Ct. App. 1st 2001). Because Mr. Giuliani did not actually occupy the Palm Beach Condo between July 10, 2024 and August 8, 2024, he could not have established a homestead at the Condo during that critical period. ECF No. 29 ("Motion") at 16–19. His *future* intentions to occupy the Palm Beach Condo would not have been enough, *Pelsey*, 779 So. 2d at 632, and any intention to make the Palm Beach Condo his permanent residence would have had to have been "connected with . . . actual occupancy," *Drucker v. Rosenstein*, 19 Fla. 191, 198 (Fla. 1882)—which undisputedly did not occur. Meanwhile, any expressions of intention to occupy the Palm Beach Condo as a "homestead" *prior* to July 1, 2024, would have been "entirely destroy[ed]" by Mr. Giuliani's filing of a motion to convert his bankruptcy case to chapter 7, which affirmatively sought the inevitable consequence that the Palm Beach Condo would be liquidated. Motion at 17–18; *see Semple v. Semple*, 89 So. 638, 639 (Fla. 1921) (the "uncontradicted" fact that a debtor "sought to divest himself of the title" to an alleged homestead property "disproves any intention at variance with that act, and is

---

[2] Unless otherwise indicated, pincites to documents filed on the docket refer to the pagination of the ECF docket stamp, rather than the document's internal pagination.

3

*conclusive* of the fact that it was not his intention to claim the property as a homestead") (emphasis added).

Mr. Giuliani raises a hodgepodge of immaterial factual contentions relating to the status of the Palm Beach Condo before May 26, 2024. Opp. at 14–18.[3] But he fails to create any *material* dispute of fact because he cannot successfully dispute that—because of his motion to convert to chapter 7—the only material period is between July 1, 2024 and August 8, 2024. On that score, Mr. Giuliani's *only* arguments are that (1) "If the Bankruptcy Court had allowed [him] to convert the case to chapter 7, then [he] would have listed the Palm Beach Condo, rather than the New York Apartment, as his homestead"; and (2) "Alternatively, [he] would have amended his prior filings to list the Palm Beach Condo as his homestead." Opp. at 19. According to Mr. Giuliani, these options prove that his conversion filing was not an affirmative act with the necessary consequence of liquidating the Palm Beach Condo. But both arguments are wrong: under the plain text of the Bankruptcy Code and unanimous federal jurisprudence, Mr. Giuliani would have had no such options after converting his case to chapter 7, and seeking that conversion *did* mean that the Palm Beach Condo would inevitably be liquidated.

---

[3] As Plaintiffs will explain further in their opposition to Mr. Giuliani's cross-motion, even without the benefit of discovery, these factual assertions are highly suspect in light of Mr. Giuliani's numerous contemporaneous statements and legal positions taken before the Bankruptcy Court. Here, Mr. Giuliani belittles his own representations to the Bankruptcy Court as mere repetition of "prior testimony and the legal positions previously taken." Opp. at 16 n.1. But the statements themselves are not susceptible of that interpretation—Mr. Giuliani represented in the *present* tense on March 28, 2024 that "the New York City apartment at issue *is* his primary residence." Bankruptcy Dkt. ECF No. 155 ¶ 16 (emphasis added). In the same filing, Mr. Giuliani further stated that "No one is arguing that the Florida condominium is non-exempt property." *Id.* ¶ 21. Similarly, Defendant cites his prior statement to the Bankruptcy Court that "Once the [New York] apartment is sold, the Debtor will primarily reside at the Florida condominium." Opp. at 16 n.1. But that statement works against him, because the future condition that would have led to Mr. Giuliani "primarily resid[ing] at the Florida condominium" never came to pass. Indeed, the New York Apartment *still* has not been sold.

4

A.  **Mr. Giuliani's Motion to Convert to Chapter 7 Was a Voluntary, Affirmative Step to Liquidate the Palm Beach Condo and, if Successful, Could Have Had No Other Consequence.**

First, and most critically, Mr. Giuliani's citation-free assertion that he would have been free to switch his homestead exemption claim from the New York Apartment to the Palm Beach Condo following conversion to chapter 7 is wrong under the plain text of the Bankruptcy Code and well established law. Under the Code, the state-law exemptions available to an individual debtor are limited to those under the "State or local law that is applicable ***on the date of the filing of the petition*** to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 522(b)(3)(A) (emphasis added). Meanwhile, "[c]onversion of a case from a case under one chapter of this title to a case under another chapter of this title . . . ***does not effect a change in the date of the filing of the petition***, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a) (emphasis added). Thus, "the debtor's exemptions in the converted case are determined as of the date the petition was filed," not the date of conversion, 4 Collier on Bankruptcy ¶ 522.05 (16th ed. 2024), and the federal courts are unanimous in holding as much, 3 Collier on Bankruptcy ¶ 348.02 (16th ed. 2024).[4] Thus, after conversion, the status of the Palm Beach Condo would have been the same as before conversion: any homestead exemption could have been available only under federal law or *New York law*—the undisputed state of Mr. Giuliani's domicile on the petition date—and not *Florida* law, 11 U.S.C. § 522(b)(3)(A)--and unlike Florida law, neither New York nor federal law

---

[4] *See In re Magallanes*, 96 B.R. 253, 255 (B.A.P. 9th Cir. 1988) (in a case converted from chapter 11 to chapter 7, "[a]ny exemptions claimed by the debtor are also determined as of the Chapter 11 filing date"); *In re Williamson*, 804 F.2d 1355, 1359 (5th Cir. 1986) ("where a case is converted from chapter 11 to chapter 7, exemptions are determined as of the chapter 11 filing date"); *In re Duda*, 182 B.R. 662, 672 (Bankr. D. Conn. 1995) ("The plain language of the code dictates that because conversion does not effect a change in the filing date for the purposes of § 522(b)(2)(A), a change in the substantive exemption law occurring postpetition but preconversion will not be applicable in the converted case.").

5

confer an exemption on real property that could have prevented the Condo's liquidation in chapter 7. *See* N.Y. C.P.L.R. § 5206;[5] 11 U.S.C. § 522(d)(1) (exempting, where applicable, a "debtor's aggregate interest, not to exceed $27,900 in value, in real property . . . that the debtor . . . uses as a residence"). Regardless of what he says today, Mr. Giuliani's July 1, 2024 motion to convert his case to chapter 7 was an affirmative step—taken voluntarily, with advice of counsel—to liquidate the Palm Beach Condo for the benefit of his creditors. No reasonable factfinder could conclude that Mr. Giuliani intended to permanently reside in the Palm Beach Condo as of that date, and no reasonable factfinder could reach a different conclusion based on anything Mr. Giuliani did prior to that date.

Mr. Giuliani's second argument—that he could have amended his exemption claims through an amendment of his petition or schedules, Opp. at 19, fares no better. As discussed above, the fate of the Palm Beach Condo was already sealed, not by the fact that Mr. Giuliani failed to claim any homestead exemption, but by the fact that *Florida law conclusively did not apply* to the availability of exemptions, period. Regardless of which property Mr. Giuliani claimed as exempt, such an exemption could only have derived from federal law or New York law. The cases Mr. Giuliani cites confirm as much. Opp. 19–20; *see In re Osborn*, 24 F.3d 1199, 1206 (10th Cir. 1994) (despite the amended homestead claim, "[t]he merits of the claimed homestead exemption are governed by Texas law since the Debtors elected the state exemption scheme authorized by the Bankruptcy Code" and Texas was the Debtors' state of domicile); *In re Allen*, 454 B.R. 894, 895

---

[5] Notably, on its face N.Y. C.P.L.R. § 5206's exemption does not apply to property located outside of one of the counties of New York State, rendering it doubtful that Mr. Giuliani could have claimed any exemption under New York law with respect to the Palm Beach Condo. Even if § 5206 did apply extraterritorially, however, the exemption at most exempts a portion of the proceeds of a forced sale; it does not *prevent* the forced sale of homestead property, and therefore would not have changed the fate of the Palm Beach Condo in chapter 7 even if it could have been invoked there.

6

(Bankr. S.D. Fla. 2011) (permitting amendment to elect different Florida-law exemptions); *In re Huizar*, 71 B.R. 826, 829 (Bankr. W.D. Tex. 1987) (permitting an amendment to claim a homestead exemption under the law of the established domicile, but noting that "[c]laiming an exemption does not however establish that the property in question is in fact exempt."); *In re Michael*, 163 F.3d 526, 529 (9th Cir. 1998) ("Whether the Michaels could amend their schedules post-petition is separate from the question whether the exemption was allowable."). As the Fifth Circuit held in *In re Sandoval*, even where it is "clear" that debtors are "entitled to amend their petitions," "allowing an amendment claiming an exemption is different from allowing the exemption itself," and that "where a debtor converts from a chapter 11 to a chapter 7, . . . exemptions must be determined as of the date of filing," not the date of conversion. 103 F.3d 20, 22 (5th Cir. 1997).[6]

Mr. Giuliani is thus wrong that by "merely ask[ing] the Bankruptcy Court to convert his case from Chapter 11 to Chapter 7" he did not thereby take "affirmative steps to liquidate the Palm Beach Condo." Opp. at 20 (arguing that this is so because "as demonstrated above, Defendant would have listed the Palm Beach Condo as exempt" following conversion). In light of the clear meaning of the Bankruptcy Code, no reasonable factfinder could conclude that Mr. Giuliani's chapter 7 filing did *not* destroy any prior intention he may have had to live permanently at the Palm Beach Condo. Meanwhile, it is undisputed that Mr. Giuliani did not actually occupy the Palm

---

[6] *See also In re Kaiser*, 722 F.2d 1574, 1583 & n.3 (2d Cir. 1983) (holding that the debtor was "barred from claiming the Florida homestead exemption because he claimed under oath that New York was his domicile and he elected the federal scheme of exemptions," and that although the debtor sought "to escape the consequences of his scheme to defraud" by amending his petition "to designate Florida as his domicile and to claim the Florida rather than the federal exemption," denial of the motion to amend was "entirely proper" because "generally, a debtor waives a homestead exemption that he voluntarily fails to list").

7

Beach Condo *after* filing his motion to convert to chapter 7, and therefore could not have established a homestead there after that date and before the fixing of Plaintiffs' lien.[7]

### B.     Mr. Giuliani's Effort to Distinguish the *Semple* Rule Is Unavailing.

Mr. Giuliani's last-ditch attempt to resist summary judgment on these grounds is to argue that the Florida Supreme Court's decision in *Semple* is "distinguishable" because in that case, "the would-be homesteader 'sought to convey title to the property to another.'" Opp. at 20 (cleaned up). But that is not *even* a distinction without a difference; in fact, Mr. Giuliani *did just that* by filing his motion to convert to chapter 7: he sought the conveyance of title, through a bankruptcy sale, to another. And to the extent the factual context of bankruptcy matters, that *is* a distinction without a difference. Under *Semple*, Mr. Giuliani's chapter 7 filing represents an "uncontradicted" fact that a debtor "sought to divest himself of the title" to an alleged homestead property, which "disproves any intention at variance with that act, and is *conclusive* of the fact that it was not his intention to claim the property as a homestead." *Semple*, 89 So. at 639 (emphasis added). As the Florida Supreme Court explained in *Semple*, "[i]f he ever entertained the intention of making the place his homestead, he gave high and conclusive evidence of the relinquishment and abandonment of such intention, by the perpetration of an act, that made it impossible to carry it out." *Id.* at 640. Here, as in *Semple*, Mr. Giuliani's "specific act" calculated to surrender the Palm Beach Condo to another means that "all inferences or presumptions of a different intention drawn from other facts and circumstances *necessarily* fail." *Id.* (emphasis added). Other than Mr. Giuliani's attempt to re-write black-letter bankruptcy law—which is clearly wrong, *supra* at §I.A.—Mr. Giuliani has no explanation for why his motion to convert his bankruptcy case to

---

[7] Stated differently, Mr. Giuliani's chapter 7 filing means he cannot satisfy the "subjective" prong prior to the date of that filing, and his absence from the Palm Beach Condo between that date and August 8, 2024 means he cannot satisfy the "objective" prong during that critical period. *Cf.* Opp. at 14.

8

chapter 7 was not a "specific act" that would have surrendered his interest in the Palm Beach Condo to another. Because there is no such explanation, the *Semple* rule squarely governs and "all inferences or presumptions of a different intention drawn from other facts and circumstances necessarily fail." *Semple,* 89 So. at 640. Accordingly, there is no genuine dispute as to any material fact and—because Mr. Giuliani does not dispute that Plaintiffs may enforce their prior lien against any subsequent homestead claim—Plaintiffs are entitled to judgment as a matter of law as to all of the relief demanded in the Complaint.[8]

## **CONCLUSION**

Plaintiffs' motion for summary judgment should be granted.

---

[8] Mr. Giuliani's assertion that he has obtained a homestead *tax* exemption does not contradict any of the arguments in Plaintiffs' motion and—ultimately—proves far too much for Mr. Giuliani's own good. Florida's homestead tax exemption is governed by different legal authority and, notably, is available only to taxpayers who maintain a permanent residence at the claimed address as of January 1 of the year in which the exemption is claimed. Fla. Stat. § 196.031. Here, Mr. Giuliani asserts that he has obtained such a tax exemption for the year 2024 (though curiously, he does not say *when* it was obtained). Regardless of when any such exemption was obtained, what it would *imply* is that Mr. Giuliani maintained a permanent residence at the Palm Beach Condo on January 1, 2024—a result flatly contradicted by Mr. Giuliani's own sworn testimony. ECF No. 32-3 at 9:1–2; 9:21–10:4. Indeed, that position is so implausible that Mr. Giuliani does not even assert it in this litigation, going only as far back as February 8, 2024 (the date after Mr. Giuliani's sworn testimony). Opp. at 16, 20; *see id.* at 20 (contending that Mr. Giuliani "proved the state of mind necessary to establish a Florida homestead" on a date "shortly before February 22, 2024"). If anything, Mr. Giuliani's reliance on any 2024 tax exemption raises serious questions about the truthfulness of his representations to the Palm Beach County taxing authorities. Plaintiffs will address these issues further in their opposition to Mr. Giuliani's cross-motion, but for purposes of this Motion, it suffices to say here that even in the alternate universe where there *were* a scintilla of evidence as to Mr. Giuliani's residence at the Palm Beach Condo as of January 1, 2024, it would have been rendered immaterial as a matter of law by Mr. Giuliani's voluntary request to liquidate the Condo on July 1, 2024. *Supra* at 8-9.

9

|  | Respectfully submitted, |
|---|---|
| Dated: October 23, 2024<br>New York, New York | s/ Aaron E. Nathan |

| | |
|---|---|
| John Langford<br>Rachel Goodman<br>United to Protect Democracy<br>82 Nassau Street, #601<br>New York, NY 10038<br>(202) 579-4582<br>john.langford@protectdemocracy.org<br>rachel.goodman@protectdemocracy.org | Michael J. Gottlieb<br>Meryl C. Governski (admitted *pro hac vice*)<br>Willkie Farr & Gallagher LLP<br>1875 K Street NW<br>Washington, DC 20006<br>(202) 303-1000<br>mgottlieb@willkie.com<br>mgovernski@willkie.com |
| Von DuBose (*pro hac vice forthcoming*)<br>DuBose Miller LLC<br>75 14th Street NE. Suite 2110<br>Atlanta, GA 30309<br>(404) 720-8111<br>dubose@dubosemiller.com | Aaron E. Nathan<br>M. Annie Houghton-Larsen<br>Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>(212) 728-8000<br>anathan@willkie.com<br>mhoughton-larsen@willkie.com |

*Attorneys for Plaintiffs*