### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUBY FREEMAN and WANDREA' MOSS, | |
| Plaintiffs, | |
| v. | No. 24-cv-6563 (LJL) |
| RUDOLPH W. GIULIANI, | |
| Defendant. | |

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

John Langford
Rachel Goodman
United to Protect Democracy
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org


Von DuBose (*pro hac vice forthcoming*)
DuBose Miller LLC
75 14th Street NE. Suite 2110
Atlanta, GA 30309
(404) 720-8111
dubose@dubosemiller.com

Michael J. Gottlieb
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
M. Annie Houghton-Larsen
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com
mhoughton-larsen@willkie.com


*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................2

INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................3

   I.    There Is No Basis for *Burford* Abstention. ..................................................................3

        A.   *Burford* Abstention Is Categorically Unavailable in the Absence of a State
              Administrative Proceeding or Order. ...........................................................................4

        B.   *Burford* Abstention Would Be Improper Here Even if It Were Permissible. ..............7

   II.   There Is No Basis to Decline to Award Declaratory Relief Under the *Wilton*
        Abstention Doctrine. .....................................................................................................14

        A.   Factors 1, 2, 3, and 6: The Requested Declaratory Judgment Will Settle the
              Legal Issues Involved, Finalize the Controversy, Offer Relief from
              Uncertainty, and Maximize Judicial Efficiency ..........................................................15

        B.   Factors 4 and 5: Friction Among Legal Systems and Whether There Is a
              Better or More Effective Remedy. ...............................................................................18

        C.   *Wilton* Abstention Is Inappropriate Absent a Parallel State Proceeding, and at
              Minimum, the Absence of Such a Proceeding Weighs Heavily Against
               Abstention. ....................................................................................................................20

   III.   Mr. Giuliani Cannot Demonstrate the Absence of a Genuine Dispute of
        Material Fact or an Entitlement to Judgment as a Matter of Law. ...............................22

CONCLUSION ........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
   57 F.4th 85 (2d Cir. 2023) .................................................................15, 19

*Allied World Surplus Lines Ins. Co. v. Elamex USA, Corp.*,
   No. 23-CV-9992 (LJL), 2024 WL 2212948 (S.D.N.Y. May 16, 2024) .................................17

*Anderson v. Sullivan*,
   No. 4:04-CV-052, 2007 WL 2288142 (D.N.D. Aug. 7, 2007).................................................8

*Avail Holding LLC, v. Ramos*,
   No. 15-CV-7068-NGG, 2017 WL 979027 (E.D.N.Y. Mar. 10, 2017).................................6, 7

*Burford v. Sun Oil Co.*,
   319 U.S. 315 (1943).................................................................3, 11

*Clements v. Farhood*,
   No. 5:17CV213-RH/GRJ, 2018 WL 850086 (N.D. Fla. Feb. 12, 2018) ...........................8, 11

*Cnty. of Suffolk v. Long Island Lighting Co.*,
   907 F.2d 1295 (2d Cir. 1990).................................................................6

*Crawford v. Silette*,
   608 F.3d 275 (5th Cir. 2010) .................................................................8

*Deal v. Tugalo Gas Co.*,
   991 F.3d 1313 (11th Cir. 2021) .................................................................7

*Deide v. Day*,
   676 F. Supp. 3d 196 (S.D.N.Y. 2023).................................................................7

*Diaz v. Pataki*,
   368 F. Supp. 2d 265 (S.D.N.Y. 2005).................................................................16, 19

*Dittmer v. Cnty. of Suffolk*,
   146 F.3d 113 (2d Cir. 1998).................................................................5, 6, 18, 21

*Dittmer v. Cnty. Suffolk*,
   975 F. Supp. 440 (E.D.N.Y. 1997) .................................................................6

*Doe No. 1 v. Putnam Cnty.*,
   No. 16-CV-08191 (PMH), 2020 WL 7027596 (S.D.N.Y. Nov. 30, 2020) .............................7

*Doing v. Riley*,
    176 F.2d 449 (5th Cir. 1949) .............................................................8, 12

*Dorce v. City of N.Y.*,
    2 F.4th 82 (2d Cir. 2021) ................................................................11, 12

*Dyer v. Beverly & Tittle, P.A.*,
    777 So. 2d 1055 (Fla. Dist. Ct. App. 2001) ...........................................17

*In re Franzese*,
    383 B.R. 197 (Bankr. M.D. Fla. 2008) ..................................................16

*Freeman v. Giuliani*,
    No. 24-mc-353 (LJL), 2024 WL 4546883 (S.D.N.Y. Oct. 22, 2024) ...................15

*Friedman v. Revenue Mgmt. of N.Y., Inc.*,
    38 F.3d 668 (2d Cir. 1994)................................................................6

*FTC v. Am. Precious Metals, LLC*,
    726 F. App'x 729 (11th Cir. 2018) ........................................................8

*Fuller v. Carollo*,
    No. 1:18-CV-24190-RS, 2024 WL 3838543 (S.D. Fla. May 28, 2024)................11

*Galva Foundry Co. v. Heiden*,
    924 F.2d 729 (7th Cir. 1991) .............................................................24

*Great Lakes Dredge & Dock Co. v. Huffman*,
    319 U.S. 293 (1943)........................................................................11

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)........................................................................19

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    579 U.S. 93 (2016).........................................................................14

*LeChase Constr. Servs., LLC v. Argonaut Ins. Co.*,
    63 F.4th 160 (2d Cir. 2023) .............................................................4, 12

*Levin v. Com. Energy, Inc.*,
    560 U.S. 413 (2010)....................................................................11, 20

*Martin v. Franklin Cap. Corp.*,
    546 U.S. 132 (2005)........................................................................14

*Meredith v. City of Winter Haven*,
    320 U.S. 228 (1943).............................................................5, 9, 13, 14

*N.Y. Times Co. v. Gonzales*,
459 F.3d 160 (2d Cir. 2006)...................................................................16

*Naylor v. Case & McGrath, Inc.*,
585 F.2d 557 (2d Cir. 1978)...................................................................13

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
673 F.3d 84 (2d Cir. 2012)................................................................4, 21

*NOPSI v. Council of the City of New Orleans*,
491 U.S. 350 (1996)..............................................................................5, 6

*Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*,
60 F.3d 122 (2d Cir. 1995).....................................................................13

*Priester v. Long Beach Mortg. Co.*,
No. 4:16-CV-00449, 2017 WL 4366997 (E.D. Tex. Sept. 13, 2017).......8

*Reifer v. Westport Ins. Corp.*,
751 F.3d 129 (3d Cir. 2014)........................................................20, 21, 22

*Riley v. Doing*,
77 F. Supp. 415 (S.D. Fla. 1948) .............................................................8

*Sepulveda v. Westport Recovery Corp.*,
145 So. 3d 162 (Fla. Dist. Ct. App. 2014) .............................................10

*Siewak v. AmSouth Bank*,
No. 8:06-CV-927 T-24EAJ, 2007 WL 141186 (M.D. Fla. Jan. 16, 2007)...............8

*State Farm Mut. Auto. Ins. Co. v. Schepp*,
616 F. Supp. 2d 340 (E.D.N.Y. 2008) ......................................................7

*Turner v. Jordan*,
117 F.4th 1289 (11th Cir. 2024) .............................................................12

*United States Sec. & Exch. Comm'n v. Equitybuild, Inc.*,
No. 18-CV-5587, 2019 WL 10371625 (N.D. Ill. Dec. 13, 2019)............8

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995)......................................................................14, 20, 22

**Statutes**

Fla. Stat. § 196.011 et seq............................................................................11

Fla. Stat. § 196.031 ......................................................................................12

Fla. Stat. § 222.10 ........................................................................................10

**Other Authorities**

Fed. R. Civ. P. 12(h) ................................................................................................18

Fed. R. Civ. P. 56 ....................................................................................................22

Fed. R. Civ. P. 57 ....................................................................................................20

Wright & Miller, Federal Practice & Procedure § 2758 .........................................19

## <u>INTRODUCTION</u>

Mr. Giuliani's cross-motion for summary judgment asks this Court to abstain from deciding this case, leaving the parties without an answer to the only remaining question about their respective rights in the Palm Beach Condo: did Mr. Giuliani establish a valid homestead claim at the Condo before Plaintiffs established their lien? According to Mr. Giuliani, the Court should not answer that question at all. Instead, Mr. Giuliani seems to argue, Plaintiffs should be sent away from this Court—which has undisputed subject matter jurisdiction, where Mr. Giuliani has not objected to personal jurisdiction or venue, and where the Palm Beach Condo would undisputedly be placed in receivership if Plaintiffs' challenge to Mr. Giuliani's homestead claim is successful— and Plaintiffs should then  have to file the same lawsuit again, in a Florida state (or even federal) court. That argument would win nothing but a waste of time. For that reason, and many others, neither of the doctrines Mr. Giuliani invokes can possibly support abstention here, much less overcome the heavy presumption *against* abstention and in favor of exercising valid federal jurisdiction.

First, Mr. Giuliani invokes *Burford* abstention. But *Burford* abstention, which permits federal-court abstention in deference to a state administrative agency proceeding or order, is not available in this case because there *is no* state administrative agency proceeding or order involved, and there is not even a state administrative *agency* charged with administering the constitutional exemption from forced sale at issue. Furthermore, even if *Burford* applied here, Second Circuit and Supreme Court precedent dictate that abstention would be plainly inappropriate under that doctrine. Mr. Giuliani's case for *Burford* abstention boils down to the argument that the homestead exemption is important, and that Florida has an interest in maintaining a coherent body of homestead law. But neither argument stands up to the reality that federal courts adjudicate important questions of state law every day, and—in fact—adjudicate questions of *Florida*

*homestead* law on a routine basis. Indeed, federal courts have been confronting Florida's constitutional homestead exemption from forced sale for as long as *Burford* has been around. There is simply nothing unusual, much less objectionable, about a federal court applying settled Florida law to a new set of facts. And doing so in this case would not remotely threaten the interests that *Burford* seeks to protect. This is not even close to the exceptional case that might warrant abstention under *Burford.*

Next, Mr. Giuliani invokes the federal courts' discretion under the *Wilton* doctrine to decline to award declaratory relief. Again, a key ingredient is missing: there is no parallel pending state court proceeding for this Court to defer to. But even if there were, Mr. Giuliani's cursory analysis of only *two* of the relevant factors fails to make a case that *even those two* would favor abstention here. Meanwhile, the other four factors, which Mr. Giuliani ignores, weigh heavily against abstention. Simply put, this is a classic case for declaratory relief under *Wilton*: a declaratory judgment would provide speedy, efficient relief from uncertainty about the parties' rights, and finalize a dispute about the Palm Beach Condo, all in the same Court that will administer the receivership of that asset. Meanwhile, because the only alternative to adjudicating this action would be for Plaintiffs to commence a duplicative one in a Florida state court—which would have no better or more effective remedy to award than this Court does—considerations of judicial economy overwhelmingly favor adjudicating the declaratory judgment claim *here*. As Mr. Giuliani recognized at the outset of this case, it is far more efficient for the same Court, and indeed the same judge, to consider Plaintiffs' motion for a receivership and this declaratory judgment action together. Sending one half of that dispute to a courtroom a thousand miles away, where the parties could not achieve anything more than they can achieve in this case, would serve no interest other than further waste and delay. In light of the enormous, concrete benefits of a declaratory

judgment in this case, and the enormous waste that would result from declining to award one, *Wilton* abstention would be highly inappropriate here.

Both of Mr. Giuliani's abstention arguments should therefore be rejected. Finally, Mr. Giuliani also seeks summary judgment in his own favor, contending that his cherry-picked evidence, selected from his own files before any discovery has been conducted, is sufficient to demonstrate the absence of a genuine dispute of material fact and an entitlement to judgment as a matter of law. But of course, there has not been any discovery in this case—and for that reason, Plaintiffs are unable even to evaluate the bulk of Mr. Giuliani's factual contentions. (Even so, as explained below, Mr. Giuliani's own factual narrative is internally inconsistent, and suggestive of a story that would not pan out at trial, if trial were necessary.) Here, there are plainly genuine factual disputes that preclude granting Mr. Giulani's cross-motion, and Mr. Giuliani's attempt to suggest otherwise is not remotely persuasive.

As set forth in Plaintiffs' motion for summary judgment, summary judgment *should* be granted, in Plaintiffs favor. And for the reasons that follow, Mr. Giuliani's cross-motion for summary judgment should be denied.

## **ARGUMENT**

### I.    There Is No Basis for *Burford* Abstention.

Mr. Giuliani argues that this Court should abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). ECF No. 44 ("Opp."), at 6-11.[1] This case is not a candidate for *Burford* abstention because it does not involve a state administrative agency, proceeding, or order: it is an ordinary dispute about the application of settled state law to mundane facts that undisputedly falls within

---

[1] Unless otherwise indicated, pincites to documents filed on the docket refer to the pagination of the ECF docket stamp, rather than the document's internal pagination.

federal diversity jurisdiction. Moreover, even if *Burford* abstention could apply to this case, the considerations that warrant such abstention in rare cases are not remotely present here.

As is well established, "abstention is generally disfavored," in light of the federal courts' "virtually unflagging obligation to exercise their jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (cleaned up). "The abstention doctrine comprises a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction, and in this analysis, the balance is heavily weighted in favor of the exercise of jurisdiction." *Id.* (cleaned up).

Seeking to overcome this heavy presumption in favor of exercising jurisdiction, Mr. Giuliani invokes only *Burford* abstention. As the Second Circuit has emphasized, "'[i]n abstention cases, . . . the district court's discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved,' such that 'there is little or no discretion to abstain in a case which does not meet traditional abstention requirements." *LeChase Constr. Servs., LLC v. Argonaut Ins. Co.*, 63 F.4th 160, 173 (2d Cir. 2023) (quoting *Niagara Mohawk Power*, 673 F.3d at 99). Here, that means that abstention is either appropriate under *Burford* or not at all.

A.    ***Burford* Abstention Is Categorically Unavailable in the Absence of a State Administrative Proceeding or Order.**

First, *Burford* abstention is categorically improper where, as here, no state administrative proceeding or order is at issue. "Under the *Burford* doctrine, a federal court must decline to interfere ***with the orders or proceedings of state administrative agencies***: (1) if there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) if the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy

with respect to a matter of substantial public concern.'" *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 116 (2d Cir. 1998) (quoting *NOPSI v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1996)) (emphasis added).

Mr. Giuliani does not contend that any "orders or proceedings of state administrative agencies" are at issue in this case. *Id.*; *see generally* Opp. Therefore, *Burford* abstention simply does not apply. *See Dittmer*, 146 F.3d at 117 ("The danger which *Burford* abstention avoids— creating an opportunity to overturn a prior state court or agency determination by seeking federal court review, thereby disrupting a state administrative apparatus—is simply not present in this case."). As the Supreme Court explained shortly after *Burford* itself, under *Burford* abstention, a federal court "may refuse to appraise or shape domestic policy of [a] state *governing its administrative agencies*." *Meredith v. City of Winter Haven*, 320 U.S. 228, 235 (1943) (emphasis added). In *Meredith*, the Supreme Court *ruled out* abstention under *Burford* (in a case requiring interpretation of Florida constitutional law, no less), for the *sole reason* that adjudication would "not require the federal court to determine or shape state policy *governing administrative agencies*." *Id.* at 229, 237 (emphasis added). And as the Supreme Court explained more recently, "*Burford* is concerned with protecting complex state administrative processes from undue federal interference," *NOPSI*, 491 U.S. at 362, and permits abstention only in rare cases where it is appropriate to "decline to interfere with the proceedings or orders of state administrative agencies," *id.* at 361.[2]

Applying those principles, the Second Circuit has reversed a *Burford* abstention decision for abuse of discretion where the basis for abstention was similar to the one claimed here: the

---

[2] Even so, *Burford* "does not require abstention whenever there exists such a process, or even in all cases where there is a potential for conflict with state regulatory law or policy." *NOPSI*, 491 U.S. at 362 (quotation omitted).

"'extensive history' of state efforts to develop a land use policy . . . , the complex and comprehensive nature of the [state law] and its regulations and the 'intensely local nature of the problem' addressed by the [state law]." *Dittmer*, 146 F.3d at 117 (quoting *Dittmer v. Cnty. Suffolk*, 975 F. Supp. 440, 444 (E.D.N.Y. 1997)). Reversing, the Second Circuit held that "*Burford* does not authorize this deference." *Id. Burford*, the Second Circuit explained, is "concerned with protecting complex state administrative processes from undue federal interference," but the "danger which *Burford* abstention avoids—creating an opportunity to overturn a prior state court or agency determination by seeking federal court review, thereby disrupting a state administrative apparatus—[was] simply not present" in the absence of such an administrative proceeding. *Id.*; *see also id.* (Plaintiffs "do not offer a collateral attack on a final determination made by the Commission or seek to influence a state administrative proceeding; indeed, plaintiffs have yet to invoke any administrative process under the Act. . . . While plaintiffs could bring this challenge in state court, *Burford* cannot be read to require or even to recommend a state court forum for these claims.").[3]

_____

[3] The Second Circuit has only once applied *Burford* outside the context of state administrative proceedings, but without addressing the precedent limiting the doctrine to such cases, and in a manner that should not carry any weight here. In *Friedman v. Revenue Management of New York, Inc.*, the Second Circuit held that a proceeding to dissolve a New York corporation "implicates *Burford*." 38 F.3d 668, 671 (2d Cir. 1994). Nevertheless, as more recent decisions have recognized, *Friedman* "did not directly address the fact that the action did not involve agency action," and both Supreme Court precedent and "[t]he overwhelming balance of Second Circuit case law . . . suggests that an administrative scheme is a prerequisite to *Burford* abstention." *Avail Holding LLC, v. Ramos*, No. 15-CV-7068-NGG, 2017 WL 979027, at *5 (E.D.N.Y. Mar. 10, 2017). *See Dittmer*, 146 F.3d at 117 ("The danger which *Burford* abstention avoids—creating an opportunity to overturn a prior state court or agency determination by seeking federal court review, thereby disrupting a state administrative apparatus—is simply not present in this case."); *Cnty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1309 (2d Cir. 1990) (referring to *Burford*'s "*sine qua non* of an intricate state administrative scheme"). "In fact, the Supreme Court has repeatedly stated that '*Burford* [abstention] is concerned with protecting complex state *administrative* processes from undue federal interference.'" *Avail Holding LLC*, 2017 WL 979027, at *5 (quoting *NOPSI*, 491 U.S. at 362 and collecting cases before and after *Friedman*) (alterations and emphases in

**B.** *Burford* **Abstention Would Be Improper Here Even if It Were Permissible.**

Even if *Burford* abstention were available here, it would not be appropriate.[4] Ignoring the absence of a state administrative proceeding, Mr. Giuliani argues that *Burford* abstention is appropriate (1) because "the Florida homestead provisions involve policy problems of substantial public import," and (2) because adjudicating Plaintiffs' claims in federal court "would be disruptive of Florida's efforts to establish a coherent policy with respect to homestead protection." Opp. at 8, 9. Both arguments are wrong, and—if accepted—would work a revolution in the way creditor litigation works in Florida and throughout the nation.

---

original). For that reason, Judge Garaufis was correct in *Avail Holding* to refuse to extend *Burford* to a judicial foreclosure action involving real property. *Id.* at *6. Furthermore, the Second Circuit has never again applied *Friedman*'s drive-by interpretation of *Burford* in support of a decision to abstain, and the Eleventh Circuit recently rejected it expressly. *See Deal v. Tugalo Gas Co.*, 991 F.3d 1313, 1327 n.8 (11th Cir. 2021). Finally, and in any event, even on its own terms, *Friedman*'s application of *Burford* to the context of a judicial dissolution claim would have no application here: unlike a judicial dissolution claim involving a corporation's "internal affairs," foreclosure actions involving real property are "routinely adjudicated in federal court." *Avail Holding LLC*, 2017 WL 979027, at *5; *infra* at 7-10.

    *Avail Holdings* reflects the widespread practice of other district courts in this Circuit, who have followed the "overwhelming balance" of Supreme Court and Second Circuit precedent, and roundly rejected arguments for *Burford* abstention in the absence of any state administrative proceeding or order. *Avail Holding LLC*, 2017 WL 979027, at *5–6; *see, e.g.*, *Deide v. Day*, 676 F. Supp. 3d 196, 217 (S.D.N.Y. 2023) ("Here, the Court need not abstain under *Burford* as this matter does not deal with proceedings or orders of state administrative agencies."); *Doe No. 1 v. Putnam Cnty.*, No. 16-CV-08191 (PMH), 2020 WL 7027596, at *8 n.7 (S.D.N.Y. Nov. 30, 2020) ("Under the *Burford* abstention doctrine, deference is required only to the adjudicative proceedings of state regulatory bodies."); *State Farm Mut. Auto. Ins. Co. v. Schepp*, 616 F. Supp. 2d 340, 346 (E.D.N.Y. 2008) ("*Burford* abstention, however, does not apply in this case because the doctrine prevents federal courts from "interfer[ing] with the proceedings or orders of state *administrative agencies*" in certain circumstances, and the present action does not relate to any administrative action undertaken by the State of New York, much less an order or proceeding of a state agency.") (citation omitted).

[4] For this reason, of course, the Court can deny Defendant's cross-motion without relying on the categorical rule against *Burford* abstention in the absence of an administrative proceeding or order, *supra* Part I.A, or by relying on that categorical rule only in the alternative, in addition to the straightforward application of *Burford* principles advanced in this Part I.B.

As for the first point, Mr. Giuliani's only argument is that Florida's homestead exemption presents important issues of state law. *Id*. at 8. That proves far too much. Federal courts adjudicate important state-law issues every day, including Florida homestead claims. In the bankruptcy context, federal courts are routinely called upon to interpret and apply Florida's homestead exemption (as well as the homestead exemptions of every state that has one). *See, e.g.*, ECF No. 29 ("Motion"), at 16 (citing cases). And federal courts both in and outside of Florida routinely adjudicate Florida homestead claims outside the bankruptcy context as well. *See, e.g.*, *United States Sec. & Exch. Comm'n v. Equitybuild, Inc.*, No. 18-CV-5587, 2019 WL 10371625, at *3 (N.D. Ill. Dec. 13, 2019); *Anderson v. Sullivan*, No. 4:04-CV-052, 2007 WL 2288142, at *2–3 (D.N.D. Aug. 7, 2007); *Siewak v. AmSouth Bank*, No. 8:06-CV-927 T-24EAJ, 2007 WL 141186, at *3–5 (M.D. Fla. Jan. 16, 2007); *FTC v. Am. Precious Metals, LLC*, 726 F. App'x 729, 732 (11th Cir. 2018); *Clements v. Farhood*, No. 5:17CV213-RH/GRJ, 2018 WL 850086, at *1–2 (N.D. Fla. Feb. 12, 2018). Indeed, federal courts have adjudicated homestead claims under Florida law— including in a declaratory judgment posture—for as long as *Burford* has been around. *See, e.g.*, *Doing v. Riley*, 176 F.2d 449, 454-56 (5th Cir. 1949).[5] And they continue to do so to this day. *See Crawford v. Silette*, 608 F.3d 275, 278-79 (5th Cir. 2010).[6] The notion that federal courts must suddenly abstain from what has always been part of their routine business because of the

---

[5] The *Doing v. Riley* litigation—which sought construction of a will and a declaratory judgment— was initially filed in Florida state court but removed on the basis of diversity jurisdiction. *See Riley v. Doing*, 77 F. Supp. 415, 417 (S.D. Fla. 1948).

[6] *Cf. Priester v. Long Beach Mortg. Co.*, No. 4:16-CV-00449, 2017 WL 4366997, at *3 (E.D. Tex. Sept. 13, 2017), *report and recommendation adopted*, No. 4:16-CV-00449, 2017 WL 4354922 (E.D. Tex. Oct. 2, 2017) (although "the State of Texas has a substantial interest in homestead rights of its individuals; however, federal courts have been hearing cases regarding Texas homesteads and homestead protections provided by the Texas Constitution since at least 1869. Abstention is only used in extraordinary circumstances, and Plaintiffs' theory of abstention would require federal courts to abstain any time a Texas homestead or home equity lien was at issue in a case, altering over one-hundred fifty years of federal case law.").

importance of Florida's homestead exemption is simply not plausible. (Interestingly, that notion stands in obvious tension with Mr. Giuliani's claim—wrong for other reasons—that if his motion to convert his bankruptcy case to chapter 7 had been granted, his Florida homestead claim could then have been adjudicated in the Bankruptcy Court, which was also located in this district. *See* Opp. at 19-20.)

Moreover, there is nothing difficult or complex about *this* homestead claim that would have consequences beyond the particulars of this case, much less weigh in favor of abstention.[7] Here, rejecting Mr. Giuliani's homestead claim merely requires application of Florida law that has been settled for decades by Florida's highest courts. Motion at 14-20; ECF No. 51 ("Reply"), at 12-13. And even in the event that this Court denies Plaintiffs' motion for summary judgment based upon the uncontested facts, the merits trial in this case would merely require a factfinder to take evidence and make findings under a well-established multi-factor standard: *applying* settled Florida law, not divining it, or even making an "*Erie*" guess. Indeed, the parties are in substantial agreement about what that standard would be. Opp. at 14; Motion at 14.

Even if the legal issues in this case *were* difficult or uncertain, that would not support *Burford* abstention. The same Supreme Court that decided *Burford* also recognized the fundamental principle that Congress's enactment of the diversity jurisdiction statute permits "no recognition of a policy which would exclude cases from the jurisdiction merely because they involve state law or because the law is uncertain or difficult to determine." *Meredith*, 320 U.S. at

---

[7] Revealingly, all of the supposedly "difficult" questions Mr. Giuliani raises have clear, settled answers. *See* Opp. at 8 ("When and how, under the Florida Constitution, may a person establish a homestead of choice? During what period of time must that person actually reside in Florida? How does Florida law treat that person's absence from the state for business or personal reasons?").

236. Here, where there is not even such an "uncertain" or "difficult" state-law issue, accepting Mr. Giuliani's argument for abstention would be an egregious violation of that principle.

Mr. Giuliani's second argument—that *Burford* abstention is warranted to secure Florida's interest in a "coherent policy" with respect to the homestead exemption—fares no better, and for similar reasons. As explained above, the cases in which *federal* courts are called upon to interpret and apply the homestead exemption are simply legion.[8] In light of the routine adjudication of homestead claims in bankruptcy courts and other federal forums, the suggestion that federal-court abstention from diversity jurisdiction in this case is essential to securing Florida's ability to maintain a "coherent" body of homestead law is simply not plausible: as a systemic matter, it would make no difference whatsoever for this Court to abstain, or even for all federal courts outside of Florida to abstain, or even for *all federal courts exercising diversity jurisdiction* to abstain from adjudicating Florida homestead claims. Federal-court adjudication of Florida homestead claims would still be routine.

Mr. Giuliani's reference (Opp. at 9) to the power of Florida's circuit courts under the state-law provision for declaratory relief relating to homestead claims, Fla. Stat. § 222.10, does not change this conclusion. The circuit courts' jurisdiction under § 222.10 is "exclusive" only of other *Florida* courts, specifically of the county courts, which otherwise would have concurrent jurisdiction over matters with less than $15,000 in controversy. *Sepulveda v. Westport Recovery Corp.*, 145 So. 3d 162, 167 (Fla. Dist. Ct. App. 2014). As Mr. Giuliani concedes, § 222.10 "does not deprive a federal court of subject-matter jurisdiction," nor could it. Opp. at 9. Sure enough, where the parties to an action under § 222.10 are diverse and the amount in controversy

---

[8] To take one rudimentary measure, an October 30, 2024 Westlaw search for "homestead exemption" within the universe of Florida and related federal cases returned 921 federal cases and 574 Florida cases.

requirement is satisfied, federal courts adjudicate declaratory judgment claims under that statute as well. *See, e.g.*, *Clements v. Farhood*, No. 5:17CV213-RH/GRJ, 2018 WL 850086 (N.D. Fla. Feb. 12, 2018). Federal courts also adjudicate § 222.10 claims within their ancillary jurisdiction to enforce a federal judgment. *E.g. Fuller v. Carollo*, No. 1:18-CV-24190-RS, 2024 WL 3838543, at *1 (S.D. Fla. May 28, 2024). As Mr. Giuliani implicitly recognizes, it would be absurd to conclude that assigning exclusive jurisdiction within the state-court system over a certain class of claims meant that federal courts must then abstain from exercising federal jurisdiction over such claims.

Next, Mr. Giuliani supports his argument as to the second *Burford* prong by pointing to the administrative process for adjudicating and reviewing claims for Florida's homestead *tax* exemption. Opp. at 9-10. But this undermines rather than strengthens Mr. Giuliani's argument. The Florida homestead *tax* exemptions are distinct, based on different constitutional provisions and—by design of the Florida legislature—implemented through an administrative process, *unlike the homestead protection against forced sale. See id.* (citing Fla. Stat. § 196.011 et seq.).

Moreover, state tax administration presents different concerns than creditor litigation involving real property, among them that tax disputes are generally between a taxpayer and the state and do not involve diverse parties and private interests for which diversity jurisdiction was created.[9] Unlike Florida taxpayers engaged in a dispute over a tax exemption, Plaintiffs had no

---

[9] Indeed, a separate doctrine governs comity-based abstention in deference to state tax administration. *See Levin v. Com. Energy, Inc.*, 560 U.S. 413 (2010). As the Supreme Court observed in a case handed down the same day as *Burford*, that separate doctrine reflects "refusal of federal courts of equity *to interfere with the collection of state taxes*." *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 299 (1943) (emphasis added); *see Burford*, 319 U.S. at 333 n.129 (noting that in other contexts, "[w]e have refused to permit injunctions *to interfere with the collection of state taxes*") (emphasis added). But that doctrine is not even arguably implicated here: it "instructs federal courts to refrain from granting relief only in suits that contest taxpayer liability in a manner that interferes with a state's administration of its tax system," and "does not bar Plaintiffs' claims here because their claims do not challenge their tax liability, and do not challenge or disrupt any aspect of the . . . administration, calculation, or collection of any tax." *Dorce v. City*

connection to Florida's homestead laws until Mr. Giuliani targeted them with his malicious conduct and then tried to evade judgment enforcement by purporting to maintain a permanent residence in Florida.[10] Meanwhile, Plaintiffs could not have challenged Mr. Giuliani's claim to a homestead exemption from forced sale before Florida's (or Palm Beach County's) tax administrators—nor does Mr. Giuliani claim otherwise.

Having failed to make the case on either *Burford* "prong"—and having skipped over the essential one, *i.e.*, the presence of an administrative proceeding or order—Mr. Giuliani has failed to demonstrate the appropriateness of *Burford* abstention here. Other considerations, which Mr. Giuliani does not mention, similarly weigh against abstention. Although Mr. Giuliani contends that the homestead issues presented here are important, he has not made any effort to show that they are at all *unsettled* under Florida law. Opp. at 8-9. Mr. Giuliani's bare assertion that the issues

---

*of N.Y.*, 2 F.4th 82, 98 (2d Cir. 2021). As the Eleventh Circuit recently observed when it abstained from a challenge to Florida's ad valorem tax administration (in a case that related to, but did not call for adjudication of, a homestead tax exemption), a major factor under this abstention doctrine is "whether the plaintiff objects to his or her own tax situation." *Turner v. Jordan*, 117 F.4th 1289, 1302 (11th Cir. 2024). Although that factor was satisfied in *Turner*, abstention there was still a "close call." *Id.* at 1301. Here, it is not even on the table, *Dorce*, 2 F.4th at 98, and cannot support a request for abstention under a distinct doctrine—*Burford*—that must either rise or fall on its own terms, *LeChase Constr. Servs.*, 63 F.4th at 173.

[10] As Plaintiffs have explained in their Reply, Florida's homestead tax exemption is governed by different legal authority. Reply at 13 n.8; *see Doing v. Riley*, 176 F.2d 449, 455 (5th Cir. 1949) ("the exemption of a homestead from seizure and sale for debts is quite a different thing from the exemption . . . of a homestead from taxation . . . a homestead as defined for tax purposes is not necessarily a homestead that is non-devisable"). Notably, the tax exemption is available only to taxpayers who maintain a permanent residence at the claimed address as of January 1 of the year in which the exemption is claimed. Fla. Stat. § 196.031; Reply at 13 n.8. For the same reason, adjudicating this declaratory judgment action presents no risk of inconsistency with state tax administration. Opp. at 10. Mr. Giuliani has not claimed in this litigation that he had established a homestead at the Palm Beach Condo on or before January 1, 2024—indeed, he has been careful not to suggest a date earlier than February 7, 2024, when he testified under oath that the New York apartment was then his primary home. Thus, adjudicating whether he is correct, or whether instead Plaintiffs are correct that Mr. Giuliani had not established a homestead at the Condo as of August 8, 2024, would not pose any risk of inconsistency with a legitimate tax exemption claim for the *2025* tax year.

in this case are "difficult" is not enough; he has not cited any case or other authority illustrating that the legal questions at stake here are *actually* unsettled as a matter of Florida law. *Id.* at 8. As the Second Circuit explained long ago, even in a case where "all circumstances would normally point to abstention," the lack of any unsettled issue of state law presents a "plain limit" on a court's discretion to abstain: in such a circumstance, where "the issue involved is one on which the state law is clear, and [thus] the risk of rendering a decision that would be disruptive of the even development of state law can be excluded," abstention is inappropriate. *Naylor v. Case & McGrath, Inc.*, 585 F.2d 557, 565 (2d Cir. 1978). Mr. Giuliani's failure to point to any unsettled Florida law in *this* case, where the circumstances do *not* otherwise "point to abstention," further confirms that abstention would be improper. *Id.* So does the absence of any *complex* issue of state law; at most, the state-law issues involved in this type of homestead claim require analysis similar to analysis of a person's domicile—hardly too complex for federal courts to handle. *Cf. Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*, 60 F.3d 122, 127 (2d Cir. 1995) ("If these statutes indeed amount to a 'scheme' as envisioned under *Burford*, it does not rise to the requisite degree of complexity.").

Under the circumstances, abstention in this case would violate the Supreme Court's admonition in *Meredith*: "To remit the parties to the state courts is to delay further the disposition of the litigation . . . [and] to penalize petitioners for resorting to a jurisdiction which they were entitled to invoke, in the absence of any special circumstances which would warrant a refusal to exercise it." 320 U.S. at 237. *Meredith* itself involved an abstention request relating to a federal court, sitting in diversity, called upon to interpret a question of Florida constitutional law—a question that, unlike the legal rules to be applied in this case, was unsettled. *See generally id.* But as the Supreme Court observed, absent "exceptional circumstances" justifying abstention under a

13

few narrowly defined doctrines,[11] abstention would "thwart" the purposes of diversity jurisdiction. *Id.* at 234-35. In *Meredith*, interpretation of an unsettled question of Florida constitutional law did not qualify for *Burford* abstention because it would "not require the federal court to determine or shape state policy governing administrative agencies." *Id.* at 237. Here, all other circumstances that might warrant *Burford* abstention are missing, along with that threshold requirement. *Burford* abstention should be denied.

## II. There Is No Basis to Decline to Award Declaratory Relief Under the *Wilton* Abstention Doctrine.

Next, Mr. Giuliani asks this Court to abstain as a discretionary matter from its power to enter declaratory relief under *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). *Wilton* abstention is plainly improper here, and Mr. Giuliani does not demonstrate otherwise.

In the Second Circuit, *Wilton* abstention is guided by six factors, "to the extent they are relevant in a particular case:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether

---

[11] As Mr. Giuliani rightly points out, a court's discretion is a matter not of "inclination," but "judgment" that is "guided by sound legal principles." Opp. at 10 (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016)). The point of that saying is that "[d]iscretion is not whim, and limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139 (2005). Here, that means that abstention could be granted only after careful application of the *Burford* framework, or not at all—and given the absence of any reason for abstention under *Burford*, abstention is impermissible here. *Supra* at 4; *see Halo Elecs.*, 579 U.S. at 103 ("a district court's discretion should be exercised in light of the considerations underlying the grant of that discretion") (cleaned up). Further, in light of the principle that "like cases should be decided alike," the overwhelming frequency with which federal courts adjudicate homestead claims weighs heavily against making this the first case in which a federal court instead abstains under *Burford*.

concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction[.]"

*Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023) (cleaned up); *see* Opp. at 12 (citing the same factors).

Mr. Giuliani simply ignores four out of the six factors, asserting without argument that the "fourth and fifth factors predominate." Opp. at 12. Mr. Giuliani is wrong. The fourth and fifth factors on which Mr. Giuliani relies do not support abstention, and the factors he ignores weigh heavily—and predominantly—against it.

### A.   Factors 1, 2, 3, and 6: The Requested Declaratory Judgment Will Settle the Legal Issues Involved, Finalize the Controversy, Offer Relief from Uncertainty, and Maximize Judicial Efficiency.

The four factors Mr. Giuliani ignores overwhelmingly weigh against *Wilton* abstention here. As Mr. Giuliani does not dispute, and as is evident from the purpose of this declaratory judgment action, adjudication of this declaratory judgment claim will settle and finalize the *sole legal dispute* between the parties with respect to the Palm Beach Condo. In the parallel enforcement proceedings in this Court Plaintiffs have sought appointment as receivers with power to sell the Palm Beach Condo to satisfy their judgment against Mr. Giuliani. Mr. Giuliani's *sole argument* in opposition to that request is that his purported homestead exemption precludes it. No. 24-mc-353, ECF Nos. 44, at 4; 59 at 3–4.

This Court has reserved decision on whether to include the Palm Beach Condo in the property subject to receivership pending resolution of that sole objection. In doing so, this Court stated in no uncertain terms that "[t]here is no question that, if the homestead claim is resolved adversely to Defendant, the Court will place the Palm Beach condo into receivership and will authorize the receiver to sell the property in order to satisfy the Judgment." *Freeman v. Giuliani*, No. 24-mc-353 (LJL), 2024 WL 4546883, at *7 (S.D.N.Y. Oct. 22, 2024). Resolving this

declaratory judgment claim is thus not only useful, but essential, to finally determining Plaintiffs' authority as receivers in the enforcement proceedings pending in this Court, and will indisputably provide clarity, certainty, and finality to the parties.[12] Meanwhile, by forgoing any *other* objection to the Palm Beach Condo's inclusion in a CPLR § 5228 receivership supervised by this Court, Mr. Giuliani has conceded that *this* Court is the appropriate, and now exclusive, forum in which Plaintiffs' rights in the Condo will be disposed of once this homestead claim is resolved. That being so, the case for adjudicating that homestead claim here, where the remainder of the parties' dispute over the Condo has been (and will continue to be) determined, is overwhelming.

Furthermore, unique features of the homestead exemption made an affirmative declaratory judgment action—proceeding in step with the related enforcement proceedings in this Court—the only reasonable option to confer clarity, certainty, and finality on this dispute. Under Florida law, debtors are granted considerable leeway to hold back their homestead claims until the last minute before a forced sale. A "debtor's failure to claim homestead status does not waive the debtor's right to the exemption," such that a debtor can fail to file a designation of homestead status *and* fail to assert a homestead claim as a defense in litigation but still raise it at the last minute to contest "ouster." *In re Franzese*, 383 B.R. 197, 204 (Bankr. M.D. Fla. 2008) (collecting cases). Further, if a homestead claim has not previously been raised and adjudicated, Florida law permits a debtor to

---

[12] For the same reason—because the declaratory relief requested here *would* provide finality and certainty to the parties (and is not filed to compete with a parallel state proceeding), it would not constitute impermissible "procedural fencing" under the third factor. *See N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006) ("a declaratory judgment will finalize the controversy . . . and provide relief from uncertainty in that regard. For similar reasons, factor (iii) also calls for a decision on the merits. Seeking a final resolution of the [contested] issue is surely more than 'procedural fencing' on the facts of this case." (cleaned up)); *Diaz v. Pataki*, 368 F. Supp. 2d 265, 272 (S.D.N.Y. 2005) ("[B]ecause there is no pending parallel state court proceeding that has been brought to this Court's attention, this lawsuit neither implicates the sovereignty of another legal system nor is part of a strategy of procedural fencing.").

raise it for the first time on appeal, or even in a second case where the claim would otherwise be barred by res judicata because it could have been but was not raised before. *See Dyer v. Beverly & Tittle, P.A.*, 777 So. 2d 1055, 1059 (Fla. Dist. Ct. App. 2001). These permissive anti-waiver rules would have meant that absent affirmative declaratory relief, Plaintiffs would have been faced with persistent uncertainty both before and after obtaining appointment as receivers over the Condo: Absent this declaratory judgment action, there would have been no guarantee that Mr. Giuliani would have raised his homestead claim as a defense to Plaintiffs' receivership motion, and no guarantee that his failure to raise the defense would have precluded him from raising it again later to throw sand in the gears. By the same token, Plaintiffs could not have guaranteed that Mr. Giuliani would have joined issue on the homestead claim by seeking execution or foreclosure in Florida state court. Absent an affirmative request for declaratory relief, Mr. Giuliani would have retained the flexibility to throw up that obstacle at will, further playing into his strategy of obstruction and delay. This declaratory judgment action was thus brought, "in effect, to quiet a claim creating uncertainty when the party with that potential claim fails to assert it." *Allied World Surplus Lines Ins. Co. v. Elamex USA, Corp.*, No. 23-CV-9992 (LJL), 2024 WL 2212948, at *6 (S.D.N.Y. May 16, 2024).

For those reasons, a declaratory judgment action was the only efficient choice, and the choice to bring it in this Court was overwhelmingly justified by the fact that the receivership motion was being litigated (and the receivers would ultimately be supervised) in this Court. By forcing Mr. Giuliani to join issue on the homestead claim in a forum that could finally clarify Plaintiffs' authority as receivers over the Palm Beach Condo, Plaintiffs took the step most likely to offer certainty, finality, and clarity, and to do so efficiently. Moreover, having the same Court adjudicate *both* the motion to appoint receivers over the Palm Beach Condo *and* the homestead

issues has always been the preference of all parties, *see* ECF No. 22 & Ex. 1, and it remains a powerful reason why this Court should adjudicate the declaratory judgment action.

The purpose of *Wilton* abstention is "[t]o avoid wasteful and duplicative litigation," *Dittmer*, 146 F.3d at 118. Here, abstaining would only promote it, by (at best) relegating the parties to repeat the same arguments in state court, and delaying final resolution of this controversy, while creating unnecessary potential for duplicative and conflicting proceedings as this Court retains authority over the ultimate receivership questions relating to the Palm Beach Condo.[13] The first, second, third, and sixth factors all strongly weigh in favor of declaratory relief here.

## B.    Factors 4 and 5: Friction Among Legal Systems and Whether There Is a Better or More Effective Remedy.

Meanwhile, the fourth and fifth factors, on which Mr. Giuliani stakes his entire case for *Wilton* abstention, do not favor abstention. At best for Mr. Giuliani, they are neutral, but in reality, they illustrate why declaratory relief is appropriate here.

With respect to the possibility of friction among sovereign legal systems, Mr. Giuliani's only argument is that Florida's homestead protections are important, reflect "deep-seated policy values," and are capable of being adjudicated in state courts where the state judges have experience

---

[13] In search of a parallel proceeding that could justify *Wilton* abstention, Mr. Giuliani points to the docket in the Southern District of Florida where Plaintiffs registered their judgment as a "parallel" proceeding worthy of deference and abstention. Opp. at 13. This is, effectively, a concession that abstention is not appropriate here. While that miscellaneous docket is not an active proceeding— it was merely the means by which Plaintiffs domesticated their judgment in a Florida federal court so as to have a local judgment capable of recording in the county clerk's records under Fla. Stat. § 55.10—even if it *were*, it is a *federal* proceeding. Thus, Mr. Giuliani seems to say, federal declaratory-judgment jurisdiction is appropriate in this case as long as it is in the Southern District of Florida, not the Southern District of New York. But *Wilton* abstention is concerned with federal abstention in favor of state adjudication; it is not a venue doctrine allocating judicial business among federal courts. Thus, Mr. Giuliani's preference for adjudication in Florida federal court is really a concession that *federal* declaratory relief is appropriate in this case, and thus *Wilton* abstention is inappropriate. (Mr. Giuliani has waived any objection to venue in this court. *See* Fed. R. Civ. P. 12(h); ECF No. 39.)

handling similar claims. Opp. at 12. But the same could be said of virtually every other state-law claim that comes before a federal court in a declaratory judgment posture. If accepted, Mr. Giuliani's arguments would amount to a rule against declaratory judgments whenever the state-law issues could be said to be "important" and also subject to the jurisdiction of competent state courts. Obviously, such a rule would be absurd, and contrary to the purposes of the Declaratory Judgment Act.

Further, in the absence of a "pending parallel state court proceeding," this case does not "implicate[] the sovereignty of another legal system." *Diaz v. Pataki*, 368 F. Supp. 2d 265, 272 (S.D.N.Y. 2005). As discussed above, federal-court adjudication of Florida homestead claims is routine. *Supra* at 7-10. The countless federal cases interpreting and applying the homestead exemption stand as clear evidence that such litigation is *not* a threat to the sovereignty of Florida's legal system, which has coexisted with such litigation for decades.[14]

Mr. Giuliani's arguments about a "better or more effective remedy" fare no better. Opp. at 12. As to that factor, Mr. Giuliani's only argument is that Florida courts are also capable of adjudicating homestead claims, and that Florida judges have experience doing so. That is true, of course, but it is also true in every other diversity case—by definition. Moreover, this factor asks whether Florida courts are capable of providing a *better* or *more effective* remedy, not just any remedy. *Admiral Ins. Co.*, 57 F.4th at 100; *see* Wright & Miller, Federal Practice & Procedure § 2758 (noting that "the general principle as stated" in Fed. R. Civ. P. 57 is "that the existence of

---

[14] Furthermore, the fact that such claims are also often litigated outside of Florida federal courts is a sufficient response to Mr. Giuliani's offhand suggestion that a Florida federal court sitting in diversity might be better positioned to adjudicate this claim. Opp. at 13 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)). Moreover, *Gulf Oil* was a forum non conveniens case, and—as discussed above—Mr. Giuliani has waived any venue objections he may have had in this case. *Supra* at 18 n.13.

another adequate remedy does not bar a declaratory judgment," but that the court may exercise discretion to "refuse declaratory relief if the alternative remedy is *better* or *more effective*") (emphasis added); *see* Fed. R. Civ. P. 57. Mr. Giuliani makes no argument that a state court remedy here would be better or more effective. To the contrary, Mr. Giuliani concedes that the remedy available in state courts is identical to the remedy Plaintiffs seek here: declaratory relief determining the validity of his homestead claim. Opp. at 12-13; *cf. Levin* 560 U.S. at 431 (where "state courts would have no greater leeway than federal courts" to award the requested relief, "nothing would be lost in the currency of comity or state autonomy by permitting" such relief to be sought "in a federal forum").

Ultimately, other than the factors weighing heavily *in favor* of exercising jurisdiction here, "there is nothing to distinguish [this case] from any other declaratory judgment action that invokes diversity jurisdiction and asks federal courts to declare the rights of parties under settled state law." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 147 (3d Cir. 2014). As is well established, "[f]ederal and state courts are equally capable of applying settled state law" even where (unlike this case) they must confront a "difficult set of facts." *Id.*

### C.    *Wilton* Abstention Is Inappropriate Absent a Parallel State Proceeding, and at Minimum, the Absence of Such a Proceeding Weighs Heavily Against Abstention.

The Court should also reject Mr. Giuliani's *Wilton* arguments because there is no parallel state-court proceeding in whose favor the Court could abstain. While *Admiral Insurance Co.* did not address this limitation, *Wilton* itself recognizes only the discretion to decline declaratory-judgment jurisdiction in favor of a parallel state proceeding, expressly limiting itself to that scenario. *Wilton*, 515 U.S. at 290 (affirming a stay of proceedings in the federal declaratory judgment action while the same state law issues were being adjudicated in parallel state court proceedings, and withholding judgment about whether such a stay would be proper where "there

are no parallel state proceedings"). Subsequent Second Circuit cases have recognized that the absence of a parallel state proceeding is, at least, a powerful factor weighing against abstention, and perhaps a fundamental limitation on a court's discretion to abstain. *See Dittmer*, 146 F.3d at 118 ("To avoid wasteful and duplicative litigation, district courts may often dismiss declaratory judgment actions where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Because none of the plaintiffs in the present action are parties to the state case, however, and because the present action involves issues of federal law only, dismissal on this ground would have been inappropriate.") (cleaned up); *see also id.* (holding that *Wilton* and *Burford* abstention were inappropriate, respectively, because the plaintiffs' "claims are not at issue in a concurrent state court proceeding and do not challenge the determinations of an administrative proceeding that is itself constitutional. Accordingly, the district court abused its discretion when it abstained"); *see also Niagara Mohawk Power Corp.*, 673 F.3d at 105 ("In short, this is not the type of case for which *Wilton* abstention was designed: *where another suit is pending in a state court* presenting the same issues, not governed by federal law, between the same parties, *and* the questions in controversy can better be settled *in the proceeding pending in the state court*.") (cleaned up) (emphases added).

In *Reifer*, a Third Circuit case on which *Admiral Insurance Co.* approvingly relied, the Third Circuit declined to establish a per se rule against abstention in the absence of a parallel state proceeding, but recognized that although other "circuits have found the existence or non-existence of pending parallel state proceedings only to be but one factor, they have placed upon it increased emphasis." *Reifer*, 751 F.3d at 144 (collecting cases). The *Reifer* panel "agree[d]," and held that "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise," and that "district courts declining

21

jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors." *Id.*

In light of *Reifer*, the overwhelming weight of circuit law cited therein, and the Second Circuit's own reasoning in *Niagara Mohawk Power* and *Dittmer*, this Court should at least place great weight on the absence of any parallel state proceeding. And because there are *no* factors weighing against the exercise of jurisdiction here, *supra* at 15-20, no "rigorous" exercise of discretion could warrant declining to adjudicate Plaintiffs' declaratory judgment claim, *Reifer*, 751 F.3d at 144–45.

Finally, and at a high level, common sense—or, in the Supreme Court's words, "considerations of practicality and wise judicial administration"—weigh heavily in favor of adjudicating Plaintiffs' declaratory judgment claim—here and now, in the same court where their receivership authority will be determined and supervised. *Wilton*, 515 U.S. at 288.

## III.    Mr. Giuliani Cannot Demonstrate the Absence of a Genuine Dispute of Material Fact or an Entitlement to Judgment as a Matter of Law.

Finally, Mr. Giuliani contends that the Court should grant summary judgment in his favor *on the merits*. Opp. at 14–17. But judgment is proper only if there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Mr. Giuliani's cross-motion does not satisfy either hurdle.

Mr. Giuliani's motion relies on self-selected pieces of testimony and evidence to argue that he possessed the subjective intent to permanently occupy the Palm Beach Condo and also actually occupied the Palm Beach Condo as a home as of some date prior to the fixing of Plaintiffs' lien— although, notably, Mr. Giuliani does not say when. Opp. at 14–17. But those factual claims, and the constituent factual claims on which they depend, are plainly subject to a genuine dispute.

First and foremost, Plaintiffs have not yet had any opportunity for discovery in this case. In the absence of discovery, Plaintiffs are unable to evaluate the authenticity, credibility, and context of Mr. Giuliani's contentions or the evidentiary materials on which he relies. Declaration of Aaron E. Nathan Pursuant to Federal Rule of Civil Procedure 56(d) ("Rule 56(d) Decl."), ¶¶ 4-6. Nor have Plaintiffs had an opportunity to discover other evidence that can be weighed alongside Mr. Giuliani's cherry-picked evidence, both to test the credibility of Mr. Giuliani's evidence and to persuade a factfinder that other, competing evidence outweighs anything Mr. Giuliani has offered. *Id.* Granting summary judgment to Mr. Giuliani before Plaintiffs have had an opportunity for discovery would be inappropriate. And even so, the public evidence that Plaintiffs have amassed in support of their motion—though rendered immaterial by Mr. Giuliani's admissions there—would be more than enough to create a genuine dispute as to Mr. Giuliani's intention to establish a permanent residence at the Palm Beach Condo prior to August 8, 2024. *See* Motion at 9-12.

Second, and in addition to the foregoing, even the evidence that Mr. Giuliani himself has offered is self-contradictory and self-disputing. For example, Mr. Giuliani refers to the significance of an unspecified date "shortly before February 22, 2024," when Mr. Giuliani claims to have obtained a Florida driver's license, and (according to him) thereby "proved the state of mind necessary to establish a Florida homestead." Opp. at 20. But a full *month* later, on March 28, 2024, Mr. Giuliani was back in the Bankruptcy Court, stating in the *present* tense that "the New York City apartment at issue *is* his primary residence." ECF No. 155 ¶ 16, *In re Rudolph W. Giuliani*, No. 23-12055 (Bankr. S.D.N.Y. Mar. 28, 2024) (emphasis added). In the same filing, Mr. Giuliani further stated that "[n]o one is arguing that the Florida condominium is non-exempt property." *Id.* ¶ 21. And comparing Mr. Giuliani's own evidence of his physical location in this action to the

addresses he used in the Bankruptcy Court shows that his statements about his address and residence *on paper* bore no relationship to his location in the real world.[15]

In sum, without Plaintiffs having had the benefit of discovery, even Mr. Giuliani's *own* evidence is suggestive of a scheme whereby Mr. Giuliani tried to change his "residence" on paper only, with no relationship whatsoever to his actual residence or his intentions to live in any particular place. Accepting Mr. Giuliani's evidence as sufficient proof of his present intention to permanently reside at the Palm Beach Condo (and that he actually occupied it as his permanent home) would be inappropriate even at *trial*; it is certainly not enough to justify summary judgment in Mr. Giuliani's favor. *Cf. Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730-31 (7th Cir. 1991) (Posner, J.) (the argument that one party "had residences in two states and by his actions chose one of them—Florida—to be his domicile is unacceptable because it makes changing one's domicile too easy. Anyone with residences in two or more states could change domicile continually, by changing his voter registration or his driver's license, in order to take advantage of changes in tax law or to opt in or out of federal diversity jurisdiction.").

Moreover, as explained in Plaintiffs' own motion for summary judgment and reply, the reality is that none of Mr. Giuliani's cherry-picked, self-serving evidence is material at all: Mr. Giuliani's July 1, 2024 motion to convert his bankruptcy case to chapter 7 is conclusive evidence,

---

[15] *See, e.g.*, *In re Giuliani*, No. 23-12055-SHL (Bankr. S.D.N.Y.) ("Bankruptcy Dkt."), ECF No. 127 (Monthly Operating Report for January 2024 giving his New York address); ECF No. 42-9, at 2 (calendar showing that Mr. Giuliani was in Palm Beach on that date); Bankruptcy Dkt. No. 199 (Monthly Operating Report for February 2024 giving his New York address); ECF No. 42-9, at 5 (calendar for the same date showing that Mr. Giuliani was in Palm Beach); Bankruptcy Dkt. No. 203 (Monthly Operating Report for March 2024 giving his New York address); ECF No. 42-9, at 5 (calendar for the same date showing that Mr. Giuliani was in Palm Beach); Bankruptcy Dkt. No. 244 (Monthly Operating Report for April 2024 giving his New York address); ECF No. 42-9, at 5 (calendar showing that Mr. Giuliani was in Palm Beach on that date); Bankruptcy Dkt. No. 267 (Monthly Operating Report for May 2024 listing Mr. Giuliani's *Palm Beach* address); ECF No. 42-9, at 6 (calendar showing that Mr. Giuliani was in *New Hampshire* on that date).

as a matter of law, that he had abandoned any then-existing intention to *ever* reside, much less permanently reside, in the Palm Beach Condo as of that date. Motion at 17; Reply at 6–12. And because Mr. Giuliani was never there again between that date and August 8, 2024, he could not have established a homestead there under settled Florida law—law on which the parties agree. Mr. Giuliani's cross-motion must be denied, and Plaintiffs' motion must be granted.

## **CONCLUSION**

Defendant's cross-motion for summary judgment should be denied.

Respectfully submitted,

Dated: October 30, 2024          s/ Aaron E. Nathan
      New York, New York

John Langford                               Michael J. Gottlieb
Rachel Goodman                          Meryl C. Governski (admitted *pro hac vice*)
United to Protect Democracy         Willkie Farr & Gallagher LLP
82 Nassau Street, #601                   1875 K Street NW
New York, NY 10038                      Washington, DC 20006
(202) 579-4582                              (202) 303-1000
john.langford@protectdemocracy.org    mgottlieb@willkie.com
rachel.goodman@protectdemocracy.org   mgovernski@willkie.com

Von DuBose (*pro hac vice forthcoming*)   Aaron E. Nathan
DuBose Miller LLC                       M. Annie Houghton-Larsen
75 14th Street NE Suite 2110          Willkie Farr & Gallagher LLP
Atlanta, GA 30309                        787 Seventh Avenue
(404) 720-8111                            New York, NY 10019
dubose@dubosemiller.com            (212) 728-8000
                                                     anathan@willkie.com
                                                     mhoughton-larsen@willkie.com

*Attorneys for Plaintiffs*