OASEFREC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   RUBY FREEMAN ET AL.,

4                   Plaintiffs,

5           v.                          24 Civ. 6563 (LJL)

6   RUDOLPH W. GIULIANI,
                                        Conference
7
                    Defendant.
8
    ------------------------------x
9                                       New York, N.Y.
                                        October 28, 2024
10                                      12:00 p.m.

11  Before:

12                      HON. LEWIS J. LIMAN,

13                                      District Judge

14                          APPEARANCES

15  WILLKIE FARR & GALLAGHER LLP
         Attorneys for Plaintiffs
16  BY:  AARON E. NATHAN
         MICHAEL GOTTLIEB
17       RACHEL E. GOODMAN

18  KENNETH CARUSO LAW
         Attorney for Defendant Rudolph Giuliani
19  BY:  KENNETH A. CARUSO

20  LOWENSTEIN SANDLER, LLP
         Attorney for Intervenor Andrew Giuliani
21  BY:  SCOTT B. McBRIDE

22

23

24

25

OASEFREC

| | |
|---|---|
| 1 | (Case called) |
| 2 | MR. NATHAN:  Good afternoon, your Honor. |
| 3 | Aaron Nathan of Willkie Farr & Gallagher for |
| 4 | plaintiffs and judgment creditors Ruby Freeman and Wandrea |
| 5 | Moss, and also in their capacity now as court-appointed |
| 6 | receivers. |
| 7 | I'm joined by my cocounsel, Michael Gottlieb, also of |
| 8 | Willkie Farr & Gallagher, and Rachel Goodman of United to |
| 9 | Protect Democracy. |
| 10 | MR. CARUSO:  Good afternoon, your Honor. |
| 11 | Kenneth Caruso for the defendant, Mr. Giuliani. |
| 12 | THE COURT:  Good afternoon. |
| 13 | MR. McBRIDE:  Good afternoon, your Honor. |
| 14 | Scott McBride of Lowenstein Sandler on behalf of |
| 15 | intervener defendant, Andrew Giuliani. |
| 16 | THE COURT:  Good afternoon, Mr. McBride. |
| 17 | Mr. Nathan, why don't we start with you.  Tell me what |
| 18 | we need to accomplish today. |
| 19 | MR. NATHAN:  Thank you, your Honor. |
| 20 | I think the most urgent matters on the agenda are the |
| 21 | disposition of the Palm Beach condo while the parallel |
| 22 | declaratory judgment action is pending with regard to |
| 23 | defendant's homestead claim, and also discovery schedule with |
| 24 | the wrinkles we addressed in our letter to the Court, filed |
| 25 | yesterday, for that declaratory judgment action. |

OASEFREC

1          THE COURT:  Where do we stand with respect to the

2   turnover property?

3          MR. NATHAN:  Preparations are being made.  We have not

4   actually made contact with defendant or his counsel about that,

5   but we expect to, as the deadline is tomorrow, be in touch very

6   shortly about logistical arrangements.

7          THE COURT:  I do have one question with respect to the

8   turnover.  It has to do with the New York property, but it also

9   touches on the Palm Beach condo.

10          So, I'm aware from the bankruptcy filings, the New

11   York property was listed, I believe, as the defendant's

12   homestead; is that correct?

13          MR. NATHAN:  That's correct.

14          THE COURT:  And the plaintiffs have taken the position

15   here that the bankruptcy petition could not have been amended

16   when there was an attempt to convert the proceeding to

17   Chapter 7.  What is the plaintiff's position with respect to

18   whether the New York property will be treated, in effect, as a

19   homestead and the, I think it's, $204,000 or so that the CPLR

20   would require be remitted to the defendant be remitted?

21          MR. NATHAN:  Plaintiffs are prepared to consider any

22   properly raised claim of a homestead exemption under the CPLR.

23   I don't believe that one was raised in the opposition to the

24   motion for turnover with respect to the New York property, but

25   we would address that and hear any argument on that if it were

OASEFREC

1    still timely.

2                THE COURT:  Mr. Caruso, do you have a position with

3    respect to that?

4                MR. CARUSO:  Our position is that the Florida condo

5    should be held to be the homestead; in the alternative, the New

6    York property would be the homestead.

7                THE COURT:  All right.  So what I do want to make sure

8    of, Mr. Caruso, is that I have a position from you with respect

9    to whether there is a claim that the New York property is the

10   homestead, and that you make the request for the $204,000 or

11   so.

12               MR. CARUSO:  Very well.  I think I understand, your

13   Honor.  I'll make that claim in the alternative.

14               THE COURT:  All right.  Let's address the Palm Beach

15   condo first.

16               Mr. Nathan, refresh me as to when your opposition to

17   the cross-motion is due and when the reply would be do.

18               MR. NATHAN:  Under the local rules, the opposition is

19   due this Wednesday, that's in two days, on October 30, and the

20   reply would be seven days after that, on November 6.

21               THE COURT:  Okay.  So, assuming that I grant your

22   motion for summary judgment — that, I think, I would do fairly

23   shortly after the motion is fully submitted.  If I deny it,

24   there's going to be a trial in January — what is it that the

25   receiver would be doing that is not already accomplished by

OASEFREC

1   what's in Mr. Caruso's order?

2           MR. NATHAN:  I would distinguish between two aspects

3   of the receivership order.  One is the appointment of receivers

4   per se.  That does potentially have some consequences, but they

5   could be lessened or mooted if the other terms that are in the

6   proposed receivership order, and, I suppose, in the

7   receivership order that has now been entered, those terms do

8   have bite independent of the proposed order that we submitted

9   as an addendum to preserve the status quo.  So if the question

10  is how much could be accomplished by entering the terms of the

11  receivership order but just holding back on the formal

12  appointment of our clients as receivers, the answer to that is

13  a lot.  That would get us a lot of the way there.  Actually,

14  appointing them as receivers, I think, would make clear,

15  conclusively, that jurisdiction is vested in this court with

16  respect to disputes over that property.  But as I said, I think

17  that's likely already the case.  And the terms of the

18  receivership order that was entered, even if it weren't

19  accompanied by a formal appointment of the clients as

20  receivers, would accomplish the same thing.

21          So my suggestion would be that, if that's the issue,

22  the same results could be achieved just by entering the

23  receivership terms as an injunction pending resolution of the

24  homestead claim.

25          THE COURT:  All right.  So I want to make sure I

OASEFREC

1    understand what your position is.  Maybe it's helpful for you

2    to understand better what my question is.  Mr. Caruso has

3    proposed that his client would continue to reside in the Palm

4    Beach condo until the issue of homestead is resolved, and that,

5    during that period of time, the client would be enjoined from

6    taking any action that would diminish the value of the

7    property, selling, transferring it, et cetera, and would also

8    pay for the maintenance and the upkeep through exempt funds.

9    Seems to me that goes pretty far in terms of accomplishing what

10    I think you're entitled to, which is to make sure that the

11    value of the property is preserved, and is preserved with

12    exempt assets.

13          What more is your client entitled to?  I do have a

14    concern, for example, about your client advertising the

15    property for sale, getting appraisers in there, doing all of

16    those kinds of steps that are preliminary to a sale.

17          MR. NATHAN:  Absolutely, your Honor.  And to be clear,

18    that's not what I was referring to.  We don't have any interest

19    in that while the declaratory judgment action is still pending,

20    so I apologize if I wasn't clear.

21          The receivership order that has been entered ——

22          THE COURT:  I have it in front of me.

23          MR. NATHAN:   —— also includes protections against

24    procedural, I'll say, hijinks that go beyond actions that could

25    be taken to diminish the value of the property in the way that

OASEFREC

1    the question of upkeep and expenses would go to.  I think it's

2    subparagraph 4(d) and (g), but I may have those wrong, include

3    pretty strong protection against medaling by other creditors or

4    by the debtor defendant himself.

5        THE COURT:  Okay.  Let me look at those.  4(d) and

6    (g), you think?

7        MR. NATHAN:  Let me just confirm that.

8        Yes.

9        THE COURT:  All right.  Give me one moment.

10       MR. CARUSO:  Your Honor, please, may I look at

11   Mr. Nathan's copy so that we're both looking at the same copy?

12       THE COURT:  Yeah, why don't you do that.

13       MR. NATHAN:  And to cut to the chase, your Honor,

14   it's, broadly speaking, an anti-suit injunction against the

15   defendant and other creditors who would come claim an interest

16   in the property.

17       THE COURT:  Let me wait until Mr. Caruso has finished

18   reviewing the papers.

19       MR. CARUSO:  I have, your Honor.  I have.

20       THE COURT:  All right.  Mr. Caruso, after I hear from

21   Mr. Nathan, I will call on you with respect to the Palm Beach

22   condo.

23       MR. CARUSO:  Sure.

24       THE COURT:  But now that I've read 4(d) and (g),

25   maybe, Mr. Nathan, you can explain to me the distinction that

OASEFREC

1    you were drawing between appointing the receiver with respect

2    to the property and placing the property in the hands of the

3    receiver, something to that effect.

4              MR. NATHAN:  Well, yes.  Absolutely.

5              So, the distinction would actually, I suppose, be not

6    doing either of those things but, instead, sort of taking the

7    receivership order that was entered and using it as a model for

8    something other than a receivership order, but just adding

9    these terms as stand-alone injunctions to be combined with the

10   proposed order, on which I actually think that the parties are

11   in substantial agreement about the key terms.

12             THE COURT:  Okay.  Give me one moment just to look at

13   4(d).

14             So do you have 4(d) in front of you, Mr. Nathan?

15             MR. NATHAN:  I do.  And I see where you're going.

16             THE COURT:  Yeah.  So, tell me how you would rewrite

17   4(d).

18             MR. NATHAN:  I would rephrase it to focus on the

19   Court's jurisdiction rather than the receiver's possession and

20   control over the property.  Otherwise, I ——

21             THE COURT:  So, in other words, it would have me order

22   that any and all persons claiming any interest in or relating

23   to the Palm Beach condo be hereby enjoined from interfering or

24   impeding in any manner with the discharge of the Court's

25   responsibilities with respect to the property.

OASEFREC

1          MR. NATHAN:  Yeah.  It might be most helpful, if the

2     Court is interested in going in this direction, if we revised

3     the proposed orders and submit them.

4          The important thing, from our perspective, is that

5     other interested creditors —— and, to be clear, that likely

6     only includes the defendant in this case, we're not aware of

7     other judgment creditors who would be in a position to take

8     similar steps, just not throw up procedural roadblocks outside

9     of the direct jurisdiction of this Court.

10          THE COURT:  Let me hear from Mr. Caruso.

11          Mr. Caruso, with respect to the question of whether

12     your proposed order should be revised, sir, to incorporate

13     something like paragraph 4(g) ——

14          MR. CARUSO:  Yes.

15          THE COURT:  —— and 4(d).

16          MR. CARUSO:  Yes.  Thank you, Judge.

17          I think that the necessary and appropriate order would

18     include an injunction of the kind that's in my proposed order

19     and an order for Mr. Giuliani to continue to pay the

20     maintenance, taxes, and insurance, which is in my proposed

21     order.  And, I believe, if the Court would allow me to just

22     look at this again, I don't think I have an objection to the

23     inclusion of something along the lines of what is 4(d) in

24     plaintiff's proposed order.

25          THE COURT:  And 4(g)?

OASEFREC

1          MR. CARUSO:  Just, if you'd give me one moment, your

2    Honor.

3          THE COURT:  Okay.

4          MR. CARUSO:  I have no objection to (d).  And I have

5    no objection to (g).

6          THE COURT:  Okay.  And I take it you also have no

7    objection to the correction of the typo in Mr. Nathan's

8    proposed order, which you carried forward in yours.

9          MR. CARUSO:  I support the correction of all typos.

10          THE COURT:  Okay.

11          MR. CARUSO:  Now if your Honor please would let me

12    just make a point, if I may.

13          THE COURT:  Okay.

14          MR. CARUSO:  One of the effects of this could be that

15    there is an injunction against proceeding with respect to the

16    Palm Beach condo in any court other than this one, of course,

17    we're going to comply with that.  We absolutely intend to

18    comply with that, but I do want to make the point that all of

19    this is without prejudice to my arguments that the Court should

20    abstain under *Burford* or decline to issue a declaratory

21    judgment in its discretion.  That's not a today argument, but I

22    wouldn't want anybody to think I've waived it.

23          THE COURT:  And that is an appropriate reservation,

24    obviously.  And I'm going to ask Mr. Nathan, after meeting and

25    conferring with you, Mr. Caruso, to submit a proposed order by

OASEFREC

1    Wednesday at the close of the day.

2              Does that work for you?

3              MR. CARUSO:  With respect to the matters we've just

4    been discussing?

5              THE COURT:  Correct.

6              MR. CARUSO:  I'm sorry.  Wednesday?

7              THE COURT:  Wednesday.

8              MR. CARUSO:  Yes.  Thank you.

9              THE COURT:  And that will be without prejudice to the

10   Court concluding that *Burford* abstention is appropriate in this

11   case and that you prevail on your cross-motion for summary

12   judgment.

13             MR. CARUSO:  All right.  Thank you, Judge.  Wednesday

14   is fine for us.

15             THE COURT:  Okay.  So then I think what that leaves is

16   the schedule with respect to Andrew Giuliani and the schedule

17   with respect to the case management plan with the defendant.

18             MR. NATHAN:  Absolutely, your Honor.

19             With respect to the intervener, Andrew Giuliani, we

20   received responses and objections to our discovery requests

21   late last night.  As I sit here, I'm not aware of whether we

22   have received the productions themselves, those were still in

23   the process of being processed and Bates stamped and the like.

24             We're not in a position right now to say exactly when

25   the deposition of the intervener will occur, that'll have to

OASEFREC

1    wait for a review of the document production and a

2    consideration of any objections we may have to its

3    completeness.  But we anticipate completing all of that in time

4    to try any outstanding disputes on the 16th.

5           THE COURT:  From your review, are there any issues

6    with respect to the responses and objections?

7           MR. NATHAN:  Without seeing the documents that were

8    produced, I am not in a position to say, and we don't have

9    those yet.  It's possible they came in in the last hour and I

10   haven't seen them.

11          THE COURT:  One of the things, in reviewing the

12   papers, that I anticipated might arise —— I don't know whether

13   it will —— is with respect to tax returns.  Is there a request

14   for tax returns?  I don't know, maybe they were produced in

15   connection with the bankruptcy, but there's a sensitivity with

16   respect to tax returns, and I can imagine it being an issue

17   with respect to the rings.

18          MR. NATHAN:  With respect to the intervener's tax

19   returns.  Although, actually, I suppose the defendant's tax

20   returns would be the ones that would have the information.  So,

21   anything in the intervener's possession or control relating to

22   any tax planning in connection with the rings would be

23   responsive to the discovery requests that have been served on

24   him.  So once we review the productions, we'll know whether

25   anything like that has been produced.

OASEFREC

1              THE COURT:  Okay.  I mean, I would want that to be

2    teed up relatively early so that I have a chance to address any

3    issues.  I'll entertain a request from you, Mr. Nathan, with

4    respect to when you would be prepared to tee up for me any

5    issues with respect to responses and objections.

6              MR. NATHAN:  That's fair enough, your Honor.  And as I

7    stand here thinking about it, the reality is that the most

8    likely custodian or custodians of records relating to ——

9    because the asserted gift, passed from father to son, would be

10   in the father's records or the records of his tax

11   professionals, those would be responsive to requests that were

12   served on the defendant months ago at this point, and we are

13   prepared imminently to file a motion to compel compliance.  We

14   can, if it's useful for resolution of the intervener's dispute,

15   carve off a piece to deal with the rings, but, frankly, I don't

16   see why that would be anymore forthcoming than the other

17   records we requested.  I've had some ideas, standing here just

18   now, and I think it may be worth conferring internally with my

19   colleagues and then ——

20             THE COURT:  Why don't you confer, also, with the

21   counsel for the intervener with respect to a schedule for

22   raising before the Court any issues with respect to the

23   responses and the objections.

24             Does that work from your perspective, Mr. McBride,

25   maybe by Wednesday or by the end of this week letting me know a

OASEFREC

```
 1   proposed schedule for raising any issues with respect to the

 2   discovery?

 3            MR. McBRIDE:  It does, your Honor.  There is no tax

 4   issue, there are no responsive tax documents from the

 5   intervener defendant, so that issue will not, ultimately, need

 6   to be teed up.  But with respect to the discovery generally,

 7   yes.

 8            THE COURT:  Okay.  All right.

 9            Mr. Nathan, why don't you confer with Mr. McBride.

10   Let me know by the end of this week a proposed schedule with

11   respect to addressing any discovery issues with respect to the

12   intervener.

13            MR. NATHAN:  Yes, your Honor.

14            THE COURT:  Let me turn, then, to the case management

15   plan and hear from you, Mr. Nathan, with respect to what the

16   issues are and then I'll hear from Mr. Caruso.

17            MR. NATHAN:  There's only one issue to report, your

18   Honor, as we addressed in our letter.  We're prepared to agree

19   to the proposed case management plan and scheduling order that

20   was prepared and submitted jointly on the condition that the

21   Court enter a general order for purposes of this case that all

22   discovery requests be responded to and productions be completed

23   within 14 days.

24            THE COURT:  So that means both responses and

25   objections and then the production of the documents that are
```

1    not objected to within 14 days; is that right?

2              MR. NATHAN:  Correct.  Shortened from the default

3    30-day period that would otherwise apply.

4              THE COURT:  Mr. Caruso?

5              MR. CARUSO:  Yes, your Honor.  Counsel discussed this

6    last week and over the weekend.  And the reason I didn't agree

7    to that, and the reason I think it would be unfair to impose

8    that on me, is I don't know what they're asking for.  I haven't

9    seen the document demand, for example.  I don't see how I could

10   possibly be expected to commit to something like that unless I

11   know what I'm being asked to produce.  This could be a massive

12   document production request, which, by the way, would be

13   entirely consistent with the Willkie Farr style in this case so

14   far.  In bankruptcy court as well.  But let's leave that aside.

15             I don't think I should reasonably be expected to agree

16   to a shortened time unless I know what I'm being asked to

17   produce.  And with respect, your Honor, I think it would be

18   unfair to impose that on me until we see the document request,

19   for example.  That's my position.

20             THE COURT:  What are you prepared to do with respect

21   to that request for production?

22             MR. CARUSO:  Let's just use document production as an

23   example.  I'm prepared to make best efforts to produce and get

24   all the work done within 14 days, best efforts, but I don't

25   want to commit to it because I don't think I can.  Thirty days

OASEFREC

1    would apply, but I'll make it my best efforts to comply within

2    14.

3          THE COURT:  Why isn't the right thing for me to do to,

4    given the accelerated time table that I've placed on this case,

5    hold you to the 14 days, but then if you get a request that

6    looks like it's going to take you a long time to responded to,

7    you can then apply for relief from the Court with respect to

8    that request?

9          MR. CARUSO:  I think that's a path that's more

10   designed to make work for your Honor and the parties.  I think

11   the better way is the normal way.  It's 30 days, but I'm

12   committing, as an officer of the court, to make best efforts to

13   get them done in 14.  I think if you make it 14 subject to me

14   coming back after I see this bombardment that I may get, it's

15   just going to make work.

16         THE COURT:  Mr. Nathan, what do you anticipate

17   requesting, and how does it relate to what has already been

18   requested in the bankruptcy court?

19         MR. NATHAN:  It's certainly narrower in subject matter

20   than what's being requested in the bankruptcy court.

21         By the way, there were no substantial productions

22   relating to financial records in the bankruptcy court.

23         THE COURT:  But I presume there were requests for

24   documents.

25         MR. NATHAN:  There were, your Honor.

OASEFREC

1          THE COURT:  So the reason why I asked that question is

2     because one would presume that there's already been some work

3     done to prepare.

4          MR. NATHAN:  Yes.  Not on the specific questions that

5     are relevant in this litigation.  It's possible that there

6     would be some overlap in the productions or the hypothetical

7     productions, I should say, by happenstance.  But, here, we're

8     focused on the question of the defendant's intention to

9     establish a permanent residence at the Palm Beach condo and

10    remain there permanently, the nature of his visits there and

11    any occupancy of the condo that he may have had during the

12    period that he claims it was his permanent residence and home,

13    and also during the period before that, because the comparison

14    between the two will be relevant, and it will include

15    communications and other documents related to those topics.

16         It's going to be focused.  It could be that the

17    universe of relevant documents is quite large, particularly if

18    what defendant says is true, that he's been engaged in a

19    long-standing plan to do this and made extensive preparations,

20    as he claims.  On the other hand, it could be that the universe

21    of documents is quite small.

22         THE COURT:  There have been discussions about the

23    timing of the defendant's deposition?

24         MR. NATHAN:  I believe we've set a date that all

25    depositions in this case would be completed by December 31.

OASEFREC

```
1    And, in the context of those conversations, I understood from

2    defendant's counsel that the defendant would be available

3    sometime in December to sit for a deposition.

4         THE COURT:  All right.  I do think that the 14 days

5    for responses and objections and for the production of

6    documents in response is reasonable given the timetable for the

7    depositions.  There needs to be time for the Court to work out

8    any issues with respect to the production of documents, and

9    there also needs to be time for the parties to prepare for the

10   depositions, so I am going to add that to the case management

11   plan.

12        What else should we do, from plaintiff's perspective?

13        MR. NATHAN:  There's one other, hopefully minor,

14   matter relating to the discovery plan and the declaratory

15   judgment action, which is that plaintiffs would like to request

16   leave from the Court to serve limited contention

17   interrogatories early in the case, potentially quite soon.  And

18   I can get specific.  The question we'd like addressed is on

19   what date the defendant claims to have established his

20   permanent residence and homestead at the condo.  It's possible

21   that defendant's counsel is prepared to just answer that

22   question as we stand here today, but if not, we'd prefer that,

23   consistent with the defendant's claims in this case, he pick a

24   date rather than see the evidence and retrofit his answer, as

25   he may decide he wants to do later under the circumstances.
```

OASEFREC

1          THE COURT:  So what efficiencies would that accomplish

2     for me and for the parties to have him answer that form of

3     contention interrogatory?

4          MR. NATHAN:  Well, as your Honor pointed out, the

5     depositions in this case aren't likely to take place until

6     after document productions, and we think it's in the interests

7     of fairness and efficiency, from the parties' perspective,

8     better to have him answer the question now.  Presumably, it's

9     an answer that he knows if what he is claiming is true.

10    Otherwise, the answer that we're likely to get is an answer

11    that is convenient rather than one that reflects his intentions

12    as of a date that is in the past.  I can't think of a reason

13    why he wouldn't be able to answer that question now if he, in

14    fact, did establish a homestead at the Palm Beach condo at some

15    point prior to August 8th, 2024.  And I think having that

16    answer clear and in writing will avoid inefficiencies later as

17    we try to pin down an answer that may never come.

18         THE COURT:  Well, I guess what I have in mind is that

19    an answer to that question could affect the scope of discovery,

20    and that more recent establishment of the homestead, the less

21    of a need for you to go into all of the information about what

22    happened years before the establishment of the homestead.  Am I

23    thinking about this correctly?

24         MR. NATHAN:  I think there is some truth to that.  It

25    could help us narrow the discovery requests that are focused on

OASEFREC

1    the present period and recent past.  I can't say that it would

2    render the less-recent past irrelevant.  The relevance there is

3    that the defendant had established habits and practices with

4    respect to the Florida condo as a vacation home.  To the extent

5    that what he claims now is his treatment of that condo as a

6    permanent home, it would be relevant to offer a comparison to

7    the fact finder, who can evaluate the credibility of the claim

8    today, that now it has transformed into a permanent residence.

9            Having said that, I do think that having a clear

10   answer to this question now would focus the types of requests.

11   And these, I would expect, would be the most voluminous

12   productions, the requests that are trained on what was done

13   this year to turn that from a vacation home into a permanent

14   home.

15           THE COURT:  Mr. Caruso?

16           MR. CARUSO:  Your Honor, I have no objection, of

17   course, to the plaintiffs asking when did you form this intent,

18   but let me lay down a marker based on the way humans live their

19   lives.  Momentous decisions like that don't necessarily get

20   made at a particular time.  This is a process that goes over

21   time.

22           THE COURT:  Well, no, but he's asking not a factual

23   question, he's asking a question about your contention in this

24   case.  There has to be a point in time at which you claim that

25   the Palm Beach condo became the homestead.

1          MR. CARUSO:  Yes.

2          THE COURT:  And the question is when are you prepared

3     to declare what that date is?

4          MR. CARUSO:  And, your Honor, is saying that this is a

5     position on the law, not the facts.

6          THE COURT:  It's going to be a mixed question, right?

7          MR. CARUSO:  Well, look, I'm sure we will take a

8     position along the lines of he formed the intent no later than

9     X date, because a decision like this is made over time.

10         THE COURT:  Well, I mean, what about it became his

11    homestead as of such-and-such date?  This is what our

12    contention is.

13         MR. CARUSO:  I believe we will take that, yes.

14         THE COURT:  Not this is when he formed the intent for

15    it to be his homestead.  The intent, as you both have

16    indicated, is not enough.  It's both intent and actual physical

17    presence.

18         MR. CARUSO:  Yes.  I expect that we will certainly

19    take a position on that issue.

20         THE COURT:  I think they're entitled to know what your

21    position is before the depositions are taken.

22         So why don't you, Mr. Nathan, serve your contention

23    interrogatory, and the response will be due —— I really would

24    like the date certain from Rudolph Giuliani's deposition.  Is

25    there a date certain that the parties have yet?

OASEFREC

```
1              MR. NATHAN:  Not yet.

2              MR. CARUSO:  Not yet.

3              THE COURT:  Two weeks before the defendant's

4    deposition?  Two weeks before the defendant's deposition the

5    answer to that contention interrogatory will be served.  If

6    there are issues with respect to the sufficiency of it, bring

7    them promptly to my attention and I'll resolve it.

8              Anything else from plaintiff?

9              MR. NATHAN:  No, your Honor.  Thank you.

10             THE COURT:  I do have one other question for you but

11   I'll ask Mr. Caruso if there's anything else that he's got.

12             MR. CARUSO:  I have one question with two parts.

13             THE COURT:  Okay.

14             MR. CARUSO:  Assuming that we have a trial on

15   January 16, it would materially affect the prep to know whether

16   the Court wants or needs or expects oral opening statements and

17   oral summations, which, of course, are a big part of the prep.

18             THE COURT:  Right.  I'm glad, Mr. Caruso, you asked

19   that question.

20             I think we should have a more extended conversation

21   maybe after summary judgment is decided and we know what the

22   scope is of the trial.  But the way in which I conduct bench

23   trials is not to have opening statements, is to have pretrial

24   memoranda that are filed that identify for me what the relevant

25   legal issues are, what the parties expect the facts to be.  And
```

OASEFREC

```
1    then with respect to summations, ordinarily, what I would do is
2    give you a day after the completion of all of the evidence to
3    make summations.  I don't usually get written findings of facts
4    and conclusions of law after a bench trial.  I find that that
5    just delays the process.  But to have a summation where the
6    parties refer me, by transcript page and by exhibit number, to
7    what they believe is material is extremely helpful, because
8    that permits me to give you a decision very quickly.
9              MR. CARUSO:  I understand.  That's fine.  And I'll
10   take this as preliminary guidance:  No opening but yes for
11   summation, and we'll see how it goes now in the next two months
12   or whatever we have here.
13             THE COURT:  Okay.
14             MR. CARUSO:  All right.
15             THE COURT:  The remaining question I have for the
16   plaintiff is, I'm aware from some of the plaintiff's papers
17   that there are ongoing efforts to identify additional
18   properties, and it would be helpful to get something of a
19   preview, to the extent the plaintiff is able to give it, as to
20   additional turnover motions and the like that I might confront,
21   also where things stand with respect to the information
22   subpoena from the prior litigation issues with respect to
23   Giuliani Communications, that there might be questions with
24   respect to the bank accounts.
25             Is there any preview, Mr. Nathan, you can give me as
```

OASEFREC

1    to what I can expect?

2              MR. NATHAN:  Doing my best here, I think you can

3    expect a motion to compel responses to the information

4    subpoenas served on the defendant and his wholly controlled

5    entities to be filed imminently.  I would expect, if nothing

6    changes, in a matter of days.

7              And with respect to other properties, our efforts to

8    identify other properties have, obviously, been stymied by the

9    defendant's reluctance to responded to discovery requests.

10             The funds at the bank that you referred to that are

11   held by the LLC entity is something, though, that we're

12   addressing and will be prepared to file a turnover motion once

13   we've resolved some outstanding factual questions or are unable

14   to resolve those factual questions through responses to

15   requests served on the defendant and the entity.

16             I can't give you a date by which we would file that

17   turnover motion without knowing how those discovery issues

18   resolve, but I hope that we'll be in a position to act on that

19   within weeks, but I can't commit to that, unfortunately.

20             THE COURT:  All right.  Move as expeditiously as you

21   can.  I would like to make sure, if I can, that when the

22   deposition of the defendant takes place, it covers as many

23   issues as it can cover so that we don't have *seriatim*

24   depositions of the defendant.  I have scheduled the trial of

25   this case with respect to the rings and potentially with

OASEFREC

1    respect to the Palm Beach property because you've urged on me

2    the need for expedition and because this is just judgment

3    enforcement, but I'm sensitive to the waste that can happen if

4    there's *seriatim* depositions.

5              MR. NATHAN:  Understood, your Honor.

6              THE COURT:  Mr. Caruso, anything else?

7              MR. CARUSO:  No, sir.

8              THE COURT:  I assume that you should share the

9    interest in making sure that your client is not deposed

10   multiple times over different pieces of property, and will work

11   to make sure that you move the issues along so that everything

12   can be presented to the Court as quickly as possible.

13             MR. CARUSO:  Yes, definitely.

14             THE COURT:  Okay.  All right.

15             Have a good day, everybody.

16             (Adjourned)

17

18

19

20

21

22

23

24

25