OB73FREC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  RUBY FREEMAN, et al.,

4              Plaintiffs,        New York, N.Y.

5        v.             24 MC 353(LJL)
                        24 CV 6563 (LJL)
6  RUDOLPH W. GIULIANI,

7              Defendant.

8  ------------------------------x      Conference

9                          November 7, 2024
                          12:00 p.m.
10

   Before:
11
                   HON. LEWIS J. LIMAN,
12
                          District Judge
13

14
                   APPEARANCES
15

16
   WILLKIE FARR & GALLAGHER, LLP
17      Attorneys for Plaintiffs
   BY:  AARON E. NATHAN
18       MERYL GOVERNSKI
       ANNIE HOUGHTON-LARSEN
19             -and-
       RACHEL GOODMAN, Protect Democracy
20

21  KENNETH CARUSO LAW
      Attorneys for Defendant
22  BY:  KENNETH A. CARUSO
       DAVID LABKOWSKI
23

24

25

OB73FREC

1           THE DEPUTY CLERK:  In the matter of 24 MC 353 and 24

2    CV 6563, Ruby Freeman, et al. v. Rudolph W. Giuliani.

3           Starting with counsel for plaintiffs, please state

4    your appearance for the record.

5           MR. NATHAN:  Good afternoon, your Honor.  Aaron Nathan

6    from Willkie Farr & Gallagher for plaintiffs and receivers Ruby

7    Freeman and Shaye Moss.  I'm joined at counsel table by my

8    colleagues Meryl Governski and Annie Houghton-Larsen also of

9    Willkie Farr & Gallagher, and Rachel Goodman of Protect

10   Democracy.

11          THE COURT:  Good afternoon.

12          MR. CARUSO:  Good afternoon, your Honor.  Kenneth

13   Caruso for the defendant.  At the table with me is Mr. Giuliani

14   at my left, and to his left, David Labkowski, my co-counsel.

15          THE COURT:  Good afternoon, and thank you to the

16   parties for accommodating my request that this be converted to

17   an in-person hearing.

18          I understand, Mr. Caruso, that your client had asked

19   for his iPads to be brought to him, and that they have been

20   brought to him.  Is that correct?

21          MR. CARUSO:  Yes, I believe so, Judge.  Thanks very

22   much.

23          THE COURT:  I'm fine with all of the electronics.

24   He's going to be held to the same standards that the lawyers

25   are held to, which is that the electronics are for notes in

OB73FREC

1    connection with the hearing, but not for communications

2    externally during the proceeding.

3        MR. CARUSO:  Yes, understood.

4        THE COURT:  Okay.  I have a number of things that I

5    want to go over with the parties.  There's one deadline I'm

6    going to set, and then I'd like to hear from the plaintiffs

7    with respect to the status of the information subpoena and the

8    turnover order, and then I'll hear from defendant.

9        The deadline has to do with, Mr. Caruso, your letter

10   on the New York homestead, treating the New York apartment as a

11   homestead.  I am treating your letter as a request to make a

12   motion to modify the turnover order to require the receiver to

13   treat the defendant's New York property as his homestead.

14       In order for the New York property to be treated as

15   his homestead, there would need to be a modification of the

16   turnover order.  I have in mind that you would submit a motion

17   with whatever support you've got for the property to be treated

18   as his homestead by November 14, and then I would set a very

19   short turnaround for the plaintiff.

20       Does that timetable work for you?

21       MR. CARUSO:  Yes, although I want to be sure I

22   understand what your Honor is requesting or directing.

23       Our position is that the Florida condominium is the

24   homestead.  In the alternative, if the Court rules against us,

25   then we claim the New York apartment as the homestead.  But

OB73FREC

1    it's an alternative claim.

2            THE COURT:  Well, so, I want to understand what you're

3    saying.

4            MR. CARUSO:  Of course.

5            THE COURT:  Right now, there is a turnover order

6    that's in effect.  The turnover order permits the receiver to

7    sell the New York property, and does not provide for any of the

8    proceeds of the New York apartment to be returned to your

9    client.

10           As things stand, and unless I modify the protective

11   order, that's what's going to happen.

12           MR. CARUSO:  I understand.  I think I understand now.

13           THE COURT:  If you want me to change the turnover

14   order, I'm giving you the opportunity to make a motion to

15   change the turnover order.  If you don't make that motion, then

16   the order will stand as it is.  You may say that you're

17   claiming this as an alternative, but that has no legal meaning

18   or no legal significance to me as I understand it.  So I'm

19   giving you a deadline.

20           MR. CARUSO:  I'll avail myself of the opportunity.

21           THE COURT:  Okay.  November 14 is the deadline.

22           MR. CARUSO:  Thank you.

23           THE COURT:  Response, Mr. Nathan, by November 18.

24           MR. NATHAN:  That's fine, your Honor.

25           THE COURT:  And a reply by November 21.

OB73FREC

1          So, Mr. Nathan, let me hear from you with respect to

2     the information subpoena and the status of compliance with my

3     turnover order of October 22.

4          MR. NATHAN:  Thank you, your Honor.

5          THE COURT:  It may be easier for both of you for you

6     to address the Court from the podium.  Mr. Caruso, the same

7     rules will apply to you.

8          MR. CARUSO:  Fine, Judge.

9          MR. NATHAN:  Thank you, your Honor.  Beginning with

10    the turnover order.

11         THE COURT:  Why don't we begin with the information

12    subpoena.  Maybe that's a little bit quicker hopefully.

13         MR. NATHAN:  Yes, I think it will be.

14         Beginning with the information subpoena.  We received

15    an unsworn set of responses to the information subpoena about

16    an hour before the Court ordered deadline, which had been

17    5 p.m. I believe on November 5.  A sworn copy followed

18    yesterday.

19         The information subpoena, I have to say, is a little

20    vague.  I would say many of the responses are facially

21    insufficient.  We plan to address that with the defendant.

22         The two responses that jump out which we have flagged

23    in our letters to the Court so far are that for the first time

24    Mr. Giuliani has disclosed new bank accounts that were opened

25    in July 2024, according to these responses.  That was while his

OB73FREC

1   bankruptcy case was still pending.  These accounts, according

2   to the responses, appear to have been opened in his own name,

3   and collectively they contain about $40,000 of cash on account

4   and deposit.

5          The other revelation, new to us, was that, apparently,

6   Mr. Giuliani and two of his associates formed a new limited

7   liability company on August 30.  It's known as Standard U.S.A.

8   LLC.  Not the sort of thing that would show up if you were

9   searching for entities like Mr. Giuliani's other entities that

10  contain the name Giuliani.

11         We don't have any information about how it's used,

12  other than the response to this information subpoena which

13  states that Mr. Giuliani draws income from it.  It also states

14  that he has an 88 percent ownership interest as well as

15  minority interests held by two of his associates.

16         As we have explained in earlier submissions to the

17  Court, and certainly in the bankruptcy case where this was a

18  hot issue, Mr. Giuliani has been routing income historically to

19  the Giuliani Communications LLC entity, and taking the position

20  in the bankruptcy case that those funds were outside of the

21  bankruptcy estate.  I can only imagine what position we'll hear

22  taken with respect to this new LLC.

23         But suffice it to say it's troubling we learned about

24  it on Monday for the first time, after it had been in existence

25  for most of the duration that the restraining notice on

OB73FREC

1   Mr. Giuliani himself and the information subpoena had been in

2   effect.

3           THE COURT:  Are you asking me to take any action now

4   with respect to that?

5           MR. NATHAN:  I think what we'll need is additional

6   information from the defendant.  It won't surprise the Court or

7   the defendant to know that restraining notices and information

8   subpoenas are on their way both to the bank and to those

9   entities.  And if, for that matter, if the defendant or his

10  attorney would like, we can serve those electronically or in

11  person.

12          THE COURT:  You'll work that out with Mr. Caruso and

13  with the defendant.  I take it that there is a restraining

14  notice that is in effect with respect to the defendant, with

15  Mr. Giuliani that applies to his property.  Is that right?

16          MR. NATHAN:  Yes.  That's been true since August 7 I

17  believe is when that restraining notice was delivered to him.

18          THE COURT:  Okay.  So I take it you're not asking me

19  to take any action right now with respect to the information

20  subpoena.

21          MR. NATHAN:  We'll need to meet and confer about the

22  responses.  We'll have other discovery requests to serve and

23  we'll be back to the Court if we need any relief in connection

24  with any of that.

25          THE COURT:  There was only one answer that caught my

OB73FREC

1  attention.  It caught my attention simply because I'm presiding

2  over discovery in connection with this matter.  It was the

3  answer to question number 13 that called for the names and

4  addresses of any person with knowledge or information

5  concerning the nature, extent, and location of any assets owned

6  or controlled by Mr. Giuliani.  The only name that was given

7  was Mr. Giuliani himself.

8          That quite surprises me that there's nobody else in

9  the world that has knowledge with respect to any of the assets

10  owned or controlled by Mr. Giuliani.

11          Mr. Caruso, is that an accurate answer?

12          MR. CARUSO:  One moment, your Honor, please.  Pardon

13  me.  Item 13 did your Honor say?

14          THE COURT:  Yes.

15          MR. CARUSO:  I will look into that and report back.

16          THE COURT:  Your client is right there.  Do you want

17  to just chat with him and see if it should be amended?

18          (Conferring)

19          MR. NATHAN:  I just heard Mr. Giuliani say he asked

20  there be no name given because he didn't want to provide the

21  name of any other people.

22          THE COURT:  Mr. Nathan, Mr. Giuliani is entitled to

23  have a conversation with Mr. Caruso outside of your hearing.

24          MR. NATHAN:  I would be -- that wouldn't be a problem,

25  but that wasn't out of my hearing.

OB73FREC

1          THE COURT:  Mr. Giuliani and Mr. Caruso, you can have

2    a private conversation.  Try to keep the tone low.  If you want

3    to step into a corner for a second, that's also fine.

4          MR. NATHAN:  I do need to correct the record about one

5    thing, your Honor.  The copy I'm holding is the unsworn copy of

6    the responses.  The sworn responses appear to have been

7    modified, although not in the respect that we're discussing

8    right now.

9          MR. CARUSO:  If your Honor please, I have no names to

10   add at this point.  Mr. Giuliani in fact has asked me, told me

11   that he wanted his name taken off that.  Please give me some

12   time to respond, please.

13         THE COURT:  The notion that your client doesn't have

14   any knowledge about where any of his assets are located is

15   farcical.

16         It's now Thursday.  If you want the information

17   subpoena to be amended with respect to item number 13, you've

18   got until 5 o'clock on Monday.

19         MR. CARUSO:  Thank you.

20         THE COURT:  Otherwise, it's under oath, and it's a

21   document that has been submitted now to this court under oath.

22         MR. GIULIANI:  Your Honor, since it's under oath, can

23   I explain it?

24         THE COURT:  Only if Mr. Caruso wants you to.

25         MR. CARUSO:  Perfectly happy to allow him to speak and

OB73FREC

1    say his views to the Court.

2            THE COURT:  Mr. Nathan, any objection to that?

3            MR. NATHAN:  No objection.

4            MR. GIULIANI:  Your Honor, when I saw the affidavit, I

5    asked my lawyer to take my name off, because I didn't want to

6    provide any name.  Because I realized if it had my name, it

7    would appear to be false.  It wasn't taken off.  I didn't know

8    that.

9            The reason I did that was, I didn't want to provide

10   additional names, because the people who have been involved in

11   being under discovery by these people for the last 3 years have

12   virtually been tortured.  I mean, they have been driven crazy.

13   They have been given subpoenas like this was an AT&T case.

14   They've been treated rudely.  I don't want to sacrifice them.

15   This isn't really a case.  It is a persecution.

16           THE COURT:  Mr. Giuliani, you don't have the right to

17   exercise self-help.  The answer is that you're submitting

18   something under oath that indicates the name of anybody who

19   knows the location of any of your assets.  My expectation is

20   that you are going to answer that question truthfully, and

21   fully.  And if necessary, I'm going to have you take the stand

22   and testify under oath.

23           Now, if there are issues with respect to the way in

24   which people are treated who get requests for information, who

25   are requested to be deposed, who get subpoenas, then you can

OB73FREC

1  have that taken up through your lawyer with me.  Nobody is

2  going to be mistreated subject to my jurisdiction.  But, nobody

3  is going to exercise self-help.  You're going to answer that

4  question truthfully and fully.

5          Do you understand that?

6          MR. GIULIANI:  Yes, your Honor.  It was my intention

7  to answer it -- I didn't want to answer the question.  I have

8  no --

9          THE COURT:  I understand you don't want to answer it.

10  You are now being ordered to answer it.

11          Do you understand that?

12          MR. GIULIANI:  I do.

13          THE COURT:  Any ambiguity about that?

14          MR. GIULIANI:  I thought we could raise with you that

15  some of the questions are inappropriate because of the way the

16  people were being treated.

17          THE COURT:  Okay.  You have raised that.  The

18  objection is overruled.  You are going to answer number 13

19  completely and fully.

20          Do you understand that?

21          MR. GIULIANI:  I do.

22          THE COURT:  Okay.  If, Mr. Caruso, if there are any

23  issues with the way in which people are treated, I trust you

24  will bring them to me.  You know my individual rules.  They

25  encourage parties to bring things to me, to my attention,

OB73FREC

1    quickly.

2              You meet and confer with Mr. Nathan.  If he's not

3    available to you, then you can just raise it with me.  When I

4    say Mr. Nathan, it is Mr. Nathan or anybody on his team.  Raise

5    it to me.  I haven't been slow in acting on requests by any

6    party in this case or frankly any other.

7              MR. CARUSO:  I understand, your Honor.  I think the

8    point Mr. Giuliani is making is that the discovery efforts, not

9    only against him but against non-parties, have been extremely

10   aggressively and are continuing to be.  That's the point.

11             THE COURT:  If you've got a well-founded complaint,

12   bring it to me.  I'm not going to require the plaintiffs to

13   answer that because it's not actually cognizable now in the

14   form of a motion.

15             MR. CARUSO:  I understand.

16             THE COURT:  Mr. Nathan, all right.  Let's go to the

17   turnover order.

18             MR. NATHAN:  Thank you, your Honor.

19             With respect to the turnover order, there is nothing

20   to add to the letters that have been filed with the Court.  The

21   receivers have yet to take any property into custody.  Any

22   physical property, I should say, other than the legal rights

23   that have been included in the receivership by operation of

24   law.

25             As we set out in I think our most recent two or three

OB73FREC

1    letters to the Court, the defendant's position as to his own

2    obligations under the turnover order seems to be that, you

3    know, it's really our problem to come and get the stuff.

4            The problem with that is that the defendant is subject

5    to a direct order to deliver the receivership property to us.

6    With respect to some of that property, I would say the vast

7    majority of it, physical property, we have no idea where it is.

8            THE COURT:  Let me ask you, with respect to the

9    personal property, let's leave aside the car for the moment and

10    let's leave aside the interests in the New York property.

11            But the remainder of the wristwatches, the art, so

12    forth, where do you want it delivered and when?

13            MR. NATHAN:  We would make available -- we have a

14    moving and transportation and storage company that's standing

15    ready.  If Mr. Giuliani were in fact ready to deliver it, we

16    could provide a date and a location within 24 hours.

17            THE COURT:  Do you have one right now?  As I read the

18    receivership order, it requires the defendant to turn over the

19    personal property at the receivers' direction to the place the

20    receiver directs.  I'll permit Mr. Caruso to respond, but I can

21    understand -- Mr. Caruso, I'm not going to permit you to

22    respond right now.

23            MR. CARUSO:  Understood.

24            THE COURT:  I'm asking Mr. Nathan for his position,

25    then you'll have a full opportunity.

OB73FREC

1            MR. NATHAN:  Yes, that could be arranged.  You know,

2      it would be almost trivially easy.  It is a matter of a few

3      e-mails and phone calls to arrange it with our moving and

4      transportation company.

5            One issue is that as is the case with moves in

6      general, there are logistical considerations on both ends, and

7      one is how much stuff there is.  What are the storage needs and

8      so forth.  That's how we came to arrange for the representative

9      of that company to visit the New York apartment, thinking that

10     that would be the location where the majority of the relevant

11     property was located.  And of course that visit revealed that

12     it's no longer there.  I should say, a substantial amount of it

13     is no longer there.

14            The short answer is, we're ready to take delivery of

15     it.  And as we --

16            THE COURT:  Have you given direction to the defendant

17     of a particular location and a particular time?

18            MR. NATHAN:  The process broke down before we could

19     get that far, because as soon as we started asking direct

20     questions about, you know, where things were, if we wanted to

21     come and pick them up, we started to learn that in fact

22     defendant couldn't answer those basic questions.

23            THE COURT:  So why do you need to know where they are?

24     I don't care whether you're receiving them in New York or

25     Florida or anywhere else.  As far as I read my order, you can

OB73FREC

1    just designate a place.  Why do you need to know?

2              MR. NATHAN:  We agree with that, and we were taking

3    what we thought would be -- and actually I think it's

4    defendant's position, too, that the approach here should be

5    that we make the arrangements, we arrive, and we take the stuff

6    into custody.

7              That was what appeared to be on offer until we started

8    asking questions about where we would have to arrive and what

9    stuff would be there when we got there.

10             We agree with your Honor's interpretation of the

11   turnover order that if we were to say to the defendant, "Make

12   sure that everything that's covered by the receivership order

13   arrives at this date and time in this location," that would be

14   a valid directive pursuant to the order and he would be

15   obligated to comply.

16             We're also realistic about the logistical challenges

17   that are involved in that, and we were trying to work through

18   those with the defendant before this process broke down.

19   That's the only reason we didn't start with that exact

20   directive, is because our posture, at least initially, was more

21   cooperative than that.

22             THE COURT:  Maybe these are questions for Mr. Caruso.

23   But, leave aside the entry with respect to various items of

24   furniture which may have some ambiguity with respect to it, and

25   maybe, maybe costume jewelry does.  But a lot of the other

OB73FREC

1    items are, number 1, fairly specific, and number 2, appear to

2    be fairly small in size.  I'm looking at the turnover order

3    page 17.

4              MR. NATHAN:  I have it in front of me.

5              THE COURT:  And 18.  That refer to watches, a couple

6    of pictures, a shirt.  I'm really, I'm not getting what's

7    happened in the issues here in terms of the turnover.

8              MR. NATHAN:  I would say that both the various items

9    of furniture, some of which are quite valuable, based on our

10   inspection of the public photographs of the interior of one of

11   the apartments, the category of sports memorabilia of which

12   there are a handful of enumerated examples, and costume

13   jewelry, as your Honor pointed out, there's a lot of known

14   unknowns covered by the receivership order.

15             Without knowing exactly what we were dealing with,

16   giving a directive that the defendant ship all of that to us at

17   a date and time of our choosing struck as an unreasonable ask,

18   without first attempting to confer on a different solution.

19             But we stand ready to accept your Honor's suggestion

20   to issue that directive and give the defendant a deadline.  I

21   don't really know, frankly, how he's going to satisfy us or the

22   Court that he's exhausted the categories described in this

23   order.  Categories that he did not object to when we sought

24   turnover of, for example, various item of furniture and sports

25   memorabilia.  I don't know how we can know, unless he provides

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

OB73FREC

1    the information, that he's actually satisfied his obligations

2    by delivering up all of those items.

3            THE COURT:  So, what is it that you want me to do with

4    respect to the turnover order?  Again, I'm going to ask

5    Mr. Caruso, but I would have thought it was pretty clear and

6    unambiguous in terms of the powers it gives the receiver and

7    the obligations it places on the defendant and his agents.

8            What are you asking me to do?

9            MR. NATHAN:  Well, I think two things, your Honor.

10   One, we agree the powers that it gives the receiver are clear

11   and unambiguous, and we have made clear and unambiguous

12   requests for information that have been deflected or ignored.

13           I would say early in our conversations the answers

14   were partial at best, then evasive, and for the last few days

15   we've been met with silence.

16           We would like your Honor to remind or, I don't know,

17   caution the defendant that he's actually obligated to comply

18   with directives of the receivers issued pursuant to the

19   receivership order.  It's not up to him to decide how to

20   comply.  It's up to the Court, and it's up to the receivers,

21   acting pursuant to the receivership order.

22           Item number 2 is, if the defendant and the Court

23   prefer, we don't have any problem with the option that you've

24   suggested.  We can give the defendant a deadline, a place, and

25   all the delivery coordinates he would need to make sure

OB73FREC

1    everything covered by the order gets to where it needs to be.

2            Now, having said that, again, I suspect that procedure

3    may invite more disputes than it resolves.  Our history with

4    the defendant just in terms compliance with court orders in

5    general is, you know, delay and then evasion.  We don't want to

6    repeat that process here.  But, we are prepared to set that

7    deadline and give that location, if that's the preference of

8    the defendant and the Court.

9            THE COURT:  As we sit here today, is there a directive

10   of the order that I issued that you contend Mr. Giuliani is in

11   violation of?

12           MR. NATHAN:  Yes.  We have repeatedly asked and

13   instructed --

14           THE COURT:  Tell me which paragraph.

15           MR. NATHAN:  Yes.  Paragraph 4(f) which I've referred

16   the defendant's counsel to repeatedly in connection with these

17   requests.

18           MR. CARUSO:  May I have a page number, please.

19           THE COURT:  It's page 21.

20           MR. NATHAN:  Page 21 both in the docket stamp and of

21   the internal PDF page.

22           MR. CARUSO:  One moment, please.  Thank you.

23           THE COURT:  You may proceed.

24           MR. NATHAN:  Paragraph 4(f) says that the defendant

25   and his agents are, and a handful of others, are ordered to

OB73FREC

```
1    comply with directives of the receivers issued pursuant to this
2    order to execute and deliver any documents the receivers'
3    request.  It goes on to specify that that includes executing
4    any documents that turn out to be necessary for us to take
5    possession of the property as counsel representatives of the
6    receivers, but it is not limited to that situation.
7         When we asked for information about the location of
8    receivership property, the defendant has to answer those
9    questions.  This isn't a discovery posture anymore.  The
10   property, you know, he no longer has possessory right to it,
11   and he's got to tell us where it is.
12        There are plenty of other provisions that are annexed
13   to reinforce that, including that he can't divert or conceal
14   property and he can't interfere with the receivers' right to
15   possession of the property.
16        But we've asked over and over again where this stuff
17   is and he's refused to answer.
18        It turns out, with some of it, at the time that he
19   told the Court he was ready to deliver it, he didn't know where
20   it was.  I don't know how he could have made that
21   representation to the Court, given what we've learned so far,
22   but that's how this process has played out up until this point.
23   I assume in the interim he's been working, or I would like to
24   assume he's been working on tracking it down.  And if he's
25   prepared to pack it all up and ship it, we're prepared to do it
```

OB73FREC

1    that way.

2             THE COURT:  All right.  Mr. Caruso, let me hear from

3    you.

4             MR. CARUSO:  Yes, sir.  Thank you, Judge.  I'm going

5    to start with --

6             THE COURT:  Tell me what seems to be the problem.

7             MR. CARUSO:  Well, I think what the problem is, is

8    that Mr. Nathan's far more interested in trapping Mr. Giuliani

9    into more allegedly false statements than he is in getting the

10   property.

11            THE COURT:  What if we simply set a date by which all

12   of the property were to be delivered to, I don't know, the

13   offices of Willkie Farr & Gallagher in New York, New York, just

14   set it for -- it was supposed to have been turned over by

15   October 29.  It's now mid November.  So Monday, just deliver

16   the stuff over.  The receiver has that power to just say bring

17   this stuff to me wherever I am and wherever I want.

18            MR. CARUSO:  Yes, but he hasn't done that.  What he's

19   asking me for, for a week or more, is I want an inventory.  I

20   need an inventory.  I need to know where this stuff is.  I need

21   to know what it is.

22            We told him where it is.  It's in Palm Beach, it's in

23   a storage facility in Ronkonkoma, and it's in the New York

24   apartment.  Three places.

25            THE COURT:  What date do you want me to set for your

OB73FREC

```
 1    client to deliver everything that's in the receivership order

 2    to the place that's designated by Mr. Nathan?

 3            MR. CARUSO:  Just let me go through a few items here,

 4    please.

 5            THE COURT:  I'll set a date certain.

 6            MR. CARUSO:  I understand that.  May I just --

 7    everything in the New York apartment has been delivered.

 8    They've got access.  Everything in the Ronkonkoma facility --

 9            THE COURT:  Mr. Nathan, sit down.  You'll have an

10    opportunity, just like I gave Mr. Caruso an opportunity.

11            MR. CARUSO:  Yes.  The material in the storage

12    facility in Ronkonkoma, we have no control over.  At least I

13    got a laugh out of this.

14            THE COURT:  I mean, that to me is a question for a

15    later contempt hearing, not for compliance with the order.

16            MR. CARUSO:  I think it is a 5225(b) claim they have.

17            THE COURT:  Isn't the right approach to that, I've

18    ordered your client to turn over all of this property, and your

19    client consented to, said he had possession of all of this

20    property at the time that I entered the order.

21            Procedurally, he doesn't have a choice but to comply.

22    If it becomes impossible for him to comply, then the plaintiff

23    moves for contempt, your client gets on the stand, and he goes

24    through all of the efforts that he made to get it and why he

25    was frustrated.
```

OB73FREC

1           It strikes me as kind of hard to believe that your

2    client would not be able to get somebody at the storage

3    facility to open up the storage facility to get his property.

4    It's not clear to me what efforts he's made.

5           MR. CARUSO:  I'll tell what you efforts we've made.

6           THE COURT:  No.  What efforts he made.

7           MR. CARUSO:  He didn't make any efforts other than

8    what I made.

9           THE COURT:  Okay.  That's kind of -- you might

10   consider your words, because it does play into what will happen

11   if there were a contempt proceeding against him.

12          MR. CARUSO:  May I just make a point for the record.

13   I don't see how a defendant, a judgment debtor, can be held in

14   contempt with respect to the non-delivery of property that is

15   in the possession of a garnishee.  I don't see it.

16          THE COURT:  You can later argue that to me, but one

17   thing that you'll have to convince me of is that even if it's

18   in the possession of somebody else, he has no ability to

19   control that or to access that and what efforts he's made.

20          MR. CARUSO:  I understand, thank you.

21          MR. GIULIANI:  And --

22          MR. CARUSO:  One moment, please.

23          THE COURT:  Okay.

24          (Conferring)

25          MR. CARUSO:  Mr. Giuliani reminds me, neither he nor I

OB73FREC

1    have any objection to the plaintiffs going and looking at

2    whatever is out there.

3          THE COURT:  No, but it's not their obligation.  It is

4    his obligation or his agent's obligations to deliver it to

5    them.  That's the order.

6          MR. CARUSO:  In that case, you and I, we can discuss

7    it some other day.  But we have a different view of the law.

8          THE COURT:  Just tell me what in my order is

9    ambiguous.

10          MR. CARUSO:  What's ambiguous is the duty cannot run

11    beyond what the judgment debtor's capable of doing.  The

12    judgment debtor is not in possession of the property in the

13    Ronkonkoma storage facility.  So therefore, we discharge our

14    duty by telling the proprietor of the Ronkonkoma storage

15    facility, turn it over.

16          THE COURT:  My order, paragraph 2, says it is hereby

17    ordered, and cites the relevant rules, that within seven days

18    of this order, defendant shall deliver to plaintiff receivers

19    and execute and deliver any document necessary to effectuate

20    delivery to plaintiff receivers of all of the receivership

21    property enumerated below.

22          Is there anything ambiguous about that language?

23          MR. CARUSO:  Yes.  I believe what's ambiguous about it

24    is that it is implicit that "deliver" means that the judgment

25    debtor is in possession.

OB73FREC

```
 1              THE COURT:  Okay.  You will argue that to me at some
 2   other point.  But let me tell you right now what I'm going to
 3   make clear with respect to that order, which is that he is
 4   under an unqualified obligation to deliver all of the
 5   receivership property to the receiver.  All of that is property
 6   that, at the time that I entered this, I found that he
 7   possessed.
 8              And if he doesn't comply, then I'm sure that I'm going
 9   to get a motion for contempt.  And you and I both know the
10   standards of contempt.  He's not going to be in contempt if
11   he's made efforts and it's impossible to comply with the order.
12   But that's the standard that he's going to be held to.
13              MR. CARUSO:  All right.
14              THE COURT:  And you know, if he hasn't delivered, and
15   there was a way in which he could have delivered, then there
16   will be contempt sanctions.
17              MR. CARUSO:  I appreciate your Honor saying this is an
18   issue for a future discussion.
19              THE COURT:  Okay.  So, what can be delivered right
20   now?
21              MR. CARUSO:  May I have one moment, please.
22              With respect to items in Palm Beach, certain watches
23   can be delivered promptly.
24              THE COURT:  Do you have the turnover order in front of
25   you?
```

OB73FREC

1           MR. CARUSO:  I do.

2           THE COURT:  All right.  Let's turn to page 17.  Tell

3   me what's in Palm Beach and what can be delivered right now.

4           MR. CARUSO:  Oh, the answer is I don't know.  With

5   respect to the watches, they can come and get them.  If it's

6   insufficient, I'm sure we'll hear from Mr. Nathan.

7           THE COURT:  Do you want to confer with your client to

8   ask him what's in Palm Beach from number 17?

9           (Conferring)

10          MR. GIULIANI:  The watches?

11          MR. CARUSO:  I believe that's what we are talking

12  about here, yeah.

13          I am informed that if you look at page 17 and 18, your

14  Honor, of this order, that starting with two Bulova watches,

15  down to on page 18, six additional watches, let me just respond

16  with respect to those.

17          I am told that the statement, for lack of a better

18  word, "two Breitling watches" is incorrect.  That there is only

19  one.  And I'm told that Mr. Giuliani does not -- not know

20  exactly what the six additional watches consist of.

21          But, with respect to watches, he's entitled to one as

22  an exemption under 5205.  And with respect to, there's a

23  footnote in your Honor's opinion and order, footnote 1, whether

24  Mr. Giuliani's grandfather's watch, which they insist on

25  getting, which any objective observer would regard as

OB73FREC

1    vindictive.

2            THE COURT:  Come on.  That's ridiculous.  Every day

3    here I have people who come in -- not every day, but I do have

4    people who come in as judgment debtors who run, you know,

5    bodegas who short their employees of minimum wages, and they've

6    got items that are family heirlooms and the like.  And if they

7    owe a debt, they have to pay the debt.  It doesn't matter that

8    it's in the form of a watch or watch that somebody handed down

9    to him.  I mean, the law is the law.  And I don't apply it

10   differently to your client than I apply it to the folks in my

11   Ramen-Ya case who operated a bodega.

12           I mean, if you've got a claim for an exemption, then

13   procedurally if you can make it, make it.  But, don't come to

14   me and say, you know, something is vindictive when it's

15   judgment creditors trying to collect something from a judgment

16   debtor that New York law seems to say that they are entitled

17   to.  People are treated the same.

18           MR. CARUSO:  Forgive me if my comment about

19   vindictiveness, if your Honor thought I was addressing it to

20   you.  I wasn't.  I was addressing it to the plaintiffs.

21           THE COURT:  I understood you to be addressing it to

22   the plaintiffs.

23           MR. CARUSO:  Thank you.  I'm glad we didn't have a

24   misunderstanding.

25           THE COURT:  Okay.

OB73FREC

1          MR. CARUSO:  Now, we'll pursue this footnote 1 with

2    respect to the grandfather's watch, and he is entitled to one

3    watch as an exemption under 5205.

4          He is also entitled to an exemption for household

5    furnishings in both New York and Palm Beach under 5205,

6    subdivision 5.  We'll claim that.

7          With respect to the automobile, he's entitled to an

8    exemption for an automobile that's worth less than $4,000.  I

9    am told that a 54-year-old car that he currently owns is worth

10   less than $4,000.  I'd like the opportunity to have an

11   appraisal of that.

12         THE COURT:  I don't think so.  I think the time is too

13   late for that.

14         Mr. Nathan?

15         MR. CARUSO:  I think your Honor has ample discretion

16   to change the timing on this.

17         THE COURT:  I entered an order.

18         MR. NATHAN:  I'm not sure what's going on here.  It

19   sounds like Mr. Caruso is trying to argue in opposition to a

20   turnover receivership order that's already been briefed and

21   decided.  He filed a brief in opposition.  It didn't object to

22   the inclusion of these items in the receivership.  That issue

23   has been decided, as far as we are concerned.

24         THE COURT:  I think that's right, Mr. Caruso.  As to

25   the grandfather's watch, I decided that.  I decided that it has

OB73FREC

1    to be turned over.

2            MR. CARUSO:  But your Honor has ample discretion to

3    modify an order.  Ample.

4            THE COURT:  You know, you could have made a motion, I

5    suppose, for reconsideration of my order within the 14 days

6    that exists for reconsideration.

7            MR. CARUSO:  Your Honor has ample discretion to hear

8    that even after 14 days.

9            THE COURT:  I do, but you have no right to make it,

10   and we're talking about compliance with an order.

11           So, are the watches down from the Bulova watches to

12   the Baume & Mercier watch in the Palm Beach apartment?

13           MR. CARUSO:  I'll repeat what I said a few minutes

14   ago.  I'm told they are in the apartment in Palm Beach with the

15   exceptions or clarifications I mentioned about six of them.

16   There may not be six.  He's not familiar with six of them.

17   There is one Breitling, not two Breitlings.

18           THE COURT:  Mr. Nathan, you'll tell me where you want

19   the watches to be delivered.

20           What about the rest of the property?  Where is that

21   and what efforts have been made with respect to it?

22           MR. CARUSO:  Wearing apparel is exempt.  I don't know

23   what wearing apparel the plaintiffs took from New York.  But

24   we'll get it back in due course.

25           Tools of the trade are exempt under --

OB73FREC

1        THE COURT:  We're talking about page 17.

2        MR. CARUSO:  All right.

3        THE COURT:  I've only issued a turnover order with

4   respect to what's on page 16, 17, and 18.

5        MR. CARUSO:  All right.  In that case, shares

6   evidencing defendant's interest.  We gave them what they wanted

7   a week ago.  They wanted more.  I said you've got everything

8   you need.  They haven't, as far as I know, they haven't pursued

9   the shares with the co-op board I believe.

10        THE COURT:  I am going to ask Mr. Nathan about that.

11   But okay.  And I gather, from your perspective, that's in

12   progress?

13        MR. CARUSO:  Not only that, from my perspective we've

14   done everything we can.

15        THE COURT:  Okay.

16        MR. CARUSO:  All rights and interests in a cause of

17   action for fees owed to Mr. Giuliani by former President

18   Trump's presidential campaign.

19        We haven't heard a peep about that from the

20   plaintiffs.  That tells me something.  They are not really

21   interested it anymore because Election Day has come and gone.

22   They don't care about that money.  They wanted that to make a

23   political statement.  I suppose they'll ask for it now just to

24   the save face.  But not a peep about that.  The election is

25   over.

OB73FREC

1          THE COURT:  How much money is owed?

2          MR. CARUSO:  I think it was $2 million.  Mr. Nathan,

3    am I correct about that?

4          THE COURT:  Why don't you ask Mr. Giuliani.

5          MR. CARUSO:  Okay.  But I think that was in the papers

6    that they submitted.

7          (Conferring)

8          MR. CARUSO:  He doesn't remember.  But my recollection

9    from prior court filings is $2 million.

10          THE COURT:  Okay.

11          MR. CARUSO:  Non-exempt cash accounts.  A whopping

12    $3,000 in a bank account, and we told Mr. Nathan --

13          THE COURT:  $3,000 is real money.  It's real money to

14    me; it's real money to you; I'm sure it's real money to the

15    plaintiffs here.

16          MR. CARUSO:  Real money to everybody.  But we told

17    them a week ago, go get it from Citibank.

18          THE COURT:  That's your obligation to get it from

19    Citibank.  If Citibank refuses a directive from your client to

20    turn over the $3,000, you'll bring to me what they communicate

21    to you refusing to honor it.  You'll bring it and then I'll

22    take care of it.  But your client makes that request to Citi,

23    to the account that is designated by the receiver.

24          MR. CARUSO:  When met with futility, we'll bring it to

25    the Court.  Is that right?

OB73FREC

1           THE COURT:  Yes.

2           MR. CARUSO:  One moment, please.

3           (Conferring)

4           MR. CARUSO:  Mercedes Benz I believe we've discussed.

5           THE COURT:  No, I don't think we have discussed.  So,

6    the keys and the title paper, it's a paper title, easy enough

7    to sign it.  Does he have the title?

8           MR. CARUSO:  Yes, Palm Beach.  I've been telling them

9    for weeks, send somebody.  Send somebody.

10          THE COURT:  No.  I gather he was in Palm Beach.  It is

11   a paper title.  He can just deliver the title document and

12   deliver the keys and then tell them where the car is.

13          MR. CARUSO:  Yes.  Deliver to whom?

14          THE COURT:  Where is the title document?

15          MR. CARUSO:  It's in Palm Beach.  Your Honor, I agree

16   he can deliver the document.  But to whom?  Nobody's told us.

17   They haven't sent anybody.

18          THE COURT:  When is he going to deliver the title

19   document and the keys?

20          MR. CARUSO:  As soon as they send somebody to get it.

21          THE COURT:  They can designate where it's sent.  How

22   soon is your client going to turn over the title and the keys?

23          MR. CARUSO:  Promptly.

24          THE COURT:  So Monday.  Is that promptly?

25          MR. CARUSO:  If I get instructions by Monday.

OB73FREC

```
1          THE COURT:  Okay.  Monday, the title and the keys will
2    be delivered as well as the physical location of the car.
3          MR. CARUSO:  Items of furniture.  Those are except
4    exempt.  Television, he's entitled to one television.
5          THE COURT:  We already dealt with the bit about
6    exemption.  You've lost on that.
7          MR. CARUSO:  Fine.  One moment.
8          THE COURT:  You had an opportunity to brief all of
9    this and you didn't.
10         (Conferring)
11         MR. CARUSO:  With respect to the next items, starting
12   with sports memorabilia, my client believes that all of those
13   items, and there are one, two, three, four are in the storage
14   facility in Ronkonkoma.
15         THE COURT:  So that applies to sports memorabilia
16   generally.  The Reggie Jackson picture, the Yankee Stadium
17   picture, and the Joe DiMaggio shirt?
18         MR. CARUSO:  Yes, but he's not really sure what the
19   signed Yankee Stadium picture refers to.
20         THE COURT:  We'll deal with that when it's turned over
21   and we'll see whether there is an issue.  Maybe there is not an
22   issue.  Okay.
23         So, your client's obligated to deliver those.  If he
24   makes efforts and it's impossible, then, you know, then he's
25   got a defense.
```

OB73FREC

1          Costume jewelry.  While you're there, the diamond
2   ring.
3          MR. CARUSO:  Yes.
4          (Conferring)
5          MR. CARUSO:  Your Honor, I understand that the costume
6   jewelry is unclear, but, some of it is probably -- strike
7   "probably."  Some of it is in Ronkonkoma and some of it is in
8   Palm Beach.
9          But the words "costume jewelry" are -- I think vague
10  would be the right word rather than ambiguous.
11         Diamond ring, Palm Beach.
12         THE COURT:  Okay.  Anything else before I turn to
13  Mr. Nathan?
14         MR. CARUSO:  Wait.  May I look at my notes, please.
15         THE COURT:  Of course.  Take your time.
16         (Pause)
17         THE COURT:  I apologize if I cut you off before on
18  anything.  We've got plenty of time.
19         MR. CARUSO:  I am accustomed to be cut off in much
20  harsher ways than that.  One moment, sorry.
21         Just let me confer.
22         THE COURT:  Okay.
23         (Conferring)
24         MR. CARUSO:  I believe I'm finished, Judge.
25         THE COURT:  Mr. Nathan, on the car and on the Palm

OB73FREC

1    Beach property, you'll designate the location where on Monday

2    that's to be delivered.

3              MR. NATHAN:  We will do that, your Honor.

4              THE COURT:  Okay.  But what's the story with respect

5    to the apartment?  It sounds like things are in progress.

6              MR. NATHAN:  Things are now in progress.  With respect

7    to the apartment, we're in touch with attorneys for the co-op

8    board, and they've been working cooperatively with us.

9              That is an item, however, that subject to the

10   receivership order, Mr. Giuliani was obligated to deliver to us

11   the cooperative shares, the certificates, and the proprietary

12   lease.  And after his counsel represented to this Court that

13   those items were ready for delivery, we immediately asked where

14   they were so we could come and get them.  And only then did we

15   learn, not only did they not know, and now we've learned they

16   have lost those documents, the documents were never even

17   updated following the divorce to reflect the transfer of

18   ownership into Mr. Giuliani's sole interest.

19             That's the item on which my understanding from

20   representations made by Mr. Giuliani's counsel that they have

21   been in touch with the co-op board about that issue.  And

22   that's important, because that's paperwork that needs to get

23   done before the documents can be updated to reflect the actual

24   state of affairs with respect to the co-op shares.

25             If I may, your Honor.

OB73FREC

1          THE COURT:  Let me ask you with respect to that, I'm

2     assuming that you are able to work with the co-op board to get

3     the shares issued and get the paperwork taken care of.

4          MR. NATHAN:  Yes, your Honor.

5          THE COURT:  If there is an issue with respect to that,

6     don't I have some authority with respect to compelling the

7     co-op board?

8          MR. NATHAN:  You do, and I have no reason to think

9     that authority will need to be invoked here.  The co-op board

10    is represented by competent and cooperative counsel.  We've

11    been in touch with them, and we've had no issues with them

12    whatsoever.

13          To be clear, Mr. Giuliani and his counsel have

14    provided verbal authorizations that we are aware of to permit

15    access.  They've provided a verbal assurance that neither

16    Mr. Giuliani nor his associates are going to access the

17    apartment themselves.  I heard Mr. Caruso say, and I read in

18    his letter, they've also been in touch about fixing the issue

19    with respect to the transfer out of his and his ex-wife's names

20    jointly, as to reflect the consequences of the divorce decree

21    that was entered in 2019 or 2020.

22          THE COURT:  I take it, Mr. Caruso, there is no

23    question that the property belongs to Mr. Giuliani, or at least

24    belonged before my turnover order?

25          MR. CARUSO:  There is no question in our minds.

OB73FREC

```
 1   However, the lawyers for the co-op said that their records
 2   still reflect the ownership in Mr. Giuliani and his ex-wife.
 3   They asked for proof that it was now the property of
 4   Mr. Giuliani alone.  We sent them the proof.  And we have heard
 5   nothing further.
 6           THE COURT:  And I gather the ex-wife has not made any
 7   competing claim?
 8           MR. NATHAN:  Not that we are aware of, and there's
 9   no -- our understanding of the facts and the law on that
10   question, your Honor, there is no ambiguity about the
11   consequences of the divorce decree entered, and we don't expect
12   there to be any issues with respect to that.
13           But I cannot emphasize enough you have not heard us
14   complain about the New York apartment itself.  And it's not a
15   coincidence.  That's the one piece of property that is sitting
16   here in Manhattan, and can't be moved.  With respect to
17   everything else, there has been nothing but game playing, and
18   anything --
19           THE COURT:  Okay.  But that's, you know, you put that
20   in letters to me.
21           MR. NATHAN:  I have.  And I just don't want to give
22   the impression that the cooperation with respect to the New
23   York apartment is representative of the judgment debtor's
24   conduct with respect to all the other property.  And we're only
25   raising complaints with respect to items where we have things
```

OB73FREC

1    to complain about.

2                MR. CARUSO:  May I be heard, your Honor?  May I be

3    heard, please?

4                MR. NATHAN:  I need to correct the record.

5                THE COURT:  I'll give you a chance to be heard.  But I

6    will make a comment to Mr. Nathan.

7                My purpose here today is to ensure that going forward

8    my order is complied with.  If there are ambiguities, to

9    address the ambiguities.  My purpose is not to litigate the

10   past.  So, there may come a time for that.  I don't think that

11   time has arrived, and hopefully it will never arrive.

12               If you want to correct the record on something, I'll

13   give you a limited opportunity to do that.  I'll give

14   Mr. Caruso a limited time to do something.  But just so you

15   understand what my objective is here.

16               MR. NATHAN:  I appreciate that, your Honor.  Some of

17   the things Mr. Caruso just said now unfortunately leave me no

18   choice, but I'll keep it limited to those things where I really

19   think there is no wiggle room on the truth of the matter.

20               One of those, with respect to the accusation that we

21   acted vindictively with respect to Mr. Giuliani's grandfather's

22   watch.

23               THE COURT:  You didn't.  You were the one who said you

24   might be permitted to let him hold onto the watch.  And my

25   order said there hadn't been a claim for an exemption that was

OB73FREC

1    well supported.

2                MR. NATHAN:  That's right, your Honor.  And not only

3    that, but when he claimed his exemption, he cited the wrong

4    provision of the CPLR.  We fixed that for him and offered to

5    recognize the exemption if he would support it.  He hasn't done

6    that yet.  Your Honor gave him an opportunity to, and gave the

7    receivers the option to recognize it if and when he does.  But

8    he hasn't.

9                With respect to, I heard Mr. Caruso imply that the

10   receivers took property, maybe wearing apparel from

11   Mr. Giuliani's apartment.  I don't know what that's based on.

12   I don't know what the factual basis for that acquisition is.

13   If he has one, he should bring it forward.

14               Nothing was taken out of the apartment, and I don't

15   understand how he could be in a position to imply otherwise.

16               On the other hand, I need to emphasize to your Honor

17   that Mr. Giuliani is not only subject to the receivership

18   order.  He has been subject to a restraining notice since

19   August 7.  It is now our understanding, although he's refused

20   to answer direct questions about when this occurred, while that

21   restraining notice was in effect, he had property moved out of

22   his New York apartment that he concedes is subject to the

23   restraining notice.

24               I don't see how he could dispute, subject to the

25   restraining notice that is now subject to the receivership

OB73FREC

1  order, and his position now is it has been moved somewhere

2  beyond his control to retrieve it.

3       I don't understand how a judgment debtor with property

4  subject to a restraining notice can divest himself of control

5  over the property, and take the position he hasn't violated the

6  restraining notice.

7       If he has an explanation for that, we're ready to hear

8  it.  But if he doesn't, and we have any issues promptly gaining

9  access to the property held in Ronkonkoma, we're going to raise

10 those with the Court as well.

11      THE COURT:  Listen, you know the procedure.  So does

12 Mr. Caruso.  Restraining notices are treated as orders of the

13 court.  The violation of them is subject to contempt.  It's not

14 a power that I would like to exercise.

15      But griping back and forth doesn't help me all that

16 much, unless there is actually a pending motion.  So gripe to

17 each other, and if the griping has been exhausted, come to the

18 Court for relief, and we'll see whether you're entitled to it.

19      MR. NATHAN:  Finally, your Honor, well, two things.

20 Mr. Caruso's representations just now about what he offered to

21 do with respect to the Mercedes aren't true.  He asked for us

22 to send him legal documentation that he could execute to

23 transfer title.  We were the ones who pointed out in our

24 filings to the Court that all Mr. Giuliani needs to do is pick

25 up the title and sign it.

OB73FREC

1          Although, in addition to the co-op shares, the same

2    issue with respect to implementing the divorce decree also

3    exists with respect to the title to the car.

4          And one comment on the legal fees.  They haven't heard

5    from us about that because there is no need for any assignment.

6    We may ask for one just to buttress the receivers' entitlement

7    to bring that claim.  But the receivership by operation of law

8    just gives the receivers authority to prosecute that claim, and

9    which won't be brought until the investigation into the claim

10   is complete.

11         I just need to close with one comment about the

12   proposal that these watches be shipped.  We are going to need

13   to set some conditions on the terms of the shipment.  Some of

14   these items, I mean, we don't know what condition they're in or

15   in what condition they're held, because we haven't been told.

16   But just putting them in the mail probably doesn't provide

17   adequate security to protect the value of the items while

18   they're in transit.

19         THE COURT:  Doesn't Willkie Farr have offices in

20   Florida?  I would have thought.

21         MR. NATHAN:  I think we do not have an office in

22   Florida.  But again, this is why we have been consulting moving

23   professionals for these, as a way of solving these problems,

24   particularly the problem of moving items when you don't know

25   where they are and what they look like.

OB73FREC

1          Oh, and I mean, I think your Honor made this point

2     already.  But with respect to the categories of furniture, some

3     of which may indeed be very expensive, Mr. Giuliani's

4     opportunity to claim an exemption with respect to those items

5     was when the turnover motion was filed.

6          I also have to say, the notion that there is a problem

7     here of the vagueness of these categories, these categories

8     come from directly from the sworn disclosures that Mr. Giuliani

9     filed in his own Chapter 11 case.  That's the only purportedly

10    complete disclosure we've ever received about the state of his

11    assets.  We relied on that to file the turnover motion.  The

12    receivership order, in turn, because its entry wasn't opposed,

13    also relies on those categories.  They trace directly back to

14    Mr. Giuliani's -- presumably his own investigation, and then

15    characterization of his assets at the time he filed his Chapter

16    11 case.

17          I don't have anything further, your Honor.

18          THE COURT:  I do have a couple of things.  First of

19    all, I assume with respect to the cash in the Citibank account,

20    that you'll get -- if you haven't already, that you'll get

21    Mr. Caruso the account to which the cash should be transferred.

22          MR. NATHAN:  We sent him wire instructions over a week

23    ago now.

24          THE COURT:  And then I did issue some directives to

25    Mr. Caruso with respect to the Mercedes Benz and the property

OB73FREC

1    in the Palm Beach property, ordering that they be delivered by

2    Monday to the place that you've located.

3        It occurs to me, after hearing you, that maybe that

4    was ill advised and that what needs to be done is not for me to

5    get in the middle of it, but for you to issue clear directives

6    as to where you want the property shipped and how you want it

7    shipped and then to take it from there.

8        I'm open to hearing your views and then hearing

9    Mr. Caruso's views.

10        MR. NATHAN:  I think either -- with respect to the

11    title and the keys, we don't have the same concerns about

12    securing the value of the property while it's in transit.

13        With all this stuff, I think we have concerns that

14    we're going to repeat the experience with the apartment.  Even

15    once we have the title and keys, you know, we'll have to rely

16    on Mr. Giuliani's representations about where the car is

17    located.

18        But I think what we would prefer is that at this

19    stage, having issued plenty of these directives and seeing them

20    ignored, that the Court just order a deadline, and we can, and

21    even for that matter, give us a deadline to tell them where to

22    send stuff.  We'll comply with that, and they can meet their

23    deadline to do as well.

24        THE COURT:  When do you want to tell them to deliver,

25    frankly, all of the material that is set forth in my turnover

OB73FREC

1    order?

2          MR. NATHAN:  As an initial matter, I would propose

3    4 p.m. tomorrow.  If our movers and storage company tell us for

4    some reason that that's not practical, given the logistical

5    arrangements on their end, we'll seek relief from your Honor.

6          THE COURT:  No, I'm not going to do it that way.  I'll

7    make it Monday.

8          MR. NATHAN:  That ought to work.

9          THE COURT:  You can give them instructions.  Monday is

10   November 10.  So the receiver is to give instructions to the

11   defendant by November 10, 2024, as to where the property that

12   is reflected in the turnover order is to be produced to and

13   how.

14         And then Mr. Caruso, let me hear from you with respect

15   to what you wanted to say and why Friday, for example, would

16   not be an appropriate day for your client to comply.

17         MR. CARUSO:  I thought your Honor just said Monday.

18         THE COURT:  I did.  I'm giving you actually the

19   benefit of a few extra days.  So November 10 was previously the

20   deadline, which was Monday.  And I'm now thinking about

21   November 14 for the deadline for you to comply.

22         Any objection to that?

23         MR. CARUSO:  No, no.

24         THE COURT:  All right.

25         MR. CARUSO:  What I was going to say when I stood up,

OB73FREC

1    I am going to bite my tongue because your Honor said griping

2    back and forth isn't particularly helpful.  So, I'm not going

3    to gripe back and forth except to say the man can't help

4    himself.  You gave him what he wanted.  And he still has to

5    stand up and talk about how terrible I am and how terrible

6    Mr. Giuliani is.  We didn't do this, we didn't do that, what

7    about that.

8         Judge, I've said it before, I am going to say it one

9    more time.  For them, this is a cause, not a case.  I'm laying

10   down a marker, okay, and the rest of this litigation is going

11   to follow that pattern.  But beyond that, I am not going to

12   gripe.

13        Now, I also would lay down a marker for the following:

14   When all of this turnover is done, I am going to make a motion

15   for an inventory.  Yes, an inventory.  The inventory should

16   come from them, not from us.  Why?  Because when this

17   underlying judgment is reversed in the D.C. Circuit, as I am

18   highly confident it will be, they are going to have to give it

19   all back.  A fact that the general public seems to have

20   overlooked.  So, I need to have a record of what they took, so

21   we can get it back.

22        That's not a today job.  I'm laying down a marker.

23        THE COURT:  In terms of laying down a marker, you

24   might think about actually yourself preparing an inventory of

25   what it is that you've turned over.  That usually is, you know,

OB73FREC

1    a precaution people take when they're turning over property.

2            MR. CARUSO:  Yes, except the shoe will be on the other

3    foot, because we are going to have discovery from them for a

4    change.

5            THE COURT:  Listen, you are all making statements.

6    What I've got right now is an enforceable judgment issued out

7    of D.C. registered in this court, and a claim by judgment

8    creditors against a judgment debtor.  It should not be

9    complicated stuff.

10           MR. CARUSO:  I don't think I have anything further to

11   say, unless the Court has some questions.

12           THE COURT:  The remaining question that I've got,

13   which does have to do with the Florida property, and it has to

14   do a little bit with respect to my timing, is where things

15   stand with respect to the scheduling of Mr. Giuliani's

16   deposition.  That's one of the things I've got.

17           Has a date been set for that?

18           MR. CARUSO:  No.  We received discovery requests in

19   the form of interrogatories and document demands late last

20   Friday night.  We're working on those.  I assume they want to

21   see what the productions are before they fix a deposition date.

22           THE COURT:  Okay.  I'm working on the summary judgment

23   motion.  I am going to try to get you an answer soon.  I

24   haven't come to a conclusion.

25           MR. CARUSO:  That's good, because we're putting in a

OB73FREC

1    reply tomorrow.

2            THE COURT:  Therefore I won't tell you how far

3    progressed it is.  But I'm going to be all ears for your reply

4    because, don't worry, I really have not reached any conclusion

5    with respect to it.

6            I do have a bit of a concern, which is I would want to

7    make sure that my ruling not interfere with the taking of

8    testimony with respect to the Florida homestead.  In other

9    words, you know this case may result in there being appeals.

10   It seems to me it is efficient for there to be complete

11   discovery.  Mr. Giuliani's going to be deposed on the rings,

12   for him to be asked questions about the Florida property,

13   regardless of how my motion turns out.

14           In other words, if I were to grant the plaintiff's

15   motion, it seems to me it would still make sense as a

16   precaution, and in the interest of efficiency, for Mr. Giuliani

17   to be questioned about the use of the Florida property.

18           I am assuming you guys will be able to work that out

19   so he doesn't have to be deposed twice.

20           MR. CARUSO:  All right.  I am now confused.

21           THE COURT:  Let's assume that I grant the plaintiff's

22   motion.

23           MR. CARUSO:  Yes.

24           THE COURT:  And say it's irrelevant what your client

25   did in the property prior to the time of the bankruptcy

OB73FREC

1   petition being filed.  That fixes a date.  That's the date on

2   which he claimed the New York property as his homestead.

3           You've made an argument to me about his use of the

4   property prior to that date.  The plaintiffs have said, listen,

5   that's not particularly relevant, number 1.  Number 2, they've

6   said to me even if I were to consider those dates, they don't

7   establish a homestead, because your client was using the

8   Florida property as a vacation property and not as a homestead.

9           It seems to me that it would be efficient for

10  discovery to proceed with respect to that issue, in the

11  alternative that I don't grant the plaintiff's motion for

12  summary judgment.  So, prepare to have that discovery go

13  forward.

14          MR. CARUSO:  All right.  Sorry.

15          THE COURT:  Is that clear?

16          MR. CARUSO:  Not really, but let me try and see if I

17  understand.

18          THE COURT:  Okay.

19          MR. CARUSO:  Your Honor is saying if you deny the

20  plaintiff's motion for summary judgment, then Mr. Giuliani

21  would be deposed in advance of trial.

22          THE COURT:  That's 100 percent clear.

23          MR. CARUSO:  That I understand.

24          THE COURT:  It's also 100 percent clear he is going to

25  be deposed on the rings.

OB73FREC

1          MR. CARUSO:  Yes.

2          THE COURT:  So, when he's deposed on the rings, I

3    assume you only want your client deposed once.

4          MR. CARUSO:  If there is going to be a trial on the

5    homestead issue, then yes, one deposition.

6          THE COURT:  And if there is going to be a trial on the

7    rings, those two will be at the same time.

8          MR. CARUSO:  Then one deposition.

9          THE COURT:  That would cover both issues.

10          MR. CARUSO:  Yes.

11          THE COURT:  Okay.  That's what you are going to work

12    on accomplishing.

13          MR. CARUSO:  Fine.

14          THE COURT:  The other thing I've got for you,

15    Mr. Caruso, is I gave you one more day than I had previously

16    ordered with respect to the request to the tax preparer for the

17    return information.

18          If you want to address that now, I'll give you an

19    opportunity to.  But otherwise I'll take your papers tomorrow.

20          MR. CARUSO:  Tomorrow.

21          THE COURT:  I misspoke when I said Monday was

22    November 10.  Monday is November 11.

23          MR. CARUSO:  Which is no doubt a court holiday.

24          THE COURT:  It is a court holiday.  But I don't think

25    that that will prevent the Willkie Farr firm from giving you

OB73FREC

| 1 | directions.  I'm sure there are people working there.

| 2 |            MR. CARUSO:  It doesn't prevent activity by counsel.

| 3 | I was just making a point, perhaps irrelevant.

| 4 |            May I consult with Mr. Labkowski and Mr. Giuliani

| 5 | before I sit down?

| 6 |            THE COURT:  Absolutely.

| 7 |            (Conferring)

| 8 |            MR. CARUSO:  Thank you, your Honor.

| 9 |            THE COURT:  Mr. Caruso, just to be clear, because I

| 10 | was getting the calendar days wrong.

| 11 |            Your day for a full and complete information subpoena

| 12 | including to question 13 is November 11.  And again, to

| 13 | reiterate, my point in response to Mr. Giuliani's comments, if

| 14 | there's somebody that's being mistreated and you've got a basis

| 15 | for making a motion, I act pretty quickly so don't hesitate.

| 16 |            Mr. Nathan.

| 17 |            MR. NATHAN:  Just one point of clarification about

| 18 | your Honor's proposal about testimony with respect to the

| 19 | homestead issues.  That deposition would be more product if we

| 20 | also had responses and productions to the discovery requests.

| 21 |            THE COURT:  That's my anticipation.

| 22 |            MR. NATHAN:  That's the idea, okay.  Thank you.

| 23 |            THE COURT:  That's my anticipation that you'll do the

| 24 | deposition after documents have been exchanged or produced.

| 25 | Okay.

OB73FREC

1              Have a good day everybody.  Again, thank you for

2     changing your schedules to be here.

3              (Adjourned)