**WILLKIE FARR & GALLAGHER** LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

November 18, 2024

**VIA ECF**

Hon. Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    *Freeman v. Giuliani*, No. 24-mc-353 (LJL)
        *Freeman v. Giuliani*, No. 24-cv-6563 (LJL)

Dear Judge Liman:

Plaintiffs Ruby Freeman and Wandrea' Moss ("Plaintiffs" or "Receivers") respectfully submit this letter-brief in opposition to the applications of Kenneth Caruso and David Labkowski to withdraw as counsel to Mr. Giuliani in the above-captioned cases. ECF No. 110 ("Caruso Declaration"); ECF No. 111. Plaintiffs also respond herein to the November 15, 2024 Letter from Joseph Cammarata, to the extent the Court has not addressed the requests in that letter in its November 18, 2024 order. ECF No. 121 ("Nov. 15 Letter" or "Letter").[1] For the reasons discussed below, Plaintiffs oppose Defendant's extension requests, including the request to adjourn the trial. And, for related reasons, Plaintiffs oppose Mr. Caruso and Mr. Labkowski's application to withdraw as counsel in light of the disruption to these proceedings that Defendant evidently believes will be necessary if withdrawal is granted.

## I.    **Defendant's Proposed Extensions Should Be Denied.**

Defendant's November 15 Letter requests a 30-day extension of "any dates regarding responses to motions or submissions of memoranda, and to adjourn the trial currently scheduled for January 16, 2020, to a date after January 20, 2025, because of Mr. Giuliani's "plans" to be "present" at the presidential inauguration scheduled for that date, and because, in Defendant's counsel's words, "there are inauguration events planned for I believe, January 16, 17, 18, 19 and 20, 2025." Letter at 4 ("I am sure that the Court did not intentionally schedule the trial on January 16, 2025, when there are inauguration events planned for I believe, January 16, 17, 18, 19 and 20, 2025."). Defendant's counsel justifies his request by asserting that there "would be no harm to the Plaintiffs by a delay of a few days

---

[1] Although these documents were filed in both of the above-captioned cases, these ECF citations refer to the docket in No. 24-mc-353.

November 18, 2024
Page 2

in the trial schedule, and I am sure that the Court would have other dates available other than January 16, 17 or 20, 2025 for this trial." *Id*.

### A. *Procedural History.*

Plaintiffs' opposition to these extension and adjournment requests is based upon the current procedural posture of each of the pending proceedings in this Court, which is summarized briefly here.

Plaintiffs initiated the miscellaneous enforcement action at No. 24-mc-353 (the "Enforcement Proceeding") by registering their judgment in this District on August 5, 2024, and served an information subpoena with restraining notice on Mr. Giuliani that same day. No. 24-mc-353, ECF Nos. 1, 10-10. On August 30, 2024, Plaintiffs filed a motion to enforce their underlying judgment through turnover and receivership of certain assets. No. 24-mc-353, ECF Nos. 8, 9 ("Turnover and Receivership Motion"). The Court ordered Mr. Giuliani to respond to the Turnover and Receivership Motion by September 23, 2024. ECF No. 17. Mr. Giuliani did not file an opposition by that date and, on September 26, 2024, asked the Court to "extend all existing deadlines to October 16, 2024." ECF No. 28.  The Court held a hearing the next day, on September 27, 2024, and explained that he understood Mr. Giuliani not to be "asking for an extension" but "in fact seeking relief from a deadline that has already expired that was set by the Court . . ." ECF No. 37, at 2:18-3:8. The Court explained:

> Judgment enforcement actions are not supposed to be extended, lengthy proceedings. The plaintiffs have their judgment. Your client owes them money. Your client has an obligation, imposed by law, imposed by a Court, to satisfy that judgment. Your client has to turn over to them all of the assets that he has in order to satisfy that judgment, except to the extent those assets are exempt. That should move quickly.

*Id*. at 28:22-29:3. Mr. Giuliani filed an opposition to the Turnover and Receivership Motion on October 8, 2024, in which he raised certain specific and other general claims for purported exemptions. ECF No. 44. Plaintiffs filed a reply on October 18, 2024. ECF No. 59. On October 22, 2024, the Court granted the motion and ordered Mr. Giuliani to "deliver to Plaintiffs-Receivers, and execute and deliver any document necessary to effectuate delivery to Plaintiffs-Receivers of," various property enumerated therein. ECF No. 62 ("Turnover and Receivership Order"). After extensive delays, and after Plaintiffs had to discover for themselves that Mr. Giuliani had removed most of the contents of his New York apartment, Mr. Giuliani delivered various watches, a ring, and his Mercedes to locations provided by Plaintiffs on November 15, 2024. Meanwhile, Plaintiffs are in the process of reviewing the contents of the Ronkonkoma storage facility where Mr. Giuliani has stored an extensive amount of property. Despite Plaintiffs' repeated requests for information from Mr. Giuliani about what was in that facility, Plaintiffs were forced to obtain this information themselves, and to conduct their own inspection of the facility's contents—requiring several days' worth of work, still ongoing—at the Receivership's expense. Once that process is complete, Plaintiffs will provide an update to the Court, including as to any deficiencies in delivery or any proposed additions to the Turnover and Receivership Order.

The Turnover and Receivership Order deferred resolution on two specific types of property: (1) World Series rings that Mr. Giuliani's son claims his father gifted to him; and (2) Mr. Giuliani's

November 18, 2024
Page 3

Palm Beach condo, which is the subject of a separate, parallel proceeding that Plaintiffs initiated on August 30, 2024 relating to Mr. Giuliani's attempt to claim a Florida homestead exemption over that property. No. 24-cv-6563 (the "Homestead Action"). In the Homestead Action, both parties have filed competing motions for summary judgment, which are fully briefed and awaiting the Court's resolution. No. 24-cv-6563, ECF Nos. 28, 29, 44, 51, 54, 64, 72.

In orders entered October 17, 2024 and October 21, 2024, the Court set a trial date of January 16, 2025 to resolve any contested factual issues in the Homestead Action, and to resolve any contested factual issues ripe for decision in the Enforcement Proceeding. No. 24-cv-6563, ECF No. 47; No. 24-mc-353, ECF No. 61.

In the meantime, discovery is underway in connection with both the Homestead and Enforcement Proceedings. In the Homestead Action, the Court entered a Case Management Plan and Scheduling Order on October 28, 2024, setting deadlines for depositions to be completed by December 31, 2024 and fact discovery to be completed by January 9, 2025. S*ee* No. 24-cv-6563, ECF No. 47, 53 ("Scheduling Orders"). Anticipating that Mr. Giuliani would resist discovery obligations in this Court, as he had in the underlying litigation and in the bankruptcy proceeding, Plaintiffs sought, and the Court ordered, an accelerated process to resolve any issues with his discovery compliance in this case. No. 24-cv-6563, ECF Nos. 53, 59. Plaintiffs promptly served their first round of discovery requests, including a first set of requests for production ("RFPs") on October 1, 2024, and one set of interrogatories and a single contention interrogatory on November 4, 2024. Additionally, Plaintiffs are in the process of serving and/or preparing additional written discovery, including contention interrogatories and Requests for Admission, in anticipation of taking Defendants' deposition by the December 31, 2024 deadline. *See* ECF No. 53, at ¶ 7(d). Mr. Giuliani's responses and objections to the first set of RFPs were due on November 15, 2024, and he failed to serve any responses or objections, or produce any documents, necessitating a motion to compel. No. 24-cv-6563, ECF No. 93. Even before Defendant's counsel filed their applications to withdraw, they had already spent nearly two weeks ignoring Plaintiffs' requests for confirmation that Mr. Giuliani had preserved potentially responsive materials or made efforts to collect such materials such that he was prepared to search and produce responsive. *See* ECF No. 93-1.

In the Enforcement Proceeding, Defendant has resisted attempts to obtain complete responses to the discovery requests served thus far. On November 8, 2024, the Court ordered Mr. Giuliani to provide "full and complete answers under oath" to the information subpoena served on him. ECF No. 94 ("Nov. 8 Order").[2] Despite the Nov. 8 Order, Mr. Giuliani's updated responses remain factually deficient, including because they do not address any of the deficiencies previously identified by Plaintiffs' counsel in correspondence with Defendant's counsel. Meanwhile, the responses of Mr. Giuliani's corporate entities ("Giuliani Entities") to the Information Subpoena that Plaintiff's served in August—and to which the Court compelled the Giuliani Entities to respond (ECF No. 71)—are similarly deficient. Ex. A.  The lack of "full and complete" answers have hamstrung Plaintiffs' discovery efforts in the Enforcement Proceeding. Importantly, those delays have already slowed Plaintiffs' efforts to seek relief relating to Defendant's cash assets: Plaintiff has not turned over any cash, and does not appear to have any intention

---

[2] Third parties Ted Goodman, Maria Ryan, and Ryan Medrano also failed to respond to information subpoenas that Plaintiffs served on them, and the Court has ordered briefing on Plaintiffs' motion to compel their compliance.  ECF No. 116.  Plaintiffs also are in the process of serving document subpoenas on each of them.

November 18, 2024
Page 4

of turning over any cash beyond a few thousand dollars in one account. Plaintiffs plan to seek relief relating to the location and nature of Mr. Giuliani's other nonexempt cash assets imminently, and expects that these issues can be ripe for the January 16, 2025 trial date if Mr. Giuliani makes appropriate productions according to the current schedule.

Unfortunately, Plaintiffs' experience in attempting to obtain discovery from Mr. Giuliani is so far reminiscent of his virtually identical conduct in the underlying proceeding, which required Plaintiffs to expend considerable resources over many months to seek compliance before the D.C. District Court eventually sanctioned Mr. Giuliani for flouting his discovery obligations. *See Freeman v. Giuliani*, 691 F. Supp. 3d 32 (D.D.C. 2023).

### B. The Court Should Not Extend the Schedule Governing these Cases.

The Court has already denied Defendant's extension request with respect to any deadline falling before November 26, 2024. No. 24-cv-6563, ECF No. 92. Should Defendant renew his request with respect to any deadlines falling after that date, the Court should deny that request as well. Defendant does not acknowledge, let alone address, the practical impact of a 30-day delay on these proceedings. Thirty days from November 18 is December 18, 2024. Effectively punting any of Defendant's obligations to meet deadlines until December 18, 2024 would leave only 29 days—including the holiday season—for the parties to complete all discovery, including depositions; the parties to file all discovery and pre-trial briefing, for the Court to adjudicate all outstanding disputes, and for the parties to prepare for trial. Not only would such a compressed timeline impose an undue and disproportionate burden on Plaintiffs, and on this Court, it also would unfairly and perversely reward Mr. Giuliani for whatever events suddenly and unexpected led to the withdrawal of his own counsel. Whatever gave rise to that need, it was Mr. Giuliani's own doing, and does not constitute good cause to amend the schedule governing these cases. *See* Fed. R. Civ. P. 16(b)(4); Individual Rules and Practices ¶ 3(A).

### C. The Court Should Not Adjourn the Trial Date.

Defendant's request to adjourn the trial date should also be denied. As Defendant's counsel should be is aware, trial has been set in these cases since October 17, 2024, well in advance of the November presidential election.[3] Holding a trial on the Thursday prior to a Monday inauguration would not seem to be objectionable, except for Defendant's counsel's unexplained "belie[f]" that there will be "inauguration events" on that date. Letter at 4. Even if there were events scheduled for that date, moreover, Mr. Giuliani's preference for attending an event three days prior to the inauguration itself does not remotely constitute good cause to adjourn this trial. However, to the extent the inauguration and its surrounding events did constitute a reason to move the trial date, Plaintiffs would prefer to hold the trial *earlier—i.e.*, any date earlier in the week of January 16, including January 13, 14, or 15—which would address Defendant's purported scheduling conflict. In any event, Plaintiffs understand that these

---

[3] This has not, however, stopped Mr. Giuliani from accusing the Court of bias based upon the choice of a January 16, 2025 trial date. *See* Rudy W. Giuliani, America's Mayor Live, *America's Mayor Live (537): Live Coverage of Trump Transition 2024: Day 7* (Nov. 12, 2024), at 1:16:43-1:27:32, https://www.youtube.com/watch?v=ZJNBZ_VVWsQhttps://www.youtube.com/watch?v=ZJNBZ_VVWsQ ("Uh he's already set down the trial date for uh Trump's inauguration. You don't have to tell me much more than that.").

November 18, 2024
Page 5

scheduling matters are subject to the Court's own calendar and need to manage its docket appropriately, and that the best course of action is likely to adhere to the existing trial date.

## II.      Mr. Caruso and Mr. Labkowski's Withdrawal Applications Should Be Denied.

In light of the considerations set forth above, Plaintiffs also oppose Mr. Caruso and Mr. Labkowski's withdrawal from this case, absent assurances from Defendant and his new counsel that there will be no disruptions to the existing schedules in these two cases.

"[W]hen considering whether to grant a motion to withdraw under [Local Civil] Rule 1.4, a court must analyze two factors: the reasons for withdrawal and the impact of the withdrawal on the timing of the proceeding. With respect to the latter factor, a court must consider the posture of the case and whether the prosecution of the suit is likely to be disrupted by the withdrawal of counsel." *New York v. U.S. Dep't of Com.*, No. 18-CV-2921 (JMF), 2019 WL 2949908, at *1 (S.D.N.Y. July 9, 2019) (cleaned up).

Plaintiffs are unaware of the precise factual basis for counsel's request to withdraw, and are therefore unable to evaluate whether the first factor is satisfied. However, even assuming that counsel have articulated a sufficient reason for withdrawal, the Court should still deny the motion—at least for now—in light of the likely impact of the withdrawal on the timing of the proceeding.

Taking Defendant's positions at face value, there can be no dispute that permitting withdrawal would significantly disrupt the progress of this litigation. As discussed above, Mr. Cammarata's extension requests would paralyze the litigation and render the current case schedule a nullity. Denial of a motion to withdraw is warranted where, as here, "permitting counsel to withdraw at this point would undoubtedly further delay final trial preparations and trial." *See Chen v. Best Miyako Sushi Corp.*, No. 16-CV-02012-JGK-BCM, 2017 WL 11698623, at *3 (S.D.N.Y. June 12, 2017) (denying motion to withdraw even where trial had "not yet been scheduled," because "permitting counsel to withdraw at this point would undoubtedly further delay final trial preparations and trial"). If Mr. Cammarata needs time to get up to speed, he should take the time he needs to do so while Mr. Giuliani's existing counsel continue to handle the immediate and time-sensitive needs of this case, including but not limited to addressing Mr. Giuliani's deficient and/or non-existent discovery responses.

As this Court has acknowledged, there is a "need for this case to move quickly," because "[j]udgment enforcement actions are not supposed to be extended, lengthy proceedings." ECF No. 37 ("Sept. 27 Tr."), at 28:21-23. *See Chen*, 2017 WL 11698623, at *3 ("[P]laintiffs' interest in a prompt resolution of their claims also weighs against granting the withdrawal motion."). Permitting withdrawal under the conditions proposed by Mr. Cammarata would defeat that goal. *See Rophaiel v. Alken Murray Corp.*, No. 94-cv-9064 (CSH), 1996 WL 306457, at *2 (S.D.N.Y. June 7, 1996) (court should not permit withdrawal in circumstances that are "too easy for a defendant to stall proceedings by inducing the withdrawal of its attorney"). Furthermore, as of this writing, Defendant's counsel continue to represent Mr. Giuliani in connection with his pending D.C. Circuit appeal, and have indicated to Plaintiffs' counsel that they have no plans to withdraw from that representation "at this time," indicating that they are still capable of working with Mr. Giuliani where necessary. *See Worms v. State Corp. "Deposit Ins. Agency"*, No. 20-CV-3505 (AJN), 2021 WL 706550, at *4 (S.D.N.Y. Feb. 22, 2021) (affirming the denial of a

November 18, 2024
Page 6

motion to withdraw where counsel "remained counsel of record in another appeal in the same case," and "demurred" when asked if he intended to withdraw from that appeal as well).

      For these reasons, Plaintiffs request that the withdrawal motions be denied until Mr. Giuliani's new counsel has provided adequate assurances that there will be no disruption to the existing schedules in either case.

      Respectfully submitted,

      s/ Aaron E. Nathan