## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RUBY FREEMAN and WANDREA' MOSS,<br><br>                    Plaintiffs,<br><br>v.<br><br>RUDOLPH W. GIULIANI,<br><br>                    Defendant. | No. 24-cv-06563-LJL |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO HOLD DEFENDANT IN CIVIL CONTEMPT AND TO IMPOSE SANCTIONS

Rachel Goodman
United to Protect Democracy
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
rachel.goodman@protectdemocracy.org

Von DuBose (*pro hac vice forthcoming*)
DuBose Miller LLC
75 14th Street NE, Suite 2110
Atlanta, GA 30309
(404) 720-8111
dubose@dubosemiller.com

Michael J. Gottlieb
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
M. Annie Houghton-Larsen
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com
mhoughton-larsen@willkie.com

*Counsel for Plaintiffs Ruby Freeman and Wandrea' Moss*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 3

LEGAL STANDARD.................................................................................................... 7

ARGUMENT ................................................................................................................ 9

I.     THE COURT SHOULD HOLD MR. GIULIANI IN CIVIL CONTEMPT. .................... 9

II.    THE COURT SHOULD IMPOSE DISCOVERY SANCTIONS PURSUANT TO
       RULE 37 IN THE FORM OF ADVERSE INFERENCES AND A PRECLUSION
       INSTRUCTION. ................................................................................................ 10

   A.   Severe Sanctions Are Warranted. .................................................................. 10

   B.   The Court Should Enter Adverse Inferences Against Mr. Giuliani............................. 13

   C.   The Court Should Enter a Preclusion Order. ............................................................. 15

CONCLUSION.............................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BOC Aviation Ltd. v. AirBridgeCargo Airlines, LLC*,
No. 22-cv-2070 (LJL), 2022 WL 17581775 (S.D.N.Y. Dec. 12, 2022)..............................7, 8

*Chevron Corp. v. Donziger*,
296 F.R.D. 168 (S.D.N.Y. 2013) ...........................................................................................13

*Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*,
No. 22-CV-01585 (LJL), 2023 WL 3495091 (S.D.N.Y. May 17, 2023) .................8, 9, 10, 13

*Icon Int'l, Inc. v. Elevation Health LLC*,
347 F.R.D. 274 (S.D.N.Y. 2024) ...........................................................................................15

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
No. 16-CV-1318 (GBD) (BCM), 2019 WL 4727537 (S.D.N.Y. Sept. 26,
2019), *aff'd*, 2020 WL 1479018 (S.D.N.Y. Mar. 26, 2020) ...................................................11

*Jones v. Niagara Frontier Transp. Auth.*,
836 F.2d 731 (2d Cir. 1987)....................................................................................................9

*King v. Allied Vision, Ltd.*,
65 F.3d 1051 (2d Cir. 1995).....................................................................................................7

*King v. Wang*,
No. 14-cv-7694 (LJL), 2021 WL 5495799 (S.D.N.Y. Nov. 23, 2021) ...................................8

*Loc. 3621, EMS Officers Union, DC-37, AFSCME v. City of New York*,
No 18-CIV-4476 (LJL) (SLC), 2021 WL 1750866 (S.D.N.Y. Mar. 31, 2021),
*report and recommendation adopted*, No. 18-CV-4476 (LJL), 2021 WL
2827347 (S.D.N.Y. July 7, 2021); ........................................................................................13

*Marquez v. Hoffman*,
No. 18 CIV. 7315 (ALC) (GWG), 2022 WL 4076016 (S.D.N.Y. Sept. 6,
2022), *report and recommendation adopted sub nom. Marquez v. Silver*, No.
18-CV-7315 (ALC), 2023 WL 2088522 (S.D.N.Y. Feb. 17, 2023),
*reconsideration denied*, No. 18-CV-07315 (ALC), 2024 WL 1056285
(S.D.N.Y. Mar. 4, 2024), *motion for relief from judgment denied*, No. 18-CV-
07315 (ALC), 2024 WL 2751124 (S.D.N.Y. May 29, 2024)..................................................12

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
369 F.3d 645 (2d Cir. 2004)................................................................................................7, 9

*PSG Poker, LLC v. DeRosa-Grund*,
    No. 06 CIV. 1104 (DLC), 2008 WL 190055 (S.D.N.Y. Jan. 22, 2008) ................................13

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
    306 F.3d 99 (2d Cir. 2002) .................................................................................................14

*S. New Eng. Tel. Co. v. Glob. NAPs Inc.*,
    624 F.3d 123 (2d Cir. 2010) ..........................................................................................8, 12

*Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*,
    No. 15-CV-3533 (CM) (BCM), 2017 WL 2840279 (S.D.N.Y. June 27, 2017) ...............10, 12

*Shcherbakovskiy v. Seitz*,
    450 F. App'x 87 (2d Cir. 2011) ............................................................................................9

*Update Art, Inc. v. Modiin Publ'g, Ltd.*,
    843 F.2d 67 (2d Cir. 1988) ....................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 37 ..........................................................................................................................10

Fed. R. Civ. P. 37(b)(2) ..................................................................................................................8

Fed. R. Civ. P. 37(b)(2)(A) .............................................................................................................7

Fed. R. Civ. P. 37(b)(2)(A)(2) ......................................................................................................15

Fed. R. Evid. 401 ..........................................................................................................................14

Plaintiffs Ruby Freeman and Wandrea' ArShaye Moss ("Plaintiffs") respectfully submit this memorandum of law in support of their motion to hold Mr. Giuliani in contempt of the Court's orders of October 28, 2024 (ECF No. 53 ("October 28 Order")) and November 22, 2024 (ECF No. 103 ("November 22 Order")) and to sanction Mr. Giuliani accordingly, including pursuant to Federal Rule of Civil Procedure 37.

## INTRODUCTION

Mr. Giuliani has not produced a *single* document in response to Plaintiffs' discovery orders in this matter notwithstanding multiple orders from this Court requiring him to do so. In its October 28 Order, the Court ordered that "all discovery requests be responded to within 14 days of service, including responses & objections as well as document production" pursuant to Rule 34. After Mr. Giuliani's failure to respond to Plaintiffs' first set of Requests for Production ("First RFPs") within 14 days of service, the Court entered the November 22 Order, finding Mr. Giuliani had "violated" the Court's October 28 Order and entering an unambiguous directive:

> Defendant shall comply with the First RFPs by no later than November 26, 2024, by producing serving responses and all documents responsive to the First RFPs in his possession, custody or control, or show cause why he should not be held in contempt for violation of the Court's order of October 28, 2024. Violation of this Order, unless modified, may also be punishable by contempt.

Over a week has passed since the Court's November 26, 2024 deadline—and notwithstanding being on notice that his failure to comply may "be punishable by contempt"—Mr. Giuliani has not served any responses or produced any documents in response to the First RFPs, or proffered any explanation for why he should not be held in contempt of the Court's October 28 Order. Plaintiffs respectfully submit that the time has come for Court to hold Mr. Giuliani in contempt for violating both the October 28 and November 22 Orders, and enter a contempt sanction it finds appropriate. *Infra* Argument § I.

The Court also should sanction Mr. Giuliani for failing to obey multiple discovery orders pursuant to Rule 37(b)(2)(A). *Infra* Argument § II. Here, severe discovery sanctions are warranted given Mr. Giuliani's willful flouting of multiple orders of this Court, his history of refusing to participate in discovery even in the face of possible sanctions, and his conscious disregard of the inevitable consequence of his conduct. The Court should not permit Mr. Giuliani to delay accountability, especially in the context of a judgment-enforcement action, which this Court has acknowledged "should move quickly" and not be "extended" or "lengthy." Permitting Mr. Giuliani additional time to obfuscate in response to unambiguous discovery orders—especially when he has not provided any indicia of an attempt to comply—risks jeopardizing an already justifiably compressed time frame: Mr. Giuliani is scheduled to sit for a deposition on December 27, 2024; discovery is set to close on December 31, 2024; and trial will be held this matter on January 16, 2025 to determine whether Mr. Giuliani established a homestead at Condominium Unit 5D, 315 S. Lake Drive, Palm Beach, Florida (the "Palm Beach Condo") prior to the fixing of Plaintiffs' lien on that property. Mr. Giuliani is uniquely positioned to provide evidence relevant to that question and is, in fact, the *only* witness he disclosed in his initial disclosures as an individual likely to have relevant discoverable information. Declaration of M. Annie Houghton-Larsen In Support of Plaintiffs' Motion to Hold Giuliani in Civil Contempt and to Impose Sanctions ("Houghton-Larsen Decl.") Ex. 3, at 1. Meanwhile, it is clear that Mr. Giuliani possesses and controls responses documents, both based on limited discovery obtained from the small number of cooperative third parties and from Mr. Giuliani's recent sworn interrogatory response stating that he plans to rely on a set of cherry-picked (yet unproduced) documents in his possession. Houghton-Larsen Decl. ¶¶ 3–4, 10, Exs. 1–2, 4. The Court should not permit Mr. Giuliani to benefit from his own discovery violations by permitting him to rely on selective documents while refusing to make

complete productions in response to Plaintiffs' RFPs. Finally, Giuliani should also be subject to adverse inferences as a result of his blatant disregard for the orders of this Court, and attempting to stonewall what should be a straightforward and abbreviated process.

## BACKGROUND

In this action, Plaintiffs seek a judgment declaring that:

> Mr. Giuliani had not established the Palm Beach Condo as his homestead under the Florida Constitution, art. X, § 4, prior to recording of Plaintiffs' lien on August 8, 2024; that Plaintiffs' lien is valid and enforceable under Florida law and immune from any subsequent claim of homestead relating to the Palm Beach Condo; and that the Palm Beach Condo may be executed upon and sold to satisfy Plaintiffs' judgment through any lawful means, including CPLR § 5228 receivership or other appropriate means, regardless of any homestead claim that Defendant may make.

ECF No. 1. After the parties cross-moved for summary judgment, the Court set January 16, 2025 as the date for the bench trial to decide Plaintiffs' declaratory judgment action in anticipation that the Court might deny those motions. ECF No. 47. The October 28 Order provided "that all discovery requests be responded to within 14 days of service, including responses & objections as well as document production pursuant to Fed. R. Civ. P. 34." ECF No. 53.

On November 1, 2024, Plaintiffs served the "First RFPs" on Mr. Giuliani. *See* ECF No. 93-2. The First RFPs seek information relevant to Mr. Giuliani's claim that he established a homestead in Florida. *Id*. In the First RFPs, Plaintiffs lodged 25 requests, including:

- **Request No. 1:** All Documents and Communications relating to any Homestead Tax Exemptions or credits in connection with the Palm Beach Condo, the New York Co-op, or any other real estate You own.

- **Request No. 6:** Documents sufficient to show all addresses listed on any statements for Your bank accounts, credit cards, safe deposit boxes, brokerage accounts, cable service, internet service, phone service, and cell phone service from January 1, 2020 to the present.

- **Request No. 13:** All Documents and Communications relating to Your intentions to maintain or establish a permanent residence at any location.

- **Request No. 14:** All Documents and Communications relating to the nature of Your use and occupancy of the Palm Beach Condo as a permanent home or a vacation/second home.

- **Request No. 15:** All Documents and Communications relating to the purposes of, and travel and lodging arrangements for Your time spent in New York, New Hampshire, Wisconsin, Illinois, Texas, France, and England, between February 7, 2024 and August 8, 2024.

- **Request No. 18:** All Documents and Communications relating to updating or changing Your address with any person, business, government entity, subscription service, or other contact.

The First RFPs also requested all documents and communications on which Mr. Giuliani intended to rely to prove he had established homestead in Florida prior to August 8, 2024, and on which he relied in his summary judgment filings. *See* Request No. 22 ("All Documents and Communications on which You intend to rely to support Your contention that You established a homestead at the Palm Beach Condo within the meaning of article X, section 4 of the Florida Constitution") and Request No. 24 ("All Documents and Communications referenced directly or indirectly and/or on which You relied to file Your Declaration, Rule 56.1 Statement, and/or Declaration of Domicile"). Each of the 25 requests in the First RFPs seek documents and communications that would be in Mr. Giuliani's possession and are relevant to proving that Mr. Giuliani did not establish a homestead in Florida before August 8, 2024. *Id.*

Pursuant to the Case Management Plan and Scheduling Order, Mr. Giuliani's responses, objections, and production to the First RFPs were due November 15, 2024. Plaintiffs made repeated attempts to confer with Mr. Giuliani's attorneys regarding the First RFPs, including proposing search terms to assist in his collection and review. *See* ECF No. 93. But each of Plaintiffs' messages was met with silence. *Id.* November 15 passed without Mr. Giuliani serving any response, objection, or document in response to the First RFPs. *Id.*

On November 18, 2024, Plaintiffs filed a letter motion to compel Mr. Giuliani to make full and complete productions in response to the First RFPs. *Id.* That same day, the Court entered an

order that, "Defendant shall respond by letter filed on ECF no later than 5pm on November 20, 2024," and that in "the absence of a timely filed response in conformance with those Individual Practices, the motion will be considered unopposed." ECF No. 94. Mr. Giuliani did not file any opposition or response to Plaintiffs' motion to compel.

The Court granted Plaintiffs' motion to compel in the November 22 Order. The Court explained that Mr. Giuliani "was required by court order to respond by November 15, 2024" pursuant to the October 28 Order and "has violated the court order and has not responded to the First RFPs." ECF No. 103. The Court granted Plaintiffs' motion to compel, and ordered Mr. Giuliani to "comply with the First RFPs by no later than November 26, 2024, by producing serving responses and all documents responsive to the First RFPs in his possession, custody or control, or show cause why he should not be held in contempt for violation of the Court's order of October 28, 2024." *Id*. at 2. The Court explained: "Violation of this Order, unless modified, may also be punishable by contempt." *Id*.

The Court held a hearing on November 26, 2024, the deadline for Mr. Giuliani's compliance with the November 22 Order. At that hearing, the Court explained to Mr. Giuliani's new counsel: "There should be no higher priority for your client right now than complying with the Court's orders, period." Houghton-Larsen Decl. Ex. 5, at 38:1–3. Mr. Giuliani's counsel responded by confirming that he understood. *Id*. at 38:4.

Mr. Giuliani did not serve any responses or any documents responsive to the First RFPs, or make any attempt to show why he should not be held in contempt for violating the October 28 Order by November 26, 2024, as the November 22 Order required. As of the date of this filing, Mr. Giuliani has neither served responses and documents to the First RFPs nor shown cause as to why he should not be held in contempt. Houghton-Larsen Decl. ¶¶ 5–6, 11.

On December 2, 2024, Mr. Giuliani returned belated responses to Plaintiffs' first set of interrogatories, more than a week after the due date. Houghton-Larsen Decl. ¶ 10, Ex. 4. Those responses confirm that Mr. Giuliani is planning on relying on documentary evidence at trial that he has not produced to Plaintiffs. *Id*. Interrogatory Number 3 requests that Mr. Giuliani identify all documents he intends to rely on to support his claim that he established a homestead at the Palm Beach Condo. Houghton-Larsen Decl. Ex. 4, at 4. Mr. Giuliani's sworn response reads:

> Defendant intends to rely on documents ***including but not limited to*** the following to support Defendant's claim that Defendant established a homestead at the Palm Beach Condo within the meaning of article X, section 4 of the Florida Constitution: (a) Florida driver's license of Rudolph W. Giuliani dated February 22, 2024; (b) Deed dated January 14, 2020 in the name of Rudolph W. Giuliani for the real property located at and known as Condominium Unit 5D, 315 S. Lake Drive, Palm Beach, Florida, (c) Vehicle tag for 1980 Mercedes which bore Florida tag JA3414; (d) Voter registration in the State of Florida – voter registration number 132378699 dated May 17, 2024; (e) Utility bills for the real property located at and known as Condominium Unit 5D, 315 S. Lake Drive, Palm Beach, Florida; (f) Declaration of Domicile filed in the Office of the Palm Beach County Clerk on July 15, 2024; (g) calendar noting Defendants' presence inside and outside the State of Florida in 2024; (h) documents to show that defendant actually occupied the Palm Beach Condo in accordance with the Florida Constitution, (i) records of Records of the Palm Beach County Property Appraiser and/or Plam [sic] Beach County Clerk and ***(j) other documents which Defendant reserves the right to submit and use as evidence in this action***.

*Id*. (emphasis added). Mr. Giuliani has not produced any of the documents on which he intends to rely because he has not produced any documents to Plaintiffs. Houghton-Larsen Decl. ¶ 11.[1]

---

[1] While Mr. Giuliani has not been able to timely comply with the Court's orders, his counsel has had time for press appearances and related self-promotion. *See, e.g.*, Joe Cammarata, Esq. (@CDLawPC), X.com (Dec. 3, 2024 9:02 PM), https://x.com/CDLawPC/status/1864128053401505811. During this recent interview with Newsmax, Mr. Giuliani's attorney discussed the underlying defamation litigation, stating: "The case never went to trial. Mayor Giuliani, my client, has never been deemed to have defamed these election workers on the merits in a Court either by judge or jury. There was a default in discovery[.]" *Id*. at 00:30–00:43. Mr. Giuliani has made similar statements in the press. *See* Reuters, YouTube, *LIVE: Rudy Giuliani's hearing over the handover of property to Georgia election workers* (November 26, 2024), https://www.youtube.com/watch?v=LxBFUy0WsZ0) at

## LEGAL STANDARD

Civil contempt is appropriate when "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (citing *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)); *see also BOC Aviation Ltd. v. AirBridgeCargo Airlines, LLC*, No. 22-cv-2070 (LJL), 2022 WL 17581775, at *7 (S.D.N.Y. Dec. 12, 2022); Fed. R. Civ. P. 37(b)(2)(A) ("If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders. They may include . . . treating as contempt of court the failure to obey any order[.]"). The moving party does not need to establish "that the violation was willful." *Paramedics Electromedicina Comercial, Ltda.*, 369 F.3d at 655. Where a party is in contempt of court, a court may enter contempt sanctions, which "may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *BOC Aviation Ltd.*, 2022 WL 17581775, at *17 (internal citations omitted). "When imposing coercive sanctions, a court should consider (1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness

---

2:27:38–44 ("Did I have a fair trial? I didn't have a trial, half the time, she was threatening to throw me in jail."); Larry Neumeister, *Defiant Giuliani says he's a victim of 'political persecution' as he's told again to give up assets*, AP (Nov. 7, 2024), https://apnews.com/article/giuliani-defamation-georgia-election-workers-apartment-a91af3224630052f97328623f6acbde6 ("Asked Thursday by a reporter if he had any regrets about defaming the women, Giuliani bristled, saying: 'First of all, I didn't defame them. I did not defame them.'"). These statements distort the record in the underlying case where the Court expressly found Mr. Giuliani defamed Plaintiffs in its default judgment order after Mr. Giuliani attempted to stipulate to his liability. The public statements by Mr. Giuliani and his attorney suggest that Mr. Giuliani may be laying the groundwork to employ a similar strategy in this litigation, i.e., intentionally ignoring his discovery obligations and orders of the Court, facing sanctions as a direct result of his lack of compliance, and then publicly proclaiming an unfair and biased process devoid of any recognition of his own failure to attempt to mount a legal defense.

of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." *Id*. (internal citations omitted). Whether to impose a coercive sanction and the nature of that sanction is within the discretion of the Court. *Id*.

Rule 37(b)(2) provides that the Court may enter sanctions for a party's failure to obey a discovery order. Fed. R. Civ. P. 37(b)(2). Those sanctions may include, *inter alia*, "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" and "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." *Id*. "Rule 37 is intended to encourage and enforce strict adherence to the responsibilities counsel owe to the Court and to their opponents." *Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, No. 22-CV-01585 (LJL), 2023 WL 3495091, at *8 (S.D.N.Y. May 17, 2023) (cleaned up). The purpose of discovery sanctions is three-fold: to "ensure that a party will not benefit from its own failure to comply," to serve as "specific deterrents and seek to obtain compliance with the particular order issued," and "to serve a general deterrent effect on the case at hand and on other litigation." *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010) (citing *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)). When considering whether to impose a discovery sanction pursuant to Rule 37, the Court need only find the existence of a court order directing compliance with discovery requests and that a party did not comply with that order. *Gardner-Alfred*, 2023 WL 3495091, at *8.

Determining what type of sanction is appropriate "is confined to the sound discretion of the trial court, and is assessed on a case-by-case basis." *King v. Wang*, No. 14-cv-7694 (LJL), 2021 WL 5495799, at *1 (S.D.N.Y. Nov. 23, 2021) (cleaned up). When determining the type of discovery sanction, courts consider: "(1) the willfulness of the non-compliant party or the reason

for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of his non-compliance." *Gardner-Alfred*, 2023 WL 3495091, at *16. A district court need not "exhaust possible lesser sanctions" if it determines that a more severe sanction is "appropriate on the overall record." *Shcherbakovskiy v. Seitz*, 450 F. App'x 87, 88 (2d Cir. 2011). A "court should not shrink from imposing harsh sanctions where they are clearly warranted." *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 735 (2d Cir. 1987) (cleaned up).

## ARGUMENT

### I.    THE COURT SHOULD HOLD MR. GIULIANI IN CIVIL CONTEMPT.

Mr. Giuliani is plainly in contempt of the October 28 and November 22 Orders. *Paramedics Electromedicina Comercial, Ltda.*, 369 F.3d at 655. *First,* both orders were clear and unambiguous: The October 28 Order required Mr. Giuliani first to serve responses, objections, or documents to the First Set of RFPs by November 15, 2024, i.e., within 14 days of Plaintiffs' service of them; and the November 22 Order required him to serve responses and produce "all documents responsive to the First RFPs or show why he should not be held in contempt" for violating the October 28 Order. *Second*, the Court already found in its November 22 Order that Mr. Giuliani violated the October 28 Order, which is consistent with the uncontested fact that Mr. Giuliani did not at any point prior to November 15, 2024 (or at any point since) serve responses, objections, or documents responsive to the First Set of RFPs. Mr. Giuliani's violation of the November 22 Order is "clear and convincing" too for the same reasons. *Third*, and *finally*, Mr. Giuliani has not made any effort, let alone a "diligent" one as required to ward off contempt, to comply with either of the October 28 and November 22 Orders. The Court warned Mr. Giuliani that violation of either order may be "punishable by contempt," and Mr. Giuliani has not provided or attempted to provide any

reason that warrants a different outcome. The Court should hold Mr. Giuliani in civil contempt and impose whatever coercive sanction it deems appropriate in its expertise.

## II.    THE COURT SHOULD IMPOSE DISCOVERY SANCTIONS PURSUANT TO RULE 37 IN THE FORM OF ADVERSE INFERENCES AND A PRECLUSION INSTRUCTION.

Mr. Giuliani's failure to "obey" multiple orders requiring him "to provide or permit discovery" fits squarely within Rule 37. Fed. R. Civ. P. 37 ("If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders."). Plaintiffs respectfully suggest that the only colorable issue before the Court is not whether to apply Rule 37 sanctions, but rather what type of sanction to impose. Mr. Giuliani's conduct necessitates severe sanctions—in particular, adverse inferences and preclusion.

### A.    Severe Sanctions Are Warranted.

All of the four factors courts consider when deciding whether to impose severe sanctions are met here. *Gardner-Alfred*, 2023 WL 3495091, at *16 (willfulness, efficacy of lesser sanctions, the duration of the period of noncompliance, warning). *First*, and for the reasons discussed above, Mr. Giuliani noncompliance was willful because the Court's October 28 and November 22 Orders were clear, and he has neither sought clarification (despite being in front of the Court on the deadline for compliance) nor attempted to justify his lack of compliance due to any factors outside of his control. *See Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, No. 15-CV-3533 (CM) (BCM), 2017 WL 2840279, at *12 (S.D.N.Y. June 27, 2017).

*Second*, and as to the efficacy of monetary sanctions, Mr. Giuliani's existing debt to Plaintiffs vastly exceeds his existing assets, and there is no reason to believe that a monetary sanction would remedy the violation or deter such future behavior. Faced with similar conduct in the underlying proceeding, and at Plaintiffs' request, the United States District Court for the

District of Columbia imposed monetary sanctions—all of which remain unpaid and evidently did not deter Mr. Giuliani from continuing to engage in non-compliant behavior that ultimately resulted in default judgment, adverse inferences, and evidence preclusion against Mr. Giuliani. *See Freeman v. Giuliani*, No. 21-cv-3354 (D.D.C.), ECF Nos. 93, 102. Monetary sanctions also are insufficient because the harm arising from these discovery failures is not just "a matter of costs" and poses a greater risk of a verdict "uninformed by important facts" that Mr. Giuliani made "unavailable in the discovery process." *See Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2019 WL 4727537, at *28 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 2020 WL 1479018 (S.D.N.Y. Mar. 26, 2020) (internal citations omitted).

*Third*, and regarding Mr. Giuliani's duration of non-compliance, judgment enforcement proceedings "should move quickly" and not be "extended" or "lengthy." It has been more than a month since Plaintiffs served the First Set of RFPs, and Mr. Giuliani has not taken a single step to respond to them in any way. Mr. Giuliani continues to evince no intent to respond to the First Set of RFPs even after the Court's November 22 Order, and the Court's instruction to Mr. Giuliani's counsel that there "should be no higher priority for your client right now than complying with the Court's orders, period." Houghton-Larsen Decl. Ex. 5, at 38:01–03. Mr. Giuliani's decision to ignore the Court's October 28 and November 22 Orders aligns with his general approach to avoid producing materials in this litigation, and potentially the reason for the withdrawal of his prior counsel. *See* Houghton-Larsen Decl. Ex. 5, at 6:08–11 ("the defendant took a position with respect to his participation in discovery that appears to have raised issues with respect to fundamental disagreement or unreasonably difficult representation"). Mr. Giuliani's responses to Plaintiffs' first set of interrogatories indicate a similar intention to continue obfuscating. *See* Houghton-Larsen Decl. ¶ 10, Ex. 4, at 5 (objecting to request to identify "all email accounts, messaging

accounts, and phone numbers" as "a safety and security concern to his wellbeing, as there were previous threats received by Defendant"); *id*. at 6 (responding to request to identify "in detail the efforts you undertook to preserve relevant evidence and to collect and produce responsive materials in response to Plaintiffs' Requests for Production" that "I did not throw out any documents").

This pattern of noncompliance warrants sanctions. *See Marquez v. Hoffman*, No. 18 CIV. 7315 (ALC) (GWG), 2022 WL 4076016, at *16 (S.D.N.Y. Sept. 6, 2022) (explaining a party's "noncompliance in a sense continues indefinitely as she has never stated her willingness to comply with the Court's requirements"), *report and recommendation adopted sub nom. Marquez v. Silver*, No. 18-CV-7315 (ALC), 2023 WL 2088522 (S.D.N.Y. Feb. 17, 2023), *reconsideration denied*, No. 18-CV-07315 (ALC), 2024 WL 1056285 (S.D.N.Y. Mar. 4, 2024), *motion for relief from judgment denied*, No. 18-CV-07315 (ALC), 2024 WL 2751124 (S.D.N.Y. May 29, 2024); *see also Shanghai Weiyi Int'l Trade Co.*, 2017 WL 2840279, at *12 (explaining that sanctions less than default or dismissal may be imposed after a "relatively short" amount of time of noncompliance).

*Finally*, Mr. Giuliani is well-aware of the consequences of non-compliance, including because the Court warned him in the November 22 Order that his lack of compliance "may also be punishable by contempt." ECF No. 103 at 2. As a once-barred attorney of 50 years, Mr. Giuliani cannot "seriously contend" that he was not on notice of his "discovery obligations or of the consequences of noncompliance in light of the fact" that the November 22 Order "was unmistakably clear as to the scope of defendants' production obligations." *S. New Eng. Tel. Co.*, 624 F.3d at 148.

**B.      The Court Should Enter Adverse Inferences Against Mr. Giuliani.**

Adverse inferences are appropriate where a court finds "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that the missing evidence is relevant to the claim or defense of the other party such that a reasonable trier of fact could find that it would support that claim or defense." *Gardner-Alfred*, 2023 WL 3495091, at *17) (cleaned up). Those factors are easily satisfied here.

For the reasons discussed above, Mr. Giuliani had an obligation to timely produce the evidence responsive to the First RFPs not only based on the Rules but also pursuant to the October 28 and November 22 Orders. Mr. Giuliani nonetheless chose to intentionally and willfully withhold *all* and not produce *any* documents. *Loc. 3621, EMS Officers Union, DC-37, AFSCME v. City of New York*, No 18-CIV-4476 (LJL) (SLC), 2021 WL 1750866, at *11 (S.D.N.Y. Mar. 31, 2021) ("The state-of-mind requirement for an adverse inference sanction can be satisfied on a showing of ordinary negligence.") (cleaned up), *report and recommendation adopted*, No. 18-CV-4476 (LJL), 2021 WL 2827347 (S.D.N.Y. July 7, 2021); *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 213–14 (S.D.N.Y. 2013) (party acted willfully by selectively determining when and when not to produce documents); *PSG Poker, LLC v. DeRosa-Grund*, No. 06 CIV. 1104 (DLC), 2008 WL 190055, at *12 (S.D.N.Y. Jan. 22, 2008) (finding party acted intentionally and willfully when it refused to "produce relevant documents or a credible story regarding their whereabouts-despite the admonitions of this Court and repeated requests from the plaintiffs").

As far as relevance, Mr. Giuliani has waived the right to assert any such objection. *See* ECF No. 103 at 2 ("failure to timely respond to a document request waives all objections"). Even absent waiver, the documents Plaintiffs seek in the First Set of RFPs are directly relevant to

whether Mr. Giuliani established a homestead at the Palm Beach Condo prior to August 8, 2024 no matter what standard of relevance the Court applies. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108–09 (2d Cir. 2002) (relevance standard ranges from "something more than sufficiently probative to satisfy Rule 401" in the case of negligence to a more relaxed one in the case of gross negligence or bad faith); *see* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). The First Set of RFPs specifically target factual evidence probative of Mr. Giuliani's whereabouts and his intent (or lack thereof) to make the Palm Beach Condo his permanent residence.

With all of the factors supporting the imposition of adverse inferences, the Court should apply an adverse inference commensurate with the missing relevant evidence. Here, Plaintiffs suggest that the Court should enter two adverse inferences from Mr. Giuliani's failure to produce: (1) that Mr. Giuliani did not form an intention to live permanently at the Palm Beach Condo prior to August 8, 2024 and (2) that Mr. Giuliani did not actually occupy the Palm Beach Condo as a permanent residence prior to August 8, 2024.

The evidence Plaintiffs have received through third-party discovery further supports these inferences. For example, Plaintiffs obtained evidence through a third-party subpoena to Bellwether Community Credit Union, including documents showing that Mr. Giuliani signed an application on August 3, 2024 to open a bank account at Bellwether Community Credit Union, based in New Hampshire, on which he claimed qualification for membership in the credit union by checking the box for "***live or work in NH***" and listed a Manchester, New Hampshire address as his home address. Houghton-Larsen Decl. ¶ 3, Ex. 1 (emphasis added). Further, those documents show that on August 6, 2024, Mr. Giuliani sent a secure message to the Bellwether Community Credit Union

asking to change his home address to a different address *also* located in Manchester, New Hampshire. Houghton-Larsen Decl. ¶ 4, Ex. 2, at 3. Mr. Giuliani has not produced either the bank opening form or the secure message with Bellwether, or any other documents relating to that account. *See* Houghton-Larsen Decl. ¶ 11. Moreover, Mr. Giuliani's list of cherry-picked documents, which he has not produced in any event, does not include a number of the categories of documents requested in the First Set of RFPs–such as, for example, all documents and communications about his travel and lodging accommodations in 2024 and the reimbursement thereof or updating or changing his address with any person, business, government entity, subscription service, or other contact–from which it is reasonable to infer that such materials do not and would not support his claims.

### C. The Court Should Enter a Preclusion Order.

The Court also should enter an order to preclude Mr. Giuliani from relying on, referencing, or otherwise using any documentary evidence to support his claim that he established the Palm Beach Condo as a homestead prior to August 8, 2024. Rule 37(b)(2)(A)(ii) permits the Court to prohibit the disobedient party from introducing designated matters in evidence. Fed. R. Civ. P. 37(b)(2)(A)(ii). "In determining whether preclusion of evidence is an appropriate sanction, a court should consider: (1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the excluded evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new evidence; and (4) the possibility of a continuance." *Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 296 (S.D.N.Y. 2024) (cleaned up). Here, all factors weigh in favor of preclusion.

Mr. Giuliani has not offered any explanation for why he has not produced any discovery in this case. Should Mr. Giuliani proffer some explanation, Plaintiffs will respond to it, but do not

expect that any explanation for his complete failure to respond to Court-ordered discovery requests could be justified.

The withheld evidence is plainly important. Mr. Giuliani is the sole witness the parties currently intend to rely upon, meaning the documents in his possession are particularly important to decide the homestead claim. Without documents, the only "evidence" would be Mr. Giuliani's testimony—which Plaintiffs would lack sufficient documentary evidence to rebut—and the self-selected documents Mr. Giuliani decides to proffer to support his claim. The evidence Plaintiffs seek in the First Set of RFPs is critical to probing and testing the merits Mr. Giuliani's claims, and his credibility as a witness.

For the same reasons, Plaintiffs will be prejudiced without access to a complete production, because they will be forced to rely on Mr. Giuliani's say-so and cherry-picked documents. Permitting Mr. Giuliani with more opportunity to delay risks prejudicing Plaintiffs in requiring that they expend additional time litigating Mr. Giuliani's lack of compliance (beyond the already disproportionate amount of time they have already had to spend). Allowing Mr. Giuliani to cobble together some form of a production now, which it is unclear he is even willing to do, will inevitably require Plaintiffs to divert time and potentially engage in further motions practice that risks jeopardizing the current schedule. As recently as this week, Mr. Giuliani has expressed a refusal to provide Plaintiffs even with a list of the email addresses and social media handles he uses to communicate, which will necessitate motions practice without preclusion so that Plaintiffs are able to test the alleged completion of any hypothetical attempt to produce responsive documents. Houghton-Larsen Decl. Ex. 4, at 5. Mr. Giuliani's blatant effort to withhold that information without any lawful basis underscores the futility of affording him additional time to cure his own intentional misconduct.

Finally, further delay is not appropriate in this case because it would reward Mr. Giuliani's non-compliance. This homestead dispute arises in the context of judgment enforcement and as such Plaintiffs are entitled to a speedy resolution. ECF No. 53. As such, Plaintiffs have done everything in their power to move this case forward consistent with the January 16, 2025 trial date. Aware of the expedited schedule, Plaintiffs promptly served document discovery on Mr. Giuliani, subject to the truncated deadlines the Court entered. When Mr. Giuliani failed to comply, Plaintiffs promptly filed the motion to compel. In contrast, Mr. Giuliani has made clear his desire to delay trial. *See* ECF Nos. 24, 91. It seems that Mr. Giuliani may be refusing to comply with the Orders in an attempt, at least in part, to force the Court to accept further delay. Mr. Giuliani's gamesmanship and willful disregard for court orders and the burdens his litigation misconduct has inflicted on the parties and the Court warrant the entry of these severe sanctions.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Court should hold Mr. Giuliani in contempt for his failure to comply with the Court's orders, and enter discovery sanctions against Mr. Giuliani in the form of adverse inferences and preclusion. As to the former, the Court should enter two adverse inferences: (1) that Mr. Giuliani did not form an intention to live permanently at the Palm Beach Condo prior to August 8, 2024 and (2) that Mr. Giuliani did not actually occupy the Palm Beach Condo as a permanent residence prior to August 8, 2024. This Court should also enter an order to precluding Mr. Giuliani from relying on, referencing, or otherwise using any documentary evidence in support of his claim that he established the Palm Beach Condo as a homestead prior to August 8, 2024. In the alternative, the Court should order Mr. Giuliani to show cause why such adverse inferences and preclusion are not appropriate.

Respectfully submitted,

Dated: December 5, 2024
New York, New York

s/ Aaron E. Nathan
Aaron E. Nathan

Rachel Goodman
United to Protect Democracy
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
rachel.goodman@protectdemocracy.org

Von DuBose (*pro hac vice forthcoming*)
DuBose Miller LLC
75 14th Street NE. Suite 2110
Atlanta, GA 30309
(404) 720-8111
dubose@dubosemiller.com

Michael J. Gottlieb
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
M. Annie Houghton-Larsen
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com
mhoughton-larsen@willkie.com

*Counsel for Plaintiffs Ruby Freeman and Wandrea' Moss*

- 18 -