# EXHIBIT 5

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   RUBY FREEMAN and WANDREA MOSS,

 4                 Plaintiffs,

 5        v.                              24 CV 6563 (LJL)

 6   RUDOLPH W. GIULIANI,

 7                 Defendant.             Conference
     ------------------------------x
 8                                        New York, N.Y.
                                          November 26, 2024
 9                                        10:00 a.m.

10   Before:

11                     HON. LEWIS J. LIMAN,

12                                        District Judge

13                          APPEARANCES

14   WILLKIE FARR & GALLAGHER LLP
          Attorneys for Plaintiffs
15   BY:  AARON E. NATHAN
          MICHAEL J. GOTTLIEB
16        MERYL GOVERNSKI
          M. ANNIE HOUGHTON-LARSEN
17
     CAMMARATA & DE MEYER P.C.
18        Attorneys for Defendant
     BY:  JOSEPH CAMMARATA
19        -and-
     KENNETH CARUSO
20   DAVID LABKOWSKI

21

22

23

24

25
```

1           (Case called)

2           MR. NATHAN:  Good morning, your Honor, Aaron Nathan,

3    Willkie Farr & Gallagher, for plaintiffs and receivers, Ruby

4    Freeman and Wandrea Moss.  I'm joined by my colleagues, Michael

5    Gottlieb, Meryl Governski, and Annie Houghton-Larsen, also of

6    Willkie Farr.

7           THE COURT:  Good morning.

8           MR. CAMMARATA:  Joseph Cammarata, Cammarata & De Meyer

9    P.C., 456 Arlene Street, Staten Island, New York 10314, for the

10   defendant, Rudolph W. Giuliani.

11          THE COURT:  Good morning, and welcome to the case, Mr.

12   Cammarata.

13          MR. CAMMARATA:  Thank you.

14          MR. CARUSO:  Good morning, your Honor, Kenneth Caruso.

15          THE COURT:  Good morning, Mr. Caruso.

16          MR. LABKOWSKI:  Good morning, your Honor, David

17   Labkowski.

18          THE COURT:  Good morning.

19          And I see we have got Mr. Giuliani here.  Welcome,

20   sir.

21          We have got a number of matters before the Court.

22          It appears to me that the first matter that I should

23   handle, unless there is an objection, is the motion of

24   Mr. Caruso and his colleague to withdraw as counsel.

25          Any objection to me handling that as first order of

1    business?

2            MR. NATHAN:  No, your Honor.

3            MR. CAMMARATA:  No, your Honor.

4            THE COURT:  Is there any objection from Mr. Giuliani

5    to the substitution of counsel?

6            MR. CAMMARATA:  There is not, your Honor.

7            THE COURT:  Mr. Giuliani.

8            MR. GIULIANI:  No, your Honor.

9            THE COURT:  Mr. Cammarata, I am going to hear from you

10   later with respect to your request for an extension, but if I

11   do not grant that, I want to be sure that you're still in the

12   case and that you will be in court on the 16th in that event,

13   if I allow Mr. Caruso to withdraw.

14           Can I be confident with respect to that?

15           MR. CAMMARATA:  Yes, your Honor.  My client and I will

16   comply with all orders of the Court.

17           THE COURT:  Including to be present on the 16th of

18   January.

19           MR. CAMMARATA:  Yes.  If the application is denied.

20           THE COURT:  And then the other question that I have

21   got is really addressed to Mr. Caruso.

22           Mr. Caruso, I've been going through your application

23   of whether there exists good cause for you to withdraw.  I've

24   got questions about that, which I would address in camera in

25   the robing room if you're still pressing that.

1          It was not clear to me from the papers whether, given

2    that there is a substitution of counsel and given the assurance

3    that I just received from Mr. Cammarata, that if I decide to go

4    forward on the 16th, he and his client will be here, whether I

5    actually need to address the question of good cause.  I don't

6    think that it's quite supported on the papers before me.

7          What's your position, sir?

8          MR. CARUSO:  If the Court is going to grant this

9    application on consent, based on Mr. Cammarata's

10   representation, then there is no need for the Court to address

11   that issue.

12         THE COURT:  Mr. Nathan, do you agree with that?

13         MR. NATHAN:  Well, plaintiffs are not in a position to

14   give that consent absent the assurance that Mr. Cammarata and

15   his client are prepared to stick to the schedule as ordered by

16   the Court.  Sounds like we are halfway there.

17         I think the question of whether that extension will be

18   granted on the basis that new counsel has appeared is still on

19   the table.  I think what we would need to hear from Mr.

20   Cammarata is that his new arrival to the case won't be treated

21   as a basis for further extension requests, because plaintiffs

22   would object to that.

23         THE COURT:  I should make it clear, before I hear

24   argument with respect to that, Mr. Cammarata, that in a series

25   of cases I have held that the appearance of new counsel is not

1    itself a basis for an extension.  I have held that way back in

2    a case called *Furry Puppet*, a case called *Cheng*, another case

3    called *In Re Elysium Health-Chromadex Litigation*.

4         The proposition is sort of an obvious one, which is

5    that requests for extension may be supportable under Rule 16,

6    but you can't contrive a basis for an extension by changing

7    counsel.

8         I assume you understand that proposition of law and

9    that doesn't change the answer that you just gave me.

10        MR. CAMMARATA:  I do, your Honor.  However, I would

11   like to be heard on it before your Honor today.

12        THE COURT:  I will give you that opportunity.

13        I am going to grant the application of Mr. Caruso and

14   his colleague to withdraw as counsel.

15        Under Local Rule 1.4, an attorney for a party may be

16   relieved or displaced only by order of the Court.  When there

17   is no substitution of counsel, the order may be issued only

18   upon a showing by affidavit or otherwise of satisfactory

19   reasons for withdrawal or displacement, and the posture of the

20   case, and whether or not the attorney is asserting a retaining

21   or charging lien.

22        The movant is relieved of the obligation to submit an

23   affidavit when there is a stipulation for substitution of

24   counsel signed off on by the client.  In this case there is

25   such a stipulation.

1          Based on the record before me, I would not have found

2   that there was good cause to warrant granting the withdrawal of

3   counsel pursuant to the request made to me by Mr. Caruso and

4   Mr. Labkowski.  That motion was based on a claim of fundamental

5   disagreement or an unreasonably difficult representation under

6   Rule 1.16(c) of the New York Rules of Professional Conduct.  In

7   essence, and without disclosing the confidential communications

8   submitted to me, the defendant took a position with respect to

9   his participation in discovery that appears to have raised

10  issues with respect to fundamental disagreement or unreasonably

11  difficult representation.  But the Court finds that that does

12  not itself present a fundamental disagreement.

13          In short, there does not appear to be an instance

14  where there is an objection that could be made that counsel

15  would be ethically prohibited from making to the Court with

16  respect to discovery, there is no obstacle to counsel objecting

17  to any of the discovery that plaintiffs seek to take, and no

18  fundamental disagreement on the record before me would prevent

19  counsel from lodging those objections.

20          It may be that the Court would reject any objections

21  or find that they are waived and may enter an order with

22  respect to discovery, but, in that instance, the defendant

23  would not have a choice but to comply with the Court order or

24  to take it up elsewhere.  It would not reflect a strategic

25  disagreement.

1          The Court nonetheless finds that attorneys Caruso and

2   Labkowski may withdraw as counsel, given that Mr. Cammarata has

3   appeared as substitute counsel via notice of appearance signed

4   by the defendant in compliance with Local Rule 1.4, based upon

5   the assurances that Mr. Cammarata will be present, as well as

6   his client, on the 16th if I deny the request for an extension.

7          In short, the way I read the rules is that an

8   affidavit establishing good cause is particularly required in

9   an instance where the substitution of counsel or new counsel

10  would result in there being a delay in the proceedings.  Judge

11  Furman's decision in *New York v. Department of Commerce* at 2019

12  WL 2949908 supports that proposition.  But where there is no

13  basis to believe that substitution of counsel will result in

14  there being a delay, I find that there is no need for there to

15  be good cause in this case.

16          That takes care of the first issues.

17          Mr. Caruso, Mr. Labkowski, you're relieved and you may

18  remain in the gallery or you may leave.  It is up to you.

19          MR. CARUSO:  Thank you.  I'm sorry it came to this.

20          MR. LABKOWSKI:  Thank you, your Honor.

21          THE COURT:  Have a good day and a good Thanksgiving to

22  both of you.

23          MR. CARUSO:  Same to you.

24          MR. LABKOWSKI:  Thank you, Judge.

25          THE COURT:  I think the next issue is the request for

1  an extension of the trial date of January 16, so I'll hear from

2  you, Mr. Cammarata, with respect to that.

3          MR. CAMMARATA:  Thank you, your Honor.

4          There are multiple reasons why I'm requesting that the

5  trial be adjourned from the January 16 date, and the

6  application would be for a reasonable amount of time of 30

7  days, as I don't believe there would be a prejudice to the

8  plaintiff, obviously; to my client, the defendant; and to this

9  Court.

10          Your Honor, this is a civil case.  My client has

11  multiple cases that he is defending against in multiple

12  jurisdictions, such as New York, Arizona, Georgia, Colorado,

13  and Washington, D.C.  As I'm sure this Court may know, there

14  was also a contempt motion filed against my client in

15  Washington, D.C. that's returnable, I believe, in the middle of

16  December.

17          THE COURT:  Mr. Cammarata, let me interrupt you for a

18  second just to say that don't assume that I know anything that

19  has not been presented to me in the papers filed before me.

20  I'm aware that there is press that covers things having to do

21  with your client, but I've actually tried to blind myself to

22  that press.  Anything you want me to know, tell me.  Don't

23  assume that I know something that you have not told me or the

24  plaintiffs haven't told me.

25          MR. CAMMARATA:  There was a contempt motion filed in

1    D.C. against my client that's returnable in the middle of

2    December, so he is defending multiple criminal cases and civil

3    cases in multiple jurisdictions around this country.  He has to

4    prepare for those cases, and he has to put on a formidable

5    defense on those cases, as well as this one.  I know this is

6    the case that's in front of you.

7            Quite frankly, your Honor, I know it's not the only

8    component that you would consider, but this is a very strong

9    component.  I recently got on this case, about nine days ago.

10   I have quickly met and conferred with my client down in the

11   State of Florida.  I'm moving to get everything together as

12   quickly as possible to comply with all the Court orders before

13   this Court to produce document production.

14           I feel, and now I could say this -- I would have said

15   it if counsel was still here -- what we have done in the last

16   five to nine days on this case hasn't been done in the last

17   five to nine weeks on this case.

18           I am still getting up to speed.  I have to meet and

19   confer with my client and prepare for a trial less than 40 days

20   from now.  I don't think there would be prejudice to this Court

21   or to the plaintiff if it's granted.

22           My client --

23           THE COURT:  Slow it down.  The court reporter is

24   trying to capture your words.  I don't have a time limit on

25   this.  Take your time.

1           MR. CAMMARATA:  In addition to me getting up to speed

2     and putting on an ethical and formidable defense for my client

3     and be best prepared possible, I would need more time than the

4     deadline that's set to start the trial on January 16.  If we

5     can move the trial to the end of January or middle of February,

6     that would give the defendant the opportunity to properly

7     defend himself.

8           My client is also requesting that the adjournment be

9     granted based upon his involvement with the presidential

10    inauguration that is taking place, and events are starting on

11    the 16th and, I believe, going to the 22nd is the duration of

12    time.  My client regularly consults and deals directly with

13    President-Elect Trump on issues that are taking place as the

14    incoming administration is afoot, as well as inauguration

15    events.

16          My client wants to exercise his political right to be

17    there and his position of support and consultation to the new

18    administration.

19          THE COURT:  I realize it's somewhat inconsistent with

20    the first point that you made about you wanting sometime

21    personally, but with respect to the 16th, I have not

22    conferred -- I don't know what the plaintiffs' position is, but

23    are you available on the 13th and the 14th of January?

24          MR. CAMMARATA:  I don't have my electronic calendar.

25    I would have to write the Court.

1          THE COURT:  Can you ask your client whether he is

2    available on the 13th and the 14th.  He has got his iPad with

3    him.

4          MR. GIULIANI:  This is not the right calendar, your

5    Honor.  It has nothing on it, including events that I know

6    exist.  I can find out at a recess.

7          MR. CAMMARATA:  Your Honor, I can find out from my

8    client, or I can write the Court by tomorrow, 10 a.m., as to

9    whether -- or he can make a call and we can return back today.

10          THE COURT:  Let's put that to the side for the moment.

11          Let me hear the remainder of your argument.

12          MR. CAMMARATA:  The remaining issue in this case is

13    the Florida Homestead litigation.  That's the chief component

14    of this.

15          THE COURT:  There are two issues for trial on the

16    16th.  One is the Florida Homestead, which is the subject of

17    the summary judgment motion, and then the other is the World

18    Series rings, plus anything else that would be ripe at the time

19    of the 16th.

20          MR. CAMMARATA:  Right.  I understand that.

21          THE COURT:  The only two that have been scheduled

22    right now are the World Series rings and the Homestead.

23          MR. CAMMARATA:  This has to do with property that is

24    in the State of Florida.

25          It's important for this Court to note that, on

1  August 5, 2024, the judgment against the defendant was recorded

2  here and also in Florida.  I believe that there was venue

3  shopping to come to this court, and I believe that that also is

4  creating an impediment to getting this case resolved quicker.

5        THE COURT:  Isn't that actually now fully briefed in

6  front of me?  There is an argument on summary judgment with

7  respect to that.  My expectation is to resolve that issue

8  expeditiously.  I hear what you're saying, but I'm not sure

9  that that provides a justification for moving the date of the

10  16th, does it?

11        MR. CAMMARATA:  I could agree with the Court on that.

12  However, as far as my preparation is concerned, now I'm scaling

13  back three more days on a case of this magnitude that there is

14  a lot of work to do, considering where previous counsel has

15  left my client.  Previous counsel has left my client

16  essentially without counsel for several weeks.  I'm now picking

17  up the pieces of previous counsel and moving this case forward.

18        I need more time to prepare to put on a formidable

19  defense for my client.  I am asking for the Court for a few

20  weeks, that there would be no prejudice to plaintiffs in this

21  matter.

22        Ninety percent of the property, if I'm not mistaken,

23  has already been turned over.  I just received documents from

24  plaintiffs' counsel right now as far as affidavits and power of

25  attorneys to get the co-op shares turned over.  We are working

1    on -- I'll be working with my client to get the title for the

2    Mercedes turned over.

3           There is a pending appeal on this overall matter, as

4    well as a notice of appeal in the Second Circuit.

5           I think that the time to give me of a few weeks is not

6    an unreasonable request.  I'm not asking for 60 days or 90

7    days.  I'm asking for 30 days.  If we could push the trial to

8    mid February, I can prepare a defense for my client that would

9    be an ethical and worthy defense that he deserves.

10          THE COURT:  Let me hear from plaintiffs.

11          MR. NATHAN:  Thank you, your Honor.

12          The standard here is good cause, and I don't think we

13   have heard anything from defendant's counsel that would

14   constitute good cause in these circumstances.

15          Counsel mentioned the press of other business, but I

16   don't think anything that we heard about is new other than the

17   contempt motion.  Everything else could have been raised long

18   ago if it was a valid basis for an extension of these

19   deadlines.

20          And the contempt motion, just to bring your Honor up

21   to speed, is a motion that we filed in the district court in

22   D.C. relating to the defendant's violations of the consent

23   injunction, barring him from continuing to defame our clients

24   in that case.

25          There is a hearing on that motion scheduled for

1    December 12, but as far as we are concerned, that hearing is

2    necessitated by the defendant's own conduct and shouldn't be a

3    basis for him to procure an extension of deadlines in these

4    cases, for the same reason that obtaining new counsel wouldn't

5    constitute good cause.

6           Everything else that we have heard, other than the

7    venue objections, which I'll get to in a moment, are arguments

8    that are essentially derivative of counsel's appearance in this

9    case at this late date.  We don't think that constitutes good

10   cause as a categorical matter, but certainly, in these

11   circumstances, granting an extension of deadlines in an already

12   compressed schedule, because the defendant apparently made some

13   statement or demand of his former counsel that was, in their

14   view, incompatible with their continued representation would

15   just draw a roadmap for defendants to procure extensions under

16   circumstances that would disrupt the efficient administration

17   of justice more generally, and in this case would throw off a

18   schedule that I think everyone acknowledges need to proceed

19   expeditiously.

20          With respect to the venue objections, it's true we

21   registered our judgment in Florida.  We also registered our

22   judgment here, where the defendant has not objected to personal

23   jurisdiction or venue.

24          There have been abstention arguments raised in the

25   summary judgment briefs, but no abstention argument that would

1    warrant intra-federal court abstention.

2         The argument for proceeding in Florida, to the extent

3    it would have had any validity, which is something we could

4    address separately if your Honor was interested in that

5    question, has been conclusively waived under Rule 12 by the

6    failure to raise it in the defendant's initial responsive

7    pleading.

8         And then stepping back, this is a case that needs to

9    move forward.  It's a case where the defendant has already, I

10   would say, been lackadaisical, at best, and intentionally

11   obstructive, at worst, with respect to deadlines, and we are

12   already in a situation where the Court has had to grant a

13   motion to compel compliance with requests for production.

14        There are deadlines today for the defendant's

15   compliance or responses to outstanding interrogatory requests

16   and for compliance with an order granting the motion to compel.

17   And as of this morning, pursuant to the instructions that the

18   Court is aware of and blessed in its order on Friday, the

19   receivers asked the defendant to either produce certain

20   information by this hearing or explain by 3 p.m. yesterday why

21   that would be impossible.  We heard nothing by 3 p.m. yesterday

22   and so far have received nothing in response to those

23   directives.

24        This is just not a situation where, despite Mr.

25   Cammarata's best efforts, anything like compliance is

 1   happening, and we don't think that that behavior should be

 2   rewarded by an extension of the discovery schedule or the trial

 3   schedule in this case.

 4           THE COURT:  Mr. Cammarata, I'll permit you to be

 5   heard.

 6           Mr. Nathan, do you have a sense right now as to how

 7   many witnesses you would have on the Homestead case, if that

 8   goes to trial, and how many on the World Series rings?

 9           MR. NATHAN:  I think in the Homestead case the answer

10   is one.  That would be the defendant.  And in the rings case

11   the answer would be two, which would be the defendant and the

12   intervenor, who is the claimant with respect to those rings.  I

13   say that subject to change, of course, depending on what

14   discovery responses reveal, should we receive them.

15           THE COURT:  What's the status of the subpoena to

16   Mazars?

17           MR. NATHAN:  We have received a response and are

18   reviewing it.

19           THE COURT:  Mr. Cammarata, you wanted to be heard?

20           MR. CAMMARATA:  Yes.  Thank you, your Honor.

21           The D.C. contempt motion that Mr. Nathan has spoke

22   about, I believe, is by design.  It's smack in the middle of

23   the preparation for this trial.  It is returnable on

24   December 12, which requires my client to be in D.C., my client

25   to concentrate his energies on opposing a contempt motion

1  which, by the way, could have been brought any time, even after

2  the trial before your Honor.

3      But the need to bring it now was to bombard, seek, and

4  destroy the defendant, not give him enough time to reply to

5  unrealistic demands, not give my client enough time to put on a

6  defense, and, quite frankly, a request has been made to have a

7  deposition of my client between the week of Christmas and New

8  Year's, where it's a holiday that my client travels.

9      There is not enough breathing room for my client to do

10  this trial, to defend against the contempt motion in D.C., to

11  defend against six or seven other cases in other jurisdictions,

12  and for me to put the defense on that that I need.  There is no

13  prejudice if an extension of time is granted.

14      That contempt motion, make no mistake, was placed

15  smack in the middle of the preparation of the trial that is

16  ordered to start on January 16.  There is no statute of

17  limitations that could have been blown if the contempt motion

18  was brought after this trial.  It's a strategic effort to get

19  my client to defend against something that can lead to civil

20  sanctions and potentially incarceration.

21      So that's where his main focus is right now.  His main

22  focus is to avoid sanctions and to avoid potential

23  incarceration, if that is an option that the Court is willing

24  to entertain.

25      THE COURT:  Anything else, Mr. Cammarata?

1              MR. CAMMARATA:  Yes, your Honor.

2         You know what, my office -- there has been attempts to

3   have my office slow down, and I'm not saying it's coming from

4   plaintiffs' counsel, but there have been numerous threats of,

5   get off the case, the bar is going to be notified.  You are

6   going to -- these type of things.  It's important.  It was

7   echoed.

8         The professional rules of conduct of New York was as

9   cited by Mr. Gottlieb essentially stating, in a letter to this

10  Court that was published, that by virtue of me having a press

11  conference outside of the law offices of Willkie Farr, that I

12  might be conducting myself unethically, again, a distraction

13  and a redirection of our --

14            THE COURT:  Mr. Cammarata, with respect to that

15  reference, there is no request for relief yet with respect to

16  whether having a press conference outside of your adversary's

17  offices is a violation of the rules of ethics, and I am not

18  going to opine with respect to that or with respect to whether

19  it violates other civil laws that I think we can all imagine

20  what those laws are.

21        But to complain that your office is being threatened

22  when you have a press conference outside the offices of the

23  other law firm is kind of hard to take.

24        Are there any other arguments that you have got that I

25  have not heard?

```
 1                MR. CAMMARATA:  That's it, your Honor.  Thank you.

 2                THE COURT:  Anything else from you Mr. Nathan?

 3                MR. NATHAN:  Just one point about the contempt motion.

 4           So there is no misunderstanding, the injunction that

 5      is the subject of that contempt motion was an injunction

 6      entered earlier this year in a parallel case brought after the

 7      trial verdict against Mr. Giuliani in the District of Columbia.

 8           Ultimately, through a series of events that transpired

 9      in the bankruptcy court, the automatic stay was lifted for the

10      purpose of the defendant agreeing to the substance of that

11      injunction and waiving any right to appeal.  The district court

12      then entered it.  That all happened in May of this year, I

13      believe.

14           And the idea that we then chose the timing of the

15      contempt motion to coincide with anything in these proceedings

16      is just not true.  That timing was occasioned by the

17      defendant's own violations of the consent injunction just a

18      couple of weeks ago.  We responded immediately because the

19      point of the injunction is to keep him from continuing to

20      defame our clients.  And then the Court scheduled a hearing for

21      the 12th that Mr. Giuliani has not asked to extend or adjourn.

22                THE COURT:  I'm prepared to rule.

23           The request for an adjournment of the trial and other

24      interim dates raised by defendant's new counsel on November 15,

25      2024, turnover action, docket number 121 is denied for lack of
```

1  good cause.

2          By letter motion, the defendant requested that the

3  trial currently set for January 16, 2025 be adjourned until on

4  or after January 22, 2025.  The Court construes the request as

5  made under Rule 16, which allows an existing scheduling order

6  to be modified "only for good cause and with the judge's

7  consent."  Federal Rule of Civil Procedure 16(b)(4).

8          Good cause in the context of the modification of a

9  discovery schedule generally requires the movant to show that

10 "despite due diligence, it could not have reasonably met the

11 scheduled deadlines."  *Furry Puppet Studio, Inc. v. Fall Out*

12 *Boy*, 2020 WL 4978080 at *1-2 (S.D.N.Y. Feb. 24, 2020).  That

13 means showing that "need for more time was neither foreseeable

14 nor its fault in refusing to grant the continuance would create

15 a substantial risk of unfairness to that party."

16         Incompatible with a finding of due diligence or

17 factors, including "carelessness, an attorney's otherwise busy

18 schedule, or a change in litigation strategy."  *Id.*

19         Finally, even after a showing of good cause, it

20 "remains within the sound discretion of the district judge

21 whether to grant a modification or not."  *Id.*

22         As a general matter, substitution of counsel alone

23 does not constitute good cause.  A party cannot restart the

24 litigation clock by firing one counsel and hiring another.

25 *Cheng v. Via Quadronno LLC*, 2022 WL 1210839 at *4 (S.D.N.Y.

1    Apr. 25, 2022); *In Re Elysium Health-Chromadex Litigation*, ECF

2    number 130, (Feb. 14, 2020)(denying motion for an extension

3    based on appearance of new counsel).

4              Here, defendant has already sought and received

5    multiple extensions in this matter.  *See* turnover action,

6    docket numbers 28, 39, 56, 92, and has missed multiple

7    deadlines.  Defendant has not shown anything close to "due

8    diligence" with respect to the discovery schedule.  Nor does

9    defendant make any well-founded argument that a trial on

10   January 26, 2025 leaves him with insufficient time to prepare.

11             Counsel makes conclusory statements that he is not

12   able to prepare in the remaining time from today until

13   January 16, 2025, but he provides no detail or factual basis to

14   support that assertion.

15             As of right now, two very discrete issues are set for

16   trial:  The Homestead exemption issue and the ownership of the

17   World Series rings.  At most, a couple of witnesses would need

18   to be prepared.

19             Plaintiffs' counsel represents that at present they

20   believe that they only need two witnesses, one of which is the

21   defendant, the other is the defendant's son.

22             The Court set these matters for trial on October 17,

23   2024 in the Homestead action, *see* docket number 47, and October

24   21, 2024 in the turnover action, *see* docket number 61.  The

25   trial has been discussed and planned for at multiple hearings.

 1   Neither defendant nor his counsel have been heard to object to

 2   that date.  *See* Homestead action, docket numbers 73, 88

 3   (hearing transcripts).

 4         The defendant's social calendar does not constitute

 5   good cause under Rule 16, nor does his voluntary submission of

 6   substitution of counsel.

 7         The Court would be prepared to accelerate the trial to

 8   January 13 or 14, if it works for both parties and if an

 9   application is made for trial to be accelerated to those dates.

10   If any such application is made, it must be made by this coming

11   Monday.

12         With respect to the contempt motion, suffice it to say

13   that a party cannot manufacture good cause by engaging in

14   conduct that its adversary believes gives rise to a motion for

15   contempt.  In addition, I'm informed that there has been no

16   request for an extension of the contempt hearing in the other

17   court.  Therefore, it does not provide good cause for an

18   extension of this case.

19         Next issue is the motion for expedited discovery

20   deadline in the turnover action.

21         Mr. Cammarata, do you wish to be heard with respect to

22   that?

23         MR. CAMMARATA:  I believe that's the plaintiffs'

24   application.  I'd like to hear his application first, and then

25   if I may respond.

1              THE COURT:  You may do so.

2              Mr. Aaron or your colleague.

3              MR. NATHAN:  Thank you, your Honor.

4              We have sought this relief already with respect to the

5    Homestead action, and our request now is that discovery

6    requests served in connection with the miscellaneous

7    enforcement proceeding be given the same treatment, that is,

8    that all responses, objections, and productions made along with

9    responses and objections be served within 14 days.

10             We have laid out in our letter motion why we believe

11   there is good cause in these circumstances, and I think what it

12   comes down to is that if the defendant believes that more time

13   is required to prepare adequate responses, he is free to seek

14   that relief from this court.  And if there is a reason for it,

15   then this Court, I presume, would grant that relief.

16             In these circumstances we are less than two months

17   from trial, and the default rule, if it were held at 30 days,

18   particularly in light of our experience with the defendant's

19   responses to discovery requests in the Homestead action, where

20   we have yet to receive anything, we don't think that it would

21   be possible to efficiently prepare for trial without this

22   expedited schedule.

23             So for the same reasons that we sought this relief in

24   the Homestead action, we would ask that the Court grant it

25   here.

1                   THE COURT:  Help me with one thing.

2                   You served the information subpoenas in connection

3       with this case, and the law gives you the authority to serve

4       information subpoenas.  Information subpoenas can call for

5       documents or they can call for testimony.  Under the CPLR,

6       responses are due within seven days of receipt for an

7       information subpoena for answers.  For depositions initiated by

8       information subpoenas, the window for compliance is 10 days.

9                   Why is it that you need anything from me?  Aren't

10      those provisions self-enforcing?  The CPLR indicates that they

11      are enforceable by contempt.  What are you seeking to do

12      through the Federal Rules of Civil Procedure that you don't

13      already have through the CPLR?

14                  MR. NATHAN:  That may just reflect a different

15      understanding of what the information subpoena authorizes under

16      5224.

17                  But if your Honor believes that we could achieve the

18      same thing by deeming the request for production that we have

19      served in connection with the miscellaneous enforcement

20      proceeding to be served subject to that rule, and that a 10 or

21      a seven-day deadline would then apply, we would be happy with

22      that outcome as well.

23                  THE COURT:  Mr. Cammarata.

24                  One more question for you, Mr. Nathan.

25                  In terms of what's before me now, I have the assets

1   that were the subject of the turnover order.  I have ruled on

2   those.  I have the rings, which were the subject of the

3   turnover motion to which there is an objection.  That's

4   scheduled for trial.  I have got the Homestead action, but

5   that's in a separate civil number.

6        What is it that you would be seeking to do through the

7   Federal Rules of Civil Procedure other than evidence with

8   respect to the rings?  It really ties into my question about

9   the use of information subpoenas, because the Federal Rules of

10  Civil Procedure are really not what's designed to hunt for

11  assets.  It's the information subpoenas that are designed to

12  hunt for assets.

13        MR. NATHAN:  Understood, your Honor.

14        The major stone that I won't say is unturned, but at

15  least the contents of which have not been brought before the

16  Court in a motion for relief yet, has to do with the

17  defendant's cash and the ways in which he and his associates

18  have funneled cash away from his personal accounts and into

19  LLCs that we contend are, at a minimum, designed to keep those

20  cash assets away from creditors in an improper way.  We have

21  been stimied in our attempts to develop all the facts that

22  would be relevant to this motion, which we would hope to be

23  able to bring before the Court and tee up any disputed factual

24  issues for trial on the same schedule.

25        The federal rules give us a little bit more nationwide

1    scope in investigating a scheme that now includes bank accounts

2    opened in New Hampshire, an LLC formed in Florida, cash held in

3    that LLC's name in Florida.  We believe that the scope of the

4    CPLR is quite broad and would give us rights to the discovery

5    we would need.

6         But the Federal Rules of Civil Procedure are

7    indisputably available to us to seek discovery in any district

8    of the United States where we believe relevant information

9    could be found.  There would be issues to be sorted out in

10   either case, and particularly with respect to third-party

11   discovery.  That's the avenue we have chosen.

12        I would add, also -- this isn't news to your Honor,

13   but we have the option, under Rule 69, to use federal or state

14   procedures in an execution proceeding.  That's just the way we

15   have done it so far.

16        THE COURT:  If the only issues for trial are the

17   Homestead and the rings and part of the justification for

18   expedited discovery is the January 16 trial, if I close the

19   January 16 trial and just make it about rings and about the

20   Homestead, then why would you need expedited discovery with

21   respect to the rest, and what's the justification for that?

22        MR. NATHAN:  I think plaintiffs are interested in

23   proceeding as quickly as possible with respect to everything,

24   and it has been our hope that we could tee up the cash and the

25   money issues for trial.  If the Court's view is that's not

1    practical at this point, of course the trial won't close the

2    book on this enforcement proceeding until we are able to

3    resolve those disputes.

4          If that's the solution, then we would just leave those

5    issues open.  I think the downside to that approach is that it

6    could potentially lead to a second deposition of the defendant.

7    It could also lead us down a path where we continue to be

8    strung along by the defendant's efforts to, you know, open a

9    new LLC as soon as the old one was frozen.  We have seen that

10   occur already in these proceedings, and the relief that we

11   would like to seek in connection with the cash assets we hope

12   would put a stop to that.

13         THE COURT:  Let me turn to you, Mr. Cammarata.

14         Mr. Cammarata, one of my objectives has been to try to

15   resolve the issues that are presented here expeditiously so

16   your client only has to sit for one deposition and so that,

17   frankly, you're done with me.  As soon as the issues can be

18   discovered, it can be done expeditiously, they are discovered,

19   you get rulings, you do whatever you want in terms of appeal

20   with respect to the rulings, but the matter is tried.

21         With that in mind, why shouldn't there be a 14-day

22   turnaround for discovery requests?  In the information

23   subpoenas and the like, there is -- they could proceed by way

24   of the CPLR, and that has even a shorter timetable.

25         MR. CAMMARATA:  Your Honor, I believe the CPLR to say

1    that if an information subpoena is served on a party, there is

2    a 10-day period that the party can object to the subpoena

3    before any production.

4          I'm seeing that plaintiffs' counsel, in one sense,

5    wants to use the Federal Rules of Civil Procedure and sometimes

6    the CPLR and whatever suits their need.

7          What I just heard from plaintiffs' counsel is that

8    there is a laundry list of additional discovery demands that

9    exceed the scope of this trial that's coming down the pipeline,

10   something that in ordinary litigation would take months.

11         He is speaking about entities, which my client

12   categorically denies.  He speaks about entities and transfer of

13   funds and bank accounts and associates.  That sounds of

14   something that cannot be done before this trial, and it seems

15   that this deposition is going to go well beyond the scope of

16   what is before your Honor in the January trial, whether it be

17   13th and 14th or 16th.

18         I would ask the Court to limit the deposition to the

19   issues that are before the Court because this sounds like it's

20   a continuing, ongoing fishing expedition to put my client

21   through extensive and protracted litigation.  He mentioned

22   associates and entities, potentially bringing in other parties

23   into this litigation in an unrealistic time frame.

24         My client doesn't have transportation now.  His car

25   has been taken.  He has limited funds.  I think it's Social

1    Security.  There are certain disputes of assets that may be

2    exempt under the CPLR.  So if the CPLR is good for the

3    exemptions and everything else, why are we teetering on the

4    CPLR or the Federal Rules of Civil Procedure?

5            Discovery shouldn't be shortened.  Discovery should be

6    extended, given the litigation tactics of the plaintiffs'

7    counsel.  They have 10 attorneys working on this file.

8            THE COURT:  Your client's claims of poverty, when

9    there hasn't been any evidence submitted to me to support that,

10   is not well founded.  If you want to make a presentation and

11   have your client swear under oath with respect to his assets,

12   then I can listen to it, but it doesn't appear to me that your

13   client is indigent.

14           MR. CAMMARATA:  That's not what I told the Court.  His

15   transportation has been taken, and he is down to one account

16   that he receives Social Security.  I didn't claim that he's

17   indigent.  I don't want that to be before the Court at this

18   time.

19           What I am claiming is that it has been -- there are

20   accounts he cannot access, but there is litigation -- there is

21   a litigation onslaught coming, and we are down to a few issues.

22   We are down to a few issues.  And this is going to go well

23   beyond -- this is a year or two's worth of litigation, from

24   what I heard from Mr. Nathan just now, that they are looking to

25   cram into a period of time between November 26 and January 13.

 1          If the deposition is going to be granted and they want

 2     the deposition, it should be limited to the scope of the issues

 3     before the Court.  The Court has said, it is the World Series

 4     rings, the Homestead, and any property that's disputed that may

 5     be being held right now is how I perceive it.  This is a

 6     fishing expedition to go further and further and bring other

 7     parties into this, simply -- if that's their wish, the trial

 8     needs to be extended.

 9          THE COURT:  You understand, Mr. Cammarata, that the

10     implication of what you're arguing is that your client very

11     well may be subject to a second deposition.

12          MR. CAMMARATA:  That's not what I'm saying, your

13     Honor.

14          THE COURT:  Do you understand that if I accept the

15     proposition that you're arguing, and there is a request for a

16     deposition in connection with other assets, Rule 69 provides

17     very broad discovery, and you won't be heard to say that my

18     client should not be subject to a second deposition.  By

19     limiting the scope of the first deposition, you are opening

20     yourself up to a second deposition.  I had tried to avoid that

21     for you.  I hear you arguing, Judge, thank you very much, but

22     we don't need your help on this.

23          MR. CAMMARATA:  That's not what I'm saying, your

24     Honor.  I'm saying that to cram all of this in before this

25     strict trial date, it's designed to set up a failure for the

1    defense.  There is new -- the way I heard Mr. Nathan --

2            THE COURT:  Whether you hear it or not, I have said

3    it, and what I've said is that if the deposition is limited in

4    scope, then what's not -- what does not fall within that scope

5    will be subject to a second deposition.  I have said it.  I

6    don't need you to confirm for me that you understand it.  You

7    are presumed to understand it.

8            I can rule with respect to this.

9            I am going to grant the motion in part and deny it in

10   part.

11           The Federal Rules of Civil Procedure expressly provide

12   that the Court may shorten the time for responses to discovery.

13   That's Rules 33(b)(2), 34(b)(2)(a), 36(a)(3).

14           In the Homestead action, the Court ordered "all

15   discovery requests be responded to within 14 days of service,

16   including responses and objections, as well as document

17   production, pursuant to Federal Rule of Civil Procedure 34.

18   Again, that's at docket number 53.

19           The default rules for responding to information

20   subpoenas issued pursuant to CPLR 5224 in a judgment

21   enforcement action require responses within seven days of

22   receipt.  New York CPLR 5224(a)(3).  For depositions initiated

23   by information subpoena, the window for compliance is 10 days.

24   New York CPLR 5224(c).

25           The 14-day window proposed by plaintiffs is generous

1    in comparison to the requirements of New York state procedure

2    and judgment enforcement, which, as this Court has already

3    stated, is supposed to move expeditiously.  *See* Reilly Practice

4    Commentaries. "The information subpoena of CPLR 5224(a)(3) is

5    designed to get information to the judgment creditor about the

6    scope and whereabouts of the debtor's property expeditiously.

7            With respect to the World Series rings, the request is

8    well-founded for expedited discovery.  Trial is scheduled for

9    January 16.  Responses are necessary to the discovery requests,

10   both responses and objections and the production of documents,

11   in order to satisfy that timetable.

12           If, based on a particular request, the defendant needs

13   additional time, the defendant may move by letter motion for a

14   protective order granting him additional time, but he must do

15   so before the due date for the discovery response, not

16   afterwards.  Letter motions must comply with the Court's

17   individual practices.  Response letters are due two days later.

18   If the letter motion is filed after the due date for discovery

19   response, it will be disregarded.  If there is no timely

20   response to a request for a protective order, the motion for a

21   protective order will be deemed unopposed.  Consult my

22   individual practices if you need further clarification.

23           With respect to topics other than World Series rings

24   and other than the Florida Homestead, which is covered by my

25   order in the Homestead action, those will be covered by the

1    CPLR compliance with which is required by law, and failure to

2    comply with is punishable by contempt.

3            Discovery responses may also be served under the

4    Federal Rules of Civil Procedure because Rule 69 permits the

5    parties to use alternative means of the CPLR, or the Federal

6    Rules of Civil Procedure.  But with respect to matters other

7    than the World Series rings and other than the Homestead, the

8    timetable under the Federal Rules of Civil Procedure will

9    apply.

10           This order is subject to revision should it turn out

11   that the defendant or, for that matter, and the plaintiffs, if

12   there are requests of the plaintiffs, seem to be foot dragging.

13           Information subpoenas to Mr. Giuliani, the Giuliani

14   entities and third parties.  I think this is addressed to

15   Mr. Nathan's colleague, if I'm not mistaken, but maybe it's to

16   Mr. Nathan.

17           As I read the correspondence to the Court, the motions

18   to compel are moot, is that correct, and are there issues to

19   raise with respect to those?

20           MR. NATHAN:  Not at this time.  We have asked that our

21   motions be withdrawn or denied without prejudice to renewal.

22           THE COURT:  That motion is granted.  They are denied

23   without prejudice to renewal, and I will note that on the

24   docket.

25           Are there other matters that the plaintiffs have to

1    raise with the Court?

2            MR. NATHAN:  Your Honor, I think we have laid out in

3    our prior correspondence with the Court the two other

4    outstanding issues, one involving the compliance with the

5    turnover order and the revised instructions that were delivered

6    to the defendant on Friday following the events of the CTS and

7    America's First Warehouse.

8            With respect to those instructions, I mentioned this

9    in connection with the extension motion, but I do want to

10   emphasize that those directives included deadlines as of this

11   court appearance for the defendant to produce information

12   regarding the location of certain specific assets or explain by

13   yesterday at 3 p.m. why he would be unable to do so.

14           Those deadlines have both passed without compliance,

15   and at this point the plaintiffs are in a position where we

16   have sort of run out of patience.  There has just been delay,

17   extension, and then ultimately no compliance.

18           There are several other directives where the deadlines

19   are still outstanding, but we have already crossed the

20   threshold where the defendant has not complied with the

21   directives.  I can be more specific.  That involves our

22   requests for information regarding the specific locations of

23   the sports memorabilia, including the Joe DiMaggio jersey, the

24   art mentioned in the turnover order, the cash held in the

25   Citibank account, which has yet to be wired to the plaintiffs,

1    and no explanation given for why that is impossible, and the

2    car title, which we have not received and which defendant's

3    counsel has represented to me is not in his possession.  But,

4    nonetheless, we have not heard an explanation for why the title

5    has disappeared and not been turned over.

6         THE COURT:  Mr. Cammarata, as to the car title, my

7    glance, and it was just a glance, at the Florida counterparts

8    to the department of motor vehicles indicates that if your

9    client lost the title paper, you can apply for a new one pretty

10    readily.  You certainly can do that in New York.

11         The way I hear this going, with Mr. Nathan's

12    presentation, is that there very well may come a time where you

13    are required to show that you actually have made substantial

14    efforts to comply with the Court's orders.  I think you

15    understand where I'm going with respect to that.  If I need to

16    be more explicit, I will.  But just a word of advice or

17    caution, which is, if you haven't made those efforts, you may

18    be putting the Court in a place that the Court, and I think

19    everybody here -- the Court would rather not be in, and I'm

20    sure that everybody here would rather not be in.

21         MR. CAMMARATA:  My client has made efforts as far as

22    the car is concerned, and the car has been turned over already.

23         THE COURT:  But the car and keys without the title is

24    really meaningless.

25         MR. CAMMARATA:  Once we are in receipt of the title

1    from Florida state, we will turn it over immediately.

2         There are also documents I received today from the

3    plaintiff as far as a power of attorney, which I need to look

4    at, and also for the shares of the co-op, which my client

5    intends to execute.

6         Again, my client has been extremely cooperative with

7    my advice as counsel and my direction, which prior counsel had

8    left him in what I believe --

9         THE COURT:  As you know, I had the application from

10   prior counsel, and I don't accept the notion that there was

11   cause for prior counsel to withdraw.  Your client elected to

12   have new counsel.  But there wasn't cause for them to withdraw.

13        MR. CAMMARATA:  I understand.  My client was left by

14   that counsel.  He was shocked when the motion was filed.  He

15   didn't --

16        THE COURT:  Your client is a competent person.  He was

17   the United States Attorney for this district.  The notion that

18   he can't apply for a title certificate for the car is --

19        MR. GIULIANI:  Your Honor, I did apply for a title

20   certificate, and I have not gotten it.  And your implication

21   that I have been not diligent about it is totally incorrect.  I

22   applied for it immediately, and I have not gotten it.  What am

23   I supposed to do, make it up myself?  Every implication you

24   make is against me, and every single one of them is wrong, and

25   you don't let me explain my financial situation.

1       I'm not impoverished.  Everything I have is tied up.

2   I don't have a car.  I don't have a credit card.  I don't have

3   cash.  I can't get to bank accounts that truly would be mine

4   because they have put -- they have put stop orders on, for

5   example, my Social Security account, which they have no right

6   to do.  That has -- they have put stop orders on my business

7   accounts.  I can't pay my bills.  I don't have a penny that

8   isn't tied up by them.

9       THE COURT:  I permitted Mr. Giuliani to speak.  The

10  next time he is not going to be permitted to speak, and the

11  Court will have to take action.

12      He is ably represented by counsel, or he is permitted

13  to proceed *pro se*.  He can't have hybrid representation.

14      And if you want your client to take the stand and be

15  subject to deposition, he is nodding his head, we can have him

16  take the stand at some future proceeding.

17      MR. GIULIANI:  Somebody has to tell the truth.

18      THE COURT:  It won't be in lieu of a deposition.

19      Mr. Cammarata, what more do you have to say to me?

20      MR. CAMMARATA:  As far as Citibank is concerned, I

21  believe my office sent a letter to Citibank for what funds they

22  have to release.  My client cannot be held responsible if the

23  money wasn't wired.  I will follow up with Citibank.

24      I will deal with my client as far as following up with

25  the title through the state.  But my client has complied --

1          THE COURT:  There should be no higher priority for

2     your client right now than complying with the Court's orders,

3     period.

4          MR. CAMMARATA:  I understand, your Honor.

5          THE COURT:  Anything further?

6          MR. CAMMARATA:  Nothing further.

7          THE COURT:  Anything further from you, Mr. Nathan?

8          MR. NATHAN:  No, your Honor.

9          THE COURT:  There is one other thing that I have got,

10    which is, with respect to the trial on January 16, I should

11    have a date for the submission of proposed witnesses,

12    essentially for a joint pretrial order.

13         A joint pretrial order will be due January 6.  With

14    that there can be motions *in limine*.  If there are responses to

15    the motions *in limine*, those responses are due January 10.

16         Anything else from plaintiff?

17         MR. NATHAN:  Your Honor, maybe this is coming down the

18    line, but I think at one of our prior conferences your Honor

19    mentioned proposed findings of fact and conclusions of law.

20         THE COURT:  Those should be submitted with the joint

21    pretrial order on January 6.

22         Mr. Cammarata, anything further from you?

23         MR. CAMMARATA:  Nothing, your Honor.  Thank you.

24         THE COURT:  We are adjourned.  Thank you.

25         (Adjourned)