UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:
RUBY FREEMAN and :
WANDREA' MOSS, :
:
Plaintiffs, :  24-cv-06563 (LJL)
:
-v- :  MEMORANDUM &
:  ORDER
RUDOLPH W. GIULIANI, :
:
Defendant. :
:
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiffs Ruby Freeman and Wandrea' Moss ("Plaintiffs") move, pursuant to Federal Rule of Civil Procedure 37(a), Local Rule 7.1(d), Paragraph 1(C) of the Court's Individual Rules and Practices, and the Court's Orders of October 28, 2024, Dkt. No. 53. and November 4, 2024, Dkt. No. 59, for an order compelling Defendant Rudolph W. Giuliani ("Defendant") to answer Interrogatories #4 and #8 from Plaintiffs' First Set of Interrogatories ("First Interrogatories"). Dkt. No. 126.  The letter motion was filed on December 13, 2024. *Id.*  The Court directed Defendant to respond by December 17, 2024 at 5:00 p.m. pursuant to its Individual Practices. Dkt. No. 128.  Defendant responded after the deadline on December 17, 2024, asserting that the motion to compel was mooted by interrogatories transmitted to Plaintiffs' counsel.  However, Defendant's responses were not provided, nor did Plaintiffs withdraw their motions. Accordingly, the Court grants Plaintiffs' motion to compel.

The Court entered the Case Management Plan and Scheduling Order ("Scheduling Order") in this case on October 28, 2024.  Dkt. No. 53.  The Scheduling Order required that "all discovery requests be responded to within 14 days of service." *Id.* at 1.

On November 6, 2024, Plaintiffs served their First Interrogatories. Dkt. No. 127 ¶ 3. Among Plaintiffs' interrogatories were the following:

> **Interrogatory No. 4:** Identify any financial, medical, or legal professional or firm whom you have consulted during the period of January 1, 2020, through the present.
>
> **Interrogatory No. 8:** Identify all email accounts, messaging accounts, and phone numbers that You have used during the period January 1, 2023, through the present.

Dkt. No. 127-1 at ECF p.6.

Defendant's responses can only be understood as showing disrespect for the law and disregard for his obligations under law. Defendant's deadline to respond to the First Interrogatories was November 20, 2024.[1] He did not serve any responses by that date. Dkt. No. 127 ¶ 4. Plaintiffs' counsel agreed to an extension to November 26, 2024. Dkt. No. 127-3. Defendant also failed to respond by that date. Dkt. No. 127 ¶ 5. On December 2, 2024, Defendant finally served responses to the First Interrogatories. *Id.* ¶ 7. But he did not answer Interrogatory #4 or Interrogatory #8. He offered this objection to Interrogatory #4: "Defendant objects to this interrogatory to the extent that it seeks information and/or a response that is protected from disclosure by any privilege, including, but not limited to the attorney-client privilege and/or work product doctrine and doctor patient privilege." Dkt. No. 127-4. He made the following objection to Interrogatory # 8: "Defendant objects to this interrogatory as is [sic] poses a safety and security concern to his wellbeing, as there were previous threats received by Defendant." *Id.* Plaintiffs responded that those objections were waived and were meritless but agreed to Defendant's request for two further extensions to supplement Defendant's responses to

---

[1] Plaintiffs' email to Defendant stated the deadline as November 21, 2024. Dkt. No. 127-2. The difference is immaterial. Defendant failed to respond by November 21, 2024.

2

the First Interrogatories. Dkt. No. 127-5. On December 8, 2024, Defendant served amended responses to Interrogatories #4 and #8 from the First Interrogatories. *Id.* ¶ 9.

In pertinent part, Defendant stated with respect to Interrogatory #4: "Defendant objects to this interrogatory, as any medical professional, financial professional or legal professional that Defendant consulted with would be information that is not relevant to the claims of Plaintiffs, nor proportional to the needs of the case." Dkt. No. 127-6 at ECF p. 4. In pertinent part, Defendant objected to Interrogatory #8 as follows: "This request is objectionable due to the safety and security concerns of Defendant. Defendant's email address and cell phone telephone number are not relevant to the claims of Plaintiffs in this case and would create danger to Defendant's personal safety and security." *Id.* at ECF p. 5.

The law imposes consequences on parties who disregard their obligations. One such consequence for failure to respond in a timely manner is the waiver of objections to interrogatories. "Untimely objections to interrogatories are waived 'unless the court, for good cause, excuses the failure.'" *Star Fabrics, Inc. v. Gogo Apparel, Inc.*, 2019 WL 3302610, at *1 (S.D.N.Y. July 23, 2019) (quoting Fed. R. Civ. P. 33(b)(4)); *see also Barbera v. Grailed, LLC*, 2024 WL 4836616, at *1 (S.D.N.Y. Nov. 20, 2024) (citing cases); C. Wright & A. Miller, Federal Practice & Procedure § 2173 ("In the absence of an extension of time, failure to object within the time frame fixed by the rule is a waiver of objections"). The Defendant has not shown good cause for his failure to timely respond, and his tardy objections are accordingly waived.

In any event, Defendant's objections are without merit. The burden is on the objecting party to show that the interrogatory is improper. *See* C. Wright & A. Miller, Federal Practice & Procedure § 2173. An interrogatory served under Federal Rule of Civil Procedure 33 may relate to any matter that may be inquired into under Federal Rule of Civil Procedure 26(b)(1). *See*

3

*Winfield v. City of New York*, 2018 WL 2277838, at *2 (S.D.N.Y. May 18, 2018). In other words, interrogatories may seek nonprivileged information "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Grounds for objections to interrogatories must be stated with specificity. Fed. R. Civ. P. 33(b)(4).

The information requested by Interrogatory #4 ("financial, medical, or legal professional or firm whom you have consulted during the period of January 1, 2020, through the present") is squarely relevant to Defendant's claim for a homestead exemption. The identities of the medical, financial, and legal professionals that Defendant has consulted during this period are relevant, under Rule 26, to whether he established a homestead at the Palm Beach Condo under well-established Florida law. Defendant first made a declaration of Florida domicile on July 13, 2024, executed in New Hampshire and notarized by a New Hampshire notary, *see* Dkt. No. 32-4, after testifying under oath in bankruptcy court on February 7, 2024, that New York was his homestead, *see* Dkt. No. 32-3 at ECF pp. 10–11. Defendant was undisputedly not in residence at the Palm Beach Condo, nor anywhere else in Florida, from July 1, 2024, when he filed an application to convert his chapter 11 case to chapter 7, through August 8, 2024, when Plaintiffs recorded their judgment in Palm Beach County. *See* Dkt. No. 42-9. "To claim a Florida homestead exemption in property in which a claimant resides, the claimant must have the intention to make the property their homestead and actually maintain the property as their principal residence." Tracy Batement, *Florida Jurisprudence, Homesteads*, 28A Fla. Jur 2d § 36

4

(2024). "The mere filing of a declaration of homestead is insufficient to establish a homestead exemption." *Id*. at § 36. "A debtor's intent to reside permanently at a subject property is subjective and difficult to prove through testimony which, on the part of the debtor, is likely self-serving. Consequently, courts often look to documentary and other evidence to determine continued intent to reside at a property claimed as homestead." *In re Sam Parker Coats*, 643 B.R. 634, 648–49 (Bankr. M.D. Fla. 2022), *aff'd sub nom. In re Coats*, 2023 WL 8981738 (M.D. Fla. Dec. 28, 2023). "Any action taken by the homeowner that is incompatible with an intention to permanently reside in a residence may cause a homeowner to lose the benefits of Article X, Section 4, of the Florida Constitution." *In re Franzese*, 383 B.R. at 203 (citing *Semple v. Semple*, 82 Fla. 138, 89 So. 638, 640 (Fla. 1921)). The identities, and correspondingly, locations of the Defendant's professional services providers are relevant to whether he in fact treated Palm Beach as his permanent residence, as a matter of subjective intent and actual occupancy, as opposed to a vacation home. See, e.g., *In re Bratty*, 202 B.R. 1008, 1010 (Bankr. S.D. Fla. 1996); *see also* Barry Nelson & Cassandra Nelson, *Homestead: Creditor Issues*, ASSET PROTECTION IN FLORIDA (The Florida Bar, 8th ed. 2024) (listing among suggested "acts indicating [an] intent" to establish a Florida domicile that the individual should: "Obtain a doctor in Florida to act as your primary care physician, and have your medical records transferred to his or her office"). Even if the Defendant seeks only to claim a Florida homestead established in 2024, the identities and locations of his professional services providers prior to 2024 are relevant for the purposes of comparison, and the request is not unreasonably burdensome given that it is confined to the less than 5-year period during which the Defendant maintained sole ownership of the Palm Beach Condo and the New York Co-op.

5

As to the information requested by Interrogatory #8 ("all email accounts, messaging accounts, and phone numbers that you have used during the period January 1, 2023, through the present"), this request is best characterized as "discovery on discovery," because the Plaintiffs seek documents and information that is not directly relevant to a claim or defense, but that are instead collateral. *Haroun v. ThoughtWorks, Inc.*, 2020 WL 6828490, at *1 (S.D.N.Y. Oct. 7, 2020). When discovery on discovery is sought, "the party seeking the discovery must provide an adequate factual basis to justify the discovery, and the Court must closely scrutinize the request in light of the danger of extending the already costly and time-consuming discovery process *ad infinitum.*" *Winfield v. City of New York*, 2018 WL 840085, at *3 (S.D.N.Y. Feb. 12, 2018) (internal quotations omitted). "Once relevance of the information sought or an adequate factual basis for the collateral issue discovery has been shown, the burden falls on the responding party to justify curtailing discovery. […] In order to justify withholding relevant information, the party resisting discovery must show 'good cause,' the standard for issuance of a protective order under Rule 26(c)." *Id*. at *4.

Plaintiffs have more than met their burden here because the Defendant's repeated non-compliance with his discovery obligations in this and other matters give substantial reason to question the completeness of his disclosures, and those disclosures are of great import to the upcoming Homestead trial. *See Freeman v. Giuliani*, 691 F. Supp. 3d 32, 38–39 (D.D.C. 2023), *judgment entered,* 2023 WL 9783148 (D.D.C. Dec. 18, 2023) [2]; *Id*., No. 21-cv-3354 (D.D.C.),

---

[2] Granting Plaintiffs' motion for discovery sanctions under Rule 37, Judge Beryl Howell in the D.D.C. condemned Defendant for his willful noncompliance with discovery obligations. *See id*. at 38–39 ("Giuliani has given only lip service to compliance with his discovery obligations and this Court's orders by failing to take reasonable steps to preserve or produce his ESI. Instead, Giuliani has submitted declarations with concessions turned slippery on scrutiny and excuses designed to shroud the insufficiency of his discovery compliance. The bottom line is that Giuliani has refused to comply with his discovery obligations and thwarted [Plaintiffs']

6

ECF No. 102[3]; *In re Rudolph W. Giuliani*, No. 23-12055-SHL (Bankr. S.D.N.Y. July 12, 2024), Dkt. No. 289.[4] Plaintiffs are amply justified in their concern that "without complete disclosure

---

procedural rights to obtain any meaningful discovery in this case. […] Donning a cloak of victimization may play well on a public stage to certain audiences, but in a court of law this performance has served only to subvert the normal process of discovery in a straight-forward defamation case, with the concomitant necessity of repeated court intervention."); *see also id*. at 53 ("Both Giuliani stipulations make crystal clear his choice not to provide further discovery. Where the discovery deficiencies are, as here, significant, with no sign of improvement in the production of responsive information, which may be forever lost due to a failure to preserve ESI, the obvious unfairness to the plaintiffs in frustrating their ability to obtain relevant evidence both to support their claims and rebut any defenses proffered by Giuliani makes entry of default judgment necessary.").

[3] Following Defendant's continuing noncompliance even after being sanctioned, the D.D.C. ultimately entered an order directing adverse inferences against the Defendant in the jury trial on the issue of damages in the defamation action, on the basis of his continuing noncompliance with discovery obligations. *See id*. at 2 ("Consistent with his prior track record in this matter, Giuliani failed to file any response to plaintiffs' Submission, despite being permitted to do so pursuant to [Court Order]. The adverse evidentiary inferences requested by plaintiffs are amply reasonable given Giuliani's continued and flagrant disregard of this Court's [] Order that he produce financial-related documents concerning his personal and his businesses' past and present assets, revenues, income, viewership metrics, and social media reach, all of which information is potentially pertinent at the upcoming damages trial. The adverse inferences proposed by plaintiffs will therefore be instructed at trial.")

[4] Judge Sean H. Lane denied Defendant's request to convert his Ch. 11 bankruptcy into Ch. 7, instead dismissing the bankruptcy with a one-year bar to refiling in large part based on Defendant's noncompliance with his financial disclosure obligations. *See id.* at 11–19 ("The record in this case reflects Mr. Giuliani's continued failure to meet his reporting obligations and provide the financial transparency required of a debtor in possession. […] none of Mr. Giuliani's business entities have made any production at all despite being required to do so […] Nor has Mr. Giuliani or his entities identified any legitimate reason why the requested information should not or cannot be produced. […] , Mr. Giuliani has not fully met his obligation to file certain schedules and lists detailing his financial condition, including a list of creditors, a schedule of assets and liabilities, a statement of current income and current expenditures, and a statement of financial affairs. […] Moreover, there are deficiencies in the information that Mr. Giuliani has provided. […] Mr. Giuliani has failed to fulfill his obligations to file accurate, complete monthly operating reports. […] Perhaps even more troubling, the information in the monthly operating reports has been incomplete or inaccurate. […] The lack of financial transparency is particularly troubling given concerns that Mr. Giuliani has engaged in self-dealing and that he has potential conflicts of interest that would hamper the administration of his bankruptcy case. […] Mr. Giuliani does not contest the fact that he has not complied with his disclosure obligations. […] Mr. Giuliani has failed to provide an accurate and complete picture of his financial affairs in the six months that this case has been pending. Transparency into Mr. Giuliani's finances has proven to be an elusive goal despite the continued diligence and extensive efforts of the Committee and

of [Defendant's] means of communication, Plaintiffs will be unable to test the completeness or adequacy of any production of documents and communications that [Defendant] may make, much less seek discovery from sources that Plaintiffs may still be unaware of." Dkt. No. 126 at 3. Defendant has not shown good cause why he cannot easily and quickly disclose his email addresses and phone numbers. Defendant is not the only former public official who has been sued in this Court. As Plaintiffs' point out, his untimely objection that a response would threaten his safety and security is not a reasonable basis to object, but would, in theory, be a basis to seek a protective order, which Defendant has not done.

The Court accordingly grants Plaintiffs' motion to compel Defendant's answer to Interrogatories #4 and #8 from Plaintiffs' First Set of Interrogatories. Defendant has until Friday, December 20, 2024, to answer or show cause why he should not be held in contempt for violation of the Court's order.

Under Rule 37(a)(5), the Court is to impose the cost of a motion to compel on the losing party unless the losing party's position was substantially justified. F.R.C.P. 37(a)(5). Plaintiffs' counsel is directed to submit its costs to the Court no later than December 23, 2024. Defendant may respond to the costs by December 30, 2024. Plaintiffs may reply by January 6, 2025.

SO ORDERED.

Dated: December 17, 2024
      New York, New York

                                                LEWIS J. LIMAN
                                            United States District Judge

---

the Freeman Plaintiffs. […] The Debtor has not even retained an accountant, which is the most rudimentary of steps. Such a failure is a clear red flag, as has been previously noted by the Court months ago.")

8