# Exhibit "1"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                      :

RUBY FREEMAN and WANDREA' MOSS,      :

             Plaintiffs,         :

                      :

     -v-                 :

                      :

RUDOLPH W. GIULIANI,             :

             Defendant,        :

                      :

     -and-               :

                      :

ANDREW H. GIULIANI,              :

                      :

             Intervenor-Defendant    :
             Applicant.        :

                      :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__10/22/2024__

24-mc-00353 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

       Plaintiffs Ruby Freeman and Wandrea' Moss ("Plaintiffs") move, pursuant to Federal

Rule of Civil Procedure 69 and New York Civil Practice Law and Rules 5225 and 5228, for an

order requiring Defendant Rudolph W. Giuliani ("Defendant") to deliver to Plaintiffs the specific

personal and real property in his possession listed in the proposed order and memorandum at

Dkt. No. 11 and appointing Plaintiffs as receivers thereof.  Dkt. Nos. 8, 9, 59.

       For the following reasons, Defendant is ordered under C.P.L.R. 5225 to transfer all

personal property specified in the list below at pp. 16-18, including cash accounts, jewelry and

valuables, a legal claim for unpaid attorneys' fees, and his interest in his Madison Avenue co-op

apartment to a receivership established pursuant to C.P.L.R. 5228 within seven days.  The list of

Defendant's personal property at pp. 16-18 includes all items and interests enumerated by

Plaintiffs in their proposed order and memorandum at Dkt. No. 11, with the exception of the

three World Series rings. With Plaintiffs' consent, their claim to Defendant's World Series rings is deferred pending resolution of the separate claim by Intervenor Andrew H. Giuliani as to the rings' ownership. *See* Dkt. Nos. 45, 46.

The Defendant's Palm Beach condominium (the "Palm Beach condo") is the subject of a separate declaratory judgment action (the "Declaratory Action") commenced by Plaintiffs. *See Freeman et al. v. Giuliani*, No. 24-cv-6563 (S.D.N.Y. 2024), Dkt. No. 1. The Court defers a final decision on Plaintiffs' request that such property be placed into receivership pending the hearing scheduled for October 28, 2024.

## BACKGROUND

Plaintiffs are judgment creditors. They are the beneficiaries of a judgment in the amount of $145,969,000.00 plus post-judgment interest at the rate of 5.01% per annum, along with costs, plus attorney's fees, entered in the United States District Court for the District of Columbia against Defendant on December 18, 2023 (the "Judgment"). Dkt. No. 1; *Freeman v. Giuliani*, 2023 WL 9783148 (D.D.C. Dec. 18, 2023) (the "D.C. Action"), Dkt. No. 142. The United States District Court for the District of Columbia also granted Plaintiffs' motion to dissolve Federal Rule of Civil Procedure 62(a)'s automatic 30-day stay of execution and granted leave for Plaintiffs to register their judgment in any other district of the United States. D.C. Action, Dkt. No. 144. On December 21, 2023, the day after the D.C. District Court lifted the automatic stay of execution and permitted Plaintiffs to register their judgment in any other federal district, Defendant filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York. Dkt. No. 32 ¶ 2; Dkt. No. 32-1. The bankruptcy petition was dismissed on August 2, 2024. *In re Giuliani*, 2024 WL 3384185 (Bankr. S.D.N.Y. July 12, 2024) (the "Giuliani Bankruptcy"), Dkt. No. 309.

The Judgment was registered in this District on August 5, 2024. Dkt. No. 1. That same day, Plaintiffs registered the Judgment in the United States District Court for the Southern District of Florida. Declaratory Action, Dkt. No. 30 ¶ 65. On October 2, 2024, Defendant appealed the Judgment to the United States Court of Appeals for the District of Columbia Circuit. *See Freeman, et al. v. Giuliani*, No. 24-7021 (D.C.Cir.). That appeal is still pending. *Id.*

On August 5, 2024, Plaintiffs caused an Information Subpoena with Restraining Notice to be served on the Defendant by certified mail, return receipt requested. Dkt. No. 23 ¶ 4, Dkt. No. 23-3. Defendant has not responded. *Id.*

On August 30, 2024, Plaintiffs commenced the Declaratory Action, which seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that they established a valid lien on Defendant's Palm Beach condo on August 8, 2024, notwithstanding the homestead exemption claim sought by Defendant with respect to that property under Florida law. Declaratory Action, Dkt. No. 1.

On October 8, 2024, Defendant's son Andrew H. Giuliani filed a consent motion to intervene under Federal Rule of Civil Procedure 24, Dkt. No. 45, seeking to establish his ownership interest in the three World Series rings named in Plaintiffs' original proposed order, Dkt. No. 46. The Intervenor claims that the rings were gifted to him by the Defendant in 2018, such that granting Plaintiffs' turnover order with respect to the rings would permanently deprive Intervenor of his right to them. *Id.*

To date, Defendant has neither paid any portion of the Judgment nor obtained a stay by posting a supersedeas bond under Federal Rule of Civil Procedure 62(b).

## LEGAL STANDARD

The enforcement of Plaintiff's judgment is governed by New York law. Fed. R. Civ. P. 69(a)(1) ("The procedure on execution—and in proceedings supplementary to and in aid of

judgment or execution—must accord with the procedure of the state where the court is located."); *see 245 Park Member LLC v. HNA Grp. (Int'l) Co. Ltd.*, 674 F. Supp. 3d 28, 39 (S.D.N.Y. 2023), *aff'd*, 2024 WL 1506798 (2d Cir. Apr. 8, 2024).  In New York, Article 52 of the Civil Practice Law and Rules governs the enforcement and collection of money judgments. C.P.L.R. 5201–53.  Judgment creditors have access to a wide range of tools to accomplish the satisfaction of their judgment:

> The moment as of which the judgment becomes enforceable is the moment of its entry. As a general rule, the judgment creditor may then dive into Article 52 and extract whichever devices suit her particular purpose. There is no priority in the use of the devices. No device is a condition precedent to the use of any other; the sequence of their use is for the judgment creditor to decide. Nor is there any general limit on the number of times a single device may be used.

Siegel, N.Y. Prac. § 485 (6th ed.).

For personal property, judgment creditors may seek a "turnover" order pursuant to C.P.L.R. 5225.  Under Section 5225(a), "a judgment creditor may recover money or property owed a judgment creditor through a court order directing the turnover of such money or property to the judgment creditor, either directly or to the sheriff for sale." *245 Park Member*, 674 F. Supp. 3d at 39.  The judgment creditor need only show that the judgment debtor owns and possesses the property at issue to obtain such an order. *Allstar Mktg. Grp., LLC v. AFACAI*, 2021 WL 2555636, at *5 (S.D.N.Y. June 22, 2021).  Once this showing is made, "the court shall order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor." N.Y. C.P.L.R. 5225(a); *see also Allstar Mktg. Grp.*, 2021 WL 2555636, at *5.

In administering judgment enforcement under Article 52, the Court has substantial discretion over how the property at issue can best be used to discharge the debtor creditor's claim.  As a general matter, when issuing a turnover order, "[i]f money is involved, the debtor

will be directed to pay it to the creditor towards satisfaction of the judgment; if property is involved, the direction will be to deliver it to the sheriff, who will then sell it at public auction." Siegel, N.Y. Prac. § 510 (6th ed.). However, "[w]hile CPLR 5225(a) envisions that personal property other than money will be delivered to the sheriff, CPLR 5240 says that the court may modify the use of any enforcement procedure." *79 Madison LLC v. Ebrahimzadeh*, 166 N.Y.S.3d 126, 129 (1st Dep't 2022) (citing *Guardian Loan Co. v. Early*, 392 N.E.2d 1240 (1979)); *see also* N.Y. C.P.L.R. 5240 ("The court may, at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure.").

The Court may also, upon motion of the judgment creditor, order the turnover of the judgment debtor's property, real or personal, to a receiver pursuant to C.P.L.R. 5228. *See* Siegel, N.Y. Prac. § 512 (6th ed.) ("If a delivery order for personal property is made under CPLR 5225 while a receivership is outstanding, the property is delivered for sale to the receiver instead of the sheriff."). The Court may authorize the receiver to "administer, collect, improve, lease, repair or sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment," "specify[ing] the property to be received, the duties of the receiver and the manner in which they are to be performed." N.Y. C.P.L.R. 5228(a). Judgment creditors may be appointed as receivers. *Id*.

Though the appointment of a receiver under Section 5228 is left to judicial discretion, *see Sanchez v. El Barrio's Car Serv., Inc*., 2024 WL 4438370, at *3 (S.D.N.Y. Oct. 7, 2024) (citing *United States v. Vulpis*, 967 F.2d 734, 736 (2d Cir. 1992)), a receiver should only be appointed when a special reason appears to justify one, *see Hotel 71 Mezz Lender LLC v. Falor*, 926

N.E.2d 1202, 1211–12 (2010).  Factors that the Court may consider in ordering a receivership

include (1) alternative remedies available to the creditor; (2) the degree to which receivership

will increase the likelihood of satisfaction; and (3) the risk of fraud or insolvency if a receiver is

not appointed.  *Falor*, 926 N.E.2d at 1212.  Appointment of a receiver may be particularly

appropriate where "the property interest involved is intangible, lacks a ready market, and

presents nothing that a sheriff can work with at an auction."  *Id*. (citing Siegel, N.Y. Prac § 512

(4th ed)).  Though receivership is not a common enforcement device, "[o]ne of its prime uses is

where it's shown that a private sale of some item of the debtor's property, real or personal, will

likely bring a substantially higher price than would the public auction that a sheriff is required to

conduct when levying an execution.  This is especially the case when the debtor's residence is

involved: a receiver can use the usual channels of newspaper advertisements, brokers, etc."

Siegel, N.Y. Prac. § 512 (6th ed.).

## DISCUSSION

As described above, C.P.L.R. 5225(a) requires that the Court order payment by the

judgment debtor to the judgment creditor if, after motion of the creditor and notice to the debtor,

"it is shown that the judgment debtor is in possession or custody or money or other personal

property in which he has an interest."  N.Y. C.P.L.R. 5225(a).  Here, Defendant does not

challenge the notice given him, nor does he challenge the fact of his ownership interest in the

property on the enumerated list at pp. 16-18.  Setting aside the ownership of the World Series

rings, the questions before the Court are (1) whether to order receivership of the Palm Beach

condo pending the resolution of the issue of the Florida homestead exemption, and (2) how to

structure or limit the receivership order with respect to the enumerated items of personal and real

property.

The Court finds that all of the items and interests listed in pp. 16-18 should be subject to turnover and receivership, in order to ensure that the liquidation of the transferred assets is accomplished quickly and consistently by the Plaintiffs' chosen counsel, maximizing the sale value of the unique and intangible items and therefore increasing the likelihood of satisfaction of the Plaintiffs' judgment. *See Falor*, 926 N.E.2d at 1212.  In the absence of a turnover order to a receiver, Plaintiffs would bear the unacceptable risk of delay and Defendant's insolvency.  The Court finds no good cause to impose additional limits on the time or manner of the liquidation or prosecution of any other item or interest on the list, for the reasons laid out below.  The Court defers decision on the Palm Beach Condo until the hearing on October 28, 2024.

## I.    Madison Ave. Co-op

Plaintiffs request an immediate turnover of the Defendant's interests in the Madison Avenue co-op, located at 45 East 66th Street Apartment 10W, New York, New York, 10065, Block 1381, Lot 1104.  As the Defendant consents to the appointment of a receiver to effect the sale of the Madison Avenue co-op, Dkt. No. 44, the Court exercises its discretion under C.P.L.R. 5240 to both order the immediate turnover of and receivership for Defendant's 1,430 shares of stock in, and the proprietary lease for, Apartment 10W with 45 East 66th Owners Corp.  *See* Dkt. No. 10 ¶ 9; Dkt. Nos. 10-3, 10-4.

The sale of luxury real estate is a highly specialized field.  Given the need to engage in a sophisticated sales process and given the idiosyncrasies of New York City co-operatives in particular, the Court finds that the interests of Plaintiffs and Defendant will best be served by ordering the Defendant's co-operative shares into receivership.  *BSH Hausgerate GMBH v. Kamhi*, 2018 WL 4583497, at *3–4 (S.D.N.Y. Sept. 25, 2018) (finding a receivership appropriate where a receiver experienced in the sale of luxury properties would increase likelihood of

satisfaction, and where the cost of a receiver did not exceed the sheriff's "poundage fee" of five percent).

## II.    Trump Campaign Fee Claim

Defendant testified under oath at the Section 341 meeting of creditors in his bankruptcy case that he is owed "about two million dollars" by either or both the Trump 2020 Presidential Campaign and the Republican National Committee for his work following the 2020 presidential election. Dkt. No. 10-9 at 61:15–16; *see id.* 63:1–2 (confirming that the Trump 2020 Campaign and the Republican National Committee "were supposed to split it"). According to Defendant's sworn testimony, he submitted an invoice for payment of these fees, but was never paid. *Id.* 60:11–17.

Defendant requested that the Court postpone the turnover of the Trump Campaign claims for unpaid legal fees until November 6, 2024, the day after Election Day, expressing concern that Plaintiffs might use this assignment for improper purposes, "creating [a] confusing, and inaccurate, appearance . . . thereby generating an accompanying, and unnecessary, media frenzy." Dkt. No. 44. The profound irony manifest in Defendant's alleged concern is not lost on the Court. By his own admission, Defendant defamed Plaintiffs by perpetuating lies about them. *See* D.C. Action, Dkt. No. 84. Defendant's lies cast unwarranted doubt on the integrity of the ballot-counting in Fulton County, Georgia in the immediate wake of the 2020 Presidential Election. Plaintiffs are entitled as a matter of law to pursue any outstanding interest of the Defendant's in satisfaction of their judgment, including contingent, future, and intangible interests, so long as they are assignable. *Motorola Credit Corp. v. Uzan*, 739 F. Supp. 2d 636, 641 (S.D.N.Y. 2010) (citing *ABKCO Indus. v. Apple Films, Inc.*, 350 N.E.2d 899, 901–02 (1976)). Under New York statute, those interests expressly include a cause of action owned by the Defendant against a third party. *See* N.Y. C.P.L.R. 5201(a).

The Court finds that transfer and receivership is appropriate here as it will allow the

Plaintiffs to stand in the Defendant's shoes with respect to the Trump Campaign in order to

effectively pursue the claim. This remedy is particularly appropriate where there is a risk that

the assets necessary to satisfy Plaintiffs' judgment will be dissipated and where Defendant's own

incentives to pursue repayment may be limited by either his political commitments or by the

knowledge that any judgment or settlement in his favor will be immediately owed to Plaintiffs:

> The judgment debtor may be loath to sue on the claim, however, aware that whatever
> comes out of it will be promptly taken by his own judgment creditor. One of the remedies
> for the judgment creditor in that situation is to have a receiver of the cause of action
> appointed under CPLR 5228, with authority to sue on the claim. The receiver then stands
> in the place of the judgment debtor and can sue the third person and present the judgment
> debtor's case.

Reilly, Practice Commentaries, McKinney's Cons Laws of NY, Westlaw, N.Y. C.P.L.R. 5228;

*see e.g., Vitale v. City of New York*, 583 N.Y.S.2d 445 (1st Dept. 1992). The fact that Plaintiffs

may have sharper incentives to pursue the claim weighs in favor of, not against, the swift

turnover of the claim to receivers, for execution however and whenever they see fit. *See Vitale*,

583 N.Y.S.2d at 446 ("The [Defendant's] additional argument that [Plaintiff's] appointment as

receiver may give rise to conflicts of interest is also unavailing.").

There is no risk that the public could be misled into believing that Defendant himself is

prosecuting his claim against the Trump Campaign rather than Plaintiffs. In any action

undertaken by Plaintiffs to pursue this claim pursuant to Court order, they would appear in their

capacity as receivers for, or as assignees of, Mr. Giuliani's interest, which would be evident on

the face of any complaint or caption. Thus, the risk—if any—that the public would be misled

could come only from Defendant himself or from those who wish the Plaintiffs not to pursue

their claim. But that is not a risk that would permit Defendant to retain his claim, nor does it

suffice to prevent Plaintiffs from pursuing a claim for compensation that justly belongs, and is owed, to them.

## III.    Other Personal Property

With respect to the other enumerated items of personal property at pp. 16-18, Defendant requests that the items be turned over to a receiver, but that the receivership order be accompanied by an order pursuant to the Court's equitable powers under C.P.L.R. 5240 requiring the receiver to hold *but not sell* certain unique items until after the D.C. Circuit rules on Defendant's appeal.  Dkt. No. 44.  Defendant includes in this list items with a level of public interest (e.g., a watch gifted in response to the 9/11 attacks by the President of France), items characterized as "collectibles" (e.g., a 1980 Mercedes previously owned by Lauren Bacall), and items with sentimental value (e.g., a watch belonging to Defendant's grandfather). Defendant's argument with respect to each of these categories is that these specific items are unique— therefore, if the property is sold and the D.C. Circuit reverses the defamation judgment, Defendant will not be made whole even if the value of the items is returned to him.

Defendant had the ability, had he chosen to exercise it, to seek a stay of the sale of his assets to satisfy the Judgment.  Federal Rule of Civil Procedure 62(b) permitted him to post a supersedeas bond in the District of Columbia to stay enforcement of the judgment pending the disposition of his appeal.  Fed. R. Civ. P. 62(b); *In re Raymond Pro. Grp., Inc.*, 438 B.R. 130, 136 (Bankr. N.D. Ill. 2010) ("A party against whom a money judgment has been entered may obtain a stay of that judgment pending appeal by posting a supersedeas bond."); *In re Nassau Cnty. Strip Search Cases*, 783 F.3d 414, 417 (2d Cir. 2015) (per curiam) (describing the bond requirement under Rule 62(b) as intended "to ensure that the prevailing party will recover in full, if the decision should be affirmed, while protecting the other side against the risk that payment cannot be recouped if the decision should be reversed").  In the absence of the posting of a bond

or the provision of some alternative means of securing the judgment acceptable to the court in which the judgment is entered, a judgment creditor is entitled to enforce the judgment.  *See e.g., Moore v. Navillus Tile, Inc.*, 2017 WL 4326537, at *4 (S.D.N.Y. Sept. 28, 2017) (characterizing the default rule of 62(b) as "no stay absent a bond"); *Micula v. Gov't of Romania*, 2015 WL 4643180, at *5 (S.D.N.Y. Aug. 5, 2015) ("Without a bond or some other guaranty, a stay is unfair and would impose a hardship on Petitioners.").  The District Court for the District of Columbia reminded Defendant of the availability of the supersedeas bond on December 20, 2023, when it dissolved the 30-day Stay of Execution at Plaintiffs' request following the defamation verdict in their favor. D.C. Action, Dkt. No. 144 ("Moreover, should this case be appealed, Giuliani can avoid any claimed prejudice and obtain a stay of enforcement at any time by posting a full supersedeas bond.") (cleaned up).  Defendant did not to file a bond or post any other form of security.  He chose instead to file for Chapter 11 bankruptcy the next day, triggering the automatic stay applicable under 11 U.S.C. § 362(a).  *See* Chapter 11 Pet.*,* Giuliani Bankruptcy, Dkt. No. 1.  But that action has now been dismissed and Plaintiffs are entitled to enforce their Judgment.  Having eschewed his opportunity to post security in the District of Columbia, Defendant cannot achieve through a broad ruling by this Court the very stay of execution that he did not obtain from that court.

Federal and state law carve out a limited set of properties that are exempt from collection, balancing the interests of the judgment creditor and that of the judgment debtor.  Article 52 sets forth the assets that are exempt from collection.  Those assets include items like stoves and home heating equipment, health aids, a refrigerator, a cell phone, and other objects that the New York Legislature considers necessities for living.  *See* Reilly, Practice Commentaries, McKinney's Cons Laws of NY, Westlaw, N.Y. C.P.L.R. 5205 ("[T]he exempted items are those deemed

necessities by the Legislature"). In recognition of the emotional necessity of certain objects, the Legislature also included a category of exemption for "a wedding ring; a watch, jewelry and art not exceeding one thousand dollars in value." N.Y. C.P.L.R. 5205(a)(6). The burden is on the judgment debtor to show that property is exempt, and Defendant has not satisfied that burden. *See Tuckman v. Hayward*, 204 N.Y.S.2d 655, 657 (Sup. Ct. 1960) ("The burden of proof of establishing that such items as are claimed to be exempt are in fact exempt is upon the judgment debtor.").

The only asset that Defendant seeks to protect from sale that comes close to being exempt under Article 52 is Defendant's grandfather's watch. The watch may be distinctive to Defendant as an item of sentimental value, but it is not distinctive to the law. It would be exempt if Defendant proved that the total value of the watch did not exceed $1,000. He has not done so. However painful the circumstances, a party cannot claim that every family heirloom should be exempt from the procedures of Article 52. If such claims were allowed outside of the exemptions enumerated at C.P.L.R. Section 5205(a), judgment enforcement would become ineffective as to significant stores of intergenerational wealth like jewelry and real property. The watch therefore must be turned over.[1]

The other personal properties also must be turned over. They include each of the items listed below at pp. 16-18, including watches marketed or manufactured by Bulova, Shinola, Tiffany & Co, Seiko, Frank Muller, Graham, Corium, Rolex, IWC, Invicta, Breitling, Raymond Weil, and Baume & Mercer; the Reggie Jackson picture; the signed Yankee Stadium picture; the

---

[1] Plaintiffs have offered to "recognize that exemption with respect to Mr. Giuliani's grandfather's watch, if he is able to produce satisfactory evidence showing that the watch's value does not exceed the $1,000 exemption limit." Dkt. No. 59. If the parties reach an agreement, they can apply to the Court jointly for modification of this order.

signed Joe DiMaggio shirt; the other sports memorabilia; the diamond ring and costume jewelry;

and the television and other items of furniture. Defendant claims that certain of these items are

"unique," "collectible," or have "a level of public interest." Dkt. No. 44. The Court also does

not doubt that certain of the items may have sentimental value to Defendant. But that does not

entitle Defendant to continued enjoyment of the assets to the detriment of the Plaintiffs to whom

he owes approximately $150 million. It is, after all, the underlying policy of these New York

statutes that "no man should be permitted to live at the same time in luxury and in debt." *In re

Vogel*, 16 B.R. 670, 673 (Bankr. S.D. Fla. 1981) (quoting *In re Chusid's Estate*, 301 N.Y.S.2d

766, 770 (Sur. 1969), *aff'd sub nom. Matter of Chusid*, 314 N.Y.S.2d 354 (1970)) (cleaned up).

As to issues of valuation, it is Plaintiffs as Judgment Creditors who have the greatest

interest in maximizing the sale value of these assets. And it is precisely one of the advantages of

a receivership that it is well-suited to working with auction houses and brokers like Sotheby's

and Christie's to ensure that the maximum sale value is realized. *See Falor*, 926 N.E.2d at 1212

("A receivership has been held especially appropriate when the property interest involved . . .

lacks a ready market.") (quoting Siegel, N.Y. Prac § 512, at 872 (4th ed)); *Udel v. Udel*, 370

N.Y.S.2d 426, 428 (N.Y. Civ. Ct. 1975) ("In this case because of the lack of marketability of the

stock and the difficulty in determining its true value, it is unlikely that a turn over to the sheriff

would result in satisfying the judgment. Accordingly it is directed that the stock be turned over to

a receiver to do any act designed to satisfy the judgment") (internal quotation marks omitted);

*Colfin Bulls Funding B, LLC v. Ampton Invs., Inc.*, 2018 WL 7051063, at *7 (N.Y. Sup. Ct. Nov.

26, 2018) (finding receivership appropriate where "the sale of the valuables herein is likely to be

more successful, i.e., generate higher sales prices, if a receiver becomes involved to ensure that a

qualified auction house, such as Christie's, sells the items for the maximum price so that more of the . . . judgment can be satisfied").

## IV.    **Palm Beach Condo**

Plaintiffs request that the Court appoint Plaintiffs as receivers of Defendant's Palm Beach condo, located at 315 South Lake Drive, Apartment 5D, Palm Beach, Florida.  Dkt. Nos. 8, 9, 11. In their original Proposed Order, Plaintiffs requested that the receivership be empowered to effect the sale of that condo.  Dkt. No. 11.  However, in recognition of the separate pending Declaratory Action seeking the adjudication of Defendant's claim of homestead exemption over the property under Florida law, Plaintiffs request that the condo be placed in the receivership but "with the proviso that no sale may close until an order is entered by this Court resolving the homestead claim."  Dkt. No. 59; *see* Siegel, N.Y. Prac. § 512 (6th ed.) ("Under CPLR 5228, in common with just about all receiverships, the receiver can be authorized to manage and preserve designated property.").  Defendants did not brief the question of receivership for the condominium.

Plaintiffs have established their right to protection of the value of the asset against dissipation, but there are competing claims to the Palm Beach Condo.  Plaintiffs have a lien on the property which was established on August 8, 2024, when a certified copy of the Judgment was recorded with the Clerk of Palm Beach County.  Declaratory Action, Dkt. Nos. 30 ¶ 65, 32-5.  At the same time, Defendant has asserted a homestead claim based on Florida law.  *Id.* Dkt. Nos. 41, 44.  The Florida constitution protects homesteads against the "forced sale under process of any court" and liens imposed by "judgment, decree or execution."  Fla. Const. art. X, § 4(a). If Defendant establishes his homestead exemption, his rights to the Palm Beach condo will enjoy priority to the rights of the Plaintiffs pursuant to their lien.

Regardless, Plaintiffs are entitled to protection against the dissipation of value of the Palm Beach condo. As Plaintiffs point out, the maintenance of the luxury condo is costly, Dkt. No. 10 ¶¶ 12–13; Dkt. Nos. 10-7, 10-8 (describing condo fees for the Palm Beach condo that exceed $15,000 per month) and there is a risk that Defendant—who is at substantial risk of losing the property—will not preserve its long-term value. Plaintiffs' likelihood of satisfying their judgment will be materially impaired if the condo is allowed to deteriorate, particularly given the Defendant's potential insolvency. There is no question that, if the homestead claim is resolved adversely to Defendant, the Court will place the Palm Beach condo into receivership and will authorize the receiver to sell the property in order to satisfy the Judgment. The Court has the equitable powers under Article 52 of the New York Civil Practice Law and Rules to preserve the value of the condo asset for Plaintiffs. However, while Plaintiffs recognize that the receiver could not be authorized to sell the Palm Beach condo, the proposed order submitted by Plaintiffs leaves unanswered the question of precisely what powers the receiver would have with respect to the Palm Beach condo pending a decision by the Court with respect to the homestead claim.[2] Also unanswered is whether the exercise of those powers by a receiver—as opposed to the Court for instance—will best and most efficiently preserve the value of the Palm Beach condo. The Court takes no position on those issues at the moment. It will address them at the hearing on October 28, 2024. In the interim, the Court will issue an order restraining Defendant from taking any action to sell or attempt to sell the Palm Beach Condo or to take any action that would diminish the value of that asset.

---

[2] For example, the proposed order leaves unanswered the questions of who will pay the fees and maintenance costs of the Palm Beach condo during the pendency of the receivership and, if the receiver pays, whether Defendant will be permitted to enter or reside in the Palm Beach condo.

## V.    Request for a Magistrate Judge Referral

Defendants request that the Court refer this issue to a Magistrate Judge for "the limited purpose of making rulings in the event that the parties cannot agree as to whether any particular items fall within these sub-categories." Dkt. No. 44.  This request is DENIED as both unnecessary and likely to lead to further delays.  As laid out above, the execution of the Court's order with respect to this judgment does not require further item-by-item line-drawing.

## TURNOVER AND RECEIVERSHIP ORDER

Upon consideration of the motion of Plaintiffs Ruby Freeman and Wandrea' Moss to enforce the Judgment against Defendant Rudolph W. Giuliani, and the accompanying submissions and Defendant's opposition thereto, and notice having been given to Defendant via certified mail and by personal service; it is hereby **ORDERED** as follows:

1.  **Receivership Order.** It is hereby ORDERED**,** pursuant to Federal Rule of Civil Procedure 69 and CPLR 5228, that Plaintiffs and judgment creditors Ruby Freeman and Wandrea' Moss are appointed as receivers ("Receivers") of certain specific property as defined herein (the "Receivership Property").

2.  **Turnover Order.** It is hereby ORDERED**,** pursuant to Federal Rule of Civil Procedure 69 and CPLR 5225 that, within seven days of this Order, Defendant shall deliver to Plaintiffs-Receivers, and execute and deliver any document necessary to effectuate delivery to Plaintiffs-Receivers of, all of the Receivership Property enumerated below.

3.  **Receivership Property.** The Receivership Property shall include:

    - The shares evidencing Defendant's interest in 45 East 66th Street Owners Corp., appurtenant to the apartment located at 45 East 66th Street, Apt. 10W,

New York, NY 10065, and any proprietary lease, and other document

entitling him to ownership and possession of such apartment;

- All rights and interests in, and cause of action for, fees owed to Mr. Giuliani

  for services rendered in 2020 and 2021 to former President Trump's

  presidential campaign and the Republican National Committee;

- The nonexempt cash in the checking accounts held at Citibank, N.A. with

  account numbers ending in -1428 and -5812;[3]

- Mercedes-Benz, Model SL500, model year 1980;

- Various items of furniture;

- Television;

- Sports Memorabilia;

- Signed Reggie Jackson picture;

- Signed Yankee Stadium picture;

- Signed Joe DiMaggio shirt;

- Costume jewelry;

- Diamond Ring;

- 2 Bulova Watches;

- 5 Shinola Watches;

- 1 Tiffany & Co. Watch;

- 1 Seiko Watch;

- 1 Frank Muller Watch;

---

[3] Excluding those amounts that Defendant established as exempt as of September 30, 2024.  *See*
Dkt. No. 34.

- 1 Graham Watch;

- 1 Corium Watch;

- 1 Rolex Watch;

- 2 IWC Watches;

- 1 Invicta Watch;

- 2 Breitling Watches;

- 1 Raymond Weil Watch;

- 1 Baume & Mercer Watch;

- 6 additional Watches; and

- Any additional property as may be ordered by the Court upon motion of Receivers or other judgment creditors of Defendant.

**4. Terms of Receivership**

    a. Subject to any additional limitation hereafter ordered by the Court, Receivers shall have power to:

        i. Take possession, ownership, and control of the Receivership Property;

        ii. Administer, collect, improve, lease, or repair the Receivership Property;

        iii. Effectuate a transfer, assignment or sale of the Receivership Property, or any part thereof, through any nonjudicial process as the Receivers in their discretion deem appropriate to maximize the value of the Receivership Property, including but not limited to private sale, free and clear of liens to a third-party purchaser, in satisfaction of the

Judgment, including post-judgment interest thereon, such transfer, assignment, or sale to be subject only to the approval of this Court;

iv. Take all necessary steps to conserve and protect the Receivership Property pending sale thereof, to take whatever action is necessary to prepare, advertise or appraise the value of the Receivership Property for sale and to preserve and maximize the value of the Property, subject to and consistent with the terms and conditions hereof;

v. Employ counsel of Receivers' choosing and to authorize counsel to act in the name and stead of the Receivers in carrying out the duties of the receivership and in transmitting Receivers' directives and consent;

vi. Employ professionals to market and sell the Receivership Property;

vii. Institute, prosecute and defend, compromise, adjust, intervene in, or become a party to such actions and proceedings in state or federal courts as may in their opinion be necessary or proper for the prosecution, maintenance, preservation, and management of the receivership estate or the carrying out of the terms of this Order, and likewise to prosecute, defend, compromise, or adjust or otherwise dispose of any and all actions or proceedings instituted by or against the Receivership Property where and to the extent that the Receivers determine, in their judgment, that such action is advisable or proper for the protection of the receivership estate, whether or not such action is brought in New York, another state or a foreign country;

provided however, that the Receivers shall have no right to institute, prosecute, defend, compromise, adjust, intervene in, or become a party to any action against Defendant that is not an action against Receivership Property;

viii.  Maintain or purchase as an expense of the Receivership estate appropriate insurance for the Receivership Property from any agent or carrier, of any type reasonably necessary, and to pay any premiums for additional insurance coverage for the Receivers (including, without limitation, a liability policy, an errors and omissions policy and an umbrella policy) in connection with the Receivership Property, if the Receivers deem, in their reasonable business judgment, the existing insurance for the Receivership Property to be insufficient or nonexistent;

ix. Execute and deliver, and to require Defendant to execute and deliver, any document necessary to effect the foregoing.

b.  It is further ORDERED that Receivers shall cause all funds received in the operation of Receivership hereunder to be maintained in or channeled through a trust account established by their counsel until expended in the ordinary course of business pursuant hereto or applied toward satisfaction of the Judgment referred to above, or as otherwise authorized by the Court.

c.  It is further ORDERED that Receivers shall comply with the requirements of CPLR 5228, 6402, 6403, 6404, and 6405 and other applicable court rules.

d.  It is further ORDERED that any and all persons claiming any interest in or relating to any of the Receivership Property be and hereby are and shall be enjoined (1) from commencing any action against the Receivers, (2) from interfering or impeding in any manner or to any extent with the Receivers' possession, dominion, and control of the Receivership Property, or (3) from interfering or impeding in any manner or to any extent with the discharge of the duties of the Receivers as outlined herein, except with the express permission of this Court after filing a motion on notice to the Receivers and all parties to this action.

e.  It is further ORDERED that Defendant and his agents, attorneys, employees, and all those acting in concert with Defendant are restrained from (1) disposing of any real or personal property now or hereafter subject to this Order, except to transfer such property to the Receivers, (2) diverting, concealing, encumbering or transferring any personal property; and (3) interfering in any manner with the discharge of the Receivers' duties under this Order.

f.  It is further ORDERED that Defendant, his agents, employees, and those acting in concert with him shall comply with directives of the Receivers issued pursuant to this Order and shall execute and deliver any documents the Receivers request hereunder.  For the avoidance of doubt, Defendant and his agents, attorneys, accountants, and any other representatives are directed to execute and deliver to the Receivers all documents necessary for the Receivers to take possession of all Receivership Property, and to

immediately relinquish possession of and turn over possession to the
Receivers' of any and all Documents, books, and records relating to and/or
evidencing Defendant's real and personal property, including but not limited
to financial records, statements, trust documents, and loan agreements, and
including electronically stored information.

g. It is further ORDERED that all creditors, claimants, bodies politic, parties in
interest, and their respective attorneys, agents, employees and all other
persons, firms and corporations be, and they hereby are, jointly and severally
enjoined and stayed from commencing or continuing any action at law or suit
or proceeding in equity to foreclose any lien or enforce any claim against the
Receivership Property, the books, records, revenues, profits and related
assets associated with the Property, or against the Receivers in any Court.

h. It is further ORDERED that the Receivers may at any time apply to this
Court for further instructions and orders related to this Order and for
additional powers necessary to enable the Receivers to perform the
Receivers' duties properly at any time.

i. It is further ORDERED that Receivers, and their employees, agents,
attorneys and other professionals retained to assist the Receivers with the
performance of their duties, and others engaged in connection herewith, shall
not be liable for actions taken, actions not take, or decisions made in
performing the duties of the Receivers under this Order which are based
upon the exercise of reasonably prudent business judgment. Further, so long
as the Receivers act as authorized herein, the Receivers shall be indemnified

and held harmless by the receivership estate from any right, claim or causes of action brought against the Receivers, including the costs and expenses of defense of such claims or actions.

j. It is further ORDERED that Receivers, at such intervals as the Receivers deem appropriate, shall apply, upon notice to all parties to this action, to the Court for permission to pay all the Receivers' expenses incurred in carrying out the responsibilities of the receivership, but not including general office expenses or compensation, from the proceeds of the sale or other disposition of Receivership Property.

k. It is further ORDERED that notwithstanding anything herein to the contrary, Plaintiffs shall retain all rights and remedies in any jurisdiction with respect to the collection or satisfaction of the Judgment.

l. It is further ORDERED that no bond or other undertaking shall be required from Receivers.

**5. Further briefing.**

a. The Court further ORDERS Plaintiffs to submit a letter brief no later than 2:00 p.m. on Friday, October 25, 2024, directed to the question of the best ways of preserving the value of the Palm Beach Condo pending the Court's trial on Defendant's homestead claim on January 16, 2025, including the terms of any proposed receivership with respect to such property and any alternative means of protecting the value of the asset pending the Court's adjudication of the competing claims. The letter shall attach a proposed

order with respect to the Palm Beach Condo.  Defendant may file a response

letter brief no later than 10:00 a.m. on Sunday, October 27, 2024.

6. **Preservation of the Condo Asset.**

   a. Defendant is ENJOINED from taking any actions to sell or attempt to sell or

   dispose of or transfer the Palm Beach Condo, or to take any action that

   would diminish the value of the Palm Beach Condo pending the Court's

   determination of the receivership issue on October 28, 2024.


## CONCLUSION

Plaintiffs' judgment enforcement motion is GRANTED IN PART and DENIED IN

PART.



SO ORDERED.


Dated: October 22, 2024
      New York, New York                          LEWIS J. LIMAN
                                       United States District Judge