UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                  :

RUBY FREEMAN and              :
WANDREA' MOSS,             :
                  :

           Plaintiffs,    :      24-cv-06563 (LJL)
                  :

        -v-         :     OPINION & ORDER
                  :

RUDOLPH W. GIULIANI,      :
                  :

          Defendant.    :
                  :
----------------------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: _12/27/2024_

LEWIS J. LIMAN, United States District Judge:

Plaintiffs Ruby Freeman and Wandrea' "Shaye" Moss ("Plaintiffs") move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment in their declaratory judgment action against Defendant Rudolph W. Giuliani ("Defendant") for the determination of the applicability of Article X, section 4 of the Florida Constitution (the "Homestead Provision") to Defendant's condominium in Palm Beach, Florida (the "Palm Beach Condo"). *See* Dkt. No. 28. Defendant cross-moves for summary judgment. *See* Dkt. Nos. 41, 48.

This Opinion and Order addresses Defendant's cross-motion for summary judgment. For the reasons set forth below, the Court denies the motion.[1]

## BACKGROUND

The following facts are undisputed for purposes of this motion unless otherwise noted.

Plaintiffs Ruby Freeman and Wandrea' "Shaye" Moss, mother and daughter respectively, are judgment creditors, and Defendant is a judgment debtor. Defendant was found liable in federal court for having defamed Plaintiffs by accusing them of election fraud in the 2020

---

[1] Plaintiffs' motion remains under advisement.

general election over a period of more than 18 months. The claims were false, and Defendant knew they were false but made them nonetheless. On August 30, 2023, the United States District Court for the District of Columbia entered a default judgment against Defendant as a discovery sanction, after finding that he "refused to comply with his discovery obligations and thwarted plaintiffs' . . . procedural rights to obtain any meaningful discovery in this case." *See Freeman v. Giuliani*, No. 21-cv-3354, 691 F. Supp. 3d 32, 38 (D.D.C. 2023) (the "D.C. Action"); *id.* Dkt. No. 94. The case then proceeded to trial on damages. After the trial, held on December 11–15, 2023, the jury awarded Plaintiffs approximately $148 million in damages, including $75 million in punitive damages. *See* D.C. Action, Dkt. No. 135.

On December 18, 2023, the United States District Court for the District of Columbia entered a final judgment in the amount of $145,969,000 plus post-judgment interest at the rate of 5.01% per annum, along with costs and attorney's fees, in favor of Plaintiffs against the Defendant. *See Freeman v. Giuliani*, 2023 WL 9783148, at *1 (D.D.C. Dec. 18, 2023); D.C. Action, Dkt. No. 142. As reflected in the judgment, Defendant made false and defamatory statements concerning Plaintiffs with actual malice, and "engaged in extreme and outrageous conduct which . . . intentionally and maliciously . . . caused the plaintiffs to suffer severe emotional distress." *Id.* To date, a year after the judgment was entered, Defendant has not satisfied the judgment.[2]

The day final judgment was entered, Plaintiffs sought an order to dissolve Federal Rule of Civil Procedure 62(a)'s automatic 30-day stay of execution and for leave to register the

---

[2] Defendant appealed this judgment on February 22, 2024, *see Ruby Freeman, et al v. Rudolph Giuliani*, 24-7021 (D.C. Cir. 2024), but has not filed a bond under Federal Rule of Civil Procedure 62(d) to protect Plaintiffs against the risk that defendant would not be able to pay the judgment in full, *see* Fed. R. Civ. P. 62(d); *see also Gardner-Alfred v. Federal Reserve Bank of N.Y.*, 2024 WL 3755548 (S.D.N.Y. Aug. 12, 2024) (discussing bonding requirement).

judgment in any other federal district pursuant to 28 U.S.C. § 1963.  D.C. Action, Dkt. Nos. 139,

140.  The court granted that motion in full, dissolved Rule 62(a)'s stay of execution, and

authorized Plaintiffs "to register immediately the final judgment . . . in any other district of the

United States."  D.C. Action, Dkt. No. 144 at 12–13.

Defendant has taken actions that have frustrated Plaintiffs' efforts to recover on the

judgment.  On December 21, 2023, the day after the D.C. District Court lifted the automatic stay

of execution and permitted Plaintiffs to register their judgment in any other district in the United

States, Defendant filed a voluntary chapter 11 petition in the United States Bankruptcy Court for

the Southern District of New York.  *See In re Rudolph W. Giuliani*, No. 23-12055-SHL (Bankr.

S.D.N.Y. Dec. 21, 2023) (the "Bankruptcy"), Dkt. No. 1.  The effect of that filing was to create

an automatic stay of all judgment enforcement proceedings, including the registration of the D.C.

judgment that had been authorized the previous day by the D.C. District Court.

On July 12, 2024, the Bankruptcy Court issued an order dismissing Defendant's

bankruptcy case with a one-year bar to refiling.  *See* Bankruptcy, Dkt. No. 289; *In re Giuliani*,

661 B.R. 493 (Bankr. S.D.N.Y. 2024).  The court found that Defendant had "fail[ed] to meet[]

his reporting obligations and provide the financial transparency required of a debtor in

possession."  *Id*. at 501.  The court detailed Defendant's numerous failures to comply with his

discovery and disclosure obligations.  *Id*. at 501–05.  The court added, "[t]he lack of financial

transparency is particularly troubling given concerns that Mr. Giuliani has engaged in self-

dealing and that he had potential conflicts of interest that would hamper the administration of the

bankruptcy case."  *Id*. at 503.  This dismissal had the effect of lifting the automatic stay of

judgment enforcement proceedings pursuant to 11 U.S.C. § 362(a).

On January 26, 2024, at the beginning of the Bankruptcy, Defendant filed a Summary of Assets and Liabilities.  In the Summary of Assets and Liabilities, Defendant claimed that a co-op apartment owned by Defendant at 45 East 66th Street in New York, New York (the "New York Co-op") was his homestead, *see* Dkt. No. 32, Declaration of Maggie MacCurdy in Support of Plaintiffs' Motion for Summary Judgment ("MacCurdy Decl."), ¶ 3; MacCurdy Decl. Exhibit B at 10; Bankruptcy, Dkt. No. 70, and that a portion of it was therefore exempt property pursuant to New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") 5206, which exempts a portion of the value of property "owned and occupied as a principal residence" from judgment enforcement, N.Y. C.P.L.R. 5206.  Defendant also owns in fee simple a condominium located at 315 South Lake Drive, Unit 5D, Palm Beach, Florida (the "Palm Beach Condo").  *See* Dkt. No. 42, Declaration of Rudolph W. Giuliani ("Giuliani Decl."), ¶ 3; Giuliani Decl. Exhibit A; MacCurdy Decl. ¶ 3; MacCurdy Decl. Exhibit B at 3.  In the Summary of Assets and Liabilities, Defendant did not claim any exemption with respect to the Palm Beach Condo.

Throughout the Bankruptcy, Defendant claimed the New York Co-op as his principal residence.  On February 7, 2024, while testifying under oath in the Bankruptcy at a Meeting of Creditors pursuant to section 341 of the Bankruptcy Code, Defendant affirmed that he resided at "45 East 66th Street" and that "the New York residence is [his] principal residence."  MacCurdy Decl. ¶ 4; MacCurdy Decl. Exhibit C at 9:1–2, 9:24–10:4; *see also id.* at 6:16–18 ("I'm testifying from my home, 45 East 66th Street, New York, New York.").  When asked about additional residences, Defendant confirmed that he spent most of his time in Manhattan and explained that the ratio of time he spent at the New York Co-op compared with the Palm Beach Condo was "[e]ighty-twenty, seventy-thirty."  MacCurdy Decl. ¶ 4; MacCurdy Decl. Exhibit C at 9:21–10:2. Defendant misstated the address of the Palm Beach Condo, explaining "gosh, I hardly have to

use the address . . . 316, that's it, okay, South Lake Drive."  MacCurdy Decl. ¶ 4; MacCurdy Decl. Exhibit C at 9:5–16.

On March 28, 2024, Defendant acknowledged in another filing that, consistent with his prior sworn testimony, "he spends a substantial amount of his time in Manhattan where the New York City apartment at issue is his primary residence," and that he had therefore "properly claimed a homestead exemption for the New York City property in the amount of $179,975.00 pursuant to CPLR 5206."  Bankruptcy, Dkt. No. 155 at ¶ 16.  "Obviously," Defendant continued, he therefore could not "claim an exemption for the Florida condominium."  *Id*.[3]

On July 13, 2024, however, the day after his bankruptcy case was dismissed over his objection, and after having consistently claimed that the New York Co-op was his principal residence, Defendant for the first time made a declaration of Florida domicile, which was then recorded in the office of the Clerk of Palm Beach County.  The declaration was executed in New Hampshire and notarized by a New Hampshire notary.  Giuliani Decl. ¶ 14; Giuliani Decl. Exhibit H; MacCurdy Decl. ¶ 5; MacCurdy Decl. Exhibit D.

On August 5, 2024, following dismissal of Defendant's bankruptcy proceeding, Plaintiffs registered their judgment in the Southern District of Florida.  *See Freeman v. Giuliani*, No. 24-mc-22979 (S.D. Fla. Aug. 5, 2024), Dkt. No. 1; Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts ("Plaintiffs' 56.1 Statement"), at ¶ 65; MacCurdy Decl. ¶ 6; MacCurdy Decl. Exhibit E.

---

[3] Defendant submitted numerous bank statements attached to public filings in the bankruptcy case.  In each case, the address for the New York Co-op was listed as the mailing address on the bank statement.  *See* Bankruptcy, Dkt. Nos. 80-2 at 1; 127-2 at 1, 13, 17; 199-1 at 1, 5, 14; 199-2 at 1, 10, 17, 25, 35, 44; 203-1 at 1, 5, 9, 13; 203-2 at 1, 6; 224-1 at 1; 224-2 at 1; 224-3 at 1; 267-2 at 6, 12, 24, 34; 267-3 at 2, 11, 21.

On August 8, 2024, Plaintiffs recorded a certified copy of that judgment, so registered, with the Clerk of Palm Beach County. Plaintiffs' 56.1 Statement ¶ 65; MacCurdy Decl. ¶ 6; MacCurdy Decl. Exhibit E; Fla. Stat. § 55.10; *see* 28 U.S.C. §§ 1962, 1963.

Defendant was not in residence at the Palm Beach Condo, nor did he set foot anywhere else in Florida, from July 1, 2024, when he filed an application to convert his chapter 11 case to chapter 7, through August 8, 2024, when Plaintiffs recorded their judgment in Palm Beach County. *See* Giuliani Decl. Exhibit I; Dkt. No. 42-9.

**PROCEDURAL HISTORY**

On August 5, 2024, following dismissal of Defendant's bankruptcy proceeding and on the same day Plaintiffs registered their money judgment in the United States District Court for the Southern District of Florida, Plaintiffs registered their money judgment from the D.C. Action in this Court. *See Freeman v. Giuliani*, No. 24-mc-00353 (S.D.N.Y. October 22, 2024) (the "Judgment Enforcement"), Dkt. No. 1.[4] Plaintiffs filed a motion to enforce the judgment, availing themselves of the judgment enforcement remedies provided for under New York law. Dkt. No. 8. Those remedies include a turnover order for "money or other personal property" in which the Defendant had an interest pursuant to N.Y. C.P.L.R. 5225 and the appointment of a receiver for the sale of real or personal property in which Defendant has an interest pursuant to N.Y. C.P.L.R. 5228. *See* Fed. R. Civ. P. 69; Judgment Enforcement, Dkt. No. 8.

On August 30, 2024, the same day that Plaintiffs moved for a turnover order and the appointment of a receiver, they filed the instant declaratory judgment action (the "DJ Action") seeking the adjudication of the applicability of the Florida Homestead Provision to Defendant's

_____

[4] The Judgment consisted of damages in the amount of $145,969,000 in addition to attorney's fees in the amount of $237,113, as well as interest accruing on both. *See* Judgment Enforcement, Dkt. No. 1 at ECF 2–3.

Palm Beach Condo.  The DJ Action references the motion filed in the Judgment Enforcement action for appointment of a receiver under the C.P.L.R. with the authority to take possession of and sell the Palm Beach Condo.  Dkt. No. 1 ¶ 4.  It seeks to "remove any doubt of Plaintiffs' authority" to have a receiver appointed and to sell the property without the interference of what they claim is a meritless homestead claim.  Plaintiffs note that it was Defendant's position that the Palm Beach Condo should be sold in chapter 7 liquidation as late as July 9, 2024, and allege that Defendant did not establish the Palm Beach Condo as his homestead by August 8, 2024, when Plaintiffs registered the judgment and established a lien over the Palm Beach Condo, because he did not occupy the Palm Beach Condo at any point during that limited time period.

*Id.* ¶¶ 2–3.  Plaintiffs seek the following relief in the DJ Action:

> Plaintiffs request a judgment in their favor and against Defendant: [] Declaring that Defendant had not established the Palm Beach Condo as his homestead under the Florida Constitution, art. X, § 4, prior to recording of Plaintiffs' lien on August 8, 2024; that Plaintiffs' lien is valid and enforceable under Florida law and immune from any subsequent claim of homestead relating to the Palm Beach Condo; and that the Palm Beach Condo may be executed upon and sold to satisfy Plaintiffs' judgment through any lawful means, including CPLR § 5228 receivership or other appropriate means, regardless of any homestead claim that Defendant may make[.]

*Freeman v. Giuliani*, 24-cv-06563 (S.D.N.Y. Aug. 30, 2024) (the "DJ Action"), Dkt. No. 1 at 16.

Defendant has answered the complaint, admitting the Court's subject matter jurisdiction, that he is subject to personal jurisdiction in this District, and that venue properly lies in this District.  *See* Dkt. No. 39 ¶¶ 8–10; Fed. R. Civ. P. 12(h).

On October 22, 2024, the Court granted in part Plaintiffs' request for a turnover and receivership order for an enumerated list of Defendant's property, finding it had such authority under the C.P.L.R. and Rule 69 of the Federal Rules of Civil Procedure.  Judgment Enforcement, Dkt. No. 62.  The Court found it had authority to preserve the value of the Palm Beach Condo for the benefit of Plaintiffs, as judgment creditors.  *Id.* at 15.  It acknowledged the DJ Action

pending before it and Defendant's claim that the Palm Beach Condo was his homestead. *Id.* However, the Court noted that, "[t]here is no question that, if the homestead claim is resolved adversely to Defendant, the Court will place the Palm Beach condo into receivership and will authorize the receiver to sell the property in order to satisfy the Judgment." *Id.*

On October 2, 2024, Plaintiffs filed a motion for summary judgment on their declaratory judgment claim. DJ Action, Dkt. No. 28. Defendant responded with an opposition and a cross-motion for summary judgment on October 16, 2024, Dkt. No. 41, which was re-filed as amended on October 20, 2024, Dkt. No. 48. Plaintiffs replied in support of their motion for summary judgment on October 23, 2024, Dkt. No. 51, and responded in opposition to Defendant's cross-motion on October 30, 2024, Dkt. No. 54. Defendant replied in support of his cross-motion on November 8, 2024. Dkt. No. 64. Plaintiffs submitted a letter-motion arguing that Pt. III of Defendant's November 8, 2024, memorandum was an improper sur-reply, Dkt. No. 68, and the Court granted Plaintiffs leave to file a limited sur-sur-reply, Dkt. No. 69. Plaintiffs sur-sur-reply was filed on November 12, 2024. Dkt. No. 72.

This opinion and order resolves only Defendant's cross-motion for summary judgment.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Rhee v. SHVMS, LLC*, 2023 WL 3319532, at *3 (S.D.N.Y. May 8, 2023). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And "[a]n issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *WWBITV, Inc. v. Village of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009) (internal quotation marks omitted). "[I]n assessing the record to determine whether there

is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). To survive summary judgment, the nonmoving party "may not rely on mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks omitted), and must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted), and "[a] conclusory contradiction of undisputed evidence in a self-serving affidavit, unsupported by other evidence, is not by itself sufficient to create a genuine dispute of material fact," *Cestaro v. Prohaska*, 681 F. Supp. 3d 121, 125 (S.D.N.Y. 2023). But if "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983).

**DISCUSSION**

Defendant cross-moves for summary judgment on two grounds: (1) that the Court should abstain under the *Burford* doctrine, and (2) that the Court should exercise its discretion under the *Wilton* doctrine to decline to issue a declaratory judgment. Defendant has not come close to establishing the basis for abstention under either *Burford* or *Wilton*. The Court therefore denies Defendant's cross-motion for summary judgment.

A.    ***Burford* Abstention**

Defendant argues that this Court should abstain from adjudicating Plaintiffs' claims with respect to the applicability of the Florida Homestead Provision to the Defendant's Palm Beach Condo under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). This argument is without merit.

The *Burford* doctrine creates a very limited exception to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817 (1976). Under *Burford*, a federal court, otherwise vested with jurisdiction, has authority to dismiss a case:

> only if it presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726–27 (1996) (cleaned up). "This balance only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Quackenbush*, 517 U.S. at 728 (cleaned up). The Second Circuit has set out three factors to determine the applicability of *Burford* abstention: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern."

*Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 650 (2d Cir. 2009).  "While *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a potential for conflict with state regulatory law or policy."  *NOPSI v. Council of City of New Orleans*, 491 U.S. 350, 362 (1989) (cleaned up).  "In abstention cases, the district court's discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved, such that there is little or no discretion to abstain in a case which does not meet traditional abstention requirements."  *LeChase Constr. Servs., LLC v. Argonaut Ins. Co.*, 63 F.4th 160, 173 (2d Cir. 2023) (cleaned up).

Plaintiffs argue that *Burford* abstention is categorically improper where, as here, no state administrative proceeding is at issue.  *See* Dkt. No. 54 at 4–6.  That argument has force. "The weight of controlling authority suggests that the existence of an administrative scheme is necessary to apply *Burford*."  *Avail Holding LLC, v. Ramos*, 2017 WL 979027, at *4 (E.D.N.Y. Mar. 10, 2017).[5]

"*Burford* is concerned with protecting complex state administrative processes from undue federal interference," *NOPSI*, 491 U.S. at 362, and permits abstention only in rare cases where it is appropriate to "decline to interfere with the proceedings or orders of state administrative

---

[5] Other courts in this circuit have reached a similar conclusion.  *See, e.g.*, *Deide v. Day*, 676 F. Supp. 3d 196, 217 (S.D.N.Y. 2023) ("Here, the Court need not abstain under Burford as this matter does not deal with proceedings or orders of state administrative agencies."); *Doe No. 1 v. Putnam Cnty.*, 2020 WL 7027596, at *8 n.7 (S.D.N.Y. Nov. 30, 2020) ("Under the Burford abstention doctrine, deference is required only to the adjudicative proceedings of state regulatory bodies."); *State Farm Mut. Auto. Ins. Co. v. Schepp*, 616 F. Supp. 2d 340, 346 (E.D.N.Y. 2008) ("*Burford* abstention, however, does not apply in this case because the doctrine prevents federal courts from 'interfer[ing] with the proceedings or orders of state administrative agencies' in certain circumstances, and the present action does not relate to any administrative action undertaken by the State of New York, much less an order or proceeding of a state agency.") (citation omitted).

agencies," *id.* at 361.  Following the Supreme Court's decision in *NOPSI*, the Second Circuit thus has held: "Under the *Burford* doctrine, a federal court must decline to *interfere with the orders or proceedings of state administrative agencies*: (1) if there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) if the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'"  *Dittmer v. Cnty. of Suffolk* 146 F.3d 113, 116 (2d Cir. 1998) (quoting *NOPSI*, 491 U.S. at 361) (emphasis added).

     *Burford* itself involved a challenge by the Sun Oil Company to a Texas Railroad Commission order issued pursuant to a technical regulatory scheme that affected the state's oil and gas conservation system and that granted Burford a permit to drill certain oil wells.  *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  The Court in *Burford* determined that federal court abstention from immediate review of those orders was proper.  The order under consideration was "part of the general regulatory system devised for the conversation of oil and gas in Texas," a particularly "thorny" problem, *id.* at 318; the Texas Railroad Commission was entrusted with "broad discretion" in the management of that system, which implicated the "whole economy of the state," *id.* at 320; the dispute was not a "mere isolated disput[e] between private parties," but would impact other stakeholders and thus was "of vital interest to the general public," *id.* at 324; the state provided a method for review of the order that was "expeditious and adequate," *id.* at 334; and, as the Court later put it, federal court litigation 'threatened to frustrate the purpose of the complex administrative system that Texas had established," *Quackenbush*, 517 U.S. at 725; *see also Alabama Pub. Serv. Comm'n v. Southern R. Co.*, 341 U.S. 341, 349 (1951) ("[a]s adequate state court review of an administrative order based upon predominately local factors is

available to appellee, intervention of a federal court is not necessary for the protection of federal rights"). In *Dittmer*, the Second Circuit reversed a district court's decision to abstain under *Burford* in a facial constitutional challenge that *did* involve a complex state administrative apparatus, a New York state conservation law that "establish[ed] a comprehensive land use planning and regulatory framework" for a specific geographic area, including a commission charged with reviewing permit applications under the scheme and structuring judicial review of the commission's determinations. 146 F.3d at 114–15. The Second Circuit found that, notwithstanding the "extensive history of state efforts to develop a land use policy," "the complex and comprehensive nature of the [state law] and its regulations and the intensely local nature of the problem addressed by the [state law]," *id*. at 117 (cleaned up), the district court's decision to abstain under *Burford* was an abuse of discretion because the plaintiffs did not "offer a collateral attack on a final determination made by the Commission or seek to influence a state administrative proceeding; indeed, plaintiffs have yet to invoke any administrative process under the Act," *id*. The *Dittmer* court described "[t]he danger which *Burford* abstention avoids" as the creation of "an opportunity to overturn a prior state court or agency determination by seeking federal court review, thereby disrupting a state administrative apparatus." *Id*.; *see also Cnty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1309 (2d Cir. 1990) (referring to *Burford*'s "sine qua non of an intricate state administrative scheme").

Burford*, *NOPSI*, and *Dittmer* dispose of Defendant's claim for abstention here. Defendant does not challenge an order of an administrative agency and the exercise of jurisdiction here would interfere with no administrative process. Defendant relies on a relatively straightforward provision of state law protecting certain assets from being executed upon in a

judgment enforcement action.  There is nothing in Plaintiffs' claims that comes close to meriting *Burford* abstention.

Defendant relies on two inapposite decisions: *Friedman v. Revenue Management of New York, Inc.*, 38 F.3d 668, 671 (2d Cir. 1994), and *Ankenbrandt v. Richards*, 504 U.S. 689 (1992). *See* Dkt. No. 48 at 5–6, Dkt. No. 64 at 3–4.  In *Friedman*, the Second Circuit held, on the basis of abstention principles, that federal courts lack the authority to enter an order dissolving a corporation created by state law.  Quoting a district court decision from the District of Massachusetts, the court reasoned that "to exercise jurisdiction over a dissolution of a state corporation would allow 'the possibility of federal dissolution actions, based on [state statutes], being commenced in a number of different districts in which a particular . . . corporation was subject to service, thereby placing an onerous burden on the corporation.'"  *Id.* at 671 (quoting *Alikire v. Interstate Theatres Corp.*, 379 F. Supp. 1210, 1215 (D. Mass. 1974)).  The court stated that the "case implicates *Burford*, given the comprehensive regulation of corporate governance and existence by New York." *Id.*[6]

*Friedman* does not support Defendant.  In the years since it was decided, it has not once been cited by the Second Circuit in support of a decision permitting abstention.[7]  *Friedman* relied

_____

[6] The Eleventh Circuit recently rejected *Friedman* expressly.  *See Deal v. Tugalo Gas Co.*, 991 F.3d 1313, 1327 n.8 (11th Cir. 2021).

[7] *Friedman* was cited only once by the Second Circuit in relation to abstention, in a 1995 decision overturning a district court decision granting summary judgment on the grounds that a 42 U.S.C. § 1983 plaintiff had not exhausted her state administrative remedies.  *See Wilbur v. Harris*, 53 F.3d 542, 545 (2d Cir. 1995).  The Second Circuit quoted *Friedman* in stating: "[n]or was abstention appropriate under [*Burford*] as abstaining from addressing [plaintiff's] constitutional claim would not 'avoid needless disruption of state efforts to establish coherent policy in an area of comprehensive state regulation.'" *Id.* (quoting *Friedman v. Revenue Management of New York, Inc.*, 38 F.3d 668, 671 (2d Cir. 1994)).  The circuit then held that "abstention in the instant case is squarely at odds with the holding in *Patsy* that exhaustion of state administrative remedies is not required in a § 1983 action."  *Wilbur*, 53 F.3d at 545.

not on any discussion of *Burford* itself but on a district court case, *In re English Seafood (USA) Inc.*, 743 F. Supp. 281 (D. Del. 1990), that in turn relied on the Supreme Court's decision in *Commonwealth of Pennsylvania v. Williams*, 294 U.S. 176, 185 (1935). *English Seafood* held that a federal court should not interfere with the liquidation of an insolvent building and loan association under a state regulatory scheme where there was no indication that the rights of private parties would be injured as a result of such abstention. 743 F. Supp. at 289; *see also Feiwus v. Genpar, Inc.*, 43 F. Supp. 2d 289, 296 (E.D.N.Y. 1999) ("There is a lengthy history of federal court recognition of the important interest states have in crafting a unitary policy concerning the creation, endurance, and dissolution of corporations."). Unlike a judicial dissolution claim involving a corporation's "internal affairs," foreclosure actions involving real property are "routinely adjudicated in federal court." *Avail Holding LLC*, 2017 WL 979027, at *5.

   *Ankenbrandt v. Richards* involved interpretation and application of the domestic law exception to the federal diversity statute. The lower courts there dismissed a complaint by the mother of two children alleging sexual and physical abuse by the divorced father of those children and his female companion, citing the domestic relations exception to federal jurisdiction. 504 U.S. 689, 692 (1992). The Supreme Court reversed, concluding that "a domestic relations exception exists [to diversity jurisdiction] as a matter of statutory construction," *id.* at 700, but that it extended only to "divest[ing] the federal courts of power to issue divorce, alimony, child custody degrees," *id.* at 703. In dicta, the Court stated that "abstention principles developed in [*Burford*] might be relevant in a case involving elements of the domestic relationship . . . Such might well be the case if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on a

determination of the status of the parties."  504 U.S. at 705–06.  Defendant reads *Ankenbrandt* to

hold that a federal court may abstain under *Burford* in favor of a state court.

By asserting that *Ankenbrandt* supports abstention in this case, Defendant takes the

decision far beyond where it can go.  The case has not been cited by either the Supreme Court or

the Second Circuit as expanding the grounds for *Burford* abstention.  Rather, the case is

consistent with and may be best understood to follow the long line of cases going back to the

Second Circuit's decision in *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d

509 (2d Cir. 1973) (Friendly, J.), permitting abstention in cases that, "though not within the

exceptions for matters of probate and administration or matrimony and custody actions, are on

the verge" of being matrimonial in nature.  *Id.* at 516; *see also Deem v. DiMella-Deem*, 941 F.3d

618, 624 (2d Cir. 2019) (stating that "while *Ankenbrandt* could be read to suggest that abstention

based on domestic relations concerns is merely a variant of *Younger* or *Burford* abstention," the

case is also consistent with "a distinct abstention doctrine for certain domestic relations

disputes"); *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (discussing abstention for

cases on the verge of being matrimonial in nature).  Indeed, *Ankenbrandt* itself recognized that

domestic relations disputes are distinctive in that they involve "close association [by state courts]

with state and local government organizations dedicated to handling issues that arise out of

conflicts over divorce, alimony, and child custody decrees," which "not infrequently involves

retention of jurisdiction by the court and deployment of social workers to monitor compliance."

504 U.S. at 703–04; *cf.* 15A Moore's Federal Practice § 102.91[2] (2024) (stating that general

considerations underlying the domestic relations exception include "the ability of state courts to

provide ongoing supervision, the availability in state court of professional support services, and

the undesirability of potentially incompatible federal and state decrees in this area").  In those

circumstances, it is easy to understand why "a federal suit . . . filed prior to the effectuation of a divorce, alimony, or child custody decree," *Ankenbrandt*, 504 U.S. at 706, and especially after proceedings had been commenced, might interfere with state administrative processes and thus *Burford* "might be relevant," *id*. Defendant has pointed to nothing comparable here.

Moreover, even if the absence of a state administrative process were not fatal to Defendant's argument, neither of the two bases for *Burford* abstention are present here, i.e., (1) a difficult question of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or (2) a scenario in which adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *See Quackenbush*, 517 U.S. at 726–27.

Defendant argues that the matter "presents difficult questions of state law," *Quackenbush*, 517 U.S. at 726–27, because the case will require the court to decide when and how a person may establish a homestead of choice, Dkt. No. 48 at 3, and that those questions are "of substantial public import" because the right to a homestead is enshrined in the Florida constitution and goes further than the homestead rights in other states, Dkt. No. 48 at 3–4. First, the Second Circuit has instructed that even where the state law interpretation of a common matter is "unclear, difficulty of decision is an insufficient ground for federal abstention." *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 776 (2d Cir. 1996). Second, the questions presented in this case are entirely commonplace and are of the kind that federal courts can and do routinely adjudicate without impact on a state regulatory scheme. *See Corcoran v. Ardra Ins. Co., Ltd.*, 842 F.2d 31, 26 (2d Cir. 1988) ("abstention pursuant to *Burford* is designed to avoid federal court interference with specialized ongoing state regulatory schemes"). The questions in this case include whether a house can be a homestead if the judgment debtor never resided in it at

the relevant time or if he unequivocally intended to dispose of it, the effect of surrender of a

property to a bankruptcy trustee without claiming an exemption on the ability to enjoy

homestead protection, and the number of days a debtor must be present in the home for it to

qualify as a homestead.  The issues presented are "run-of-the-mill," *Quackenbush*, 517 U.S. at

729, and "straightforward," *Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*, 60 F.3d

122, 127 (2d Cir. 1995).  They are not complex and "contain no broad terms requiring

interpretation by a state agency or experts in the field." *Id.*  There is no particular difficulty of

decision here.  Federal courts regularly interpret and apply the Florida Homestead provision,[8]

including in this circuit, *see S.E.C. v. Smith*, 2011 WL 9528138, at *3 (N.D.N.Y. Feb. 1, 2011),

and federal courts have adjudicated claims under the Florida Homestead Provision, including in a

declaratory judgment posture, for as long as the *Burford* doctrine has existed, *see, e.g., Doing v.

Riley*, 176 F.2d 449, 454–56 (5th Cir. 1949), and continue to do so, *see Crawford v. Silette*, 608

F.3d 275, 278–79 (5th Cir. 2010).[9]  Had the case been adjudicated by a federal court with

---

[8] A Westlaw search for citing references to Article X, section 4 of the Florida Constitution on December 26, 2024, resulted in 147 federal district court decisions, including decisions from district courts in 12 states other than Florida, as well as 529 bankruptcy court decisions, including decisions from bankruptcy courts in 23 jurisdictions other than Florida.  Even outside of the bankruptcy context, federal district courts inside and outside the State of Florida interpret and apply Florida homestead law in the context of judgment enforcement.  *See, e.g., United States v. Cap. Tax*, 2011 WL 2565690, at *2 (N.D. Ill. June 29, 2011) (interpreting Florida homestead exemption in judgment enforcement); *U.S. S.E.C. v. Healy*, 2009 WL 3486660, at *1 (M.D. Pa. Oct. 21, 2009) (granting receivership over claim of Florida homestead exemption in judgment enforcement).

[9] *Cf. Priester v. Long Beach Mortg. Co.*, 2017 WL 4366997, at *3 (E.D. Tex. Sept. 13, 2017), *report and recommendation adopted*, 2017 WL 4354922 (E.D. Tex. Oct. 2, 2017) (although "the State of Texas has a substantial interest in homestead rights of its individuals[,] federal courts have been hearing cases regarding Texas homesteads and homestead protections provided by the Texas Constitution since at least 1869. Abstention is only used in extraordinary circumstances, and Plaintiffs' theory of abstention would require federal courts to abstain any time a Texas homestead or home equity lien was at issue in a case, altering over one-hundred fifty years of federal case law.").

bankruptcy jurisdiction, Defendant clearly would have had no complaint that the homestead claim should be adjudicated in a state court, even if the court were far outside Florida. *See, e.g., In re John Richards Homes Bldg. Co., L.L.C.*, 298 B.R. 591, 607–09 (Bankr. E.D. Mich. 2003) (finding that debtor had not provided sufficient evidence to meet intent requirement of Florida Homestead Provision); *In re Butcher*, 62 B.R. 162, 166–68 (Bankr. E.D. Tenn. 1986) (interpreting "head of a family" requirement under prior version of Florida Homestead Provision), *aff'd*, 75 B.R. 441 (E.D. Tenn. 1987), *and aff'd sub nom. Butcher v. McClemore*, 848 F.2d 189 (6th Cir. 1988). The fact that his bankruptcy case was dismissed because of Defendant's discovery misconduct clearly does not give him any greater protection from his federal creditors.

Here, "the federal interests in this case are pronounced." *Quackenbush*, 517 U.S. at 728. Plaintiffs seek to enforce and give meaning to a judgment entered in a federal court. Under 28 U.S.C. § 1963, Plaintiffs are entitled to bring a final judgment entered in any federal court to any other district, and any judgment "so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." *Id.* Under Rule 69, a party receiving a federal judgment has the right to the assistance of a federal court in executing upon that judgment. Fed. R. Civ P. 69(a)(1). "The rule unmistakably contemplates proceedings in federal court according to state practice and procedure, not jurisdiction in state courts." *Duchek v. Jacobi*, 646 F.2d 415, 417 (9th Cir. 1981).

Defendant also has not shown that the resolution of the issues here would "bear[] on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Quackenbush*, 517 U.S. at 726–27. He argues that "Florida's homestead protections . . . reflect deep-seated policy values, enshrined in the state Constitution." Dkt. No.

44 at 3.  The same presumably could presumably be said of the homestead laws and all other laws exempting certain property from judgment enforcement in each of the other 49 states (though the protection is not always in the state constitution).  *See, e.g.*, N.Y. C.P.L.R. 5206(a).  In exercising their powers under Rule 69, federal courts invariably are called upon to address such state law questions whether the debtor has an interest in the property subject to execution, whether that property is subject to an exemption, the liability of a successor corporation, and the existence of a lien.  *See Marshak v. Green*, 746 F.2d 927, 930–31 (2d Cir. 1984) ("Those courts which have considered the issue have determined that state law also determines the type of property which can be subject to execution."); 12 C. Wright & A. Miller, Federal Practice and Procedure § 3012 (3d ed. 2024).  All of those issues could be said to implicate important state interests of the state whose law is to be applied.  That does not divest the federal court of its authority to execute federal judgments.  *See generally Duchek*, 646 F.2d 415; *Hall v. Davenport*, 76 F.3d 372 (4th Cir. 1996).

Even if the Court were to grant that Florida's homestead law is of particular importance to Florida residents, it does not follow that the resolution of this case would impact or undermine "the State's interests in maintaining 'uniformity in the treatment of an essentially local problem.'"  *Quackenbush*, 517 U.S. at 728 (quoting *NOPSI*, 491 U.S. at 362).  The Florida homestead law is not "essentially local."  It involves the balance of interests of out-of-state creditors against the putatively in-state debtor.  And, even if it were essentially local, a decision here would not undermine uniformity.  Whether Defendant took sufficient steps prior to January 26, 2024, to make Florida his homestead or whether his decision to list New York as his homestead and then to move to convert his chapter 11 bankruptcy to a chapter 7 bankruptcy eliminated any prior rights Defendant had to treat the Palm Beach Condo as his homestead are

fact-bound questions.[10]  The Court can resolve the legal issues involved without affecting any larger Florida policy within the meaning of *Burford*.  And the factual questions are of the type that courts regularly adjudicate. The resolution of this dispute surely is of interest to the Plaintiffs and Defendant here.  Defendant has not demonstrated that the Court's resolution of those questions will have any impact whatsoever on any other cases or on the Florida homestead law generally.

Defendant argues that "the [Florida] Legislature has conferred upon the Florida Circuit Court exclusive jurisdiction on a 'bill filed by' a judgment-creditor, 'to determine whether any property, real or personal, claimed to be exempt, is so exempt.'"  Dkt. No. 48 at 4 (quoting Fla. Stat. § 222.10; *Sepulveda v. Westport Recovery Corp.*, 145 So. 3d 162, 167 (Fla. Dist. Ct. App. 2014)).  That argument is without merit.  There is no "principle of federal jurisdiction [that] countenance[s] a state's attempt to oust a federal district court of jurisdiction to enforce its judgments."  *Duchek*, 648 F.2d at 418–19.  Defendant does not dispute that the State of Florida could not constitutionally pass a law requiring all persons who obtained a judgment in federal court against a Florida resident to go to state court for any enforcement of that judgment.  *See TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982) ("We agree with the District Court that there would be substantial doubt as to the constitutionality of a state law purporting to preclude federal court diversity or pendent jurisdiction over a state-created claim." (citing *Railway Co. v. Whitton's Administrator*, 80 U.S. 270, 286 (1872))); *Duchek*, 646 F.2d at 418–19.  For the same reasons, the Florida legislature would be without power to oust a federal court of its authority to assist the federal judgment creditor when the judgment debtor's main or principal asset is property located in Florida.

---

[10] The Court does not prejudge whether Plaintiffs are entitled to summary judgment.

In any event, the state circuit courts' jurisdiction under Fla. Stat. § 222.10 is "exclusive" only of other Florida courts, specifically of the county courts, which otherwise would have concurrent jurisdiction over matters with less than $15,000 in controversy. *Sepulveda v. Westport Recovery Corp.*, 145 So. 3d 162, 167 (Fla. Dist. Ct. App. 2014). It is not exclusive of the federal courts. Florida has not attempted to divest federal courts of their power to assist federal judgment creditors, as demonstrated by the many cases in which federal courts have determined whether Florida property is exempt. *See, e.g., Clements v. Farhood*, 2018 WL 850086 (N.D. Fla. Feb. 12, 2018) (diversity jurisdiction); *Fuller v. Carollo*, 2024 WL 3838543, at *1 (S.D. Fla. May 28, 2024) (ancillary jurisdiction).

Finally, Defendant suggests that abstention is appropriate in deference to Florida's administrative process for reviewing and adjudicating claims arising under Florida's homestead tax exemption. But that administrative apparatus has no role in adjudications under the Florida Homestead Provision, as the Florida homestead tax exemption arises under a different constitutional provision. *See* Fla. Const. art. VII, § 6. The Florida legislature elected to create that administrative regime, with its system of property appraisers and right of appeal to a value adjustment board, *see* Fla. Stat. § 196.151; *see generally* Fla. Stat. § 196.011(1)(a) et seq., as a totally separate administrative apparatus from the protections afforded by the Homestead Provision against judgment creditors. Defendant acknowledges the point but argues that "[p]rinciples applicable to one, however, inform the other." Dkt. No. 64 at 2. The reply demonstrates the fallacy of the argument. The case Defendant cites in support of his claim is from a federal court, the Bankruptcy Court for the Southern District of Florida, which treated the two areas of homestead law as distinct from one another under Florida Supreme Court precedent. *See In re Mendoza*, 597 B.R. 686, 689–90 (Bankr. S.D. Fla. 2019).

### B.    *Wilton* Abstention

Defendant argues, in the alternative, that the Court should decline to determine the rights of Plaintiffs under the doctrine of *Wilton* abstention.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); Dkt. No. 48 at 6–8.

*Wilton* abstention applies to actions brought under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a).  It is the function of the DJA to "creat[e] a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy, or in which the party entitled to such a remedy fails to sue for it."  *United States v. Doherty*, 786 F.2d 491, 498–99 (2d Cir. 1986) (quoting C. Wright, *The Law of Federal Courts* § 100, at 671 (4th ed. 1983)).  However, the jurisdiction of the district court under the DJA is permissive, not obligatory.  The DJA "created an opportunity, rather than a duty, to grant [declaratory] relief to qualifying litigants" and thus, "a district court is authorized in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment[.]"  *Wilton*, 515 U.S. at 288.

The Second Circuit has held that a district court considering whether to abstain under *Wilton* should consider the following six factors "to the extent they are relevant in a particular case":

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; . . . and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

*Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023); *see also Starr Indemnity & Liability Co. v. Exist, Inc.*, 2024 WL 503729, at *2 (2d Cir. Feb. 9, 2024)

(holding that district court need not consider all of the *Admiral* factors where the omitted factors were "either irrelevant or deserve[d] less than 'significant weight'").

Plaintiffs argue that Defendant's *Wilton* argument fails at the threshold because there is no pending state court proceeding on the basis of which the Court should abstain.  Dkt. No. 54 at 20.  *Wilton* itself raised the question whether the district court acted within its discretion in staying an action for declaratory relief "where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court."  515 U.S. at 290.  It followed the Court's earlier decision in *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491 (1942), in which the Court held that a federal district court presented with a DJA claim raising issues purely of state law "should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under applicable substantive law, can better be settled in [a] proceeding pending in the state court."  *Id.* at 495.  The *Brillhart* Court emphasized that the federal district courts are "under no compulsion" to exercise jurisdiction under the DJA and stated that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."  *Id.* at 494–95.  The Court in *Wilton* described what it called "the *Brillhart* regime," as one "under which district courts have substantial latitude in deciding whether to stay or to dismiss a declaratory judgment suit in light of pending state proceedings."  515 U.S. at 286.  Following *Wilton*, the Second Circuit held that "[u]nder the *Wilton* test, '[t]o avoid wasteful and duplicative litigation, district courts may often dismiss declaratory judgment actions 'where another suit is pending in a state court presenting the same issues, not governed by federal law, between the

same parties.'"  *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 104 (2d Cir. 2012) (quoting *Dittmer*, 146 F.3d at 118).

The law is unclear, however, whether the existence of a pending or at least threatened state court proceeding is a prerequisite to *Wilton* abstention and, if so, what kind of state court proceeding.  In *Wilton* itself, the Court left open the question whether a court can decline to exercise DJA jurisdiction when "there are no parallel state proceedings."  515 U.S. at 290.  A parallel state proceeding is one in which "there is an identity of parties, and the issues and relief sought are the same."  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997).  As Judge Gorenstein has astutely pointed out, there is a difference between a parallel proceeding and a pending proceeding: "*Wilton*'s holding was premised on the notion that a federal court should refrain from issuing declaratory judgments on issues that 'can better be settled in the proceeding pending in the state court,' . . . which can be true even when the state court action is *not* a parallel proceeding."  *Stoncor Grp., Inc. v. Peerless Ins. Co.*, 322 F. Supp. 3d 505, 514 (S.D.N.Y. 2018) (quoting *Wilton*, 515 U.S. at 282) (emphasis added).  It may be that the question that *Wilton* left open was the nature of the proceeding that must be pending in state court and whether it is capable of resolving the issues in the federal proceeding, rather than whether *Wilton* abstention would apply when there was no state court proceeding at all.[11]

How the Second Circuit weighs the importance of a "proceeding pending in the state court" is not entirely clear under recent caselaw.  *Admiral* favorably cited *Niagara Mohawk*

---

[11] This interpretation would be consistent with *Brillhart* itself, in which Justice Frankfurter instructed that the federal district court on remand should explore whether the claims sought to be adjudicated in federal court could adequately be tested in the state court proceeding, *Brillhart*, 316 U.S. at 495–96, and not whether the same issues already were pending in state court.  Justice Frankfurter added that if the district court concluded that the federal claims "could not adequately be tested in the pending garnishment proceeding [in state court]," the Supreme Court would not disturb the federal court's exercise of jurisdiction.  *Id.* at 496–97.

*Power*, *see* 57 F.4th at 99–100, in which the Second Circuit expressly and repeatedly described *Wilton* as applying when there was a pending state court proceeding, *see Niagara Mohawk*, 673 F.3d at 104–05.  *Admiral* also relied upon the Third Circuit's decision in *Reifer v. Westport Ins. Corp.*, in which that court held that "it is not a *per se* abuse of discretion for a court to decline to exercise jurisdiction when pending parallel state proceedings do not exist."  751 F.3d 129, 144 (3d Cir. 2014).[12]  Courts in this District considering requests for *Wilton* abstention routinely ask not only whether the parties and issues are the same but also whether the scope of the related proceeding is equivalent, whether the claims of the parties to the declaratory judgment action can be satisfactorily adjudicated in that action, and whether such parties are amenable to process in that proceeding.  *See, e.g., Lafarge Canada Inc. v. Am. Home Assurance Co.*, 2018 WL 1634135, at *4 (S.D.N.Y. Mar. 31, 2018); *TIG Ins. Co. v. Fairchild Corp.,* 2008 WL 2198087, at *2–3 (S.D.N.Y. May 27, 2008); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Warrantech Corp.*, 2001 WL 194903, at *3 (S.D.N.Y. Feb. 27, 2001).[13]  But the *Admiral* court, without discussing the issue, also directed the district court on remand to consider whether to exercise *Wilton*

---

[12] The Third Circuit cited a number of decisions from other Circuits holding "that the existence or non-existence of pending parallel state proceedings is but one factor for a district court to consider when exercising its DJA jurisdiction."  751 F.3d at 143–44.  Of the cases cited, only one, the Fourth Circuit's decision in *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998) involved *Wilton* abstention where there was no pending state court proceeding whatsoever.  The remainder of the cases turned upon the fact that the pending proceedings were not "parallel."

[13] The court in *Lafarge Canada Inc. v. Am. Home Assurance Co.*, 2018 WL 1634135, at *4 (S.D.N.Y. Mar. 31, 2018), stated: "Other relevant considerations for deciding whether to exercise jurisdiction when a related proceeding is pending in another court include: (1) the scope of the pending state [or foreign] proceeding and the nature of the defenses available there; (2) whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding; (3) whether the necessary parties have been joined; (4) whether such parties are amenable to process in that proceeding[;] (5) avoiding duplicative proceedings; (6) avoiding forum shopping; (7) the relative convenience of the fora; (8) the order of filing; and (9) choice of law." (internal citations and quotations omitted).

abstention in a case where seemingly there was no pending or potential state court proceeding whatsoever. *See Admiral Ins. Co. v. Niagara Transformer Corp.*, 2021 WL 4460753, at \*6 (S.D.N.Y. Sept. 29, 2021), *aff'd and remanded*, 57 F.4th 85.

In the absence of further clarity from the Second Circuit, and because this Court need not come to a conclusion on the issue to decide the pending motion, the Court applies the *Admiral* factors notwithstanding the absence of any actual or threatened state court proceeding. However, the Court does so in light of the *Reifer* standard, which the Second Circuit also seemingly endorsed, that "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction," and that "district courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors." *Reifer*, 751 F.3d at 144. Applying the *Admiral* factors, the conclusion readily follows that there is no basis for abstention here.

The first *Admiral* factor asks "whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved," and the second *Admiral* factor asks "whether such a judgment would finalize the controversy and offer relief from uncertainty." *Admiral*, 57 F.4th at 99–100. These factors are critical to the exercise of declaratory judgment jurisdiction. *See Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998, 1000 (2d Cir.1969), *cert. denied,* 397 U.S. 1064 (1970). If the declaratory judgment action did not at least serve a useful purpose in clarifying or settling the legal issues involved, the action would cease to serve its central function. *See, e.g., Doherty*, 786 F.2d at 498–99; *Allied World Surplus Lines Ins. Co. v. Elamex USA, Corp.*, 2024 WL 2212948 at \*6 (S.D.N.Y. May 16, 2024); Fed. R. Civ. P. 57 advisory comm. note; 10B C. Wright & A. Miller, Federal Practice and Procedure § 2751 (4th ed. 2024) (purpose of DJA is that it "permits actual controversies to be settled before they ripen

into violations of law or a breach of contractual duty and it helps avoid a multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the rights and obligations of litigants"). Defendant does not dispute that Plaintiffs have satisfied both factors. Adjudication of this declaratory judgment claim will settle the sole legal dispute between the parties with respect to the Palm Beach Condo. In the Judgment Enforcement action, Plaintiffs have sought appointment as receivers with power to sell the Palm Beach Condo to satisfy their judgment against the Defendant, *see* Judgment Enforcement, Dkt. No. 8; Dkt. No. 11 at 3. The Defendant's sole argument in opposition to that request is that his purported homestead exemption precludes it, *see* Judgment Enforcement Dkt. No. 44 at 4; Dkt. No. 59 at 3–4. "[I]f the homestead claim is resolved adversely to Defendant, the Court will place the Palm Beach condo into receivership and will authorize the receiver to sell the property in order to satisfy the Judgment." Judgment Enforcement, Dkt. No. 62 at 15. Reaching the merits of Plaintiffs' request for declaratory judgment as to the applicability of the Homestead Provision to the Palm Beach Condo will therefore indisputably provide clarity and certainty to the parties. For similar reasons, the second "finality" factor is satisfied and weighs uniquely in favor of the declaratory judgment action. The Court's resolution of Defendant's claim to homestead protection for the Palm Beach Condo will finally resolve the dispute between the parties with respect to this property. The declaratory judgment action therefore serves to "quiet a claim creating uncertainty when the party with that potential claim fails to assert it." *Allied World*, 2024 WL 2212948, at *6; 12 Moore's Federal Practice § 57.04[3] (2024); 10B C. Wright & A. Miller, Federal Practice and Procedure § 2751 (4th ed. 2024).

The third *Admiral* factor also favors Plaintiffs. The DJ Action is not "being used merely for procedural fencing" or as an effort by Plaintiffs to win a race with Defendant "to res

judicata." *Admiral*, 57 F.4th at 100.  That factor is relevant where, for example, a party faced

with the risk that it will be sued for a coercive remedy, files a preemptive DJA action in an effort

to deprive the injured party of its choice of forum.  *See, e.g., Fit & Fun Playscapes, LLC v.

Sensory Path, Inc.*, 2022 WL 118257, at *7 (S.D.N.Y. Jan. 12, 2022) ("It is improper for a party

to launch a preemptive strike by racing to the courthouse in his preferred forum before his

adversary has a chance to file their action in the forum of their choice . . . .  Courts have

generally found declaratory actions to be improper anticipatory filings when filed in response to

demand letters that give specific warnings as to deadlines and subsequent legal action." (internal

citations omitted) (collecting cases)); *Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc.*,

2012 WL 2065294, at *2 (S.D.N.Y. June 7, 2012) ("Because a federal declaratory judgment is

not a prize to the winner of a race to the courthouses, a plaintiff should not be permitted to file a

preemptive action in order to deprive the 'natural plaintiff' of its choice of forum." (internal

citations omitted)); *Pontchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.*, 48 F.4th 603,

606 (5th Cir. 2022) (affirming abstention decision where "'race to the courthouse' represented a

misuse of the Declaratory Judgment Act that attempted to preempt the proper plaintiff's forum

choice"); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 10 F.3d 425, 431 (7th Cir.1993) ("[A]

suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural'

plaintiff will normally be dismissed and the case allowed to proceed in the usual way."); *Starr

Indem. & Liab. Co. v. Exist, Inc.*, 2023 WL 4029821, at *5 (S.D.N.Y. June 14, 2023), *aff'd*, 2024

WL 503729 (2d Cir. Feb. 9, 2024).  It is not relevant here.  Defendant does not have any claims

against Plaintiffs.  There is no race with Defendants that Plaintiffs need to win.  He is enjoying

the Palm Beach Condo.  If the Plaintiffs are not permitted to sue, he may be able to continue to

enjoy that property notwithstanding Plaintiffs' claim it belongs to them.  A decision by the Court

to abstain from exercising its jurisdiction would thus reward gamesmanship. It would deny Plaintiffs an opportunity for relief in a forum which Congress made available for that relief. *See N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006) ("[A] declaratory judgment will finalize the controversy . . . and provide relief from uncertainty in that regard. For similar reasons, factor (iii) also calls for a decision on the merits. Seeking a final resolution of the [contested] issue is surely more than 'procedural fencing' on the facts of this case." (cleaned up)); *Diaz v. Pataki*, 368 F. Supp. 2d 265, 272 (S.D.N.Y. 2005) ("[B]ecause there is no pending parallel state court proceeding that has been brought to this Court's attention, this lawsuit neither implicates the sovereignty of another legal system nor is part of a strategy of procedural fencing.").

The fifth factor also favors the Plaintiffs because there is no "better or more effective remedy" for them elsewhere. *Admiral*, 57 F.4th at 100. The Judgment Enforcement action is pending in this Court. It is the most logical forum for this action. Plaintiffs won a judgment in federal court. There was reason to believe that at least until July 2024, New York was Defendant's primary residence. It was his "home," *see* MacCurdy Decl. Exhibit C at 6:16–18, the place from which he broadcast his radio show (at least until very recently), *see* Dkt. No. 57 ¶¶ 27–30, 46–49, 51–52, 54–58, 60–61, 63, 94–108, where he filed his bankruptcy petition, *see* Bankruptcy, Dkt. No. 1, where he has his assets, *see* MacCurdy Decl. Exhibit B; Bankruptcy, Dkt. No. 70, and where he was once mayor. There is no basis to claim that Plaintiffs were engaged in forum shopping. Defendant has not denied that the Court has personal jurisdiction over him or that venue is proper here. *See* Dkt. No. 39 at 1 ¶¶ 8–10; Fed. R. Civ. P. 12(h). The Court has appointed a receiver to sell Defendant's personal and real property in order to satisfy the judgment. The DJ Action will decide whether the receiver appointed by this Court to sell the

remainder of Defendant's property to satisfy the judgment should also be charged with selling the Palm Beach Condo.  What other court is better situated to make that decision than the court responsible for the appointment and the supervision of that receiver?   It is true, as Defendant states, Dkt. No. 48 at 7, that the Florida Circuit Court has jurisdiction to issue a declaratory judgment, but it is not "the law that a federal court must decline to entertain a declaratory judgment action because a declaratory remedy may exist in the state court." *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 738 (2d Cir. 1992); *see* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate").   Plaintiffs were not required to sue in Florida state court.  *Cf.* 12 C. Wright & A. Miller, Federal Practice and Procedure § 3013 (3d ed. 2024) ("The fact that an action is pending in state court to enforce the federal court judgment does not preclude supplementary proceedings in aid of execution in the federal court.").   A receiver appointed by a federal court in New York may be given the authority under the C.P.L.R. to sell property of the judgment debtor wherever that property is located.  *See Koehler v. Bank of Bermuda Ltd.*, 911 N.E.2d 825, 829 (N.Y. 2009) (after Second Circuit certified the question to New York Court of Appeals, holding that the New York state legislature intended C.P.L.R. article 52 to have extraterritorial reach, such that "[a] New York court has the authority to issue a turnover order pertaining to extraterritorial property, if it has personal jurisdiction over a judgment debtor in possession of the property"); Siegel, N.Y. Prac. § 510, at 866 (4th ed.).  Plaintiffs, who are citizens of Georgia, had the right to ask a federal court sitting in diversity jurisdiction to decide the question of the authority of the receiver appointed by that court to sell the real property in which the federal judgment debtor had an interest.  This Court, which supervises the receiver and which already is seized of jurisdiction over the Judgment Enforcement action, is as capable as the Florida courts of determining the

authority of that receiver with respect to the Palm Beach Condo.  After all, as a general matter, the "federal courts are deemed capable of applying the substantive law of other states."  *Wistron Neweb Corp. v. Genesis Networks Telecom Servs., LLC*, 2022 WL 17067984, at *9 (S.D.N.Y. Nov. 17, 2022) (quoting *Hummingbird USA, Inc. v. Texas Guaranteed Student Loan Corp.*, 2007 WL 163111, at *3 (S.D.N.Y. Jan 22, 2007)).

As to the sixth factor, "concerns for judicial efficiency and judicial economy" particularly favor the exercise of jurisdiction here.  *See Admiral*, 57 F.4th at 100.  Plaintiffs, Defendant, and the judiciary alike all have an interest in there being certainty as to whether the receiver appointed by this Court may take possession of and sell the Palm Beach Condo.  In the absence of the DJ Action, the parties and the Court would be left with uncertainty.  The Court could extend the authority of the receiver to sell the Palm Beach Condo.  There is no doubt that Defendant, as the judgment debtor, has an interest in that property under N.Y. C.P.L.R. 5228, and thus Plaintiffs are entitled to that remedy.  *See* N.Y. C.P.L.R. 5228.  But, as Plaintiffs point out, were the Court to exercise that authority and give the receiver those rights, Defendant might be able to seek to thwart the receiver's authority at any point by bringing an action in Florida court:  "Under Florida law, debtors are granted considerable leeway to hold back their homestead claims until the last minute before a forced sale."  Dkt. No. 54 at 16.  The receiver and the Court might expend significant efforts in connection with the sale of the Palm Beach Condo, only for a court otherwise alien to this proceeding to step in and decide that those efforts were for naught.  This Court does not know how it will decide the homestead issue.  The matter is still *sub judice*.  But it far better serves the interests of judicial efficiency and economizes the efforts of this Court, of the Florida courts, and of the parties, for this Court to decide the homestead question

before those efforts are expended rather than to wait to saddle another court with those questions at a later date.

Defendant's argument comes down to his unsupported claim that "the fourth and fifth factors predominate," and weigh in his favor. Dkt. No. 48 at 7. Without analyzing the other factors, he urges that this Court should stay its hand and decline jurisdiction because "the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court" (factor four) and that "there is a better or more effective remedy" in the form of litigation in the Florida Circuit Court (factor five). This approach is but a thinly-disguised *Burford* argument without satisfying any of the *Burford* requirements. It has no greater merit framed as *Wilton* abstention than as *Burford* abstention.

Plaintiffs had a right to bring this action in federal court, and this Court is properly seized of jurisdiction. Plaintiffs obtained a federal judgment and the Court is capable of applying Florida law. The Court's exercise of jurisdiction will not increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court because there is no pending litigation in any state or foreign court. *Starr Indem.*, 2024 WL 503729, at *2; *Diaz*, 368 F. Supp. 2d at 272 (in the absence of a "pending parallel state court proceeding," this case does not "implicate[] the sovereignty of another legal system"). There is not likely to be litigation in any state or foreign court. Though Defendant denies that Plaintiffs have any rights in the Palm Beach Condo, he has shown no interest in bringing a suit against them. Defendant does argue that the homestead exemption reflects "deep-seated policy values, enshrined in the state Constitution." Dkt. No. 48 at 3. But it creates no friction for this Court to apply that law and uphold those policy values, particularly in the context of enforcing a lawfully entered federal judgment. *See Duchek,* 646 F.2d at 418–19. The Court has the same obligation to apply Florida

law as a court in Florida.  There is no reason to believe that this Court would be any less faithful to those values than a court sitting in Tallahassee, Miami, or the Florida Keys.

Defendant evidently does not like that Plaintiffs have chosen to bring the lawsuit in the Southern District of New York rather than in federal district court in Florida.  *See* Dkt. No. 48 at 8.  That is what animates his argument that a more efficient remedy exists in Florida, the other federal court in which Plaintiffs' money judgment has been registered.  But Plaintiffs had and have a right to sue Defendant in New York, and Defendant has challenged neither venue nor personal jurisdiction.  *See* Dkt. No. 39 at 1 ¶¶ 8–10; Fed. R. Civ. P. 12(h).  The Southern District of New York is where Defendant and many of his assets are located; the turnover action is sited here.  It was perfectly appropriate for Plaintiffs to sue Defendant for a declaratory judgment here, where the most efficient remedy is available to resolve the question of Plaintiff's rights in the Palm Beach Condo.  *Wilton*'s purpose is to discourage a federal declaratory judgment from interfering with a current or perhaps a potential and imminent state proceeding.  It has no bearing on the transfer of venue from one federal court to another—a remedy which Defendant has not sought and to which he has not shown he would be entitled.

## CONCLUSION

Defendant's cross-motion for summary judgment is DENIED.

Dated: December 27, 2024
       New York, New York

_____
              LEWIS J. LIMAN
          United States District Judge