# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
RUBY FREEMAN and WANDREA' MOSS,

PLAINTIFFS,

-against- Case No.:
24-cv-6563(LJL)

RUDOLPH W. GIULIANI,

DEFENDANT.
----------------------------------------X

DATE: December 31, 2024
TIME: 9:10 A.M.

CONFIDENTIAL REALTIME VIDEOTAPED DEPOSITION of the Non-Party Witness, DR. MARIA RYAN, taken by the Plaintiffs, pursuant to a Subpoena and to the Federal Rules of Civil Procedure, held remotely, at all parties' locations, before Karyn Chiusano, a Notary Public of the State of New York.

A P P E A R A N C E S:

WILLKIE FARR & GALLAGHER, LLP
Attorneys for the Plaintiffs
RUBY FREEMAN and WANDREA' MOSS
787 Seventh Avenue
New York, New York 10019
BY: M. ANNIE HOUGHTON-LARSEN, ESQ.
J. TYLER KNOBLETT, ESQ.
mhoughton-larsen@willkie.com
jknoblett@willkie.com

GOLDBERG SEGALLA LLP
Attorneys for the Deponent
MARIA RYAN
711 3rd Avenue ~ 19th Floor
New York, New York 10017
BY: ADAM KATZ, ESQ.
akatz@goldbergsegalla.com

CAMMARATA & De MEYER P.C.
Attorneys for the Defendant
RUDOLPH W. GIULIANI
456 Arlene Street
Staten Island, NY 10314
BY: JOSEPH CAMMARATA, ESQ.
joe@cdlawpc.com

ALSO PRESENT:
JEREMY KOVACS, Videographer
JOANNA LAMBERTA, Law Clerk

* * *

F E D E R A L S T I P U L A T I O N S

IT IS HEREBY STIPULATED AND AGREED by and between the counsel for the respective parties herein that the sealing, filing and certification of the within deposition be waived; that the original of the deposition may be signed and sworn to by the witness before anyone authorized to administer an oath with the same effect as if signed before a judge of the Court; that an unsigned copy of the deposition may be used with the same force and effect as if signed by the witness 30 days after service of the original and one copy of same upon counsel for the witness.

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to form, are reserved to the time of trial.

* * * *

CONFIDENTIAL ~ DR. MARIA RYAN

THE VIDEOGRAPHER: Good morning.

We are going on the record at 9:10 A.M. Eastern Standard Time on Tuesday, December 31st, 2024.

Please note that this deposition is being conducted virtually.

Quality of the recording depends on the quality of the camera and internet connection of participants.

What is heard from the witness and seen on the screen is what will be recorded.

Audio and video recording will continue to take place unless all parties agree to go off the record.

This is Media Unit Number 1 of the video-recorded deposition of Dr. Maria Ryan taken by counsel for Plaintiff in the matter of Ruby Freeman and Wandrea' Moss verse Rudy W. Giuliani and Andrew

CONFIDENTIAL ~ DR. MARIA RYAN

Giuliani -- Andrew Rudolph W. Giuliani [sic].

This case is filed in the United States -- United States District Court for the District of Columbia, Case Number 21-3354 [sic].

My name is Jeremy Kovacs and I am your certified legal video specialist. Your court reporter today is Karyn Chiusano, and we are both from the firm Veritext Legal Solutions.

I am not related to any party in this action nor am I financially interested in the outcome.

If there are any objections to these proceedings, please state them at the time of your appearance.

Not hearing anything, all counsel will be noticed on the stenographic record and the court reporter may swear in the witness?

THE COURT REPORTER: Can you raise your right hand, please?

Page 162

CONFIDENTIAL ~ DR. MARIA RYAN

Joseph Ricci, was marked for identification as of this date by the Reporter.)

Q. Okay. Dr. Ryan -- I --

MS. HOUGHTON-LARSEN: I think this should be Exhibit 5. I think we already have an Exhibit 4.

MS. LAMBERTA: Apologies. I will remark it.

Q. Sorry, Dr. Ryan. There are some things that are easier about a Zoom deposition and some things that are harder, but I appreciate you sticking with me.

All right. Do you see this document, Dr. Ryan --

A. I can't --

Q. -- which is Exhibit 5?

A. It needs to be blown up just a little bit.

Q. Okay. Great.

Now can you see it?

A. Yep.

Q. Okay. Do you recognize this? I mean, take a minute to review it, first

Page 163

CONFIDENTIAL ~ DR. MARIA RYAN

of all, and then can you tell me if you recognize this exhibit?

(Witness reviews document.)

A. I don't. But I'm not -- I mean I don't really but --

Q. And can you see that this appears to be an e-mail sent on November 30, 2023, by Joseph Ricci --

A. Yep.

Q. -- to TruthandJustice4U@protonmail.com and maria.ryan@giulianipartners.com; cc ryan.medrano@giulianipartners.com?

A. I do.

Q. Subject line: "Filing of tax returns"?

A. I do.

Q. Okay. And TruthandJustice4U, is that Mr. Giuliani's e-mail address?

A. It is.

Q. And Ryan -- maria.ryan@giulianipartners.com, is that an e-mail address associated with you?

A. Yes.

Page 164

CONFIDENTIAL ~ DR. MARIA RYAN

But I don't think any of the Giuliani Partners' are in existence anymore; Ryan Medrano's either. I don't -- I think those are all gone.

Q. Do you recall the last time you tried to access that e-mail account?

A. No, I don't.

Q. Do you think it would've been in the last year?

MR. CAMMARATA: Objection.

A. I don't think so.

Q. Thank you.

Do you have an understanding as to why Joseph Ricci was sending this e-mail to you about it -- why he was sending this e-mail to you?

A. Yes.

Because he was hoping that I would flag it for the mayor. Absolutely.

Q. Okay.

A. And this -- this used to happen quite frequently when people tried to -- the mayor does not do e-mail, does not do text.

Page 165

CONFIDENTIAL ~ DR. MARIA RYAN

And it's -- became habit that people would either cc me or Ted or somebody to flag him that he's got a meeting or someone needs to talk to him.

Q. Do you think that most e-mail -- e-mails --

MS. HOUGHTON-LARSEN: Pardon me.

Q. -- most e-mails to Mr. Giuliani, nowadays, likely cc either you or Mr. Goodman or Mr. Medrano to make sure the mayor sees them?

MR. CAMMARATA: Objection.

A. I could not say that to be true, no. I -- I think some of the old-timers know, like Joe Ricci knows to do that, but I can't think -- and then, his predecessor, Lisa Osofsky, would call me to alert the mayor that he has something in his e-mail.

But I wouldn't say that's an ongoing practice with other people.

Q. Okay.

MS. HOUGHTON-LARSEN: Can we

CONFIDENTIAL ~ DR. MARIA RYAN

mark Tab FFF, Joanna, as Plaintiffs' Exhibit 6, please?

MS. LAMBERTA: "FFF," you said?

MS. HOUGHTON-LARSEN: Yep.

MS. LAMBERTA: Okay. Sure.

Q. And just while Joanna's pulling that up, the November 30th, 2023 e-mail from Mr. Ricci that we just looked at, did you produce that document to Plaintiffs?

A. I don't have access to that e-mail.

Q. Okay.

MS. HOUGHTON-LARSEN: We're ready for -- oh, perfect.

(Whereupon, Plaintiffs' Exhibit 6, 10/15/2024 E-mail, Subject: Gift Tax Return, was marked for identification as of this date by the Reporter.)

MS. HOUGHTON-LARSEN: Let's zoom in before I start asking any questions.

Go up. Okay.

Q. Dr. Ryan, can you see the --

CONFIDENTIAL ~ DR. MARIA RYAN

the document on your screen?

A. Yes.

Q. And this has been marked as Plaintiffs' Exhibit 6?

A. Yeah.

Q. Do you rec- -- do you recognize this document?

A. That sounds familiar.

Q. Okay. So do you see that this is a October 15th, 2024 e-mail from Joseph Ricci to you at mariaryannh@gmail.com; "Subject: Gift tax return."

A. Yep.

Q. Do you see that?

A. Yep.

Q. And do you see this says:

"Hi Maria. Please see attached gift tax return. Please have RWG sign and date and mail to the address indicated today."

Do you see that?

A. Yep.

Q. Do you know if you produced

CONFIDENTIAL ~ DR. MARIA RYAN

this document to Plaintiffs?

MR. CAMMARATA: Objection.

A. Why -- why would I?

Q. I'm not really su- -- supposed to -- you're -- you're testifying, so I'm not really supposed to answer your questions.

Could you please answer my question of whether you produced this document to Plaintiffs?

A. I didn't --

MR. CAMMARATA: Objection.

A. -- have it anymore. It's not about --

Q. Okay.

A. -- me. It's having the mayor sign something, so I'm sure I got rid of it almost immediately.

Q. When you mean -- when you say "get rid of it," do you mean deleted it?

A. Yeah. I'm sure I got rid of anything that doesn't have to pertain to -- to me. That's his business about his taxes.

CONFIDENTIAL ~ DR. MARIA RYAN

Q. Is it your regular practice to delete e-mails and documents as soon as you don't need them anymore?

A. Yes.

MR. CAMMARATA: Objection.

A. Been like that my whole life.

Q. Okay. Are you the same way with text messages?

A. Yes, definitely. I -- I don't like all the mess of too many messages, so I like to -- if I was to talk to you, it would be deleted almost when I'm done talking to you.

Q. For all communications or only business communications?

MR. CAMMARATA: Objection.

A. Pretty much all communications.

Q. You testified earlier about Mr. Giuliani declaring bankruptcy.

Do you recall that?

A. I do.

Q. Do you have an understanding of why Mr. Giuliani declared bankruptcy?

A. Yes.

Page 170

CONFIDENTIAL ~ DR. MARIA RYAN

MR. CAMMARATA: Objection.

A. In -- in my opinion, I do, yes.

Q. All right. Could you explain your opinion of why Mr. Giuliani declared bankruptcy, please?

A. Well, he was in front of a crooked judge in Washington, D.C., and he was never allowed a trial. And because he got onslaughted [sic] with document requests, thousands of pages, that the judge did a default hearing, and then there was a ridiculous -- $148 million judgment.

Well, the guy was -- is only worth his properties, so, yeah, he had to be forced into bankruptcy. That's my understanding.

Q. Okay. Do you -- when did you become aware that Mr. Giuliani was going to -- or wanted to file bankruptcy?

A. I don't recall.

Q. Do you recall whether you were aware before Mr. Giuliani filed, or did you become aware afterwards?

MR. CAMMARATA: Objection.

Page 171

CONFIDENTIAL ~ DR. MARIA RYAN

A. I don't recall.

Q. Okay.

MS. HOUGHTON-LARSEN: Can we mark Tab C, please, Joanna? And I think it's Plaintiffs' Exhibit 7. Yes.

(Whereupon, Plaintiffs' Exhibit 7, 12/18/2023 E-mail from Maria Ryan, Re: Bankruptcy, was marked for identification as of this date by the Reporter.)

Q. While we're waiting for that to come up.

Dr. Ryan, does Sheridan.Church in Tulsa ring a bell for you?

A. It does.

MR. CAMMARATA: Objection.

Q. Do you recall whether Sheridan.Church is a place where Mr. Giuliani has done paid speaking?

A. He has not done paid speaking, but he has been invited there, and they contributed to his defense fund.

Q. Did Sheridan.Church contribute

Page 172

CONFIDENTIAL ~ DR. MARIA RYAN

to Mr. Giuliani's defense fund in exchange for him speaking there?

MR. CAMMARATA: Objection.

A. I don't know if I understand that.

Q. Sure.

So, my -- my question is: Is it your understanding that there was some sort of trade or exchange? Mr. Giuliani appeared at an event or did some type of speaking for Sheridan.Church, and then, in exchange, Sheridan.Church contributed to his legal defense? Is that your understanding?

MR. CAMMARATA: Objection.

A. It didn't seem like it was, you do this and we'll do that. It -- it was more like people are praying for you here, they see the miscarriage of justice, we'd like to invite you in a loving environment. And while they were doing the sermon, the pastor brought up his struggles and they put up the defense fund so people can contribute.

Page 173

CONFIDENTIAL ~ DR. MARIA RYAN

Q. Did you travel to -- were you also present at Sheridan.Church at that time you were just describing?

A. I was.

Q. Did Sheridan.Church pay for your and Mr. Giuliani's travel to and from Tulsa?

A. They did.

Q. Do you recall arranging that travel with Sheridan.Church?

MR. CAMMARATA: Objection.

A. I -- they -- they arranged it, but I'm aware of it, yes.

Q. And do you recall, like, Sheridan.Church sending you flight information or hotel information for your trip?

A. I'm sure they did.

Q. Okay.

MS. HOUGHTON-LARSEN: So if we could pull up this document, Joanna, it should be Exhibit 7.

You can see it's marked Exhibit 7, and then I'll zoom in.

Page 258

CONFIDENTIAL ~ DR. MARIA RYAN
And then there are 15 requests.
Do you see that?
A. I do.
Q. Okay. And does this refresh your recollection regarding this document?
A. It doesn't. When I was notified that there was questions, I think I only got the questions.
Q. Okay. And do you recall who you got the questions from?
MR. CAMMARATA: Objection.
Q. Dr. Ryan?
A. I believe I was notified by Gary Rosen.
Q. Okay.
MS. HOUGHTON-LARSEN: Okay. So let's go -- let's mark Tab 33, Joanna. And I -- I don't think that we can have both documents up at the -- on the screen at both times, but we'll see how this goes.
This actually, probably, will take a few minutes, so if you want to take a break to use the ladies' room

Page 259

CONFIDENTIAL ~ DR. MARIA RYAN
or get a water or anything, now would be a good time.
THE WITNESS: Okay. I think I will go to the ladies' room.
MS. HOUGHTON-LARSEN: Okay. It's 2:37 -- oh, let's just wait -- oh, sorry, Dr. Ryan.
THE WITNESS: Oh.
MS. HOUGHTON-LARSEN: Let's just wait for Jeremy to take us off the record.
THE WITNESS: Okay.
MS. HOUGHTON-LARSEN: And we'll come back maybe at 2:45.
THE WITNESS: Okay.
THE VIDEOGRAPHER: This is the end -- end of Media Unit Number 4.
We're going off record.
The time is 2:38 P.M.
(Whereupon, a short recess was taken.)
THE VIDEOGRAPHER: This is the start of Media Unit Number 5.
We are back on the record.

Page 260

CONFIDENTIAL ~ DR. MARIA RYAN
The time is 2:46 P.M.
MS. HOUGHTON-LARSEN: I'm -- okay.
So we were about to pull up, Joanna, as an exhibit Tab 33, which is Plaintiffs' Exhibit -- I don't know. You'll tell me.
MS. LAMBERTA: It's going to be 27. One of them is just out of order, so this is 27 and then, there'll be a 26.
MS. HOUGHTON-LARSEN: Okay.
(Whereupon, Plaintiffs' Exhibit 27, Document Request Response, was marked for identification as of this date by the Reporter.)
Q. Okay. So this has been marked Plaintiffs' Exhibit 27.
MS. HOUGHTON-LARSEN: Can you zoom in?
Q. First of all, Dr. Ryan, can you see this document on your screen?
A. Yes, I can. But I'm very happy

Page 261

CONFIDENTIAL ~ DR. MARIA RYAN
I responded to that request. I wasn't sure if I did or didn't.
Q. Okay. So you can -- do you recognize this document?
A. I do.
Q. Okay. And what is it?
A. It's the response to the document request.
Q. Okay. So what I'd like to do is I'd just like to go through the specific questions and then your answers. And so, I'm going to read from Exhibit 25 the questions. If you want them pulled up on the screen, we'll just have to go back and forth.
So Document Request 1 is:
"All documents and communications relating to the nature of Mr. Giuliani's use and occupancy of the Palm Beach condo, including his purported intention to establish it as a permanent residence."
Okay?
A. Okay.

Page 262

CONFIDENTIAL ~ DR. MARIA RYAN

Q. And then, if we look at this document, your answer is:

"Attached is an email between Southeby's [sic] and myself."

Do you see that?

A. Uh-hum. Yes.

Q. And do you understand that in response to Document Request 1, you only produced one e-mail between Sotheby's and yourself?

A. Yes. I was aware of that.

Q. And is it your testimony that no -- you do not have any other documents that are responsive to that request?

A. When it comes to the homesteading, I don't have -- no. It would be the real estate agreement.

Q. And so, just so I'm clear.

It's your testimony that you don't have any texts or e-mails, phone records or anything, moving documents, invoices relating to Mr. Giuliani's use and occupancy of the Palm Beach condo other than this Sotheby's e-mail?

Page 263

CONFIDENTIAL ~ DR. MARIA RYAN

A. No. I wouldn't have anything personal about his -- I -- I totally don't even get why I would be asked about his stuff with the Palm Beach condo. I don't have anything on his Palm -- Palm Beach condo.

Q. Okay.

MS. HOUGHTON-LARSEN: Let's go to -- and let's -- zoom in, Joanna, and so we can go document request by document request just so it's a little easier -- there you go, it's a little easier to see.

Q. So reading from Plaintiffs' Exhibit 25, Document Request 2 is for documents and communications relating to Mr. Giuliani's travel between July 1st, 2023 and August 8th, 2024. It seeks all conversations relating to travel plans and logistics"... such as credit card statements, receipts, reimbursements, itineraries, airline or train tickets, car rental reservations, lodging bookings or lodging folios."

Page 264

CONFIDENTIAL ~ DR. MARIA RYAN

And then, your answer to Document Request Number 2 is:

"This is an overburdensome request. The honorable Rudolph Giuliani travels for his business. The company hiring him typically pays for his travel which includes his staff.

"Mr. Mike Lindell already made it public that his organization paid for the mayor and his staff to attend the RNC and DNC as part of his role with FrankSpeech TV?"

Do you see that?

A. Uh-hmm.

Q. And do you understand that you didn't produce any documents in response to that request?

A. Yes. I -- I absolutely recognize that. I -- I told you how it typically works.

Q. Okay. And just so I'm clear.

Is it your testimony that you don't have a single document responsive to Request Number 2?

Page 265

CONFIDENTIAL ~ DR. MARIA RYAN

A. I don't believe I do.

MR. CAMMARATA: Objection.

Q. Okay. Going to Document Request Number 3:

"All physical or electronic calenders or schedules reflecting Defendant's travel or whereabouts throughout 2024."

And your response is:

"There are no responsive documents to this request."

A. Yes. You are aware --

Q. Is that correct?

A. -- he has -- you are aware of that. You're aware of the wall calendar.

Q. Okay. Document Request 4 is for:

"Documents or communication sufficient to show the location of Defendant's Sensitive Personal Property...", which I will tell you is defined as:

Mr. Giuliani's"... passport, birth certificate, will, trust documents,

Page 266

CONFIDENTIAL ~ DR. MARIA RYAN

divorce records, personal and family heirlooms, and sports memorabilia."

And your response is:

"Skyline but I do not know the address."

Do you see that?

A. Yep.

Q. And then you say:

"Corporate Transfer in Ronkonkoma."

Do you see that?

A. Yes.

Q. Is it your testimony that Mr. Giuliani keeps his sensitive personal property, such as his passport, birth certificate, will, trust documents, divorce records, personal and family heirlooms and sports memorabilia, at storage facilities?

MR. CAMMARATA: Objection.

A. I have no idea. I think I misunderstood that question. I -- I would have to -- I should have said, "I don't know".

Q. Okay.

Page 267

CONFIDENTIAL ~ DR. MARIA RYAN

A. I thought I was asking about what storage facilities he had, so I apologize for that.

But I don't know where he keeps his personal documents.

Q. I understand.

Let's go to Document Request 7, and that says:

"All documents and communications relating to the storage of property at Corporate Transfer Storage Inc., America First Warehouse and Sky Line Warehouse...including but not limited to contracts, invoices, payments, access to or the transference of any of the properties stored at either location."

And your answer has, in parenthesis:

"Put in invoice from corporate..."

And then, outside of parenthesis:

"...I cannot find the invoice."

Do you see that?

Page 268

CONFIDENTIAL ~ DR. MARIA RYAN

A. Yes. I thought I had -- I saw it somewhere, but it could've been from his attorney, an invoice from Corporate, but when I went to look in the e-mail, I couldn't find any.

Q. Okay. So when it says:

"Put in invoice from corporate..." in parenthesis, did you write that as a note --

A. I did.

Q. -- to yourself?

A. That was a note to myself.

Q. All right.

A. Because I thought --

Q. Okay.

A. -- I had it, but then I remembered I was shown on a screen the invoice, so I actually never had it in my possession.

Q. So, okay, let's go to Document Request 8:

"All documents and communications relating to Standard USA, LLC in any way, including but not limited

Page 269

CONFIDENTIAL ~ DR. MARIA RYAN

to its formation, corporate structure, owners, members, financial records, bank account, assets, debts, loans, payments, profits, property, financial transactions, and total, yearly and monthly revenue."

And in response to Document Request Number 8, you write:

"Standard USA, LLC had to form because you illegally seized the money for Giuliani Communications and employees did not get paid for two months."

Do you see that?

A. Yes. It was very shameful.

Q. And do you understand that you didn't produce a single document in response to Document Request Number 8?

MR. CAMMARATA: Objection.

A. Well, I -- I was told that you already had the Standard USA corporate structure.

Q. Who told you that?

MR. CAMMARATA: Objection.

A. An attorney.

Q. Not your attorney?

68 (Pages 266 - 269)

Veritext Legal Solutions
212-267-6868 www.veritext.com 516-608-2400

Page 270

CONFIDENTIAL ~ DR. MARIA RYAN

A. No. I just hired Adam when I found out I had to be deposed.

Q. Okay. So was it one of Mr. Giuliani's attorneys who told you?

A. I believe so.

MR. CAMMARATA: Don't guess.

A. I don't know then.

Q. And you testified earlier in today's deposition that you have access via an online portal to the iTHINK bank account held by Standard USA; correct?

A. Yes.

Q. And in response to this document subpoena, you didn't produce any of those online banking records, did you?

A. I did not. And I did not have an attorney at that time. And I would have to discuss that with Adam, because I'm having a hard time wrapping around my head what business is it of yours.

And I don't want anybody else hurt by the antics of Willkie Farr & Gallagher.

So somebody's private bank

Page 271

CONFIDENTIAL ~ DR. MARIA RYAN

information, I -- I don't get why that's got to do with his homesteading. And so I would have to seek counsel. I did not have counsel when I filled these out.

Q. And Document Request 9 asks:

"All documents and communications relating to Giuliani Communications LLC in any way, including but not limited to its corporate structure, owners, members, financial records, bank accounts, assets, debts, loans, payments, profits, property, financial transactions, and total, yearly and monthly revenue."

Do you --

A. I don't any --

Q. -- have in your response --

A. I don't have any documents.

Q. Pardon?

A. I don't have any documents relating to that.

Q. Do you have any documents showing your salary payments for Giuliani Communications?

Page 272

CONFIDENTIAL ~ DR. MARIA RYAN

MR. CAMMARATA: Objection.

A. I know what I would get for direct deposit, yes.

Q. You have access to your own bank accounts online?

A. I do.

Q. And those bank account statements reflect money that you were paid by Giuliani Communications?

A. Yes.

Q. And you didn't produce any of those documents in response to this request?

A. I didn't. Same -- same answer.

I felt like what I earn is my business. I'm not under indictment for anything. And I find that quite abusive.

So now that I have an attorney, I will discuss that with my attorney.

Q. Document Request 14 asks:

"All documents and communications relating to the transfer of any money or property from you to..." Mr. Giuliani or Mr. Giuliani "...to you."

Page 273

CONFIDENTIAL ~ DR. MARIA RYAN

This includes gifts, payment of expenses, travel, day-to-day expenses, meals, lodging, dry cleaning, or clothing.

And in response to this, you write:

"Have you ever picked up a tab at a restaurant? In the past, sometimes I would do it for the staff and other times the mayor would do it. I do not know the dates nor do I have receipts."

A. That's right.

Q. Is that correct?

A. That's very honest, yeah.

Q. Okay.

A. Yeah --

Q. You think that that information -- pardon me. I don't mean to cut you off. I'm sorry, Dr. Ryan.

A. No.

I don't save anything. It's pretty fluid. Yeah. So everybody helps each other out. Sometimes Ted picks up a meal or two, if it's McDonald's.

So I -- I -- it's so hard,

Page 274

CONFIDENTIAL ~ DR. MARIA RYAN
these everyday things. I -- I am -- I'd would be surprised if you kept the receipts for that.
Q. Do you recall earlier today we looked at a document, an e-mail between you and Joe Ricci --
A. Yes.
Q. -- in which you were referring to a payment --
A. Yep.
Q. -- that you made --
A. Yep.
Q. -- for Mr. Giuliani's medication?
A. Yep.
Q. Did you produce that document to Plaintiffs?
A. No.
I don't have it.
Q. Document Request 15 asks for:
"Document or communications relating to agreements or contracts that relate in any way to assets or property..." possessed by Mr. Giuliani with

Page 275

CONFIDENTIAL ~ DR. MARIA RYAN
"...agreements and contracts with Corporate Transfer Storage...for the moving and storage of..." Mr. Giuliani's "...physical property."
And your response is:
"See attached invoice. I cannot find the invoice."
A. Same thing. I thought I may have the invoice, but when it came down to it, I was just shown the invoice over a screen, and I had never had it in my physical possession. And there was never a --
Q. Do you recall a --
MR. CAMMARATA: Objection.
Q. Do you recall earlier --
MS. HOUGHTON-LARSEN: Mr. Cammarata, what are you objecting to? I didn't ask the question.
MR. CAMMARATA: Yeah. I withdraw it.
Q. Dr. Ryan, do you recall earlier today you were talking about a contract with Burke Brands coffee?

Page 276

CONFIDENTIAL ~ DR. MARIA RYAN
A. Yes.
Q. Did you produce that document to Plaintiffs?
A. I did not.
Q. Do you recall earlier today we looked at a document about a contract with a man named Igor for $100,000.00?
MR. CAMMARATA: Objection.
A. That was in 2021. That was not asked of me.
Q. Okay. Thank you.
MS. HOUGHTON-LARSEN: So just to close the loop on this, let's look at document -- Tab 32, Joanna.
And this is Plaintiffs' Exhibit 26.
(Whereupon, Plaintiffs' Exhibit 26, E-mail Chain, was marked for identification as of this date by the Reporter.)
Q. Dr. Ryan, do you recognize this document? It's the single document you produced to Plaintiffs in response to Plaintiffs' document request?

Page 277

CONFIDENTIAL ~ DR. MARIA RYAN
A. What's that? What was the question?
Q. Do you recognize this document as the single document that was in response to Plaintiffs -- that you produced in response to Plaintiffs' document request?
A. I recognize it -- yes.
Q. When you received the document request or became aware of it, did you take steps to search your files?
A. I did. I did. I put in the search thing on the top, and that's how I was surprised I had anything from Sotheby's anymore, actually.
But, yes, I did.
Q. Do you recall what search terms you used?
A. I did Corporate -- depending on the question, I remember doing "Skyline," "Corporate Transfer," and other things like that, depending on the question.
Q. Okay. And did you produce to Plaintiffs every document that showed up when you did those searches?

EXHIBITS (cont'd)

Exh 17 Giuliani Apartment Library Photo 213

Exh 18 Giuliani Apartment Kitchen Photo 217

Exh 19 8/8/2024 E-mail 219

Exh 20 Calendar 226

Exh 21 Redacted Handwritten Calendar Reminders 229

Exh 22 Response to Information Subpoena 233

Exh 23 Information Subpoena with Restraining Notice pursuant to CPLR Sections 5222 and 5224 249

Exh 24 Questions in Connection With information Subpoena to Standard USA LLC 253

Exh 25 Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action 255

Exh 26 E-mail Chain 276

Exh 27 Document Request Response 260

Exh 28 Defendants' [sic] response to Plaintiffs' First Set of Interrogatories 280

Exh 29 Defendant's Amended Initial Disclosures Pursuant to Federal Rules of Civil Procedure Rule 26(a)(1) 288

EXHIBITS (cont'd)

Exh 30 Certification that Response is Correct and Complete 295

Exh 31 Defendant Rudolph W. Giuliani's Pretrial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(3) 296

(Exhibits retained by Exhibit Share.)

INDEX

WITNESS: MARIA RYAN

EXAMINATION BY PAGE

MS. HOUGHTON-LARSEN 8

INFORMATION AND/OR DOCUMENTS REQUESTED

None

QUESTIONS MARKED FOR RULINGS

None

CERTIFICATE

STATE OF NEW YORK )
: SS.:
COUNTY OF NEW YORK )

I, KARYN CHIUSANO, a Notary Public for and within the State of New York, do hereby certify:

That the witness whose examination is hereinbefore set forth was duly sworn and that such examination is a true record of the testimony given by that witness.

I further certify that I am not related to any of the parties to this action by blood or by marriage and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 1st day of January, 2025.

KARYN CHIUSANO