## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RUBY FREEMAN and WANDREA' MOSS,

                Plaintiffs,

v.

RUDOLPH W. GIULIANI,

                Defendant.

No. 24-cv-6563 (LJL)

### PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Rachel Goodman
United to Protect Democracy
82 Nassau Street, #601
New York, NY 10038
(202) 579-4582
rachel.goodman@protectdemocracy.org

Von DuBose (*pro hac vice forthcoming*)
DuBose Miller LLC
75 14th Street NE, Suite 2110
Atlanta, GA 30309
(404) 720-8111
dubose@dubosemiller.com

Michael J. Gottlieb
Meryl C. Governski (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Aaron E. Nathan
M. Annie Houghton-Larsen
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
anathan@willkie.com
mhoughton-larsen@willkie.com

*Attorneys for Plaintiffs*

# <u>TABLE OF CONTENTS</u>

PROPOSED FINDINGS OF FACT ...........................................................................1

I.    Plaintiffs Recorded Their Judgment in Palm Beach County on August 8, 2024............1

II.   Prior to January 1, 2024, the New York Apartment Was Undisputedly Mr.
      Giuliani's Principal Residence, and the Palm Beach Condo Was Undisputedly
      Mr. Giuliani's Second Home. ......................................................................1

III.  Mr. Giuliani Did Not Establish a Homestead at the Palm Beach Condo Prior to
      August 8, 2024. ........................................................................................3

      A.    Mr. Giuliani Did Not Actually Occupy the Palm Beach Condo as a Principal
            Residence Prior to August 8, 2024. ..........................................................3

      B.    Prior to August 8, 2024, Mr. Giuliani Did Not Have an Intention to
            Permanently Maintain a Principal Residence at the Palm Beach Condo....................6

      C.    On July 1, 2024, Giuliani Sought to Liquidate the Palm Beach Condo by
            Surrendering It to a Chapter 7 Trustee........................................................10

IV.   Mr. Giuliani's Version of Events Is Not Credible. ...........................................10

PROPOSED CONCLUSIONS OF LAW ..................................................................17

I.    Mr. Giuliani Did Not Establish His Palm Beach Condo as a Homestead Within
      the Meaning of the Florida Constitution on or Before August 8, 2024. ...................17

      A.    Mr. Giuliani Did Not Actually Occupy the Palm Beach Condo as His
            Principal Residence On or Before August 8, 2024. .........................................18

      B.    Mr. Giuliani Did Not Form an Intention to Maintain the Palm Beach Condo
            as His Principal Residence Indefinitely on or Before August 8, 2024. ...................19

      C.    During the Only Period In Dispute, Mr. Giuliani Had, at Most, an Intention
            to Establish the Palm Beach Condo as his Principal Residence at Some Point
            in the Future. ..................................................................................21

      D.    In the Alternative, Mr. Giuliani Destroyed His Palm Beach Condo
            Homestead on July 1, 2024 and Did Not Re-Establish it on or Before August
            8, 2024..........................................................................................22

II.   Plaintiffs Established a Valid Lien on the Palm Beach Condo on August 8,
      2024, Which Is Enforceable Notwithstanding Any Claim By Mr. Giuliani that
      the Palm Beach Condo Is Protected as a Homestead Under the Florida
      Constitution.....................................................................................24

CONCLUSION.....................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Belkova v. Deer Run Prop. Owners' Ass'n, Inc*.,
　373 So. 3d 629 (Fla. Dist. Ct. App. 2023) ...............................................................24

*Bessemer v. Gersten*,
　381 So. 2d 1344 (Fla. 1980)........................................................................................24

*Bloomfield v. City of St. Petersburg Beach*,
　82 So. 2d 364 (Fla. 1955)............................................................................................20

*Clements v. Farhood*,
　No. 5:17-CV-213-RH/GRJ, 2018 WL 850086 (N.D. Fla. Feb. 12, 2018) .................17, 18, 24

*Colwell v. Royal Int'l Trading Corp.*,
　226 B.R. 714 (S.D. Fla. 1998) ...................................................................................17

*Drucker v. Rosenstein*,
　19 Fla. 191 (Fla. 1882)............................................................................................18, 24

*Engel v. Engel*,
　97 So. 2d 140 (Fla. Dist. Ct. App. 1957) ...................................................................21

*In re Franzese*,
　383 B.R. 197 (Bankr. M.D. Fla. 2008) ......................................................................23

*Hillsborough Inv. Co. v. Wilcox*,
　13 So. 2d 448 (Fla. 1943).........................................................................................17

*In re Maritas*,
　No. 08-CV-80563, 2008 WL 7801998 (S.D. Fla. Nov. 24, 2008) ............................22

*In re McCallan*,
　629 B.R. 491 (Bankr. M.D. Ala. 2021).....................................................................18

*In re Middleton*,
　462 B.R. 832 (Bankr. N.D. Fla. 2011).....................................................................18, 20

*Osborne v. Dumoulin*,
　55 So. 3d 577 (Fla. 2011)..........................................................................................22

*Reinish v. Clark*,
　765 So. 2d 197 (Fla. Dist. Ct. App. 2000) ................................................................18

*In re Sam Parker Coats*,
    643 B.R. 634 (Bankr. M.D. Fla. 2022) ...................................................................19

*Semple v. Semple*,
    82 Fla. 138, 89 So. 638 (Fla. 1921) ....................................................................23

*State Dep't of Revenue ex rel. Vickers v. Pelsey*,
    779 So. 2d 629 (Fla. Dist. Ct. App. 1st 2001)................................................21, 24

*In re Van Meter's Est.*,
    214 So. 2d 639 (Fla. Dist. Ct. App. 1968) ...........................................................17

*Wechsler v. Carrington*,
    214 F. Supp. 2d 1348 (S.D. Fla. 2002) .....................................................17, 19, 24

*In re Wiley*,
    570 B.R. 661 (Bankr. N.D. Fla. 2016) .............................................................17, 18

## Statutes and Rules

11 U.S.C. § 541(a)(1)..........................................................................................22

11 U.S.C. § 704(a)(1)..........................................................................................23

CPLR 5206(a) ....................................................................................................11

## Other Authorities

Tracy Batement, Florida Jurisprudence, Homesteads, 28A Fla. Jur. 2d § 36 (2024) ...................17

20 Fla. Jur 2d Domicile and Residence § 20 ..............................................................20

Pursuant to Paragraph 5(B)(iv) of the Court's Individual Rules and Practices, Plaintiffs Ruby Freeman and Wandrea' Moss respectfully submit these Proposed Findings of Fact ("PFOF") and Proposed Conclusions of Law ("PCOL").

## PROPOSED FINDINGS OF FACT

1.    Mr. Giuliani's contention in this case is that he established a homestead at 315 South Lake Drive, Unit 5D, Palm Beach, Florida (the "Palm Beach Condo") as of January 1, 2024. H-PTX 155. But throughout the first half of 2024, Mr. Giuliani consistently said or represented otherwise, including in sworn testimony during his section 341 meeting of creditors on February 7, 2024, H-PTX 69, through sworn asset disclosures filed in that same case (on January 26 and February 27, 2024), and in statements through counsel made on March 28, 2024, H-PTX 83, Mr. Giuliani's new, self-serving version of events is fundamentally not credible, and is contradicted by the record evidence. If Mr. Giuliani did establish a principal residence at the Palm Beach Condo, he did not do so until some time in late September or early October 2024, and certainly not earlier than August 8, 2024.

**I.    Plaintiffs Recorded Their Judgment in Palm Beach County on August 8, 2024.**

2.    On August 5, 2024, Plaintiffs registered their judgment in the United States District Court for the Southern District of Florida. *See Freeman v. Giuliani*, No. 24-mc-22979 (S.D. Fla. Aug. 5, 2024), ECF No. 1; H-PTX 125 ¶ 58. On August 8, 2024, Plaintiffs recorded a certified copy of that judgment, so registered, with the Clerk of Palm Beach County, together with an affidavit stating their addresses. H-PTX 142; H-PTX 125 ¶ 58.

**II.    Prior to January 1, 2024, the New York Apartment Was Undisputedly Mr. Giuliani's Principal Residence, and the Palm Beach Condo Was Undisputedly Mr. Giuliani's Second Home.**

3.    At least prior to January 1, 2024, Mr. Giuliani undisputedly maintained his co-op apartment at 45 E 66th Street, Apartment 10W, New York, New York (the "New York

Apartment") as his "principal residence." H-PTX 69 at 10:3–5; H-PTX 175 (the "R. Giuliani Tr.") 70:18–71:5, 71:23–72:7.

4.      During that period, Mr. Giuliani maintained the Palm Beach Condo as his "second home." R. Giuliani Tr. at 70:17–19; 70:22–71:5, 75:7–20, 236:10–16; H-PTX 180 at 199:02–20.[1] He divided his time "eighty-twenty, seventy-thirty," in favor of New York. H-PTX 69 at 9:24–10:2. As Mr. Giuliani testified at his deposition, that meant that even during the period Mr. Giuliani contends that he considered his New York Apartment to be his "principal residence," he agreed that there were "still periods of the year when [he] considered Palm Beach [his] home base," specifically from around Christmas until around Easter—or from about December to about April each year. R. Giuliani Tr. at 73:10–74:4. That was consistent with Mr. Giuliani's original vision for the Palm Beach Condo; he purchased it with his ex-wife to use it "for the winter months." R. Giuliani Tr. at 71:3; 72:8–73:10; 73:23–74:5. It was Mr. Giuliani's "vacation home," H-PTX 159 at 5, although he did not use it only "occasionally on vacation," it was more of a "second home" in that he would spend a substantial amount of time there from December to April each year despite still maintaining his principal residence at the New York Apartment. R. Giuliani Tr. at 75:7–20; *see also* H-PTX 179 at 93:23–94:18; H-PTX 178 at 156:11–158:5.

5.      During the period that the New York Apartment was undisputedly Mr. Giuliani's principal residence, and consistent with his use of the New York Apartment as a principal residence, Mr. Giuliani provided the address of the New York Apartment as the destination for important documents, including bank statements, and listed the address in <mark>tax documents</mark>. R.

---

[1] Plaintiffs cite herein to deposition testimony of certain third-party witnesses only as a protective matter should those witnesses be permitted to testify at trial, and not as support for any aspect of Plaintiffs' affirmative case in chief. Plaintiffs have not designated any deposition testimony and do not plan to do so. Plaintiffs reserve the right to offer Defendant's deposition into evidence should circumstances warrant.

Giuliani Tr. at 176:16–177:20, 184:7–24; H-PTX 12; H-PTX 16; H-PTX 20; H-PTX 25; H-PTX 27; H-PTX 28; H-PTX 37.

6.      In the years leading up to 2024, Mr. Giuliani began operating many of his businesses out of the New York Apartment itself. R. Giuliani Tr. at 248:3–249:11; H-PTX 69 at 17:18–24; H-PTX 86 at 104:13–24; H-PTX 179 at 59:19–62:03, 141:20–143:10; H-PTX 180 at 144:07–145:06.

### III.    Mr. Giuliani Did Not Establish a Homestead at the Palm Beach Condo Prior to August 8, 2024.

7.      Mr. Giuliani did not change his homestead status at any time prior to August 8, 2024, either as a matter of objective facts or subjective intention. Although the Court need not reach this factual issue to resolve Plaintiffs' claims, the evidence indicates that the most likely date on which Mr. Giuliani established a principal residence at the Palm Beach Condo with an arguable intention to reside there permanently was in late September or early October 2024.

#### A.    Mr. Giuliani Did Not Actually Occupy the Palm Beach Condo as a Principal Residence Prior to August 8, 2024.

8.      Mr. Giuliani did not change the way he occupied or used the Palm Beach Condo at all prior to August 8, 2024. At most, Mr. Giuliani spent approximately the same period—the "winter months"—occupying the Palm Beach Condo a majority of the time. H-PTX 159 at 79–85; *see also* R. Giuliani Tr. at 70:24–71:5; 164:1–10, 124:22–24, 132:11–16, 176:16–177:11, 245:5–21, 278:21–279:4; H-PTX 159 at 79–85; H-PTX 69 at 9:8–10:5; 17:18–24; H-PTX 174 at 21:19–22:5, 45:11–25; H-PTX 179 at 94:8–95:11.

9.      Prior to August 8, 2024, as he had habitually done before, Mr. Giuliani used the Palm Beach Condo in the winter months and spent the summer months elsewhere. For the time between January 1 and August 8, 2024, Mr. Giuliani continued to use the Palm Beach Condo as a

second home, as he had for years, spending time at the Palm Beach Condo in the winter months. *See* R. Giuliani Tr. at 124:17–24.

10. Mr. Giuliani was not physically present at the Palm Beach Condo for the majority of 2024 prior to August 8, 2024. R. Giuliani Tr. 124:20-24; 132:13-16; H-PTX 174 (Placa Tr.) 45:15-25; H-PTX 46; H-PTX 50 at 4-6; H-PTX 64 at 3-5; H-PTX 76 at 3; H-PTX 94 at 3-4; H-PTX 96 at 3-4; H-PTX 114 at 2-6; H-PTX-81 (describing team having to "travel to Florida for business"); H-PTX 175 at 6:16-18 (showing Mr. Giuliani testified from the New York Co-Op that he referred to as his "home"); H-PTX 159 at 40 (showing Declaration of Domicile was executed and notarized in New Hampshire); H-PTX 97; H-PTX 98.

11. Mr. Giuliani was not present at all at the Palm Beach Condo between June 1, 2024 and August 8, 2024. H-PTX 149 ¶¶ 24–48, 50–56; H-PTX 97; H-PTX 98; H-PTX-178 (Ryan Tr.) 69:4-7; 206:4-14. In fact, from May 27, 2024 through at least August 29, 2024, Mr. Giuliani did not physically occupy the Palm Beach Condo in any way. H-PTX 159 at 79-85

12. There is no evidence in the record that Mr. Giuliani occupied the Palm Beach Condo for a substantial amount of time, much less a majority of time, during 2024.

13. Prior to August 8, 2024, Mr. Giuliani did not receive important mail at the Palm Beach Condo; instead, the same types of mail that he had arranged to be sent to the New York Apartment continued to be sent to the New York Apartment. R. Giuliani Tr. at 176:16-177:11, 183:2-20, 184:7-24, 187:15-21; H-PTX 45; H-PTX 50; H-PTX 62; H-PTX 65; H-PTX 68; H-PTX 75; H-PTX 76; H-PTX 77; H-PTX 82; H-PTX 93; H-PTX 94; H-PTX 95; H-PTX 96; H-PTX 114; H-PTX 127; H-PTX 133; H-PTX 135 at 1, 4; H-PTX 143; H-PTX 179 at 283:04-283:18; H-PTX 183 at 1;  H-PTX 184 at 4; H-PTX 185 at 5; H-PTX 186 at 2.

4

14.    Mr. Giuliani testified that he "didn't think about" changing the mailing address for these important documents because he "could pick up documents in New York." R. Giuliani Tr. at 182:24-183:22.

15.    Mr. Giuliani could not easily recall the address of the Palm Beach Condo as of February 7, 2024, a difficulty that he explained by testifying that he "hardly ha[s] to use the address" of the Palm Beach Condo. H-PTX 69 at 9:8-9.

16.    Pursuant to an adverse inference entered by the Court on the record on January 6, 2024, "the identities, and correspondingly, locations of Defendant's professional services providers would show that none of them were located in or near Florida and that he made no change in his professional service providers after and as a result of his purported change in homestead." Jan. 6 Tr. at 381:6-11.

17.    As he did in previous years, Mr. Giuliani continues to keep sensitive records in both New York and Florida. R. Giuliani Tr. at 261:6-11.

18.    Mr. Giuliani did not change anything about the way he used the Palm Beach Condo in 2024, other than to move some new recording equipment in. R. Giuliani Tr. at 245:3-21; 278:9-279:4. The only other change Mr. Giuliani could identify at his deposition was that he "probably spent more time there," *id.* 236:9. But Mr. Giuliani's own evidence in this case shows that he spent approximately the same amount of time at the Palm Beach Condo in the first half of 2024 as in prior years: approximately four months. H-PTX 64; H-PTX 76; H-PTX 77; H-PTX 159 at 79-85.

19.    Today, the Palm Beach Condo is furnished as it always was, except for having additional recording equipment. R. Giuliani Tr. at 245:3-21; 278:9-279:4; H-PTX 169 46:25-47:13. Mr. Giuliani did not move any of his furniture from the New York Apartment to the Palm Beach Condo when he moved furniture in 2023 or 2024. R. Giuliani Tr. at 190:7-191:21, 191:24-

192:14, 193:15-194:3; *see also* R. Giuliani Tr. at 178:5-11; H-PTX 17; H-PTX 128; H-PTX 178 at 94:6-15; 111:13-22.

20.    Mr. Giuliani did not move out of the New York Apartment until early October 2024. R. Giuliani Tr. at 192:6-192:14. He moved a small number of items out when the apartment was first listed for sale, but until early October 2024 the furnishings in the New York Apartment "didn't look much different than [] always." R. Giuliani Tr. at 192:6-14; *see* H-PTX 17; H-PTX 169 46:25-47:13. Eventually, in October 2024, Mr. Giuliani moved the bulk of the New York Apartment's contents out of the Apartment. H-PTX 128. In both cases, the property moved out of the New York Apartment was moved into a storage facility located in New York, not Florida. R. Giuliani Tr. at 245:19-21; H-PTX 128; H-PTX 17.

**B.    Prior to August 8, 2024, Mr. Giuliani Did Not Have an Intention to Permanently Maintain a Principal Residence at the Palm Beach Condo.**

21.    Mr. Giuliani's actions between January 1, 2024, and August 8, 2024, demonstrated that his subjective intentions about his principal residence remained tied to the New York Apartment, and not to the Palm Beach Condo.

22.    At most, Mr. Giuliani spent the "winter months" in Palm Beach according to his earlier custom. Then Mr. Giuliani spent much of the summer in New Hampshire. R. Giuliani Tr. at 70:24-71:5, 72:8-73:10, 73:23-74:5; H-PTX 69 at 9:21-10:5, 21:19-22:5, 24:3-8, 27:5-13; H-PTX 159 at 79-85; H-PTX 178 at 6:4-7; 70:25-71:6; H-PTX 179 at 93:23-94:18. Mr. Giuliani leased an apartment in Manchester, NH on June 1, 2024. H-PTX 97. The lease term spanned June 14, 2024 through August 24, 2024. *Id.* The lease provided that "[t]he Landlord shall NOT send the Tenant(s) any notices to the Premises' aforesaid mailing address"—that is, to the address of the leased apartment in New Hampshire—"Instead," the lease provided, "the Landlord shall send notices to the Tenant(s) to 45 e 66th st, 10W, New York, New York, 10065," the address of the

New York Apartment. *Id.* Section XLVI of the lease further provided that notices should be sent to the Tenant to the attention of Rudolph Giuliani, at 45 e 66th st, 10W, New York, New York, 10065. *Id.*

23.  On August 3, 2024, while living in New Hampshire, Mr. Giuliani applied for a bank account at a local credit union, Bellwether Community Credit Union. H-PTX 118. Not only did Mr. Giuliani open bank accounts at Bellwether Community Credit Union ("Bellwether"), but on the form to open his accounts, Mr. Giuliani established his qualification for membership in the credit union by checking a box reading: "live or work in NH." H-PTX 117. On the same form, Mr. Giuliani listed his "full physical address" as "109 English Village Rd Apt 204, Manchester, NH 03102-2472," the address of his leased studio apartment. *Id.* On August 7, 2024, Mr. Giuliani submitted an address change request to Bellwether and asked for the mailing address associated with his accounts to be changed to "418 Walnut St., Manchester, NH 03104." H-PTX 121. Mr. Giuliani asked to change the address on "All accounts where I am the primary member," not to his Palm Beach Condo address, but to a *different* Manchester, NH address. *Id.* The request did not include an "End Date (if seasonal)." *Id.* Mr. Giuliani instead checked the box reading "new address." *Id.*. Mr. Giuliani's decision to open bank at a New Hampshire Credit Union, rather than a Florida-based bank or bank with Florida locations, is inconsistent with any intention to maintain the Palm Beach Condo as his principal residence. H-PTX 117; R. Giuliani Tr. at 164:1-10, 164:19-165:18, 171:15-172:5, 258:12-259:9.

24.  Mr. Giuliani also did not move his business addresses to Florida prior to August 8, 2024. *See* H-PTX 38; H-PTX 48; H-PTX 63; H-PTX 78; H-PTX 84; H-PTX 95; H-PTX 179 at 98:16–100:02, 254:18–257:08; H-PTX 182; H-PTX 183 at 1; H-PTX 184 at 4; H-PTX 185 at 5.

25.     Mr. Giuliani did not open any bank accounts in Florida, for personal or professional use, prior to August 8, 2024. H-PTX 150; H-PTX 179 at 82:07–82:10, 84:22–86:13.

26.     Mr. Giuliani did not arrange to have important mail sent to the Palm Beach Condo prior to August 8, 2024. *See* R. Giuliani Tr. at 182:24-183:22; H-PTX 179 at 283:04-283:18; 254:18 – 257:08. The only evidence of Mr. Giuliani seeking to change his mailing address is dated well after August 8, 2024. On October 1, Mr. Giuliani submitted a change of address form to the United States Postal Service, coinciding with his move out of the New York Apartment. H-PTX 186 at 2 (charge for "USPS Change of Address" on October 1, 2024). Mr. Giuliani also filed a change of address request with the Internal Revenue Service on October 14, 2024. H-PTX 135 at 1, 4.

27.     Mr. Giuliani's social life, or lack thereof, in Florida is further evidence that he continued to function as a snowbird through at least August 8, 2024. Mr. Giuliani's "closest personal friend" Monsignor Placa, R. Giuliani Tr. at 49:3-11, who lives fulltime in Palm Beach, described that Mr. Giuliani does not attend any social clubs or church with Monsignor Placa. H-PTX 174 at 24:3-8. This supports Mr. Giuliani's testimony that he does not belong to any clubs in Palm Beach. R. Giuliani Tr. at 244:25-245:1.

28.     Mr. Giuliani has not updated his will since allegedly establishing a new homestead at the Palm Beach Condo, and in a new state. R. Giuliani Tr. at 254:4-255:8. And Mr. Giuliani's will lists New York as his domicile. *Id*.

29.     The lack of time Mr. Giuliani spent at the Palm Beach Condo, specifically over the summer when he was living as a "vagabond" and renting a "cottage in New Hampshire," is further inconsistent with any intention to maintain the Palm Beach Condo as his principal residence. R.

Giuliani Tr. at 124:23, 171:2-10. Had Mr. Giuliani preferred to be at the Palm Beach Condo during the Summer of 2024, he could have been. R. Giuliani Tr. at 257:24-258:11.

30.    At most, prior to August 8, 2024, Mr. Giuliani had an intention to establish the Palm Beach Condo as his principal residence at some point in the future. R. Giuliani Tr. at 39:19-40:2; 53:16-24, 59:11-20, 70:24-71:5, 77:16-78:7, 207:20-23; H-PTX 174 at 28:22-29:5, 29:23-31:17; H-PTX 179 at 91:05–91:20. Mr. Giuliani had this plan for the future for years and had not actually established the Palm Beach Condo as his principal residence.

31.    During the relevant period, Mr. Giuliani continued to own two homes. While Mr. Giuliani considered selling the New York Apartment, he declined an offer to buy it and never sold the New York Apartment. R. Giuliani Tr. at 80:23-81:22; H-PTX 178 at 287:8-288:2. Mr. Giuliani continued to pay for internet and other utilities at the New York Apartment. H-PTX 60.

32.    At most, Mr. Giuliani intended to move to the Palm Beach Condo *after* his New York Apartment was sold. Mr. Giuliani testified in his deposition that he planned to move to the Palm Beach Condo as soon as he sold the New York Apartment. R. Giuliani Tr. at 77:14-24; 78:3-5. As his bankruptcy counsel stated on March 28, 2024, "Once the [New York] apartment is sold, [Mr. Giuliani] will primarily reside at the Florida condominium." H-PTX 083, at ¶ 16. However, Mr. Giuliani was not motivated to sell the New York Apartment because of an intention to move permanently to Palm Beach, but because, as he testified in his bankruptcy case, because he wanted to come up with cash to pay the IRS for unsatisfied tax liabilities. H-PTX 69, at 45:14-18. That plan was only interrupted because "the bankruptcy intervened." *Id.* at 45:18. Thus, rather than putting the New York Apartment on the market because he intended to move permanently to the Palm Beach Condo, moving permanently to the Palm Beach Condo was at most

a fallback plan for *after* the New York Apartment was no longer available to Mr. Giuliani once it was sold.

33.     As of this date, the New York Apartment has not yet been sold. R. Giuliani Tr. at 184:15-20, 232:21-23.

**C.     On July 1, 2024, Giuliani Sought to Liquidate the Palm Beach Condo by Surrendering It to a Chapter 7 Trustee.**

34.     On July 1, 2024, Mr. Giuliani personally signed an application to convert his bankruptcy case to a chapter 7 liquidation. H-PTX 104. His attorney took the position on the record that Mr. Giuliani had an "absolute right to convert" his case, regardless of any objection by any other party, and without any review by the Court. H-PTX 106 at 19:21–23. By filing a motion to convert his bankruptcy case to chapter 7, while arguing that his motion was automatically effective, Mr. Giuliani intended that his nonexempt property would be surrendered to a chapter 7 trustee under the provisions of the Bankruptcy Code. R. Giuliani Tr. at 267:9-268:7, 271:9-25.

35.     Mr. Giuliani's filing of a motion to convert his bankruptcy case to chapter 7 liquidation was inconsistent with an intention to maintain the Palm Beach Condo as a permanent home.

36.     Following the July 1, 2024 conversion motion, Mr. Giuliani did not actually occupy the Palm Beach Condo at all, at least through August 29, 2024. H-PTX 159 at 79-85.

**IV.    Mr. Giuliani's Version of Events Is Not Credible.**

37.     Mr. Giuliani contends that he established a homestead at the Palm Beach Condo within the meaning of the Florida Constitution on January 1, 2024. H-PTX 155 at 1. He has made no argument that he established a homestead there at any later date. But Mr. Giuliani's version of events is not credible on its face. Moreover, Mr. Giuliani's version of events must be viewed in the context of his refusal to make a full and complete production of discovery to Plaintiffs.

Throughout his deposition, Mr. Giuliani referenced the existence of countless responsive materials in his possession, none of which was produced in discovery. 102:24-103:8; 173:17-174:8; 186:15-187:3; 193:1-10; 199:9-13; 240:18-241:6. To Mr. Giuliani's mind, this non-production is irrelevant because the only thing that matters for establishing his homestead at the Palm Beach Condo is what is in his own mind.

38.     Faced with the choice between Plaintiffs' version of events, pursuant to which Mr. Giuliani did not establish a homestead at the Palm Beach Condo until after August 8, 2024, and Mr. Giuliani's version of events, which is contradicted by his own sworn testimony, there can be no doubt that the evidence favors Plaintiffs' version by a preponderance, and more.

39.     On January 26, 2024, Mr. Giuliani filed a Schedule C in his chapter 11 case listing property he claimed as exempt. H-PTX 56. Mr. Giuliani claimed a homestead exemption with respect to the New York Apartment under CPLR 5206, which applies to residential property "owned and occupied as a principal residence." CPLR 5206(a); *see* H-PTX 56 at 9. Mr. Giuliani made no such claim with respect to the Palm Beach Condo. *See id*.

40.     Mr. Giuliani took steps to amend his bankruptcy filings to correct perceived errors and omissions, but never changed his claim on his Schedule C form that the New York Apartment was entitled to homestead protection under CPLR 5204. On February 5, 2024, Mr. Giuliani amended Schedule D and Schedule E/F in his bankruptcy case. H-PTX 67 at 6-7. On February 27, 2024, Mr. Giuliani amended Schedule A/B and Schedule G. H-PTX 74 at 1, 8. At no time did Mr. Giuliani file an amended Schedule C.

41.     On February 7, 2024, Mr. Giuliani testified under oath in his bankruptcy proceeding at the Section 341 meeting of creditors. H-PTX 69. Asked whether he "would say that the New York residence is your principal residence," he responded, "Yes, it is," in the present tense. H-

PTX 69 at 10:3-5. In the same sworn testimony, Mr. Giuliani was asked " to approximate how much time you spend [in New York] versus how much time you spend in Florida," and responded, "eighty-twenty, seventy-thirty," in favor of New York. H-PTX 69 at 9:24-10:2.

42.    On March 28, 2024, Mr. Giuliani filed a brief through counsel in which he represented in the *present* tense that "the New York City apartment at issue *is* his primary residence." H-PTX 83 ¶ 16 (emphasis added). Notably, March 28 is *after* the date Mr. Giuliani claims to have obtained a Florida Driver's license. H-PTX 159 at 46.

43.    In the same filing, Mr. Giuliani further stated that "No one is arguing that the Florida condominium is non-exempt property." H-PTX 83 ¶ 21.

44.    Only on May 18, 2024—the same day that Mr. Giuliani first registered to vote in Florida—did he execute an application for the homestead *tax* exemption from the Florida authorities. H-PTX 159 at 29-32.

45.    Mr. Giuliani's testimony regarding his use and occupancy of and intentions with respect to the Palm Beach Condo is not credible. Mr. Giuliani's sworn interrogatory in this case stating that he established a homestead at the Palm Beach Condo by January 1, 2024, directly contradicts his sworn testimony in the bankruptcy case. Mr. Giuliani's changing position on the status of his New York Apartment and his Palm Beach Condo appears to reflect the conveniences of the moment, rather than the reality of where he actually maintains, and intends permanently to maintain, his principal residence.[2]

---

[2] To the extent the Court permits Mr. Giuliani's third-party witnesses to testify, those witnesses' testimony is not credible. Each of the third party witnesses whose testimony Mr. Giuliani seeks to rely at trial testified extensively regarding their bias in favor of Mr. Giuliani. Dr. Ryan testified that in the last few years, Mr. Giuliani has become part of the family and that the more "he was attacked," the more her entire family "put our arms around him." H-PTX 178 21:19 – 23:9. Monsignor Placa, who was the best man at Mr. Giuliani's first wedding and presided over Mr. Giuliani's second wedding and the baptisms of his two children, testified to being loyal and

46. Mr. Giuliani's proffered evidence of his intention to maintain a permanent home at the Palm Beach Condo consists of his voter registration, his driver's license, a declaration of domicile, and his filing of a homestead tax exemption application, which was granted based on Mr. Giuliani's representation that he had obtained a Florida driver's license and registered to vote there. Those indicia of Mr. Giuliani's intention are notable for the ease with which they can be obtained "on paper," as it were, without actually changing anything in the real world.

47. Mr. Giuliani's reliance on those indicia of his purported use of the Palm Beach Condo as a principal residence prior to August 8, 2024 is also contradicted by the timing of his own sworn representations and his counsel's statements to the contrary.

48. The homestead tax exemption purports to show that he maintained a permanent, principal residence at the Palm Beach Condo as of January 1, 2024, H-PTX 159 at 29-32, but Mr. Giuliani stated in sworn testimony that the New York Apartment was his "principal residence" on February 7, 2024, H-PTX 159 at 29-32; H-PTX 69 at 10:3-5, his counsel stated on March 28, 2024 that "the New York City apartment at issue *is* his primary residence," H-PTX 83 ¶ 16 (emphasis added), and Mr. Giuliani provided a sworn disclosure in the Bankruptcy Court (on January 26, 2024), claiming a homestead exemption with respect to his New York Apartment on the basis that it was his principal residence under CPLR 5206. H-PTX 56 at 1. Mr. Giuliani only filed his application for that homestead tax exemption on May 18, 2024, suggesting (in light of his multiple

---

indebted to Mr. Giuliani. H-PTX 174 79:15-24; 85:4-9. About Mr. Giuliani, Mr. Goodman testified "I look up to this man so much" and that its hard for him to describe their relationship even as a friendship because "of how much love and respect and admiration I have for him and his professional accomplishments and his impact on society and this country." H-PTX 180 214:9-215:6. Mr. Goodman described that "the opportunity to work with someone like Mayor Rudy Giuliani is priceless." H-PTX 180 75:3-13. Dr. Ryan, Mr. Medrano, and Mr. Goodman also currently work for Mr. Giuliani. H-PTX 178 28:19 – 21; H-PTX 179 16:19-21; H-PTX 180 37: 20–25.

earlier contrary representations) that he developed a *post-hoc* plan to claim residence at the Palm Beach Condo as of January 1, 2024 long after that date, and without a basis in his true intentions as of January 1, 2024.

49.    Similarly, to the extent the Court considers it, Mr. Giuliani's Florida voter registration, dated May 18, 2024, deserves no weight. Mr. Giuliani's claim in this case is that he established a homestead at the Palm Beach Condo as of January 1, 2024. H-PTX 155 at 1. A voter registration dated May 18, 2024, does not support that claim. Further, Mr. Giuliani testified at his deposition that it was important to him to register to vote in Florida so that he could vote for Donald Trump and so that his vote for Mr. Trump would matter. R. Giuliani Tr. at 161:7-15.

50.    To the extent the Court considers it, Mr. Giuliani's Florida driver's license, issued February 22, 2024, deserves no weight. Mr. Giuliani's driver's license was obtained on February 22, 2024. H-PTX 159 at 46. But Mr. Giuliani admits that he had not possessed a driver's license for some time before that, having allowed his prior New York driver's license to expire, H-PTX 159 at 3, demonstrating that he had no real need for a driver's license for purposes of his day-to-day life. Mr. Giuliani's sudden need for a driver's license is best explained by his desire to make it seem like the Palm Beach Condo was his permanent home, not a need to be a licensed driver. Further, even after obtaining the driver's license on February 22, Mr. Giuliani continued to state that the New York Apartment was his principal residence. PFOF ¶ 42. And finally, Mr. Giuliani's claim in this case is that he established a homestead at the Palm Beach Condo as of January 1, 2024, H-PTX 155 at 2; a driver's license dated February 22, 2024 does not support that claim.

51.    Mr. Giuliani also offers his vehicle registration as proof of his intention to permanently reside at the Palm Beach Condo, but he admitted at his deposition that he first registered the car in Florida years ago, R. Giuliani Tr. at 155:23–156:20. Indeed, the registration

is in the name of Mr. Giuliani and his ex-wife Judith, who were divorced at the end of 2019. H-PTX 13; H-PTX 14.

52.     To the extent the Court considers it, Mr. Giuliani's July 13, 2024 declaration of domicile deserves no weight. H-PTX 159 at 40. The Declaration of Domicile purports to claim that Mr. Giuliani is a bona fide Florida resident, but it was executed in New Hampshire and notarized by a New Hampshire notary. *Id.* The July 13, 2024 date is, conveniently, the day immediately after the Bankruptcy Court announced its decision to dismiss Mr. Giuliani's bankruptcy case on July 12. *Id.*, H-PTX 111. Further, the Declaration of Domicile was executed in the middle of a months-long stretch during which Mr. Giuliani did not occupy the Palm Beach Condo at all, instead traveling to and from New Hampshire or New York for his various trips. H-PTX 159 at 79-85. The Declaration of Domicile is best explained as a self-serving statement purporting to make it appear that Mr. Giuliani maintained a principal residence at the Palm Beach Condo when he did not in fact do so.

53.     For that reason, and to the extent they are even considered by the Court, those pieces of evidence are far outweighed by the numerous other pieces of objective evidence indicating that Mr. Giuliani did not establish an intention to occupy the Palm Beach Condo as a permanent home prior to August 8, 2024.

54.     As to the question whether Mr. Giuliani had established a permanent residence at the Palm Beach Condo on January 1, 2024, Mr. Giuliani's prior statements and representations, individually and through counsel—particularly his sworn February 7 testimony—are far more credible than his contentions today, as they were made at a time before Mr. Giuliani was aware of the controversy surrounding his homestead claims, or had any reason to make self-serving statements about establishing a principal residence at the Palm Beach Condo. Early in Mr.

Giuliani's bankruptcy, he had no reason to foresee the dismissal of his bankruptcy case, and his position at the time was that he would obtain reversal of Plaintiffs' judgment on appeal to the D.C. Circuit, giving him no need to seek protection from creditors like Plaintiffs. H-PTX 83 ¶¶ 5, 6, 13. Mr. Giuliani's testimony under those circumstances is far more credible than his more recent self-serving claims regarding the Palm Beach Condo, made with an eye toward (or for the purposes of) litigation. Further, his current claim that he established a homestead as of January 1, 2024 is not supported by any evidence other than his own self-serving testimony.

55.     What's more, Mr. Giuliani is very clear in claiming that none of this documentary evidence is even necessary to proving his homestead claim because, in his mind, the only relevant question for establishing a homestead is his subjective intent to do so which can only be known in his own mind. R. Giuliani Tr. at 206:23-209:14; 211:2-19; 212:14-24; 213:10-214:5; 217:24-219:8.

56.     The Court has before it two competing narratives: Defendant contends that he began to actually occupy the Palm Beach Condo as his permanent home on January 1, 2024. Plaintiffs contend that if Defendant did begin to actually occupy the Palm Beach Condo as his permanent home, that did not occur until after August 8, 2024. While it appears based on a preponderance of the evidence that Mr. Giuliani likely began to actually occupy the Palm Beach Condo as his permanent home in early October 2024—when he moved out of the New York Apartment, began living at the Palm Beach Condo after spending the summer in New Hampshire and New York, submitted change of address forms to the IRS and the USPS, and changed his address with his primary banking relationships—the Court does not need to reach that conclusion to decide this case. Instead, the Court need only choose the more credible of the competing narratives before it, and Mr. Giuliani's version of events is simply not credible. Plaintiffs have

proved by a preponderance of the evidence that Mr. Giuliani did not actually occupy the Palm Beach Condo as a principal residence or home, or intend to continue to do so permanently, prior to August 8, 2024.

## PROPOSED CONCLUSIONS OF LAW

I.    **Mr. Giuliani Did Not Establish His Palm Beach Condo as a Homestead Within the Meaning of the Florida Constitution on or Before August 8, 2024.**

57.    To claim a homestead under the Florida Constitution, a claimant "must have an actual intent to live permanently on the property and actual use *and* occupancy of the property." *Wechsler v. Carrington*, 214 F. Supp. 2d 1348, 1351–52 (S.D. Fla. 2002) (emphasis added); *see e.g., Clements v. Farhood*, No. 5:17-CV-213-RH/GRJ, 2018 WL 850086, at *2 (N.D. Fla. Feb. 12, 2018) (emphasizing that the "Florida Supreme Court has said" that "the homestead intended by our Constitution to be exempt is the place of actual residence of the party . . . [t]he character of property as a homestead depends upon an actual intention to reside thereon as a permanent place of residence, coupled with the *fact of residence*") (emphases in original) (quoting *Hillsborough Inv. Co. v. Wilcox*, 13 So. 2d 448, 451–52 (Fla. 1943)); *Colwell v. Royal Int'l Trading Corp.*, 226 B.R. 714, 719 (S.D. Fla. 1998) ("a homestead is established when there is actual intent to live permanently in a place, coupled with actual use and occupancy") (cleaned up*); In re Van Meter's Est.*, 214 So. 2d 639, 643 (Fla. Dist. Ct. App. 1968) (the homestead exemption does not "attach to real estate that is not occupied as the home . . . the place must be not a theoretical, but real place of residence.") (cleaned up); *see also* Tracy Batement, Florida Jurisprudence, Homesteads, 28A Fla. Jur. 2d § 36 (2024). This test has both objective (actual occupancy) and subjective (intent) prongs. *In re Wiley*, 570 B.R. 661, 669 (Bankr. N.D. Fla. 2016).

A. **Mr. Giuliani Did Not Actually Occupy the Palm Beach Condo as His Principal Residence On or Before August 8, 2024.**

58. Mr. Giuliani did not actually use and occupy the Palm Beach Condo as his principal residence on or before August 8, 2024. Throughout that time, Mr. Giuliani used the Palm Beach Condo in exactly the same way that he had always done: as a second home. PFOF ¶¶ 4, 8–9, 18–19, 22.

59. A property used as a second home does not qualify for homestead protection under the Florida Constitution. Instead, to qualify as a "homestead," property must be "actual[ly] occup[ied] *as a homestead*." *Drucker v. Rosenstein*, 19 Fla. 191, 198–99 (Fla. 1882) (emphasis added); *see In re Wiley*, 570 B.R. 661, 668 (Bankr. N.D. Fla. 2011) (to qualify for the homestead exemption, property must be actually "*used as [a] home*," not a second home). Thus, a "secondary or vacation home" is not a homestead, even if a debtor occupies it some of the time. *In re Middleton*, 462 B.R. 832, 836 (Bankr. N.D. Fla. 2011); *accord In re Wiley*, 570 B.R. at 670–71. The "actual use and occupancy sufficient to establish constitutional homestead" protection requires more than use of a property as "a vacation home, a weekend getaway, or a place to stay during" temporary circumstances. *In re Wiley*, 570 B.R. at 670. And where a debtor *does* maintain a second home in Florida, such a debtor cannot suddenly apply constitutional homestead protection to that home by filing a declaration of domicile. *See Drucker*, 19 Fla. at 198; *In re McCallan*, 629 B.R. 491, 504 (Bankr. M.D. Ala. 2021), *aff'd sub nom. McCallan v. Wilkins*, 657 B.R. 493 (M.D. Ala. 2022); *see also Reinish v. Clark*, 765 So. 2d 197, 210 (Fla. Dist. Ct. App. 2000) (explaining that a "secondary or vacation home does not implicate the same acute public policy concerns relating to the establishment and protection of a stable, financially secure primary residence") (internal citations omitted). Relatedly, a claimant cannot be actually using and occupying a property as his principal residence if he is in fact living somewhere else. *See, e.g., Clements v. Farhood*, No.

5:17CV213-RH/GRJ, 2018 WL 850086, at *3 (N.D. Fla. Feb. 12, 2018); *Wechsler v. Carrington*, 214 F. Supp. 2d 1348, 1351–52 (S.D. Fla. 2002).

60.    Mr. Giuliani undisputedly used the Palm Beach Condo as a second home before he purportedly established a permanent, principal residence there. PFOF ¶¶ 4-5, 9. However, the facts of this case demonstrate that Mr. Giuliani did not change anything about the way he occupied or used the Palm Beach Condo when he purports to have changed principal residences. PFOF §§ III.A–B.

61.    Further, during the period following Mr. Giuliani's application to convert his bankruptcy to chapter 7 liquidation, Mr. Giuliani did not occupy or use the Palm Beach Condo *at all*, much less as a principal residence.

62.    Under Florida law, Mr. Giuliani's consistent and unchanged actual use of his Palm Beach Condo as a second home precludes any conclusion that he established a principal residence there, and accordingly precludes any conclusion that the Palm Beach Condo is protected as his homestead under the Florida Constitution.

### B.    Mr. Giuliani Did Not Form an Intention to Maintain the Palm Beach Condo as His Principal Residence Indefinitely on or Before August 8, 2024.

63.    Mr. Giuliani did not form any intention to maintain the Palm Beach Condo as his principal residence on or before August 8, 2024. "A debtor's intent to reside permanently at a subject property is subjective and difficult to prove through testimony which, on the part of the debtor, is likely self-serving. Consequently, courts often look to documentary and other evidence to determine continued intent to reside at a property claimed as homestead." *In re Sam Parker Coats*, 643 B.R. 634, 648–49 (Bankr. M.D. Fla. 2022), *aff'd sub nom. In re Coats*, 2023 WL 8981738 (M.D. Fla. Dec. 28, 2023).

64. The documentary evidence also does not support that Mr. Giuliani formed an intention to maintain the Palm Beach Condo as his principal residence prior to August 8, 2024.

65. No single piece of evidence is dispositive for determining intent. *In re Middleton*, 462 B.R. 832, 834 (Bankr. N.D. Fla. 2011), *aff'd sub nom. Middleton v. Phillips*, No. 5:12-CV-10/RS-EMT, 2012 WL 764196 (N.D. Fla. Feb. 29, 2012) (declining to find Florida homestead despite claimant having a Florida driver's license and being registered to vote in Florida). Instead, courts consider relevant a host of factors, including: keeping a principal personal bank account in Florida; using the Florida address in all documents and mailings; notifying parties, like credit card companies and accountants, of your new homestead; notifying the post office to forward mail to the new homestead; disposing of the former principal residence; changing all documents (like passports) and subscriptions to the new homestead; furnishing the new homestead with substantially more sentimental objects than any other residence; and spending more time at the new homestead than any other residence. Barry Nelson & Cassandra Nelson, Homestead: Creditor Issues, in ASSET PROTECTION IN FLORIDA (The Florida Bar, 8th ed. 2024); *see also Bloomfield v. City of St. Petersburg Beach*, 82 So. 2d 364, 367 (Fla. 1955) (finding Florida homestead where party closed bank accounts in the old domicile and opened bank accounts in Florida, sold the old principal residence, and moved personal effects from the old principal residence and into the Florida residence); *In re Middleton*, 462 B.R. at 835 (finding Florida was not claimant's homestead where claimant had bank accounts in another jurisdiction and had strong social and personal ties to another jurisdiction); 20 Fla. Jur 2d Domicile and Residence § 20. Mr. Giuliani took almost none of these actions prior to August 8, 2024. PFOF ¶¶ 8-10, 13-14, 16-20, 22-29, 31-33.

66.     Further, to the extent Mr. Giuliani did take steps to create the appearance of satisfying the homestead requirements, like filing a declaration of domicile, registering to vote, and obtaining a Florida driver's license, those factors deserve little weight in the overall analysis because they are both inconsistent with Mr. Giuliani's own claims about when he established a homestead, are not in themselves credible, and are in any event outweighed by the numerous other factors weighing against a conclusion that Mr. Giuliani formed the requisite subjective intent to establish a homestead at the Palm Beach Condo.

67.     Notably among those factors, Mr. Giuliani personally signed an application to convert his bankruptcy case to chapter 7 on July 1, 2024, which would have resulted in its liquidation, and would in any event have deprived Mr. Giuliani of any control over the Palm Beach Condo's fate—an action fundamentally inconsistent with any intention by Mr. Giuliani to live there permanently.

68.     Mr. Giuliani did, however, take a number of steps suggestive of an intent to move permanently to the Palm Beach Condo *after* August 8, 2024. R. Giuliani Tr. at 261:22-263:15; PFOF ¶ 13. And when Mr. Giuliani did move a substantial amount of items from the New York Apartment in October 2024, he moved the vast majority into storage and not to Palm Beach. PFOF ¶ 20.

**C.      During the Only Period In Dispute, Mr. Giuliani Had, at Most, an Intention to Establish the Palm Beach Condo as his Principal Residence at Some Point in the Future.**

69.     Even if Mr. Giuliani had an intention to establish the Palm Beach Condo as his principal residence in the future, "mere intent to make property one's homestead in the future is insufficient to entitle one to the exemption." *State Dep't of Revenue ex rel. Vickers v. Pelsey*, 779 So. 2d 629, 632 (Fla. Dist. Ct. App. 1st 2001); *see also Engel v. Engel*, 97 So. 2d 140, 142 (Fla. Dist. Ct. App. 1957). Accepting "mere intent" as sufficient to confer homestead status on a piece

of property "would invite its use for fraudulent purposes, to defeat the legitimate claims of creditors," a result "clearly at odds with important public policy considerations." *Pelsey*, 779 So. 2d at 632–33.

70.    Here, prior to August 8, 2024, at most Mr. Giuliani had an intention to establish a principal residence at the Palm Beach Condo at some point in the future, conditional on the sale of his New York Apartment, which he otherwise maintained and preferred to maintain as his principal residence. PFOF ¶ ¶ 3-4, 30. That is not sufficient under Florida law to establish a homestead there. Until Mr. Giuliani actually moved his principal residence to the Palm Beach Condo—something that happened no earlier than late September or early October 2024—any homestead claim must fail.

### D.    In the Alternative, Mr. Giuliani Destroyed His Palm Beach Condo Homestead on July 1, 2024 and Did Not Re-Establish it on or Before August 8, 2024.

71.    To the extent Mr. Giuliani ever established the Palm Beach Condo as his homestead, Mr. Giuliani destroyed his homestead claim on July 1, 2024 when Mr. Giuliani filed a motion to convert his chapter 11 case to chapter 7.

72.    Mr. Giuliani's initial chapter 11 filing "create[d] an estate . . . comprised of . . . all legal or equitable interests of [Mr. Giuliani] in property as of the commencement of the case," including the Palm Beach Condo. *Id.* § 541(a)(1) (emphasis added). Under Florida law, the effect of permitting property to become part of a bankruptcy estate without claiming a homestead exemption is that "the protection afforded by the homestead exemption has ceased." *In re Maritas*, No. 08-CV-80563, 2008 WL 7801998, at *5 (S.D. Fla. Nov. 24, 2008) (emphasis added); *see Osborne v. Dumoulin*, 55 So. 3d 577, 590 (Fla. 2011). Here, Mr. Giuliani did not claim any exemption with respect to the Palm Beach Condo at the time of the initial filing, and his counsel recognized that Mr. Giuliani "obviously" could not claim the Condo as exempt property. PFOF

¶¶ 39, 43. When Mr. Giuliani signed his chapter 7 conversion application, which his counsel argued was an exercise of Mr. Giuliani's "absolute right" to convert, and recognized would "become a liquidation of the debtor's assets," Bankr. Dkt. 292, at 13:17–18, Mr. Giuliani intentionally set in motion a process that would lead to the liquidation of the Palm Beach Condo. The chapter 7 motion was accordingly an act that, in Mr. Giuliani's own view, had the conclusive and unreviewable effect of surrendering the Condo into the hands of a trustee with statutory power to dispose of it, *see* 11 U.S.C. § 704(a)(1), unprotected by the homestead exemption.

73.    Under Florida law, "[a]y action taken by the homeowner that is incompatible with an intention to permanently reside in a residence may cause a homeowner to lose the benefits of Article X, Section 4, of the Florida Constitution." *In re Franzese*, 383 B.R. 197, 203 (Bankr. M.D. Fla. 2008) (citing *Semple v. Semple*, 82 Fla. 138, 89 So. 638, 640 (Fla. 1921)). In particular, a homestead claimant destroys any homestead claim when he "expresses an intention to surrender the property." *Id*. Plaintiffs have separately sought summary judgment based in part on the grounds that Mr. Giuliani's chapter 7 motion means that Mr. Giuliani had no homestead claim after July 1, 2024 as a matter of law.[3] However, whether or not that is true as a categorical rule, under all the circumstances here, Mr. Giuliani's conversion application is highly probative of an intention to surrender the Palm Beach Condo, and in combination with the other facts found above, constitutes an "action . . . that is incompatible with an intention to permanently reside" at the Palm Beach Condo. *Id*.

---

[3] *See Semple v. Semple*, 89 So. 638, 639 (Fla. 1921) (the "uncontradicted" fact that a debtor "sought to divest himself of the title" to an alleged homestead property "disproves any intention at variance with that act, and is *conclusive* of the fact that it was not his intention to claim the property as a homestead") (emphasis added).

74.     Having surrendered any claim he may have had to a homestead at the Palm Beach Condo as of July 1, 2024, Mr. Giuliani did not establish or re-establish a homestead at the Palm Beach Condo between that date and when Plaintiffs established their lien. Establishing a homestead under Florida law requires an "actual intention to reside thereon as a permanent place of residence, coupled with the fact of residence." *Clements v. Farhood*, No. 5:17-CV-213-RH/GRJ, 2018 WL 850086, at *2 (N.D. Fla. Feb. 12, 2018) (internal quotation marks omitted); *see* ECF No. 44 ("Opp.") at 14.[4] Such "actual occupancy is essential to a homestead claim." *Pelsey*, 779 So. 2d at 632. Because Mr. Giuliani did not actually occupy the Palm Beach Condo between July 10, 2024 and August 8, 2024, he could not have established a homestead at the Condo during that critical period. His *future* intentions to occupy the Palm Beach Condo would not have been enough, *Pelsey*, 779 So. 2d at 632, and any intention to make the Palm Beach Condo his permanent residence would have had to have been "connected with . . . actual occupancy," *Drucker*, 19 Fla. at 198—which undisputedly did not occur. PFOF ¶ 30.

## II.     Plaintiffs Established a Valid Lien on the Palm Beach Condo on August 8, 2024, Which Is Enforceable Notwithstanding Any Claim By Mr. Giuliani that the Palm Beach Condo Is Protected as a Homestead Under the Florida Constitution.

75.     Plaintiffs recorded a certified copy of their judgment in the office of the Palm Beach County Clerk on August 8, 2024. PFOF ¶ 2 Through that recording, Plaintiffs established a lien for the amount of their judgment on all of Mr. Giuliani's real property in Palm Beach County, including the Palm Beach Condo, pursuant to Florida Stat. § 55.10.

76.     Under well established Florida law, the "acquisition of homestead status does not defeat prior liens." *Bessemer v. Gersten*, 381 So. 2d 1344, 1348 (Fla. 1980); *accord Belkova v. Deer Run Prop. Owners' Ass'n, Inc*., 373 So. 3d 629, 632 (Fla. Dist. Ct. App. 2023). Thus, even

---

[4] Unless otherwise indicated, pincites to documents filed on the docket refer to the pagination of the ECF docket stamp, rather than the document's internal pagination.

where a judgment debtor *later* establishes a homestead, "if a judgment is recorded prior to the time the debtor has established a homestead, the homestead property is subject to levy under Florida law." *Wechsler v. Carrington*, 214 F. Supp. 2d 1348, 1351–52 (S.D. Fla. 2002) (collecting cases); *see id.* ("[P]reexisting liens are excepted from Florida's homestead exception."). Here, Plaintiffs established their lien on the Palm Beach Condo prior on August 8, 2024, but Mr. Giuliani had not established a homestead at the Palm Beach Condo on or before that date. PFOF ¶¶ 7, 21, 37-38. Plaintiffs' lien on the Palm Beach Condo is therefore fully enforceable notwithstanding any claim by Mr. Giuliani's that the Condo is a protected homestead under the Florida Constitution.

## **CONCLUSION**

Judgment should be entered for Plaintiffs for all the relief demanded in the Complaint.

Respectfully submitted,

Dated: January 7, 2025           s/ Aaron E. Nathan
       New York, New York

Rachel Goodman                     Michael J. Gottlieb
United to Protect Democracy        Meryl C. Governski (admitted *pro hac vice*)
82 Nassau Street, #601             Willkie Farr & Gallagher LLP
New York, NY 10038                 1875 K Street NW
(202) 579-4582                     Washington, DC 20006
rachel.goodman@protectdemocracy.org (202) 303-1000
                                   mgottlieb@willkie.com
Von DuBose (*pro hac vice forthcoming*)  mgovernski@willkie.com
DuBose Miller LLC
75 14th Street NE. Suite 2110      Aaron E. Nathan
Atlanta, GA 30309                  M. Annie Houghton-Larsen
(404) 720-8111                     Willkie Farr & Gallagher LLP
dubose@dubosemiller.com            787 Seventh Avenue
                                   New York, NY 10019
                                   (212) 728-8000
                                   anathan@willkie.com
                                   mhoughton-larsen@willkie.com

*Attorneys for Plaintiffs*

25